# EXHIBIT 2





# National Detention Standards

Revised 2025



*Foreword*

**INTRODUCTION**

U.S. Immigration and Customs Enforcement (ICE) is a federal agency charged with enforcing the nation's immigration laws in a fair and effective manner. ICE identifies, apprehends, detains, and removes individuals who are amenable to removal from the United States. ICE uses its immigration detention authority to effectuate this mission by securing individuals in custody while they await the outcome of their immigration proceedings and/or removal from the United States. ICE has important obligations under the U.S. Constitution and other federal and state law when it keeps an individual in custody. ICE detention standards ensure that detainees are treated humanely; protected from harm; provided appropriate medical and mental health care; and receive the rights and protections to which they are entitled.

National Detention Standards (NDS) reflects the agency's ongoing commitment to working with its state and local partners to enforce immigration laws and improve public safety and national security. These standards have been updated to better reflect the strong relationship ICE has with its law enforcement partners, including where detention facilities successfully manage their own populations and are willing to assist ICE with housing immigration detainees.

**BACKGROUND**

The original NDS were issued in 2000 by the U.S. Department of Justice (DOJ) Immigration and Naturalization Service (INS), ICE's predecessor agency. The NDS established consistent conditions of confinement, program operations, and management expectations within the agency's detention system. Over the past 25 years, much has changed in immigration enforcement, including the growth of a network of dedicated immigration detention facilities, which are now largely covered by a separate set of standards – the Performance Based National Detention Standards (PBNDS). However, due to the scope of immigration enforcement and the importance of collaboration with local law enforcement agencies, ICE continues to rely on state and local facilities to house its detainees.

In 2019, ICE released a revised version of NDS (NDS 2019) to streamline and condense certain requirements, eliminate redundant standards, and reduce the burden on ICE's local law enforcement partners. NDS 2019 added three standards: Searches of Detainees; Sexual Abuse and Assault Prevention and Intervention; and Disability Identification, Assessment, and Accommodation.

**Specific Areas of Change**

In 2025, ICE is again revising NDS to align with the Executive Order, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to The Federal Government" issued on January 20, 2025. Accordingly, references to gender have been replaced with sex throughout the standards; specifically in the following: Custody Classification System; Hold Rooms in Detention Facilities; Searches of Detainees; Special Management Units; Sexual Abuse and Assault Prevention and Intervention; Personal Hygiene; Significant Self-Harm and Suicide

Prevention and Intervention. Appendix A: List of Required Staff Training and Appendix D: Definitions have similarly been revised. Minor edits have also been made to sections referencing language access and other technical edits have been made to align with current ICE organizational structure, the Performance Based National Detention Standards 2016, and with ICE's Non-Dedicated Intergovernmental Service Agreement Standards (issued March 26, 2025).

*Language Access*

Pursuant to Title VI of the Civil Rights Act of 1964, facilities are required to identify detainees with limited English proficiency (LEP) (i.e., detainees who do not speak English as their primary language and who have limited ability to read, speak, write, or understand English) and provide them with access to facility programs and activities through language interpretation and translation services. The facilities' obligation to provide access to LEP detainees extends to all aspects of detention, including but not limited to intake, disciplinary proceedings, placement in segregation, sexual abuse and assault prevention and intervention, staff-detainee communication, mental health, and medical care. Access may be accomplished through professional in-person or telephonic interpretation and translation services or bilingual personnel. Except in emergencies, other detainees should not be used as interpreters or translators.

Generally, all written materials provided to detainees must be translated into Spanish and other frequently encountered languages. Oral interpretation or other language assistance must be provided to any detainee who speaks a language in which written material has not been translated or who is illiterate.

Areas where language access is particularly important have been included with specific provisions throughout the updated NDS. Where necessary (e.g., a facility's contracted language assistance services cannot fulfill a particular language), ICE can assist the facilities with language services (by providing contact and other necessary information) so that the facility can secure the needed interpretation services at no additional cost. ICE will also supply the facility with Spanish and other available translations of frequently used ICE forms.

# Table of Contents

**SECTION 1: SAFETY**
- STANDARD 1.1 ENVIRONMENTAL HEALTH AND SAFETY ........................................................................... 1
- STANDARD 1.2 TRANSPORTATION BY LAND ...... 9

**SECTION 2: SECURITY**
- STANDARD 2.1 ADMISSION AND RELEASE ....... 18
- STANDARD 2.2 CUSTODY CLASSIFICATION SYSTEM ..................................................................... 21
- STANDARD 2.3 FACILITY SECURITY AND CONTROL .................................................................. 24
- STANDARD 2.4 FUNDS AND PERSONAL PROPERTY ................................................................. 28
- STANDARD 2.5 HOLD ROOMS IN DETENTION FACILITIES ................................................................. 31
- STANDARD 2.6 POST ORDERS .............................. 34
- STANDARD 2.7 SEARCHES OF DETAINEES ........ 36
- STANDARD 2.8 USE OF FORCE AND RESTRAINTS ....................................................................................... 44
- STANDARD 2.9 SPECIAL MANAGEMENT UNITS 53
- STANDARD 2.10 STAFF-DETAINEE COMMUNICATION ...................................................... 66
- STANDARD 2.11 SEXUAL ABUSE AND ASSAULT PREVENTION AND INTERVENTION ..................... 69

**SECTION 3: ORDER** ............................................... 90
- STANDARD 3.1 DISCIPLINARY SYSTEM ............. 91

**SECTION 4: CARE**
- STANDARD 4.1 FOOD SERVICE .............................. 97
- STANDARD 4.2 HUNGER STRIKES ...................... 108
- STANDARD 4.3 MEDICAL CARE........................... 112
- STANDARD 4.4 PERSONAL HYGIENE ................ 127
- STANDARD 4.5 SIGNIFICANT SELF-HARM AND SUICIDE PREVENTION AND INTERVENTION... 130
- STANDARD 4.6 TERMINAL ILLNESS AND DEATH ..................................................................................... 135
- STANDARD 4.7 DISABILITY IDENTIFICATION, ASSESSMENT, AND ACCOMMODATION ............ 137

**SECTION 5: ACTIVITIES**
- STANDARD 5.1 CORRESPONDENCE AND OTHER MAIL................................................................. 147
- STANDARD 5.2 RECREATION .............................. 152
- STANDARD 5.3 RELIGIOUS PRACTICES ............ 155
- STANDARD 5.4 TELEPHONE ACCESS ................ 158
- STANDARD 5.5 VISITATION ................................. 163
- STANDARD 5.6 VOLUNTARY WORK PROGRAM ..................................................................................... 176

**SECTION 6: JUSTICE**
- STANDARD 6.1 DETAINEE HANDBOOK ............ 180
- STANDARD 6.2 GRIEVANCE SYSTEM................ 182
- STANDARD 6.3 LAW LIBRARIES AND LEGAL MATERIALS ............................................................ 185
- STANDARD 6.4 LEGAL RIGHTS GROUP PRESENTATIONS ..................................................... 191

**SECTION 7: ADMINISTRATION AND MANAGEMENT**
- STANDARD 7.1 DETENTION FILES ...................... 195
- STANDARD 7.2 DETAINEE TRANSFERS ............. 198

**APPENDIX A LIST OF REQUIRED STAFF TRAINING 203**

**APPENDIX B ICE REPORTING REQUIREMENTS ....... 206**

**APPENDIX C CONTENTS OF THE LOCAL SUPPLEMENT ........................................................................ 212**

**APPENDIX D DEFINITIONS............................................. 214**

# STANDARD 2.5

## HOLD ROOMS IN DETENTION FACILITIES

**I. POLICY**

Hold rooms may be used for the temporary detention of individuals awaiting removal, transfer, Executive Office of Immigration Review (EOIR) immigration court hearings, medical treatment, intra-facility movement, or other processing into or out of the facility.

**II. STANDARDS AND PROCEDURES**

A. **Physical Conditions**

1. Hold rooms will be located within the secure perimeter.

2. Single occupant hold rooms shall contain a minimum of 37 square feet (seven unencumbered square feet for the detainee, five square feet for a combination lavatory/toilet fixture, and 25 square feet for wheelchair turnaround). Multiple-occupant hold rooms shall provide an additional seven square feet of unencumbered space for each additional detainee.

3. Hold rooms shall be well ventilated, well lit, and allow for convenient visual checks.

4. Hold rooms will contain sufficient seating for the maximum room capacity, which shall be posted outside the hold room.

5. Bunks, cots, beds, and other sleeping apparatus are not permitted inside hold rooms. Exceptions shall be made for detainees who are ill, and for minors and pregnant women.

6. All hold rooms shall be equipped to provide handwashing and potable water. Hold rooms with toilets shall allow for an appropriate amount of privacy. If the hold room is not equipped with a toilet, the shift supervisor shall at all times position an officer within sight or earshot of the hold room to provide detainees with regular access to toilet facilities. Detainees using the restroom shall be appropriately monitored.

7. Facilities will be in compliance with the applicable federal and state accessibility standards.

B. **Time Limits and Restrictions**

A detainee may not be held in a hold room for more than 12 hours. The following procedures shall be adhered to:

V. **Recreation**

Facilities are encouraged to maximize opportunities for group participation during recreation and other activities, consistent with safety and security considerations. Recreation for certain individuals may occur separate from other detainees when necessary or advisable to prevent assaults and to reduce management problems.

Detainees in the SMU shall be offered at least one hour of recreation per day, outside their cells and scheduled at a reasonable time, at least five days per week.

1. When recreation privileges are suspended, the institutional disciplinary panel or facility administrator shall provide the detainee written notification, including the reason(s) for the suspension, any conditions that must be met before restoration of privileges, and the anticipated duration of the suspension (provided the requisite conditions are met for restoration of privileges).

2. Denial of recreation privileges for more than seven days requires the concurrence of the facility administrator and a health care professional. It is expected that such denials shall rarely occur, and only in extreme circumstances.

3. The facility shall notify ICE/ERO in writing when a detainee is denied recreation privileges in excess of seven days.

W. **Telephone Access**

Detainees in SMU shall have access to telephones in a manner that is consistent with the special safety and security requirements of SMU placement. In general, any detainee in an SMU may be reasonably restricted from using or having access to a phone if that access has been or is likely to be used for criminal purposes, or would endanger any person, or if the detainee damages the equipment provided. In such instances, staff must clearly document why such restrictions are necessary to preserve the safety, security, and good order of the facility. Such documentation shall be placed in the detainee's detention file or be maintained in a retrievable electronic format.

Detainees in disciplinary segregation may be restricted, as part of the disciplinary process, from using telephones to make general calls. However, even in disciplinary segregation, detainees shall have telephone access for family or personal emergencies, and for calls to attorneys, other legal representatives, courts, and government offices as described below.

All detainees, including those in disciplinary segregation, shall be permitted to place calls to attorneys, other legal representatives, courts, and government offices (including the DHS Office of the Inspector General, DHS Office for Civil Rights and Civil Liberties, ICE/OPR Joint Intake Center, and embassies or consulates), according to the facility schedule.

# STANDARD 5.5

## VISITATION

### I. POLICY

Facilities holding detainees shall permit authorized persons to visit detainees within security and operational constraints. To maintain detainee morale and family relationships, ICE/ERO encourages visits from family and friends.

Facilities shall allow detainees to meet privately with their current or prospective legal representatives and legal assistants, and also with their consular officials.

In coordination with ICE/ERO, to better inform the public about ICE/ERO detention operations, facilities may permit authorized representatives of the news media and non-governmental organizations access to public information about facility operations; and with appropriate notice, to tour facilities; and, with permission from ICE/ERO and the detainee, to interview individual detainees.

Guidance regarding congressional visits to facilities can be found on ICE's public website: www.ice.gov.

### II. STANDARDS AND PROCEDURES

#### A. General

The facility shall establish written visiting procedures, including a schedule and hours of visitation, taking into account the visitation requirements of family (including minors), friends, legal representatives, and consular officials.

The facility may temporarily restrict visiting when necessary to ensure the security and good order of the facility. Contact visits are encouraged but subject to the facility's detainee population and its physical conditions.

#### B. Notification

The facility handbook shall include visitation rules and hours. The facility shall also post the rules and hours where detainees can easily see them, including in the housing units.

Each facility shall make the schedule and procedures available to the public, both in written form on the facility's website (if available) and posted in the visitors' waiting area, and telephonically. A live voice or recording shall provide telephone callers the rules and hours for all categories of visitation. The same information will be available in the public visitation room.

C. **Visitor Log**

The facility shall maintain a log of all general visitors, and a separate log of legal visitors as described below. The visitation logs shall comply with local policy and procedures.

D. **Incoming Property and Money for Detainees**

The facility shall have written procedures regarding incoming property and money for detainees. The facility shall allow a visitor to leave money for deposit in a detainee's account. The visitor will receive a receipt for all money or property left at the facility unless it is allowed to be given directly to the detainee.

Facilities are encouraged to allow visiting family members to bring detainees items such as legal documents and papers, prescription glasses, religious items and reading materials, and wedding rings.

E. **Sanctions for Violation of Visitation Rules**

Any violation of the visitation rules may result in disciplinary action against the detainee, including loss of visitation privileges, through the formal disciplinary process.

Contraband introduction or violations may lead to criminal prosecution of the visitor, detainee, or both.

F. **Visits by Family and Friends**

1. **Hours and Time Limits**

    The facility shall establish a visiting schedule based on the detainee population and the demand for visits. Visits shall be permitted during set hours on Saturdays, Sundays, and holidays. To the extent practicable, the facility shall accommodate the scheduling needs of visitors for whom weekends and holidays pose a hardship. The facility may, for example, authorize special visits for family visitors unable to visit during regular hours.

    Detainees will be allowed visits on at least one weekend day. However, to the extent practicable, ICE/ERO encourages the facility to establish visiting hours for each detainee on both days of the weekend, and to try to accommodate visitors who can only visit on a specific weekend day.

    The facility's written rules shall specify time limits for visits: 30 minutes minimum, under normal conditions. ICE/ERO encourages more generous limits, when possible, especially for family members traveling significant distances to visit. In unforeseen

circumstances, such as the number of visitors exceeding visiting room capacity, the facility may modify visiting periods.
Immediate family members detained at the same facility may visit with each other during normal visiting hours regardless of sex when practicable.

At facilities where there is no provision for contact visits by minors, upon request, ICE/ERO shall arrange for a contact visit by a detainee's children, stepchildren, and foster children within the first 30 days. After that time, upon request, ICE/ERO shall consider a request for transfer, when possible, to a facility that will allow such visitation. Upon request, ICE/ERO shall continue monthly visits, if transfer is not approved, or until an approved transfer can be affected.

2. **Visitor Identification and Search**

   Staff shall verify each visitor's identity (through driver's license, photo identification, etc.) before admitting him or her to the facility. Photo identification must be a valid state or government-issued photo identification. No adult visitor shall be admitted without positive identification.

   The facility may require a pat search as well as a visual inspection of purses, briefcases, packages and other containers. Any cancellation of visitation shall conform to facility policy and be documented.

3. **Contact Visits**

   Written procedures shall detail the limits and conditions of contact visits in facilities permitting them.

   A facility may only adopt a policy permitting strip searches after all contact visits in the absence of reasonable suspicion if detainees have the right to choose non-contact visitation instead. Detainees must be fully informed of that option and the policy generally in a language or manner they understand. The facility must document all strip searches that are performed based on such policy.

4. **Visits for Administrative and Disciplinary Segregation Detainees**

   A detainee shall ordinarily retain visiting privileges while in administrative or disciplinary segregation. In a facility that allows contact visits, segregated detainees may use the visiting room during normal visiting hours.

   Under no circumstances are detainees to participate in general visitation while in restraints. If the detainee's behavior warrants restraints, the visit will not be granted.

G. **Visits by Legal Representatives and Legal Assistants**

1. **General**

   During legal visitation, each detainee may meet privately with current or prospective legal representatives and their legal assistants.

2. **Hours**

   The facility shall permit legal visitation seven days a week, including holidays. It shall permit legal visits for a minimum of eight hours per day on regular business days, and a minimum of four hours per day on weekends and holidays.

   The facility shall provide notification of the rules and hours for legal visitation and post the rules prominently in the visiting room. On regular business days, legal visitations may proceed through a scheduled meal period. In such cases, the detainee shall receive a tray or sack meal after the visit.

3. **Persons Allowed to Visit**

   Subject to the restrictions stated below, individuals in the following categories may visit detainees to discuss legal matters:

   a. Attorneys and Other Legal Representatives

      An attorney is any person who is a member in good standing of the bar of the highest court of any state, possession, territory, commonwealth or the District of Columbia, and is not under an order of any court suspending, enjoining, restraining, disbarring or otherwise restricting him or her in the practice of law.

      A legal representative is an attorney or other person representing another in a matter of law, including law students or law graduates not yet admitted to the bar under certain conditions; Executive Office for Immigration Review accredited representatives; and accredited officials and attorneys licensed outside the United States. *See* 8 C.F.R. § 292.1 for more detailed definitions of these terms.

   b. Legal Assistants

      Upon presentation of a letter of authorization from the legal representative under whose supervision he or she is working, an unaccompanied legal assistant may meet with a detainee during legal visitation hours. The letter shall state that the named legal assistant is working on behalf of the supervising legal representative for purposes of meeting with the detainee(s).

    c. <u>Translators and Interpreters</u>

    The facility shall permit translators and interpreters to accompany legal representatives and legal assistants on legal visits. Translators and interpreters shall undergo the regular security clearance process.

    d. <u>Messengers</u>

    The facility shall permit messengers (who are not legal representatives or legal assistants) to deliver documents to and from the facility, but not to visit detainees.

**4. Identification of Legal Representatives and Assistants**

Prior to each visit, all legal representatives and assistants shall be required to provide appropriate identification, such as a bar card from any state, a document demonstrating partial or full accreditation from the U.S. Department of Justice (DOJ) Executive Office for Immigration Review (EOIR), or a letter of authorization from the legal representative or attorney under whose supervision the individual is working as detailed above.

If such documentation is not readily available to attorneys licensed in a particular state, they will be required to indicate where they are licensed as an attorney and how that fact may be verified.

Legal representatives and legal assistants shall not be asked to state the legal subject matter of the meeting.

A legal representative or legal assistant shall be subject to a search of his or her person and belongings for the purpose of ascertaining the presence of contraband at any time.

**5. Identification of Detainee to Be Visited**

The facility shall not require legal service providers to submit a detainee's A-number as a condition of visiting. The facility shall make a good-faith effort to locate a detainee if provided with other information about the detainee.

**6. Call-Ahead Inquiries**

Each facility shall establish a written procedure to allow legal service providers and legal assistants to telephone the facility in advance of a visit to determine whether a particular individual is detained in that facility.

7. **Pre-Representational and Other Legal Meetings**

   During the regular hours for legal visitation, the facility shall permit detainees to meet with prospective and current legal representatives and legal assistants.

   Legal service providers need not complete a Form G-28 (stating that they are the legal representatives of the detainee) to meet with a detainee.

8. **Private Meeting Room and Interruption for Head Counts**

   Visits between legal service providers (or legal assistants) and an individual detainee are confidential and shall not be subject to auditory supervision. Private consultation rooms shall be available for such meetings.

   Facility staff may terminate attorney visits to maintain security. Routine official counts shall not terminate attorney visits.

   Facility staff shall not be present in the confidential area during the attorney-detainee meeting unless the attorney requests the presence of an officer. However, staff may observe such meetings visually through a window or camera to the extent necessary to maintain security, as long as the staff member cannot overhear the conversation.

   On occasion, a situation may arise where private conference rooms are in use and the attorney wishes to meet in a regular or alternate visiting room. Such requests should be accommodated to the extent practicable, and such meetings should be afforded the greatest degree of privacy possible under the circumstances.

9. **Materials Provided to Detainees by Legal Representatives**

   The facility's written legal visitation procedures must provide for the exchange of documents between detainee and legal representative (or legal assistant) even when contact visitation rooms are unavailable.

   Documents or other written material provided to a detainee during a visit with a legal representative shall be inspected, but not read. Detainees are entitled to retain legal material received for their personal use. Quantities of blank forms or self-help legal material in excess of that required for personal use may be held for the detainee in their property. The detainee will be permitted access to these documents utilizing the established avenues of communication.

10. **Detainee Search**

    Generally, unless there is specific and articulable suspicion that contraband has been transferred to a detainee, detainees shall not be subjected to a strip search after a visit

by a consular representative, an attorney, a legal assistant working under the supervision of an attorney, or an accredited representative.

However, if standard operating procedures require strip searches after every contact visit with a legal representative, the facility must provide an option for non-contact visits with legal representatives in an environment that allows confidentiality. In that case, the facility will establish a mechanism for the detainee and his or her representative to exchange documents.

**11. Legal Visitation for Detainees in Administrative and Disciplinary Segregation**

Detainees in either administrative or disciplinary segregation shall be allowed legal visitation. If the facility administrator considers special security measures necessary, he or she will notify legal service providers of the security concerns prior to the meeting.

**12. Group Legal Meetings**

Upon the request of a legal service provider (or assistant), the facility may permit a confidential meeting (with no officer present) involving the requester and two or more detainees. This may be for various purposes: pre-representational, representational, removal-related, etc. The facility should grant such requests to the greatest extent practicable, i.e., if it has the physical capacity; if the meeting would not unduly interfere with security and good order, etc.

See also Standard 6.4 "Legal Rights Group Presentations."

**13. Pro Bono List and Detainee Sign-Up**

ICE/ERO shall provide the facility with the official list of pro bono legal services providers on a regular basis. The facility shall post the current list in detainee housing units and other appropriate areas. Any legal organization or individual on the current list may write the facility to request the posting and/or general circulation of a sign-up sheet. The facility will then notify detainees of the sign-up sheet's availability in a language or manner that they understand and, according to established procedures, ensure coordination with the pro bono organization.

**14. Legal Visitation Log**

A separate log shall record all legal visitors, including those denied access to the detainee. The log shall include the reason(s) for denying access.

**15. Availability of Legal Visitation Policy**

The facility's written legal visitation policy shall be available upon request.

### H. Consultation Visits for Detainees Subject to Expedited Removal

1. **General**

   A detainee subject to expedited removal who has been referred to an Asylum Officer is entitled by statute and regulation to consult with any persons of the detainee's choosing, both prior to the interview and while the Asylum Officer's decision is under review.

   Because expedited removal procedures occur within short timeframes, each facility shall develop procedures that liberally allow the opportunity for consultation visitation in accordance with this standard.

2. **Method of Consultation**

   The facility shall facilitate consultation visitation, both by telephone and face-to-face.

3. **Persons Allowed to Visit for Consultation Purposes**

   Detainees subject to expedited removal may consult whomever they choose, in person or by phone, at any time, during the first 48 hours at the facility. Consultants might include, but are not limited to, attorneys and other legal representatives, prospective legal representatives, legal assistants, staff members of non-governmental organizations (NGOs), and friends and family.

   All consultation visitors are subject to the same identification and security screening procedures as general visitors. If documented security concerns preclude an in-person visit with a particular individual, the facility shall arrange for consultation by telephone. If security reasons also preclude consultation by telephone, the facility shall immediately inform ICE/ERO.

4. **Privacy**

   Consultation visits, in person or by telephone, receive the same privacy as communications between legal representatives and detainees.

5. **Hours**

   Consultation visitation shall be allowed during legal visitation hours and during general visitation hours. However, the facility may ensure confidentiality during legal visitation hours only.

   If necessary to meet demand, the facility will increase consultation visiting hours.

6. **Duration of Consultation Period**

   As stated above, the consultation visitation period begins before any interview with an Asylum Officer and continues while the Asylum Officer's determination undergoes review by the Supervisory Asylum Officer or Immigration Judge.

   The consultation visitation period ends with the issuance of a Notice to Appear, and the detainee's placement in removal proceedings before an Immigration Judge. However, the detainee retains legal and other visitation privileges, in accordance with this detention standard.

7. **Admittance for Asylum Officer Interview**

   Detainees subject to Expedited Removal may bring and consult advisors during the Asylum Officer interview. The presence of persons to consult is also allowed during the Immigration Judge's review of a negative credible fear determination, at the judge's discretion.

8. **Log**

   The legal visitation log shall record consultation visits.

9. **Form G-28**

   Visitors are not required to file a Form G-28 as a condition of participating in a consultation visit or providing consultation during an Asylum Officer interview or Immigration Judge review of a negative credible fear determination. This applies even if the visitor is an attorney or legal representative.

I. **Consular Protection**

In accordance with the Vienna Convention on Consular Relations of 1963 and 8 C.F.R. § 236.1(e), detainees must be advised of their right to consular access, and the ICE/ERO must facilitate this access. ICE/ERO policy and practice require that detention facilities provide all detained individuals with notice of their rights to contact their consular representative(s) and receive visits from their consular officer(s). Additional information about consular notification and access is available online at http://travel.state.gov/CNA.

The facility shall ensure that all detainees are notified of and afforded the right to contact and receive visits from their consular officers. Such notifications shall be provided in a language or manner the detainees understand. The same hours, privacy, and other conditions that govern legal visitation apply to consular visitation. Consular visits may be permitted at additional times outside normal visitation hours with the facility's prior authorization. To conduct such visits, consular officers must present identification issued by the U.S. Department of State.