# EXHIBIT 3

**Non-Dedicated Intergovernmental Service Agreement Standards**

**Scope of Addendum**
These standards apply to non-dedicated facilities (e.g., facilities that house both inmates and U.S. Immigration and Customs Enforcement (ICE) detainees) that are entering into an Intergovernmental Service Agreement (IGSA) with ICE. These standards are meant to overlay the detailed standards and requirements with which non-dedicated detention Service Providers (e.g., county and local government partners) are already required to comply.

## I. INTRODUCTION

### A. Background
Enforcement and Removal Operations (ERO), a directorate within ICE, maintains custody of a transient and diverse population. ICE detainees are housed in facilities nationwide under civil detention authorities pending the adjudication of their immigration cases or their departure from the United States.

### B. Explanation of Terms/Acronyms

1. SERVICE PROVIDER: Organization or entity providing detention services.

2. U.S. DEPARTMENT OF HOMELAND SECURITY (DHS): The United States federal executive department responsible for ensuring the homeland is safe, secure, and resilient against terrorism and other hazards.

3. DETENTION FACILITY: The physical plant and grounds in which the Service Provider's services are operated.

4. U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE): An agency within DHS that promotes homeland security and public safety through the criminal and civil enforcement of federal laws governing border control, customs, trade, and immigration.

5. ICE DETAINEE: Any person confined under the auspices and the authority of ICE.

6. ENFORCEMENT AND REMOVAL OPERATIONS (ERO): Directorate within ICE responsible for the identification, apprehension, detention, and removal of illegal aliens from the United States.

7. ICE HEALTH SERVICE CORPS (IHSC): The medical authority for ICE that provides on-site, direct patient care to ICE detainees at IHSC staffed detention facility clinics dedicated to housing of only ICE detainees and oversees compliance with medical care detention standards and manages off-site medical referrals for aliens housed in ICE-contracted facilities nationwide.

8. DHS PRISON RAPE ELIMINATION ACT (PREA): Refers to the DHS regulation titled *Standards to Prevent, Detect, and Respond to Sexual Abuse and Assault in Confinement Facilities* (6 C.F.R. part 115). This regulation requires ICE, and any facility contracted for the confinement of detainees in immigration detention facilities or holding facilities, to have policies and procedures to prevent, detect, report, and investigate all allegations of sexual abuse and assault against ICE detainees.

## II.  SECURITY

### A.  Secure Detention Facility Operation

The Service Provider shall develop and maintain policy and procedures to ensure the safety and security of the ICE detainee population, and the orderly operation of the detention facility. The Service Provider shall maintain all relevant accreditations or licensures, and shall comply with all applicable federal, state, and local laws, statutes, regulations, detention standards, and codes. The Service Provider will promptly notify the local ICE/ERO field office if the detention facility receives any related citations or is denied related licensures at any time while this agreement is in effect.

### B.  Sanitation and Hygienic Living Conditions

The Service Provider shall comply with the requirements of the Occupational Safety and Health Act of 1970 and all codes and regulations associated with 29 C.F.R. §§ 1910 and 1926. The Service Provider shall comply with all applicable federal, state, and local laws, statutes, regulations, detention standards, and codes.

### C.  Intake

The Service Provider shall implement written policies and procedures for the intake and reception of newly arriving ICE detainees. Upon admission to the facility, each detainee shall be provided a copy of the *ICE National Detainee Handbook* and information (in a language and manner they understand) about detention facility policies, prohibited acts, rules, and procedures. Arriving ICE detainees shall be searched in compliance with the applicable laws and regulations and in the least intrusive manner as appropriate. Cross-sex pat-down searches should be avoided unless exigent circumstances exist. Absent reasonable suspicion that a detainee is concealing contraband, detainees shall not be strip searched.

Any detainee identification documents the Service Provider discovers shall be immediately secured and turned over to ICE. Detainees will have access to a telephone during or immediately following the admission process. During intake and within 12 hours of arrival, ICE detainees shall be assessed for any medical or mental health concerns to include chronic conditions, infectious disease, risk for suicidal ideation, any history of being a victim of sexual abuse or assault, or any other special vulnerabilities and such information that can be used as part of the classification process.

Any detainee with a disability arriving with an assistive device, including but not limited to a wheelchair, cane, prosthesis, hearing aids, and glasses shall be permitted to keep

2

those items, unless a safety or security concern, after an individualized assessment, exists. Such concerns shall be documented.

**D.  Classification System**
All detainees shall be classified within 12 hours of arrival before being admitted into the general population. Detainees shall be housed by threat and vulnerability risk based on verifiable and documented data and assigned to housing units with persons of similar backgrounds and criminal history, subject to reclassification as appropriate.

**E.  Release and Transfer**
The ICE detainee shall be released from custody with appropriate transportation assistance, and if applicable, accommodations for disabilities. The Service Provider shall coordinate the ICE detainee's release with the local ICE/ERO field office to ensure the safety of all involved.

The ICE detainee shall be notified of the upcoming release and provided an opportunity to make a no-cost phone call to facilitate personal arrangements. The Service Provider shall ensure the ICE detainee has temperature-appropriate clothing upon release and return all previously stored personal property.

The ICE detainee shall be notified of an upcoming transfer without specific details until the time of or after transfer. The ICE detainee's personal property and medical information shall accompany the detainee to the destination facility.

**F.  Disciplinary System**
The Service Provider shall have a detainee disciplinary system with progressive levels of reviews, appeals, procedures, and documentation with consequences imposed commensurate with the severity of the committed prohibited act. When an ICE detainee has a suspected or diagnosed mental illness or cognitive impairment, a mental health professional shall be consulted to provide input as to whether the detainee's cognitive impairment or mental illness may have contributed to his or her behavior. This information shall be considered when determining what type of sanction, if any, should be imposed.

**G.  Segregation**
The Service Provider shall have administrative and disciplinary segregation housing units. The ICE detainee shall be informed why he or she is being placed in segregation prior to or as close to the beginning of the placement as possible. In all cases, segregation shall be used as the last resort balancing the safety, security or good order of the facility and the safety of the ICE detainee and others. ICE detainees in administrative segregation shall not be commingled with those in disciplinary segregation.

ICE detainees in segregation shall be afforded basic living conditions that approximate those provided to the general population, consistent with the safety and security afforded to the general population. This includes the ability to write, send, and receive mail/correspondence; access to law library services and personal legal materials;

3

opportunities for legal visitation; and access to telephones, commissary, library, religious guidance, and recreation unless there are documented reasons for withholding those privileges.

Administrative segregation is a non-punitive status in which restricted conditions of confinement are required only to ensure the safety of ICE detainees or others, the protection of property, or the security or good order of the detention facility and may be used for what is commonly referred to as "protective custody." The Service Provider shall document the reasons for placing an ICE detainee in administrative segregation. Conditions and opportunities available to the general population (including recreation, visitation, etc.) shall be provided to ICE detainees in administrative segregation to the greatest extent possible consistent with local policies and procedures and the orderly operation of the detention facility.

The ICE detainee may be placed in disciplinary segregation for a time not to exceed 30 days per incident, absent extraordinary circumstances, only after a hearing in which the detainee has been found to have committed a prohibited act and only when alternative dispositions would inadequately regulate the detainee's behavior.

Notifications: The Service Provider shall implement written procedures for the regular review of all detainees held in segregation, consistent with this standard.

a. Administrative Placements: A facility supervisor shall conduct a review within 72 hours of the ICE detainee's placement in segregation to determine whether administrative segregation is still warranted and every week thereafter for the first 30 days, and every 10 days thereafter.

b. Disciplinary Placements: A security supervisor, or equivalent, shall interview the ICE detainee and review his or her status in disciplinary segregation every seven days and may shorten, but not extend, the original sanction. The facility administrator shall review disciplinary segregation every 30 days to determine whether continued detention in disciplinary segregation is warranted.

Segregation documents, including completed administrative and disciplinary segregation orders and review forms such as incident reports, investigation reports, administrative segregation reviews, and disciplinary segregation reviews shall be included in the ICE detainee's detention file. The facility administrator must notify ICE/ERO in writing as soon as possible of the placement of the ICE detainee in segregation and of their subsequent release from segregation.

Health Care: If separation from the general population is necessary, ICE detainees with significant physical illnesses or serious mental illnesses shall be housed where appropriate treatment can be provided, rather than in segregation.

All ICE detainees must be evaluated by a health care professional prior to or immediately after placement in segregation, including a review of whether the ICE detainee has a

4

suspected or diagnosed mental illness, prior suicide attempts or self-harm, or any other special needs. Health care personnel shall conduct face-to-face medical rounds at least once daily followed up with a complete evaluation by a qualified health care or mental health provider when clinically indicated. ICE detainees with a medical or mental illness or identified as being a suicide risk or on a hunger strike, shall be removed from segregation if IHSC or facility medical staff determine that the segregation placement has resulted in deterioration of the ICE detainee's medical or mental health, and an appropriate alternative is available.

**H. Sexual Abuse and Assault Prevention and Intervention**

The Service Provider shall follow a zero-tolerance policy for all forms of sexual abuse and assault of ICE detainees. The Service Provider shall comply with applicable laws and regulations, including the DHS PREA regulations at 6 C.F.R. part 115, and shall have written policies and procedures to appropriately prevent, detect, and respond to, as well as to report and investigate, allegations of sexual abuse or assault.

The Service Provider shall have written policies and procedures for the immediate reporting and tracking of sexual abuse allegations including a method by which staff can report outside the chain of command; referrals to law enforcement agencies; a plan to coordinate actions taken by staff first responders, medical and mental health practitioners, investigators, and facility leadership in response to an incident of sexual abuse or assault; a plan to take appropriate disciplinary, adverse, or corrective action for substantiated allegations of sexual abuse, assault, or for violating agency or facility sexual abuse rules, policies, or standards as applicable. The facility shall maintain all records associated with incidents of sexual abuse or assault in appropriately secure files and locations.

The ICE/ERO Field Office Director shall be notified when an alleged victim is under the age of 18 or considered a vulnerable adult under a State or local vulnerable persons statute. The Service Provider shall report to the ICE/ERO Field Office Director potentially criminal incidents of sexual abuse or assault and promptly refer the incident to appropriate law enforcement for investigation.

**I. Staff-Detainee Communication**

The Service Provider shall allow ICE detainees opportunities for informal contact with detention facility managerial and supervisory staff and shall coordinate with the local ICE/ERO field office to provide ICE detainees opportunities to regularly communicate with ICE/ERO staff in person and in writing. ICE detainee written correspondence shall be delivered to ICE/ERO staff without reading, altering, or delaying such requests.

The Service Provider shall have established processes to facilitate staff-detainee communication in cases where a detainee has limited English proficiency, is illiterate, or has a communication disability (e.g., hearing or visual impaired), in accordance with the Section III.F of these standards.

**J.  Use of Force and Restraints**

No force of any kind shall ever be used against a detainee as punishment. The Service Provider shall ensure detention facility staff uses only the degree of force necessary and reasonable to gain control of a resistant ICE detainee, or to provide for self-defense or defense of a third person. Detention facility staff shall resolve the situation without resorting to force if the ICE detainee is in a location where there is no immediate threat to him/her or others. An appropriate degree of force will only be employed after all reasonable efforts to otherwise gain the ICE detainee's cooperation have been attempted and failed. Following any use of force, the detainee will receive a medical assessment and care as appropriate.

The Service Provider shall ensure any detention facility staff member authorized to use an intermediate force device is specifically trained and certified to use that device. Facility staff shall only use force, restraints, and non-lethal weapons that are approved by facility policy in a manner consistent with policy, procedure, and training requirements. Staff must monitor all detainees placed in restraints. The following uses of restraint equipment or devices (e.g., handcuffs) are prohibited:

a.  On an ICE detainee's neck or face, or in any manner that restricts blood circulation or obstructs the ICE detainee's airways (mouth, nose, neck, esophagus); and

b.  To cause physical pain or extreme discomfort.

Four- and five-point restraint devices shall be applied only in extreme circumstances for the least amount of time necessary with observation by detention facility medical staff, and only when other types of restraints have proven ineffective. A pregnant woman, woman in labor, woman in post-delivery recuperation, or detainees with serious medical contraindications, shall not be restrained absent truly extraordinary circumstances that render restraints necessary, documented by a supervisor or directed by the onsite medical authority.

Any use of force shall be documented in a written report, subject to management review for evaluation of the appropriateness of the force. The Service Provider shall report all uses of force against any ICE detainee to the local ICE/ERO field office immediately.

**K.  Transportation by Land**

The Service Provider will take reasonable precautions to protect the lives, safety, and welfare of detainees, personnel, and the public during ground transportation. Detainees in transit will be transported in a safe and humane manner under the supervision of trained and experienced personnel. The vehicles shall be properly equipped, maintained, and operated in compliance with the law with accommodations for detainees with disabilities. The Service Provider shall develop written procedures for transporting females and minors. Females shall be seated in the front of the vehicle. Minors shall be separated from unrelated adults at all times during transport and seated in an area near officers and under close supervision. When transporting detainees of the opposite sex, the transporting

6

officer shall call in the time of departure and odometer reading; and then do so again upon arrival.

Appropriate food and water will be provided during long-distance transfers exceeding six hours. Special dietary needs should be identified so suitable meals can be arranged. Snacks and water shall be given to minors, pregnant females, and as necessary for detainees with medical conditions.

L.  **Detention Files**
The Service Provider will create a detention file (hard copy or electronic) for each ICE detainee booked into the facility for more than 24 hours. The detention file will contain copies or original documents generated during the ICE detainee's time at the facility, including classification sheets, grievances and any dispositions, all forms associated with administrative and/or disciplinary segregation, property inventory sheets, any forms that the detainee signed, etc. Detention files shall be maintained in a secure location with controlled access and promptly produced to ICE upon request or accessible to ICE. Copies of ICE detainee detention file documents shall be forwarded to the receiving facility/office at the request of supervisory personnel.

M.  **Hold Rooms**
The Service Provider may utilize hold rooms for the temporary detention of detainees awaiting admission, removal, transfer, medical treatment, etc. Each hold room will have a posted maximum capacity rate, in accordance with applicable safety code(s). Hold rooms will allow for visual checks by officers when occupied for safety and security concerns. Detainees in hold rooms will have access to water, lavatories, and basic hygiene items and sufficient seating to accommodate every detainee.

Every ICE detainee shall undergo a pat-down search for weapons or contraband before being placed in a hold room. Cross-sex pat-down searches should be avoided unless exigent circumstances exist. Detainees shall not be held in hold rooms beyond 12 hours. Male and female detainees shall be separated at all times. Facilities shall maintain a detention log (hard copy or electronic) for each holding cell physically occupied by a detainee(s). Visual checks will occur at random intervals not to exceed 15 minutes and will be annotated in the respective log. A meal will be provided to detainees held in hold rooms beyond six hours. Juveniles, babies, pregnant women, and others for whom it is medically necessary shall have regular access to snacks, milk, juice, etc.

III.  **CARE**

A.  **Food Service**
The Service Provider shall ensure that ICE detainees are provided a nutritionally balanced diet that is prepared in a sanitary and hygienic food service operation. ICE detainees shall be served three meals daily reviewed by a qualified nutritionist or dietitian. Special medical or religious diets shall be provided for ICE detainees.

**B. Medical Care**

Health care services shall be provided at no charge to ICE detainees and shall meet or exceed current state and local standards, licensing, certifications, and registration requirements.

Health care services shall include an initial medical, dental, and mental health screening at arrival within 12 hours; infectious and contagious disease screening and treatment (including testing and vaccinations); a health assessment within 14 days of arrival; emergent, acute, and chronic care; on-site sick call; preventative care; health education; dental services; mental health services; over the counter and routine medication products and medical supplies. All medical, dental, and mental health screenings, assessments and care shall be documented and made available to ICE upon request.

All ICE detainees will have access to sick call and sick call requests shall be triaged by the medical staff within 24 hours. The Service Provider shall furnish 24-hour emergency medical care including transport to offsite emergency services. When such emergency services are provided for an ICE detainee, the Service Provider shall notify ICE/ERO immediately and include the illness or injury and the type of treatment provided. The costs of all necessary emergency medical services provided off-site for ICE detainees will be the responsibility of IHSC.

If an ICE detainee has a medical condition that the Service Provider is unable to treat or accommodate, the Service Provider shall immediately notify ICE to make appropriate arrangements. The Service Provider shall immediately notify ICE of an ICE detainee pregnancy, serious physical or mental illness, or communication or mobility impairment. Pregnant detainees shall be given close medical supervision and access to prenatal and specialized care. Female detainees shall receive routine, age-appropriate gynecological and obstetrical health care, consistent with recognized community standards.

If an ICE detainee needs non-emergency, non-routine medical care (e.g., lab testing, eyeglasses, prosthetics, or dental care), including off-site care, the Service Provider shall submit a Medical Payment Authorization Request (MedPAR) to IHSC for payment before proceeding. Payment will be made by IHSC directly to the off-site or non-routine care providers through the medical claims reimbursement process administered by the VA Financial Services Center (VAFSC). Prescription drug coverage is also provided by IHSC via the Script Care Network. Use of nonformulary medications must be reviewed and approved by IHSC.

The Service Provider shall provide all medical information for ICE detainees to DHS, ICE, including IHSC representatives, upon request. In addition, a copy of an ICE detainee's medical records or medical transfer summary shall accompany all ICE detainees upon transfer. Upon written request, a detainee's medical records shall be released to the detainee or his or her designated representative at no cost and within a reasonable timeframe.

C. **Suicide Prevention**
The Service Provider shall ensure detention facility staff are trained to recognize signs and symptoms indicating a suicide risk, and that staff take all reasonable efforts to prevent suicides with appropriate sensitivity, supervision, referrals, and emergency medical services where necessary. Detainees identified, as "at risk" for suicide shall be promptly referred to medical staff for evaluation, and if determined by the medical authority to be at risk of bodily injury or death, shall receive preventative supervision, evaluation, treatment, and/or transfer as appropriate. The Service Provider shall immediately report all ICE detainees placed on suicide precautions, suicide observation, or who have attempted suicide to the local ICE/ERO field office.

If an ICE detainee is observed to display or express any intent, threat, or gesture of self-harm, any custody official may place the detainee on suicide precautions. Only a mental health provider or a physician may remove the detainee from suicide precautions.

D. **Hunger Strike**
The Service Provider shall refer a hunger strike for medical evaluation and monitoring. A hunger strike occurs when an ICE detainee does not eat for 72 hours or misses nine (9) consecutive meals. The Service Provider shall ensure detention facility staff are trained to recognize and to implement the procedures for referral for medical assessment and for management of an ICE detainee on a hunger strike. The Service Provider shall immediately notify the local ICE/ERO field office of any ICE detainee on hunger strike. If medically necessary, the ICE detainee shall be transferred to a community hospital or a detention facility appropriately equipped for treatment.

E. **Disability Identification, Assessment, and Accommodation**
The Service Provider shall comply with all federal, state, and local laws regarding the provision of disability-related accommodations and/or modifications for ICE detainees. The Service Provider shall have a process to identify ICE detainees with disabilities (e.g., physical, mental, neurological, intellectual, and/or developmental) and to provide them an equal opportunity to access, participate in, or benefit from in-custody programs, services, and activities. The Service Provider shall immediately notify ICE upon identification of such detainees.

The Service Provider shall ensure effective communication with ICE detainees with disabilities, which may include the provision of auxiliary aids, such as Augmented Alternative Communication Device (AAC), materials in Braille, audio recordings, telephone handset amplifiers, telephones compatible with hearing aids, sound amplifiers, hearing aids, telecommunications devices for deaf persons (TTYs), video remote interpreting services, interpreters, including sign language interpreters, and note takers, as needed. Further, ICE detainees with disabilities should be housed and served in the most integrated, and least restrictive, environment. ICE detainees with disabilities shall be allowed to request and shall be provided appropriate auxiliary aids and services, as well as reasonable accommodations and modifications to policies, practices, and procedures, pursuant to ICE/ERO and individual detention facility policy. The Service Provider shall

9

immediately notify ICE upon the denial of an ICE detainee's request for a disability-related auxiliary aid or service, or reasonable accommodation or modification.

F. **Language Access**

The Service Provider shall identify the language of proficiency of ICE detainees and offer language assistance free of charge for all aspects of detention to those who are illiterate or limited English proficient (i.e., who do not speak English as their primary language and have limited ability to read, speak, write, or understand English).

Pursuant to Title VI of the Civil Rights Act of 1964, facilities are required to identify detainees with limited English proficiency (LEP) (i.e., detainees who do not speak English as their primary language and who have limited ability to read, speak, write, or understand English) and provide LEP detainees with meaningful access to their programs and activities through language interpretation and translation services, or bilingual personnel. Other ICE detainees should not be used as interpreters or translators except in emergencies and only for the shortest duration necessary. The facilities' obligation to provide meaningful access to LEP detainees extends to all aspects of detention, including but not limited to intake, disciplinary proceedings, placement in segregation, sexual abuse and assault prevention and intervention, staff-detainee communication, mental health, and medical care.

Where the Service Provider's contracted language assistance services cannot fulfill a particular language, ICE will afford the Service Provider access to all ICE language assistance services at no cost to the Service Provider. ICE will also supply the Service Provider with any available translations (including Spanish and other languages) of ICE forms or required materials frequently used for interaction with ICE detainees.

IV. **ACTIVITIES**

A. **Religious Practices**

Each ICE detainee may designate or change their religious preference, including indicating no religious preference, at any time. The Service Provider shall ensure ICE detainees of different sincerely held religious beliefs are provided reasonable and equitable opportunity to participate in the practices of their religious faiths, including through the provision of religious accommodations such as dietary restrictions and access to religious texts. Such practice may be limited only by a documented threat to the safety, security, and the orderly operation of the detention facility.

B. **Telephone Access**

The Service Provider shall afford ICE detainees reasonable and equitable access to reasonably priced telephone services. The Service Provider shall maintain telephones in proper working order and ensure all required repairs are completed quickly. An adequate number of telephones shall be located in an area that provides for a reasonable degree of privacy. If the Service Provider plans to monitor detainee calls, recorded messages on the phone system and notices must be prominently provided and warnings displayed that detainee calls may be subject to monitoring or recording.

The Service Provider shall require its contracted telecommunications vendor to connect ICE detainees to the ICE-contracted telephone service vendor which provides ICE detainees a means by which to confidentially contact several legal entities at no cost, or in the alternative, allow for these free calls through some other means.

Pursuant to federal law and regulation, as well as court orders, the Service Provider shall ensure the privacy of ICE detainees' legal calls with attorneys, legal services providers, and consular officials through the use of unmonitored calls and privacy panels between telephones, or other effective means. The Service Provider shall notify ICE detainees of the proper procedures to have unmonitored legal calls.

The Service Provider shall not restrict the number of calls an ICE detainee places to his or her legal representatives or to obtain representation, and restrictions on time shall be no shorter than 20 minutes. Indigent ICE detainees shall be permitted free legal calls and free calls for personal or family emergencies.

## C. Visitation: Family and Legal Representatives

The Service Provider shall afford ICE detainees the opportunity for family visitation, consistent with existing policies and procedures. The Service Provider shall post the visitation rules and hours where ICE detainees can easily see them, including in the housing units. The Service Provider's rules shall specify time limits for visits: 30 minutes minimum, under normal conditions. ICE/ERO encourages more generous limits, when possible, especially for family members traveling significant distances to visit.

The Service Provider shall allow attorneys, or paralegals working under the supervision of attorneys, reasonable access to ICE detainees excluding reasonable security processing time, for pre-representational and representational visits. ICE detainees should be allowed to meet with legal representatives during meal hours and routine official counts. The Service Provider shall allow paralegals or other assistants working under the supervision of attorneys to have access to ICE detainees even if the assistants are unaccompanied by the detainee's attorney of record. Further, the Service Provider shall permit legal visits seven days per week, for at least eight hours per day on weekdays and four hours per day on weekends and holidays. The Service Provider must provide private rooms for legal visits to ensure that attorney consultations are private, and auditory supervision may not be permitted during such visits.

## D. Law Library
The Service Provider shall provide a law library in a designated room, or a suitable area. The area or room will have sufficient space and resources to facilitate detainees' legal research and writing and will have access to legal materials and equipment including a computer, printer, photocopier, paper, and writing instruments. ICE will provide electronic versions of all required publications. Facilities are required to have at least one hardcopy of ICE provided legal orientation materials in English and Spanish, available

11

for detainee use. Each detainee shall be permitted to use the law library for a minimum of five hours per week.

**E. Recreation**
The Service Provider shall provide each detainee daily access to recreation, held outdoors when available, at a reasonable time of day. Detainees will not be required to forego recreation periods in lieu of legal visitation or law library access.

## V.   JUSTICE

**A. Grievance Systems**
The Service Provider shall allow ICE detainees to file grievances relating to any aspect of their detention, including medical care. ICE detainee grievances should be logged and tracked in the detainee's detention file and medical grievances in their medical file. The Service Provider shall investigate and provide written responses, including the basis for the decision, within reasonable time limits. The Service Provider shall have policies and/or procedures in place which prohibit detention facility staff from harassing, disciplining, punishing, or otherwise retaliating against any ICE detainee for filing a grievance.

**B. Consular Notification and Access**
According to international agreements and federal regulation, 8 C.F.R. § 236.1(e), the Service Provider shall ensure that all ICE detainees are able to contact and receive visits from their consular officers and receive notice of that right upon arrival. Detainees may decline contact with consular officials. Consular visits may be permitted at additional times outside normal visitation hours, with the Service Provider's prior authorization. To conduct such visits, consular officers must present U.S. Department of State-issued identification. The Service Provider may work with the local ICE/ERO field office to coordinate consular access. The Service Provider shall contact the local ICE/ERO field office with any questions or concerns about consular access.

## VI.   NOTIFICATIONS, ACCESS, AND POSTINGS

**A. Notifications to ICE**
The Service Provider shall immediately notify the ICE/ERO Field Office Director of any of the following incidents:

1. Death of any ICE detainee in-custody;
2. Activation of disturbance control team(s);
3. Disturbances (including gang activities, group demonstrations, food boycotts, work strikes, violence, civil disturbances/protests);
4. Detention facility staff uses of force against an ICE detainee including use of lethal and less-lethal force (includes detainees in restraints more than eight hours);
5. Assaults involving staff, ICE detainees, or inmates, including fights, resulting in injuries to, or caused by, ICE detainees and requiring medical attention (does not include routine medical evaluation after the incident);

12

6.  Fires;
7.  Citations or denials of licensures related to federal, state and local health, life, safety, and fire codes;
8.  Significant environmental problems that impact the detention facility operations;
9.  Full or partial lock down of the detention facility;
10. Escapes or escape attempts;
11. Weapons discharge;
12. Adverse incidents that attract unusual interest or significant publicity;
13. Adverse weather (e.g., hurricanes, floods, ice/snow storms, heat waves, tornadoes);
14. Fence damage;
15. Power outages;
16. Bomb threats;
17. Transportation (e.g., airlift, bus) accidents resulting in ICE detainee injuries, death, or detention facility property damage;
18. Detention facility evacuations; and
19. Sexual assault and abuse allegations and/or incidents involving ICE detainees.

**B.  Notifications Regarding Detainees that May Require Reassignment**
The Service Provider will immediately notify the ICE/ERO Field Office Director of any ICE detainee meeting the criteria listed below or of any detainee the Service Provider believes cannot or should not be housed in the Service Provider's facility:

1.  Pregnancy;
2.  Serious physical or mental illness;
3.  Detainees with a disability, including any communication disability (such as low-vision or hearing impairment) or mobility disability (requiring assistance equipment such as a wheelchair, prosthesis or walker);
4.  Indicia of suicidality and/or suicide attempts;
5.  Declared or undeclared hunger strikes;
6.  Denials of an ICE detainees' request for disability-related aids, services, and/or accommodations; and
7.  Transfer or removal from a detention facility for a medical reason, or admission to a community hospital.

**C.  ICE Postings**
ICE will furnish postings to the Service Provider which shall be posted in conspicuous areas of the detention facility, such as ICE detainee housing units or common areas.

**D.  Access to ICE Detainees, Detention Facility, and ICE Detainee Records/Documents**
The Service Provider shall allow authorized ICE, DHS, and an entity or organization approved by ICE, unimpeded access to ICE detainees, the detention facility and any records or documents related to ICE detainees, upon request. Such entities shall be allowed to review or conduct oversight of the conditions for ICE detainees. The Service Provider shall, upon request, grant DHS and ICE entities unimpeded access to any record or document in its possession concerning any ICE detainee, regardless of whether the Service Provider created the record. All federal records created on behalf of ICE must be

13

retained in accordance with an approved National Archives and Records Administration (NARA) General Records Schedule or a NARA-approved agency-specific records control schedule. If a records control schedule does not exist, these records must be retained indefinitely until one is approved. In the event the records are subject to a litigation hold, they must be retained indefinitely or until a release notification from the ICE Office of the Principal Legal Advisor.

14