## DECLARATION OF DAVID JIMENEZ

I, David Jimenez, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently and truthfully to these matters.

2. I am a Staff Attorney with The Bronx Defenders.

3. I am an attorney in good standing in the state of New York. I am admitted in the New York State First Appellate Division. I specialize in the practice of immigration law.

4. I represent Geovani Maradiaga Ochoa in his immigration proceedings.

5. Mr. Maradiaga was taken into custody and detained by Immigration and Customs Enforcement ("ICE") at 4777 Park Avenue, Bronx, NY 10458 on Sunday morning, July 6, 2025, during an Intensive Supervision Appearance Program ("ISAP") check-in. Following his arrest, Mr. Maradiaga was transferred to 26 Federal Plaza, New York, NY, on the same day.

6. I know that Mr. Maradiaga was sent to 26 Federal Plaza because Mr. Maradiaga's United States citizen wife, Ethel Gomez, who attended the check-in with him, was informed by ISAP staff that he was detained and taken to 26 Federal Plaza. Later that day, Mrs. Gomez provided further confirmation of Mr. Maradiaga's whereabouts. Mrs. Gomez told me that Mr. Maradiaga called her and told her that he was at 26 Federal Plaza.

7. After Mr. Maradiaga was detained, I filed a G-28, Notice of Entry of Appearance as Attorney with ICE Enforcement and Removal Operations ("ERO") via eroefile.ice.gov at 11:43 AM on July 6, 2025 to ensure that ERO was aware of my representation of Mr. Maradiaga and would keep me appraised of any potential transfers.

8. Thereafter, I tried to contact Mr. Maradiaga as quickly as possible. Mr. Maradiaga had several legal remedies available to him, including filing a Motion to Reopen his prior removal order based on changed country conditions in his country of origin along with a Motion to Stay his removal order. Mr. Maradiaga had also authorized me to seek an ICE Stay in the event of his detention so that we could further investigate his legal remedies including his motion to reopen and his possible eligibility for family-based adjustment via his U.S. citizen wife.

9. Generally, when I need to locate and contact a client detained by ICE, I can enter that client's information into the ICE online detainee locator system (https://locator.ice.gov/odls/#/search), which lists the facility where that client is detained. Clicking on the detention center in the locator leads to information about how to set up a call with the client.

10. The online detainee locator system did not give this information for Mr. Maradiaga. Instead, it simply listed his location as "CALL FIELD OFFICE." When I clicked on the location, it provided the address "26 Federal Plaza" and the phone numbers (212) 264-4213 and (212) 436-9315. I tried calling those numbers three times on July 6, 2025, but two of the calls did not go through and no one answered my other call.

11. The next morning on Monday, July 7, 2025, I checked the ICE detainee locator which provided the same location. I emailed ICE ERO via NewYork.Outreach@ice.dhs.gov to inquire about Mr. Maradiaga. In response, I was told that, "Your client is currently in transit to their final detention housing. Please utilize the online detainee locator and reach out to the relevant field office once a detention location is displayed." When I inquired where Mr. Maradiaga was being moved, the response was, "I would not know that information, you must continue to check the online detainee locator for that."

12. That same day, in addition to email I tried calling various New York ICE ERO phone numbers seven times in total. None of my calls were answered or returned.

13. I was very worried that Mr. Maradiaga was being held in dangerous, inhumane conditions, and I wanted to try to provide Mr. Maradiaga with as much relief from those conditions as I could, and to do so as quickly as possible. Mr. Maradiaga suffers from diabetes, hypertension, and hyperlipidemia. Dangerous conditions of confinement along with a lack of medical care can jeopardize his health.

14. Later that same day, I went to 26 Federal Plaza to try to file an ICE Stay for Mr. Maradiaga and to see if I could see Mr. Maradiaga or learn anything more about his case. I got to the building around 2:45 PM. When I got to the 9th Floor window, the clerk told me that I could not pay for the ICE Stay with cash, despite the instructions on Form I-246 explicitly listing cash as an acceptable form of payment. The clerk told me that I had to get a money order. I told the clerk I would be back shortly once I got a money order. When I got back upstairs the same clerk looked for a supervisor to process the ICE Stay. At 3:24 PM she told me that there was no one in the office who could process the ICE Stay that day. She informed me that one supervisor had left early for the day and that the other had an emergency and also had to leave. She told me that I could come back tomorrow and try again.

15. I checked the online detainee locator again on the morning of July 8, 2025 and it still indicated the same display so I returned to 26 Federal Plaza to try to file the ICE Stay as directed. I arrived around 9 AM that morning. When I got to 9th Floor window I handed Mr. Maradiaga's ICE Stay to the clerk who passed it on to a supervisor. After a couple of minutes the supervisor came out and let me know she could not accept the stay request. She told me that 26 Federal Plaza could not accept the stay request because client is "in

2

transit." I explained that Mr. Maradiaga was detained on Sunday and that the ICE detainee locator lists him as being in physical custody of the NYC ERO field office.

16. In response, the supervisor told me that I had to wait until he was moved to detention center and file my request with the corresponding field office. When I asked where that might be she told me she didn't know and could not answer anyway. I asked if someone else in the office could provide me with that information to which she said no and suggested that I try emailing ERO outreach. I explained that I had already tried and was not provided with an answer. I reiterated that Mr. Maradiaga's physical location still indicated that he was detained at 26 Federal Plaza so there was no reason that the office could not field my request since the NYC ERO field office had physical custody of Mr. Maradiaga. She told me she could not do anything about it. I told her that Mr. Maradiaga was being denied an opportunity to file an ICE Stay since the field office with physical custody over him was refusing to accept the request and would not provide me any information about where he might be transferred. I explained that this in effect left me no place to file. The supervisor told me to wait until he was moved and try then. When I asked how long people have been "in transit," the supervisor said she did not know and could not share that information.

17. Later that same day, I emailed NYCEROAttorneyInquiries@ice.dhs.gov to memorialize what I was told at the field office and to request information about my client as well as a legal call.

18. In response, I was told, "[t]his is not an ERO NYC case. Your client remains in transit to their final detention housing. Please utilize the online detainee locator https://locator.ice.gov/ and reach out to the relevant field office once a detention location is displayed."

19. The next day, on July 9, 2025, I checked the ICE detainee locator which indicated the same display. I also followed up with NYCEROAttorneyInquiries@ice.dhs.gov to reiterate my requests. I was again told, "[y]our client is currently in transit to a housing detention facility. Please utilize the online detainee locator and reach out to the relevant field office once a detention location is displayed."

20. I checked the detainee locator on the following day, Thursday, July 10, 2025, which indicated the same display. I also followed up by email and in response I was asked to provide a G-28, despite having already provided one. When I re-sent my G-28, my request for a legal call was forwarded to the following email addresses: Hampton, Lige A <Lige.A.Hampton@ice.dhs.gov>; Mercado, Nelson <Nelson.Mercado@ice.dhs.gov>; Marcellin, Merlin Merlin.Marcellin@ice.dhs.gov **Cc:** Zanello, Nancy Nancy.Zanello@ice.dhs.gov.

3

21. I emailed those same individuals the same day and repeated my request for a legal call. I received no response, so I followed up the next morning on July 11, 2025. In response, Merlin Marcellin, Supervisory Detention and Deportation Officer, told me, "[y]our client is currently in transit to a housing detention facility. Please utilize the online detainee locator and reach out to the relevant field office once a detention location is displayed." I called SDDO Marcellin that same afternoon to repeat my requests and was told to follow up via email which I did that same afternoon. I received no further response.

22. Throughout this whole time, I checked the ICE detainee locator multiple times, each day and every time it indicated the same display. I knew that Mr. Maradiaga remained physically at 26 Federal Plaza throughout this time because Mrs. Gomez was able to speak with him briefly via phone call a couple of times while Mr. Maradiaga was there. From what Mrs. Gomez shared with me, the conditions of detention at 26 Federal Plaza were so awful that Mr. Maradiaga sounded depressed and desperate. Per Mrs. Gomez, Mr. Maradiaga became hesitant to further prolong his detention. I continued to try to communicate directly and confidentially with Mr. Maradiaga so that I could fully discuss his legal remedies with him and see what he wanted to do.

23. Late on Friday, July 11, 2025, I finally received a call from Mr. Maradiaga who told me that he had been transferred from 26 Federal Plaza to an immigration detention facility in Arizona. However, his call cut off and I was unable to speak to him more that night.

24. The next morning, Mrs. Gomez told me that she was able to speak Mr. Maradiaga as well, and he told her that he had been transferred from 26 Federal Plaza to New Jersey, and from there to Eloy Detention Center in Arizona. After a day in Arizona, Mr. Maradiaga was again transferred to the Northwest Immigration Processing Center in Tacoma, Washington.

25. Mr. Maradiaga was able to call me again on Monday July 14, 2025 from Tacoma, Washington since there were finally phone and tablets available there for calls.

26. Once we spoke, Mr. Maradiaga described the conditions at 26 Federal Plaza to me. He had been at 26 Federal Plaza from his arrest on the morning of July 6, 2025 until the morning of Friday July 11, 2025. During that time, he was held in a room with about 30-40 or so other people. There were no beds in the room, so everyone had to sleep on the floor. It was very cold in the room and he was only provided an aluminum blanket. He was hardly getting enough to eat. His meals consisted of military style pouches and a bottle of water.

27. Mr. Maradiaga told me that he had not been able to shower or brush his teeth the entire time and that the holding areas were very dirty and smelly.

4

28. Mr. Maradiaga shared that some of the individuals in the room with him had been there longer than him. Mr. Maradiaga was not told anything about where or when he might be moved.

29. The lack of access to counsel at 26 Federal Plaza delayed my ability to pursue legal remedies on my client's behalf. In particular, it delayed my ability to file a Motion to Reopen and Motion for a Stay for Mr. Maradiaga. For a whole week, I was unable to speak with my client directly and confidentially. This delay limited my ability to promptly obtain information from my client directly relevant to his potential legal remedies.

30. In addition, the lack of access to counsel at 26 Federal Plaza jeopardized my ability to abide by my client's decisions regarding the objectives of my representation and to consult with Mr. Maradiaga about how his objectives were to be pursued in accordance with my ethical obligations. This was especially important to me since my intended course of action had the potential to further prolong Mr. Maradiaga's confinement under these conditions. Further, the lack of access limited my ability to advocate for the amelioration of Mr. Maradiaga's conditions of confinement at 26 Federal Plaza.

31. I was able to file Mr. Maradiaga's Motion to Reopen and Motion for a Stay on Monday, July 14, 2025 once I had his consent to pursue this course of action. In addition, I mailed Mr. Maradiaga's ICE Stay request to the Seattle ERO Field Office—the field office having physical custody of Mr. Maradiaga.

32. Mr. Maradiaga was removed from the United States on Saturday, July 19, 2025 after being transferred from Tacoma to Arizona and then to Texas. The Executive Office of Immigration Review ("EOIR") did not rule on his Motion to Reopen and Motion for a Stay prior to his removal. Likewise, ICE ERO did not decide on his ICE Stay request, despite Mr. Maradiaga's meritorious claims which may have provided pathway for him to remain in the United States with his U.S. citizen wife and young children.

Executed on 24th of July, 2025, at Bronx, New York.

_____
David Jimenez, Esq.
Staff Attorney
The Bronx Defenders

5