## DECLARATION OF LAUREN KOSTES

I, Lauren Kostes, hereby declare under penalty of perjury that the following is true and correct to the best of my personal knowledge.

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently and truthfully to these matters.

2. I am a licensed attorney in the state of New York and am over the age of 18. I am admitted in the Second Circuit. I specialize in the practice of immigration law.

3. I am a Supervising Attorney with the New York Legal Assistance Group.

**E.V.M.**[1]

4. I represent E.V.M. in his immigration proceedings.

5. On July 2, 2025, E.V.M. had a master calendar hearing, where he represented himself *pro se*, at the Varick Immigration Court in New York, New York. At that hearing, he was reset for another Master Calendar Hearing on November 19, 2025. E.V.M. suffers from intellectual and auditory disabilities. However, before he could leave, he was detained by Immigration and Customs Enforcement ("ICE"). Based on conversations with my client, I understand that E.V.M. was detained at 26 Federal Plaza, New York, New York.

6. On July 3, 2025, I was retained by E.V.M.'s family. Afterwards, I tried to contact E.V.M. as quickly as possible. E.V.M. had several legal remedies available to him, including seeking release on bond. I was worried that considering his disabilities, E.V.M. was being held in dangerous, inhumane conditions, and I wanted to try to provide E.V.M. with as much relief from those conditions as I could, and to do so quickly. In particular, E.V.M. suffers from auditory and intellectual disabilities. It was not clear if he had access to his hearing aids, or if he understood what was happening around him.

7. Generally, when I need to locate and contact a client detained by ICE, I enter that client's information into the ICE Online Detainee Locator System (https://locator.ice.gov/odls/#/search), which lists the facility where that client is detained. Clicking on the detention center in the locator leads to information about how to set up a call with the client.

8. The online detainee locator system did not give this information for E.V.M. Instead, it simply listed his location as "CALL FIELD OFFICE.". I checked the online detainee locator multiple times a day on July 4, July 5, July 6, July 7, July 8, and July 9. Each time, it indicated the same display.

---

[1] I have referred to my client by their initials throughout to protect their privacy.

9. On July 3, 2025, I contacted ICE regarding E.V.M. In my email, I requested confirmation where our client was currently detained and requested an immediate scheduling of a phone call particularly in light of his disabilities, as well as confirmation of why he was detained. On that same day, NYLAG filed a habeas petition in the Southern District of New York on behalf of E.V.M.

10. On July 4, 2025, Deportation Officer Michael Charles informed me that E.V.M. was "still in transit" and that, instead of telling us where he was, that I needed to use the detainee locator to find him. As a response to that email, also on July 4, I again requested an urgent phone call with E.V.M., noting that it was a violation of Section 504 of the Rehabilitation Act to impede his access to counsel given his disabilities. They did not respond.

11. On July 8, 2025, I filed a Motion for Custody Redetermination at the Varick Immigration Court, as E.V.M. was eligible. At that time, E.V.M.'s location remained unknown and ICE had not yet responded nor scheduled a legal call. The Custody Redetermination Motion contained a printout of the ICE Detainee locator noting that E.V.M.'s location was not confirmed.

12. On July 9, 2025, at 10:40 AM, I emailed ICE again, noting that E.V.M. had been detained for a week, I still did not know where he was, and ICE still has not provided a legal call between myself and E.V.M. At about 12:15 PM on July 9, 2025, Assistant Chief Immigration Judge ("ACIJ") Ubaid ul-Haq sent an email to NYLAG as well as the Department of Homeland Security Office of the Principal Legal Advisor ("OPLA") Deputy Chief Ji Jahng, Deputy Chief Counsel Lyne-Robert Desroches, and Deputy Chief Counsel Andrew Damron, asking OPLA to confirm the location of E.V.M. so a bond hearing could be scheduled. At approximately 3:10 PM, OPLA filed an I-830 Notice to EOIR of Alien Address, finally confirming that E.V.M. was at the Metropolitan Detention Center (MDC) in Brooklyn, New York. At 6:30 PM, Deputy Chief Counsel Ji Jahng confirmed that E.V.M. was detained at MDC. At approximately 10:05 PM, ICE emailed to confirm that E.V.M. was at the Metropolitan Detention Center and asked me to provide dates and times for a meeting. I responded, providing multiple days and times I was available to meet with my client.

13. On July 11, 2025, ICE had not yet confirmed a day or time for a legal meeting with E.V.M. Despite this and my continued correspondence alerting them to his disabilities, they interviewed him and asked him if he wanted a Voluntary Return, without informing his counsel.

14. A few hours later, a legal visit was finally scheduled for Tuesday, July 15, 2025—nearly two weeks after he was detained, and after he was scheduled for a bond hearing.

15. The first time I was able to speak to my client was on July 14, 2025, at his custody determination hearing. This was not a confidential phone call and I was unable to speak to him at length or discuss anything subject to attorney-client privilege. At this time, he was detained at the Metropolitan Detention Center.

16. It is not clear how long my client was at 26 Federal Plaza, but per conversations with my client, it was at least four or five days. During that entire time, I was not granted any access to him, despite multiple communications with ICE and notice regarding his disabilities.

Executed on 8th of August, 2025, in New York, NY.

_____
Lauren Kostes