# DECLARATION OF LEAH HUTTON WISSOW

I, Leah Hutton Wissow, hereby declare under penalty of perjury that the following is true and correct to the best of my personal knowledge.

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently and truthfully to these matters.

2. I am a licensed attorney in the state of New York and am over the age of 18. I am admitted in the Second Appellate Division Department of the New York Supreme Court. I specialize in the practice of immigration law.

3. I am a Supervising Attorney with New York Legal Assistance Group's Immigrant Protection Unit.

4. This declaration describes my own experience representing clients detained at 26 Federal Plaza beginning in June 2025, as well as my experiences directly supervising staff attorneys representing these clients. I supervise staff attorneys responding to urgent requests from detained noncitizens who need to prepare for Credible Fear Interviews, and because of that supervision I have direct knowledge of all of the below cases.

**B.C.B.N.** [1]

5. I represented B.C.B.N. in her immigration proceedings.

6. I believe that B.C.B.N. was taken into custody and detained by Immigration and Customs Enforcement ("ICE") at 26 Federal Plaza, New York, NY, on June 5, 2025, at a check-in with the Enforcement and Removal Operations (ERO) office. I became aware of her detention when she was permitted to make a brief phone call to a NYLAG paralegal. The call came from the number 212-436-9100, a number assigned to the ICE Office of the Principal Legal Advisor. My understanding is that this was not a confidential line.

7. After B.C.B.N. was detained, a NYLAG staff attorney under my direct supervision tried to contact her as quickly as possible. B.C.B.N. was subject to expedited removal, but fears return to her home country of Ecuador and so was legally entitled to a Credible Fear Interview.

8. B.C.B.N. is a transgender woman who has a chronic illness that becomes life-threatening when left untreated. Based on the experience of previous clients under similar circumstances, I was worried that B.C.B.N. was being held in dangerous, inhumane conditions. In particular, we were concerned she would be deprived of access to necessary medical care and detained with men, which would be a threat to her personal

---

[1] I have referred to my client by their initials throughout to protect their privacy.

safety. We wanted to try to provide B.C.B.N. with as much relief from those conditions as we could, and to do so as quickly as possible.

9. Generally, when I need to locate and contact a client detained by ICE, I enter that client's information into the ICE Online Detainee Locator System (https://locator.ice.gov/odls/#/search), which lists the facility where that client is detained. Clicking on the detention center in the locator leads to information about how to set up a call with the client.

10. The ICE Online Detainee Locator System did not give this information for B.C.B.N. Instead, B.C.B.N. was not reflected in the detainee locator at all. We checked the online detainee locator multiple times on June 5. Each time, it indicated the same display.

11. When the NYLAG attorney called (212) 436-9100 on June 5, she reached the voicemail of the receptionist for the ICE Office of the Principal Legal Advisor ("OPLA"), which does not have jurisdiction over individuals subject to expedited removal or credible fear screenings. The NYLAG attorney then contacted the OPLA Duty Attorney, who stated that she was unable to provide any information about B.C.B.N., arrange a legal call, or explain why the OPLA number displayed when B.C.B.N. called a NYLAG paralegal.

12. The NYLAG attorney then sent an email to eronycappointments@ice.dhs.gov (the email address designated for communication about check-ins) and newyork.outreach@ice.dhs.gov (the email address designated for attorneys to contact the ERO Field Office at 26 Federal Plaza). She sent the message at 2:29 PM on June 5, 2025, and requested B.C.B.N.'s current location and assigned Deportation Officer, noting that the detainee locator still showed no information. New York Outreach responded at 2:34 PM only to say that B.C.B.N. was "in transit to their final detention housing". The NYLAG attorney then responded to note that B.C.B.N. is a transgender woman requiring specific medical care and needed to be detained in an appropriate setting.

13. B.C.B.N. was again able to call the NYLAG paralegal on the afternoon of June 5. This time she said she was given paperwork to request a Credible Fear Interview and told the Deportation Officer handling her case was named Officer Pardo and had the phone number (212) 863-3401 ext. 3457.

14. The NYLAG attorney promptly called Officer Pardo and left a voicemail message reiterating the need for a legal call with B.C.B.N. She also sent an email to mayra.a.pardo-figueroa@ice.dhs.gov at 3:45 PM on June 5, based on the belief that this was the email for "Officer Pardo". The NYLAG attorney received no response to these inquiries by either phone or email.

15. On or about June 9, 2025, B.C.B.N. was transferred from 26 Federal Plaza to Winn Correctional Center in Louisiana. Since this transfer, I and another NYLAG attorney

have both spoken with B.C.B.N. confidentially by telephone. We were unable to exchange documents.

16. Once NYLAG made contact with B.C.B.N., she informed us that she was placed in a men's detention facility, and therefore was moved to solitary confinement for her safety. She remained in solitary until she was removed from the United States in late July 2025. She also was initially denied access to medical care, and only received access to her existing prescription medications following direct advocacy by NYLAG.

**R.A.C.**

17. R.A.C. was referred to NYLAG for possible representation in detained removal proceedings.

18. He was detained at the immigration court on at 290 Broadway following a master calendar hearing on June 26, 2025. NYLAG received this referral on June 30, 2025. I believe R.A.C. had previously been detained at Delaney Hall in Newark, New Jersey.

19. On July 1, I checked the ICE Online Detainee Locator System and it simply listed his location as "CALL FIELD OFFICE." When I clicked on the location, it provided the address "26 Federal Plaza" and the phone number (212) 436-9315. However, under "ERO Office Information" it listed the Newark Field Office. It also listed the Newark ERO office as the point of contact to arrange legal calls.

20. Also on July 1, the Executive Office of Immigration Review (EOIR) portal showed that R.A.C. was scheduled for a master calendar hearing on April 23, 2026.

21. On July 1, at 4:05 PM, I sent an email to both the New York and Newark ERO field offices requesting R.A.C.'s exact location and for a legal call to be scheduled.

22. On July 2, at 7:12 AM, New York ERO forwarded my message to the same Newark ERO address for that office's attention. Newark ERO never responded to my inquiry.

23. On July 7, I checked the EOIR portal and it showed that the Immigration Judge had granted voluntary departure on July 2, the same day that New York ERO forwarded my inquiry to Newark ERO. The ICE detainee locator reflected that R.A.C. had been moved to the Alexandria Staging Facility in Louisiana.

24. As a direct result of ICE's conduct, I was prevented from speaking with R.A.C. to screen him fully for immigration relief, advise him of his legal right to pursue his removal proceedings, and the consequences of accepting voluntary departure.

25. DHS did not respond to my inquiry at all until July 27, 2025, at which time the New Orleans ERO Field Office informed me that he had been removed from the United States on a flight chartered by ICE.

Executed on 8th of August, 2025, in New York, NY.

                                                    _____

                                                    Leah Hutton Wissow