# DECLARATION OF MELISSA LIM CHUA

I, Melissa Lim Chua, make the following declaration based on my personal knowledge and declare under penalty of perjury that the following is true and correct to the best of my personal knowledge.

1. I am a licensed attorney in the state of New York and am over the age of 18. I am currently employed as the Co-Director of the Immigrant Protection Unit ("IPU") at the New York Legal Assistance Group ("NYLAG").

2. I have practiced as an immigration attorney since 2008.

3. Within NYLAG, I worked as a staff attorney for approximately three years, a supervising attorney for four years, an associate director for approximately four years, and as co-director for one and a half years, providing free legal services to immigrants who have a connection to New York City or New York State and are experiencing poverty. I have served in my current position as co-director since December 2023. During my time at NYLAG, I have personally provided free legal services, through direct representation; supervision of attorneys, accredited representatives, and *pro bono* counsel; and *pro se* support, to hundreds of immigrants facing removal and imminent deportation from the United States. I have also represented immigrants as an Adjunct Professor with Brooklyn Law School's Deportation Defense Clinic.

4. Specifically, I have personally provided services through supervision and direct services to hundreds of individuals who are facing removal, including individuals with final orders of removal in motions to reopen and appeals.

## I. NYLAG's Project Mission and Scope

5. Founded in 1990, NYLAG addresses emerging and urgent legal needs with comprehensive, free civil legal services, impact litigation, policy advocacy, and community education. NYLAG serves immigrants, seniors, the homebound, families facing foreclosure, renters facing eviction, low-income consumers, those in need of government assistance, children in need of special education, domestic violence survivors, persons with disabilities, patients with chronic illness or disease, low-wage workers, low-income members of the LGBTQ community, Holocaust survivors, veterans, as well as others in need of free legal services.

6. NYLAG's IPU maintains a staff of more than 60 attorneys, accredited representatives, and paralegals, providing high quality free legal immigration services to thousands of New York City residents facing poverty a year. In the 2023 calendar year, NYLAG's IPU provided legal advice, application assistance, and/or legal representation on 11,044 cases

for 8,778 clients. IPU has expertise across the breadth of immigration legal issues, enabling it to provide high quality comprehensive services to address ongoing and emerging legal needs, and to assist clients as laws, policies, or personal circumstances affect their eligibility for relief.

7. Our attorneys and Department of Justice accredited representatives provide detailed Know Your Rights, technical support, advice and counsel, and application assistance to communities and *pro se* litigants.

8. NYLAG's IPU provides full representation to hundreds of clients each year in detained and non-detained proceedings before the immigration courts, Board of Immigration Appeals, and federal courts, including individuals with final orders of removal. Through these programs, IPU's services include all matters relevant to individuals facing removal from the United States, including removal defense, bond proceedings, requests for parole, credible fear interviews, reasonable fear interviews, motions to reopen, motions to reconsider, and petitions for review. IPU has also represented detained individuals in civil litigation in federal district court, including for failure to provide adequate safeguards to the COVID-19 pandemic, failure to provide adequate due process prior to detention, and the improper targeting of individuals for removal for use of their First Amendment rights. We also collaborate with NYLAG's Special Litigation Unit ("SLU") to bring broader impact litigation to address patterns appropriate for correction through litigation.

9. NYLAG's IPU also provides representation before U.S. Citizenship and Immigration Services ("USCIS") for family-based petitions for individuals who are eligible to adjust status, U-visas for victims of crime, T-visas for victims of trafficking, and Special Immigrant Juvenile Status ("SIJS") for unaccompanied minors who qualify to seek relief under the Trafficking Victims Protection and Reauthorization Act.

10. IPU staff provide services in collaboration with external partners, and within communities through partnerships across New York City.

11. NYLAG's IPU uses a robust legal clinic model to expand access to services, primarily in community-based locations to break down barriers immigrants face to accessing services. IPU hosts clinics at the sites of partnering community-based organizations, public libraries, and law firms throughout New York City. At these clinics, IPU staff and volunteers support community members in completing legal forms, such as applications for citizenship, temporary protected status, and work authorization. Volunteers are sourced from NYLAG's robust Pro Bono & Volunteer Unit, which has connections to top law schools and firms throughout greater New York that specialize in immigration services. NYLAG trains these volunteer attorneys, who assist with screening, translation, and documentation-gathering, in its client-centered, trauma informed services model. NYLAG also provides substantive training in advance of clinics and has IPU staff on-site

for day-of supervision and support. IPU also has a robust *pro bono* program that places numerous cases with volunteer attorneys.

12. NYLAG's IPU has also had attorneys and accredited representatives present in the New York City immigration courts since May 2025, doing Know Your Rights work and intake for individuals facing detention and immediate removal. Initially, NYLAG's IPU was also providing robust *pro se* advocacy and assistance in cases that DHS was seeking to dismiss, with the intention of placing those *pro se* individuals in expedited removal. Additionally, through a collaborative involving NYLAG and two other organizations IPU has a public facing intake site. While this program primarily aimed at serving individuals who are post-removal order, since May 2025, that intake site has received hundreds of referrals for individuals who were detained in immigration court, including individuals who have ongoing immigration court proceedings and those facing expedited removal. Through the same programs, IPU has provided full representation and robust *pro se* support to immigrants detained at the New York City immigration courts since May 2025, in credible fear interviews, detained immigration court proceedings, bond hearings, and petitions for habeas corpus.

## II. Communication Barriers at 26 Federal Plaza

13. NYLAG's ability to provide legal representation and free legal services to immigrants – its core mission and the focus of its activities – has been severely hampered and at times thwarted by the detention of immigrants attending their immigration court appearances and the subsequent limits placed on communication between attorneys and clients who have been detained at the immigration court at 26 Federal Plaza.

14. Even though NYLAG has represented numerous individuals who have been held at 26 Federal Plaza and NYLAG attorneys have reached out to DHS while the individual has been detained at 26 Federal Plaza, to date, our attorneys have been unable to have a confidential legal call with even a single one of them during their detention at 26 Federal Plaza.

15. Generally, when NYLAG attorneys need to locate and contact a client detained by ICE, they obtain that information through the ICE Online Detainee Locator System. They can typically enter a client's A number or biographical information into the ICE Online Detainee Locator System and the Locator will display the facility where that client is detained. Clicking on the detention center in the Locator leads the Locator to display information about how to set up a call with the client.

16. However, the ICE Online Detainee Locator frequently does not accurately list an individual's location when an individual is detained at 26 Federal Plaza. Individuals who are detained at 26 Federal Plaza may often be listed as "Call Field Office" as their

location. Attorneys who email ICE to ask about the location of their client may receive no response or are told that their client is "in transit" and cannot be communicated with, even for multiple days.

17. Current policies make it virtually impossible to speak with a client once they are detained at 26 Federal Plaza, even if NYLAG has a signed appearance on Form G-28, USCIS's Notice of Entry of Appearance as Attorney or Accredited Representative, or a signed retainer with the client.

18. NYLAG attorneys have been unable to speak confidentially with clients detained at 26 Fed since the end of May 2025. On the rare occasions attorneys have had non-confidential phone calls with clients, it has been because detainees have called NYLAG on non-confidential phone calls, which last approximately 5 minutes. ICE has never permitted NYLAG to make an incoming call to a detainee held at the facility, even if the individual has been held in custody for multiple days, or if the immigrant has medical needs. n.

19. In my experience, while we understand that individuals detained at 26 Federal Plaza are given tablets to have extremely brief—often one to three minute—calls with loved ones, attorneys have not been allowed to set up phone calls with their clients through these tablets despite specific requests to ICE for legal calls. Moreover, I have consistently been told that such calls with loved ones are monitored closely by ICE officers and are not confidential. As a result, even if individuals attempted to call a lawyer with the tablets, they would not be able to have a confidential legal conversation.

20. These constraints have significantly affected NYLAG's ability to represent individuals detained at 26 Federal Plaza.

21. The inability to speak to clients detained at 26 Federal Plaza makes it significantly harder for NYLAG attorneys to successfully represent those clients. It also significantly increases the amount of time and effort required to prepare a case. Further, inaccurate information about clients' location adds many more hours of preparation work and in some cases doubles the amount of time that NYLAG staff must spend on a case. For example, NYLAG attorneys now have to spend much more time emailing ICE officers—often reaching out to whatever email addresses happen to be available—to try to set up a call with a client detained at 26 Federal Plaza. There is little clarity about which officers have the information or authority to share information about client location or which officer will respond. For that reason, in addition to having to send multiple emails to try to get information about the whereabouts of our clients and access them, it is often unclear whom NYLAG attorneys should contact in order to get any answer at all. Despite multiple attempts at outreach, NYLAG attorneys are often told that their client is

"in transit" and cannot be contacted. Because of these barriers, NYLAG attorneys often cannot effectively provide the legal services that NYLAG exists to provide.

22. Because NYLAG attorneys must wait until their client has been moved to another detention center before they can communicate with their clients, many attorneys will check the ICE Online Detainee Locator System multiple times a day to see if a client has been moved and will email frequently to follow up on unanswered requests. These repeated tasks divert substantial time away from substantive client work.

23. In one case, a NYLAG client, E.V.M., who is severely hard of hearing and has intellectual disabilities was detained following his hearing in immigration court. After he contacted his sister from 26 Federal Plaza, NYLAG filed a petition for a writ of habeas corpus on his behalf and contacted DHS to ask for confirmation of our client's whereabouts, to immediately schedule a phone call, and for confirmation as to why he was detained. The NYLAG attorney highlighted the competency concern about this client in the email. DHS did not respond until the next day, stating that our client was "still in transit" and that NYLAG had to use the ICE Online Detainee Locator System to track our client, noting that our client would "remain in ICE custody while in proceedings." The NYLAG attorney responded again demanding a phone call with E.V.M., citing the Rehabilitation Act and again highlighting the competency concerns. DHS did not respond to that inquiry, impeding the NYLAG attorney's ability to speak with the client and properly prepare for his case. Moreover, because NYLAG did not know the client's whereabouts and could not speak with him, the attorney could not obtain essential information to ascertain where to file a request for a bond hearing. Not having received an answer from DHS as to his location, the NYLAG attorney filed the bond motion noting that this exact location was unknown. After filing the motion for bond, a NYLAG attorney emailed DHS again, noting that the client had been detained for a week without access to counsel or a phone call. NYLAG finally received an email from DHS that evening—one week after our client had been detained and after many attorney hours had been spent trying to locate him—confirming that our client was detained at the Metropolitan Detention Center, the federal jail in Brooklyn, New York.

24. The inability to speak with clients detained at 26 Federal Plaza has also resulted in NYLAG clients inadvertently agreeing to give up their ability to seek asylum or proceeding to a credible fear interview without preparation or advocacy.

25. For example, a transgender client, B.C.B.N., with a chronic illness requiring ongoing treatment was detained at 26 Federal Plaza. She was initially able to call a paralegal on NYLAG's team from an ICE phone number right after being detained. When a NYLAG attorney immediately tried to call the client back at the same number, she was unable to speak with her client, as the number that the client had called from was the general

number of the Office of the Principal Legal Advisor ("OPLA") for ICE. Attempting to reach her client, the NYLAG attorney then emailed the Duty Attorney for OPLA, who did not provide any information. The NYLAG attorney then emailed and called ICE, requesting a legal call with her client, notifying them that her client was HIV positive and transgender, requesting placement at a women's detention facility. NYLAG did not receive any response to either request for a legal call and was unable to speak with our client until she had been moved to Winn Correctional Center, a men's detention facility, four days after her initial detention

26. At least one NYLAG client was listed as in 26 Federal Plaza when they had already been checked out of 26 Federal Plaza and was already in transit—and eventually held on a bus for many hours—in New Jersey.

27. In that case, the lack of transparency as to our client's whereabouts at least doubled the amount of time NYLAG staff were required to spend on the case. I filed a writ of habeas corpus for that client with the United States District Court for the Southern District of New York and prepared a memorandum in support of our client's case. That matter was filed in the Southern District of New York because, at the time of filing, the ICE Online Detainee Locator listed our client as present in 26 Federal Plaza. However, because the Locator was inaccurate, we learned after filing and preparing our briefing that our client had actually been moved to New Jersey by the time the habeas petition was filed. This required many additional hours of work, including managing a motion to transfer venue, additional research on the relevant law in the Third Circuit, and identifying and retaining local counsel in New Jersey, as no one in NYLAG's IPU is admitted to practice in the District of New Jersey.

28. In addition, because NYLAG attorneys cannot contact clients at 26 Federal Plaza, we are severely limited in our ability to gather the necessary information and documentation to assess and plan the next steps on a case. For example, determining whether an individual is eligible for relief such as asylum, or whether an individual is eligible for bond, requires understanding their immigration history and procedural posture, which is often information that only the client possesses. Without speaking to the client, it is often difficult if not impossible to determine whether the individual is eligible for ultimate relief and/or release on bond. And, for those who are eligible for bond, preparing for a bond hearing requires extensive close work with the client to identify their personal history and the strength of their immigration claim. Information about these topics, too, is often uniquely within the clients' knowledge.

29. These barriers to client communication with clients detained at 26 Federal Plaza have directly impacted, impaired, and interfered with NYLAG's core activities and mission. These barriers not only make it harder for NYLAG attorneys to successfully represent

their clients detained at 26 Federal Plaza for all of the reasons described above, they have also required a substantial portion of the organization's resources and made it harder to successfully pursue other important aspects of its work.

30. For example, accommodating the additional work that the difficulty representing clients at 26 Federal Plaza has generated has caused NYLAG's IPU's rapid response attorneys to be diverted almost entirely from their core work representing individuals who already have removal orders, another central, core aspect of NYLAG's activities.

31. Other members of NYLAG's removal defense team have had to spend time and effort locating individuals who have been detained and trying to prepare them for credible fear interviews; as a result they have less time to represent other individuals facing removal orders.

32. Because of the additional time and resources required to represent clients detained at 26 Federal Plaza, attorneys in NYLAG's IPU can take fewer cases than they were historically able to take doing standard post-removal order defense work. NYLAG thus is able to represent fewer overall clients. For example, in the period from January to May 2025, NYLAG's IPU team in collaboration with partners filed 34 motions to reopen and 11 appeals with the Board of Immigration Appeals for post-order New York residents. In June and July, the same team was only able to file one motion to reopen and three appeals. The additional work caused by our inability to access clients detracts from NYLAG's mission to represent as many low-income New Yorkers in need of legal services as it can.

Executed 8th of August, 2025, in Cap Ferret, France.

_____
Melissa Lim Chua