**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SERGIO ALBERTO BARCO MERCADO, on his own behalf and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>KRISTI NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity, *et al.*,<br><br>        Defendants. | No. 25 Civ. 6568 (LAK) |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2695

JEFFREY OESTERICHER
Assistant United States Attorney
- Of Counsel -

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND .........................................................................................................2

    I.     This Action...................................................................................................2

    II.    ICE's Holding Rooms at 26 Federal Plaza .................................................2

    III.   Plaintiff's Detention.....................................................................................5

ARGUMENT .............................................................................................................6

    I.     Plaintiff Is Not Entitled to a Temporary Restraining Order ......................6

         A.    *Applicable Legal Standards* .............................................................6

             1.    *Standard for a Temporary Restraining Order Against a Government Agency* .................................................................6

             2.    *Fifth Amendment Due Process*.........................................................8

         B.    *Plaintiff Is Unlikely to Succeed on the Merits of His Claims* ...................11

             1.    *26 Federal Plaza Is a Temporary Holding Facility That Provides Adequate Food, Clothing, Shelter, and Medical Care* ......................................................................................11

             2.    *The Short-Term Lack of In-Person Legal Visits Does Not Violate the Constitution* ...............................................................12

         C.    *Plaintiff Has Not Established He Will Suffer Irreparable Harm Absent Injunctive Relief* ......................................................................14

         D.    *The Public Interest Weights Against Granting a TRO*...........................15

    II.    The Court Should Require a Bond ............................................................16

CONCLUSION...........................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Able v. United States*,
   44 F.3d 128 (2d Cir. 1995) ............................................................................. 7

*AFA Dispensing Group B.V. v. Anheuser-Busch, Inc.*,
   740 F. Supp. 2d 465 (S.D.N.Y. 2010) .......................................................... 6

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.*,
   815 F.3d 105 (2d Cir. 2016) ........................................................................... 8

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
   784 F.3d 887 (2d Cir. 2015) ........................................................................... 6

*Borey v. Nat'l Union Fire Ins. Co.*,
   934 F.2d 30 (2d Cir. 1991) ........................................................................... 14

*Charles v. Orange County*,
   925 F.3d 73 (2d Cir. 2019) ...................................................................... 9, 10

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
   598 F.3d 30 (2d Cir. 2010) ............................................................................. 6

*Cuoco v. Moritsugu*,
   222 F.3d 99 (2d Cir. 2000) ............................................................................. 9

*Darnell v. Pineiro*,
   849 F.3d 17 (2d Cir. 2017) ................................................................. 9, 10, 11

*Farmer v. Brennan*,
   511 U.S. 825 (1994) ........................................................................... 9, 10, 12

*Freedom Holdings, Inc. v. Spitzer*,
   408 F.3d 112 (2d Cir. 2005) ........................................................................... 7

*Hathaway v. Coughlin*,
   99 F.3d 550 (2d Cir. 1996) ................................................................. 9, 10, 12

*Holland v. Goord*,
   758 F.3d 215 (2d Cir. 2014) ........................................................................... 7

*Int'l Gemmological Inst., Inc. v. Indep. Gemological Labs, Inc.*,
   No. 00 Civ. 4897, 2000 WL 1278179 (LAK) .............................................. 8

*Kamerling v. Massanari*,
   295 F.3d 206 (2d Cir. 2002) ......................................................................... 14

*Lyon v. ICE*,
   171 F. Supp. 3d 961 (N.D. Cal. 2016) ............................................................... 13

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ......................................................................................... 6

*Munaf v. Geren*,
   553 U.S. 674 (2008) ......................................................................................... 6

*Nken v. Holder*,
   556 U.S. 418 (2009) ......................................................................................... 15

*Procunier v. Martinez*,
   416 U.S. 396 (1973) ......................................................................................... 15

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004) ............................................................................ 7

*RQ Innovasion, Inc. v. Carson Optical, Inc.*,
   No. 19 Civ. 3886 (CBA) (RER), 2019 WL 4359456 (E.D.N.Y. Aug. 21, 2019),

   *report and recommendation adopted by* 2019 WL 4346264 (E.D.N.Y. Sept. 12, 2019) ........... 8

*Sussman v. Crawford*,
   488 F.3d 136 (2d Cir. 2007) ............................................................................ 7

*Time Warner Cable v. Bloomberg L.P.*,
   118 F.3d 917 (2d Cir. 1997) ............................................................................ 7

*Trump v. Deutsche Bank AG*,
   943 F.3d 627 (2d Cir. 2019) ............................................................................ 6

*Tucker Anthony Realty Corp. v. Schlesinger*,
   888 F.2d 969 (2d Cir. 1989) ...................................................................... 14, 15

*Turkmen v. Ashcroft*,
   No. 02-CV-2307 (JG), 2006 WL 1662663 (E.D.N.Y. June 14, 2006) ....................... 13

*Turner v. Saffly*,
   482 U.S. 78 (1987) .................................................................................... 13, 16

*Vargas v. Viacom Int'l, Inc.*,
   366 F. Supp. 3d 578 (S.D.N.Y. 2019) .............................................................. 8

*Wilson v. Seiter*,
   501 U.S. 294 (1991) ......................................................................................... 9

**Statutes**

8 USC § 1225(b) .................................................................................................................. 5

NY Penal Law § 240.26(3) .................................................................................................. 5

NY Penal Law § 240.30(4) .................................................................................................. 5

**Rules**

Fed. R. Civ. P. 65(c) ........................................................................................................... 16

Defendants (the "Government"), by their attorney, Jay Clayton, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in opposition to plaintiff's motion for a temporary restraining order. For the reasons explained herein, this Court should deny Plaintiff's motion.

## PRELIMINARY STATEMENT

Plaintiff, and the putative class on whose behalf he seeks to bring this case, filed this action to challenge the conditions of confinement at 26 Federal Plaza and the limitations on attorney access. *See* ECF No. 51 (Complaint). Specifically, Plaintiff seeks a temporary restraining order ("TRO") enjoining Defendants to ensure that (a) hold rooms at 26 Federal Plaza are not populated beyond their maximum capacity and adequate food, bedding, and hygiene products are provided to detainees; (b) detained individuals have access to prescribed medication as necessary; and (c) detained individuals have access to legal visitation seven days per week. (ECF No. 9). Plaintiff's motion fails to appreciate, however, that 26 Federal Plaza is not a detention facility but rather a field office processing and holding facility with rooms designed to temporarily hold individuals during arrest processing and while awaiting transport to detention facilities. As such, 26 Federal Plaza is designed to hold individuals for relatively brief periods of time. Nonetheless, during their short stays at 26 Federal Plaza, detainees are provided adequate food, clothing, shelter, and medical care. Moreover, detainees are provided access to attorneys through the availability of telephone calls.

Accordingly, Plaintiff cannot demonstrate a constitutional violation. Nor can Plaintiff establish irreparable harm, especially given that the short period of time in which detainees are held at 26 Federal Plaza.

Plaintiff's motion for a TRO should be denied.

# BACKGROUND

## I.  This Action

Plaintiff filed this action on August 8, 2025, on his own behalf and on behalf of a class of others similarly situated.  ECF No. 51.  Plaintiff alleges that the conditions of confinement at 26 Federal Plaza violate Plaintiff's (and the class members') Fifth Amendment rights and that the limitations on access to legal counsel violate Plaintiff's (and the class members') First and Fifth Amendment rights.  *See* Plaintiff's Memorandum of Law in Support of Motion for a Temporary Restraining Order ("Pl. Br.") (ECF No. 10) at 17-30.  Plaintiff seeks a TRO enjoining Defendants to remedy the alleged unconstitutional conditions of confinement and provide legal visitation seven days per week, eight hours per day on business days and four hours per day on weekends and holidays.  ECF No. 9 ¶¶ 1-8.

This Court ordered Defendants to file their opposition to Plaintiff's motion for a TRO by 5:00 p.m. on August 11, 2025.  ECF No. 54.

## II.  ICE's Holding Rooms at 26 Federal Plaza

26 Federal Plaza is a high-rise federal building located in lower Manhattan.  Complaint ¶ 1; Declaration of Nancy Zanello, dated August 11, 2025 ("ICE Decl.") ¶ 2.  Immigration court hearings are held at 26 Federal Plaza.  Complaint ¶ 2.  In addition, 26 Federal Plaza contains a field office processing and holding facility for U.S. Immigration and Customs Enforcement ("ICE"), with rooms designed to temporarily hold individuals during arrest processing and while awaiting transport to detention facilities.  ICE Decl. ¶¶ 2-3.

The 26 Federal Plaza ICE field office processing area has two large holding rooms and two smaller sized holding rooms on the tenth floor.  *Id.* ¶ 3.  The dimensions of the rooms are as follows:

Room #1 820.78 sq. ft.

Room #2 173.87 sq. ft.

Room #3 173.04 sq. ft.

Room #4 655.12 sq. ft.

*Id.*  The rooms are used for detaining individuals in the short term while they await processing and transport to ICE detention facilities.  *Id.* ¶ 4.  The combined capacity for all four hold rooms is 154 individuals.  *Id.* ¶ 3.

Each hold room has bathroom facilities consisting of toilets and sinks. *Id.* ¶ 8.  The rooms do not have beds.  *Id.* ¶ 10.  Individuals in custody are separated by sex.  *Id.* ¶ 7.  Feminine hygiene and other hygiene products are available.  *Id.* ¶ 8.  Individuals in custody are permitted to change clothes and are issued a change of clothes upon request.  *Id.* ¶ 9.

ICE Health Service Corps ("IHSC"), a branch of the United States Public Health Service, has medical personnel assigned to the 26 Federal Plaza field office.  *Id.* ¶ 14.  IHSC currently has staff available from 7am until 9:30pm.  *Id.*  In the event there is a medical emergency requiring additional medical intervention, individuals in custody are transported to nearby medical facilities.  *Id.*

Individuals in custody are permitted to bring any medication they had in their possession at the time of their arrest.  *Id.* ¶ 15.  An attorney or family member may also later bring prescribed medication for a detainee to the ICE field office.  *Id.*  All medication whether brought by the detainee or later is received by IHSC and administered according to proper medical procedures.  *Id.*

Individuals in custody are provided with two nutritional meals per day at predetermined times and are provided with additional meals upon request.  *Id.* ¶ 12.  Mealtimes may fluctuate due to unforeseen mission requirements or operational circumstances.  *Id.*  ICE can

accommodate medical and religious dietary requirements for detainees. *Id.* Bottled water is also provided to individuals in custody. *Id.* ¶ 13.

As a short-term holding facility for post-arrest processing, beds and private sleeping quarters are not available. *Id.* ¶ 10. Detainees awaiting transport overnight are provided with a blanket and additional blankets can be provided upon request. *Id.* ¶ 10. The blankets are cleaned regularly. *Id.* In addition, the hold rooms and bathrooms are industrially cleaned multiple times a day. *Id.* ¶ 11.

While detained at the 26 Federal Plaza field office, individuals in custody may make calls to attorneys via a landline telephone. *Id.* ¶¶ 16-17. There is no time limitation on attorney calls for individuals in custody. *Id.* ¶ 17. The calls are confidential and are not recorded or monitored. *Id.* There is no dedicated attorney call room; regular landline telephones are used to facilitate these communications due to the layout of the field office processing area, which functions solely as short-term holding space. *Id.* ¶ 18. The 26 Federal Plaza field office does not have facilities available for in-person legal or other visitation. *Id.* Language assistance services are provided for individuals with limited English proficiency. *Id.* ¶ 19.

The majority of individuals in custody at 26 Federal Plaza are currently transported to other facilities within 72 hours, except in exceptional circumstances. *Id.* ¶ 5; *see* ICE Directive 11087.2 (nationwide hold room waiver allowing detention for up to 72 hours); Complaint ¶¶ 21-22.

ICE maintains an Online Detainee Locator System at https://locator.ice.gov/odls/#/search which accurately identifies the location of detainees held at 26 Federal Plaza by instructing the searcher to contact the New York Field Office at 26 Federal Plaza. *Id.* ¶ 6. The system will not display location information while a detainee is in-transit to another facility. *Id.* For those

individuals in custody at 26 Federal Plaza, the Online Detainee Locator System depicts them as being held at "26 Federal Plaza, New York, NY 10278." *Id.*

### III. Plaintiff's Detention

On July 4, 2022, Plaintiff unlawfully entered the United States near San Luis, Arizona from Mexico at a time and place other than as designated by the Secretary of Homeland Security. *Id.* ¶ 22. On July 6, 2022, Plaintiff was served with a Notice to Appear, and placed in removal proceedings, per Section 212(a)(6)(A)(i) of the INA, and released on his own recognizance. *Id.* ¶ 23. On June 26, 2023, the New York City Police Department ("NYPD") arrested Plaintiff and charged him with Aggravated Harassment in the 2nd Degree under NY Penal Law § 240.30(4) and Harassment in the 2nd Degree under NY Penal Law § 240.26(3), a misdemeanor and violation respectively. *Id.* ¶ 24.

On August 8, 2025, Plaintiff appeared before an Immigration Judge at 26 Federal Plaza. *Id.* ¶ 25. During this hearing, it came to light that he resided in New Jersey and the Immigration Judge ordered a change of venue to the Newark Immigration Court. *Id.* Upon departing court, Plaintiff was apprehended by ICE and detained without bond pursuant to 8 USC § 1225(b). *Id.* ¶ 26. He was provided with a phone call and with his assent, consular notification provided to the Peruvian consulate. *Id.* On August 10, 2025, Plaintiff was transported to the Orange County Jail for detention. *Id.* ¶ 27.

### ARGUMENT

### I. Plaintiff Is Not Entitled to a Temporary Restraining Order

#### A. *Applicable Legal Standards*

##### 1. *Standard for a Temporary Restraining Order Against a Government Agency*

A TRO, like a preliminary injunction, is an "an extraordinary and drastic remedy," which "is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal quotation

marks omitted); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion" (emphasis in original; quotation marks omitted)).  "It is well established that the standard for an entry of a temporary restraining order is the same as for a preliminary injunction."  *AFA Dispensing Group B.V. v. Anheuser-Busch, Inc.*, 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010).

Ordinarily, a party seeking a preliminary injunction or a TRO must demonstrate:

(1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction.

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (internal quotation marks and ellipsis omitted).  However, the Second Circuit has "repeatedly stated that the serious-questions standard cannot be used to preliminarily enjoin governmental action."  *Trump v. Deutsche Bank AG*, 943 F.3d 627, 637 (2d Cir. 2019); *accord Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) ("Where the moving party seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous 'serious questions' standard and should not grant the injunction unless the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim." (alterations omitted) (*quoting Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995))).

Under this "more rigorous" standard, "plaintiffs must establish a clear or substantial likelihood of success on the merits."  *Sussman v. Crawford*, 488 F.3d 136, 140 (2d Cir. 2007) (per curiam) (internal quotation marks omitted); *see also Register.com, Inc. v. Verio, Inc.*, 356

F.3d 393, 424 (2d Cir. 2004) (because "government action[s] taken in furtherance of a regulatory or statutory scheme [are] presumed to be in the public interest[,] in such situations, a plaintiff must meet a more rigorous likelihood-of-success standard'" to obtain preliminary injunctive relief (quotation marks omitted)).

"Irreparable harm is the single most important prerequisite for the issuance of a [TRO]." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005). To establish irreparable harm, Plaintiff must demonstrate that, in the absence of a preliminary injunction, he "will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* (internal quotation marks omitted).

Further, "[w]henever a request for a preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests in deciding whether a plaintiff's threatened irreparable injury and probability of success on the merits warrants injunctive relief." *Time Warner Cable v. Bloomberg L.P.*, 118 F.3d 917, 929 (2d Cir. 1997).

Finally, although a defendant's "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice, it is nonetheless an important factor bearing on the question whether a court should exercise its power to entertain a request for injunctive relief or declare it moot." *Holland v. Goord*, 758 F.3d 215, 223-24 (2d Cir. 2014) (internal quotation marks omitted). Put otherwise, "in order to obtain an injunction . . . the moving party must satisfy the court that relief is needed—there must be some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Vargas v. Viacom Int'l, Inc.*, 366 F. Supp. 3d 578, 583 (S.D.N.Y. 2019) (in context of analyzing irreparable harm); *accord, e.g.*, *Int'l Gemmological Inst., Inc. v. Indep. Gemological*

*Labs, Inc.*, No. 00 Civ. 4897, 2000 WL 1278179 (LAK), at *1 (S.D.N.Y. Sept. 7, 2000); *RQ*

*Innovasion, Inc. v. Carson Optical, Inc.*, No. 19 Civ. 3886 (CBA) (RER), 2019 WL 4359456, at

*8 (E.D.N.Y. Aug. 21, 2019), *report and recommendation adopted by* 2019 WL 4346264

(E.D.N.Y. Sept. 12, 2019).

Courts therefore have declined to issue preliminary injunctions where defendants took

corrective action and indicated that they would not again commit the challenged conduct.  *See,*

*e.g.*, *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109-10 (2d Cir. 2016)

(in context of addressing mootness due to voluntary cessation, stating that corrective actions

taken by defendant and defendant's representation in its brief and at oral argument that it would

not again commit the challenged conduct, coupled with the lack of ongoing or lingering harm to

plaintiff, supported vacating the preliminary injunction); *Vargas*, 366 F. Supp. 3d at 583-84

(similar, in context of analyzing irreparable harm).  A plaintiff's speculative assertion that there

is a future possibility of a recurrent violation if a court does not issue a preliminary injunction is

insufficient to defeat the resulting lack of harm that flows from a defendant's corrective action

and representation that harm will not reoccur.  *See, e.g.*, *Vargas*, 366 F. Supp. 3d at 584; *RQ*

*Innovasion*, 2019 WL 4359456, at *8.

2. *Fifth Amendment Due Process*

While claims of convicted inmates relating to conditions of confinement and deprivations

of medical care are properly brought under the Eighth Amendment's prohibition against cruel

and unusual punishment, such claims brought by federal pre-trial or immigration detainees are

properly brought under the Fifth Amendment's Due Process Clause.  *See Farmer v. Brennan*,

511 U.S. 825, 832-34 (1994)*; Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000); *Darnell v.*

*Pineiro*, 849 F.3d 17, 21 n.3, 29, 33 n.9 (2d Cir. 2017).  The standards under both Amendments

are similar.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer*, 511 U.S. at 832.  Prison officials must ensure that an inmate receives adequate food, clothing, shelter, and medical care.  *Id.*  However, "only those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis" for a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).  A petitioner can prevail only by showing that the government's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Charles v. Orange County*, 925 F.3d 73, 85 (2d Cir. 2019) (quotation marks omitted).

A prison official violates the Fifth Amendment when his actions violate the relevant objective and subjective standards.  *See Farmer*, 511 U.S. at 834 *Darnell*, 849 F.3d at 29.  To establish an objective deprivation under the Fifth Amendment, the inmate must demonstrate that the deprivation is "sufficiently serious" such that it results in the denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834; *see also Darnell*, 849 F.3d at 30. Likewise, the inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  The alleged deprivation thus "must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks and citation omitted).  "Each . . . condition[] must be measured by its severity and duration, not the resulting injury, and none of the[] conditions is subject to a bright-line durational or severity threshold." *Darnell*, 849 F.3d at 32.  In the case of alleged deprivation of medical care, the inmate must show a "serious medical need," *i.e.*, "a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles*, 925 F.3d at 86 (citing *Hathaway*, 99 F.3d at 553).

The subjective component of a claim based on an inmate's conditions of confinement or deprivation of medical care under the Fifth Amendment requires the plaintiff to show the defendant's "deliberate indifference" to an objectively serious condition of confinement. *See Farmer*, 511 U.S. at 836-37; *Darnell*, 849 F.3d at 32. This requires a *mens rea* of recklessness. *See Farmer*, 511 U.S. at 836; *Darnell*, 849 F.3d at 32. The Second Circuit has held that the Eighth Amendment adopts the criminal definition of *mens rea*, while the Fifth Amendment adopts the civil definition. *See Darnell*, 849 F.3d at 35.

Therefore, under the Eighth Amendment, a prison official can be found liable for deliberate indifference when the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 836-37 (internal quotation marks and citation omitted). This standard requires actual knowledge on the part of the prison official. *Id.* Under the Fifth Amendment, to establish deliberate indifference, a pretrial detainee must prove "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35; *see also Charles*, 925 F.3d at 87. "In other words, the 'subjective prong' (or '*mens rea* prong') of a deliberate indifference claim is defined objectively" under the Fifth Amendment. *Darnell*, 849 F.3d at 35. However, even under the Fifth Amendment, prison officials cannot be liable for negligent conduct. *Darnell*, 849 F.3d at 35.

**B.  *Plaintiff Is Unlikely to Succeed on the Merits of His Claims***

    1.  *26 Federal Plaza Is a Temporary Holding Facility That Provides Adequate Food, Clothing, Shelter, and Medical Care*

Plaintiff alleges in his Complaint that Defendants subject individuals in custody at 26 Federal Plaza to overcrowding and punitive conditions.  Complaint ¶¶ 35-48.  However, as shown by the Government's declaration submitted in opposition to the motion for a TRO, Plaintiff is not likely to succeed on his claims.  Rather, the Declaration shows that Defendants provide adequate food, clothing, shelter, and medical care to individuals in custody during the brief period that they are detained at 26 Federal Plaza before being transported to a detention facility.

Specifically, with regard to food, individuals in custody are provided with two nutritious meals per day at predetermined times and are provided with additional meals upon request.  ICE Decl. ¶ 12.  Furthermore, individuals in custody are permitted to change clothes and are issued a change of clothes upon request.  *Id.* ¶ 9.  Medical care is provided by IHSC currently from 7am until 9:30pm and, in the event of a medical emergency, individuals in custody are transported to nearby medical facilities.  *Id.* ¶ 14.  Moreover, individuals in custody are permitted to bring any medication they had in their possession at the time of their arrest.  *Id.* ¶ 15.  An attorney or family member may also later bring prescribed medication for a detainee to the ICE field office.  *Id.*

While it is true that, as a short-term holding facility for post-arrest processing, beds and private sleeping quarters are not available at 26 Federal Plaza, those detainees awaiting transport overnight are provided with a blanket.  *Id.* ¶ 10.  And the majority of individuals in custody at 26 Federal Plaza are currently transported to other facilities within 72 hours, absent exceptional

circumstances.  *Id.* ¶ 5.[1]  Each hold room has bathroom facilities consisting of toilets and sinks.  *Id.* ¶ 8.

The total capacity for the four hold rooms at 26 Federal Plaza is 154 individuals.  *Id.* ¶ 3.  Currently, there are 24 individuals in custody at 26 Federal Plaza.  *Id.*  Thus, there is not presently an overcrowding issue at 26 Federal Plaza.

In short, while 26 Federal Plaza – as a short-term processing and holding space – does not contain certain features found in detention facilities, it does not fall below the constitutional minimum.  In particular, Plaintiff has not met his burden of showing "that he is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists," *Hathaway*, 99 F.3d at 553.

2.  *The Short-Term Lack of In-Person Legal Visits Does Not Violate the Constitution*

Plaintiff also cannot show a likelihood of success on their claim relating to denial of access to legal counsel.  *See* Complaint ¶¶ 35-48.  49-57.  Plaintiff asserts that "[p]eople detained at 26 Fed are denied the ability to communicate with their attorneys," *id.* ¶ 49, but that is not correct.  While detained at the 26 Federal Plaza field office, individuals in custody may make calls to attorneys via a landline telephone.  ICE Decl. ¶¶ 16-17.  The calls are free, there is no time limitation on attorney calls for individuals in custody, and the calls are confidential – *i.e.,* not recorded or monitored.  *Id.*

While Plaintiff is correct that there is no dedicated attorney call room; regular landline telephones are used to facilitate these communications due to the layout of the field office processing area, which functions solely as short-term holding space.  *Id.* ¶ 18.  In addition, the 26

---

[1] At present, there are six individuals in custody at 26 Federal Plaza who have been detained there for more than 72 hours.  *Id.* ¶ 5.

Federal Plaza field office does not have facilities available for in-person legal visitation. *Id.*
However, as discussed *supra*, 26 Federal Plaza is a *short-term* holding facility; the majority of
individuals are held for 72 hours or less. *Id.* ¶ 5. Courts generally uphold detention regulations
as long as they are "reasonably related to legitimate penological interests," considering (1)
whether there is a "valid, rational connection between the prison regulation and the legitimate
governmental interest put forward to justify it," (2) "whether there are alternative means of
exercising the right that remain open to prison inmates," (3) "the impact accommodation of the
asserted constitutional right will have on guards and other inmates, and on the allocation of
prison resources generally," and (4) "the absence of ready alternatives." *Turner v. Safly*, 482
U.S. 78, 107 (1987).[2] Under the circumstances, the detainees' lack of access to in-person legal
visits does not violate their constitutional rights given the availability of confidential
communications with legal access through the telephone, the lack of ready alternatives because
of the layout of the 26 Federal Plaza holding area, and the short-term nature of the deprivation.
*See generally id.* In-person visits with attorneys are not a constitutional requirement when other
means of communication are available. *See Lyon v. ICE*, 171 F. Supp. 3d 961, 983 (N.D. Cal.
2016) (challenging only protocols for telephone access because the location of the facilities
makes in-person visits "impractical at best," making telephonic access "critical") *cf. Turkmen v.
Ashcroft*, No. 02-CV-2307 (JG), 2006 WL 1662663, at *49 (E.D.N.Y. June 14, 2006), *aff'd in
part, vacated in part, remanded*, 589 F.3d 542 (2d Cir. 2009) (finding facts showing total

---

[2] Plaintiff's citation to ICE's Performance-Based National Detention Standards ("PBNDS")
governing attorney communication and access in immigration detention facilities nationwide,
Complaint ¶ 54, is misplaced. 26 Federal Plaza is a holding facility *see id.* ¶ 21, not a detention
facility; accordingly, the PBNDS standards should not apply.

"communications blackout" prior to immigration court hearings was sufficient to state a claim for relief).

Furthermore, Plaintiff's suggestion that Defendants are interfering with detainees' access to attorneys by failing to accurately list an individual's location when the individual is being held at 26 Federal Plaza, Complaint ¶ 52, is not accurate.  ICE's Online Detainee Locator System accurately identifies the location of detainees held at 26 Federal Plaza.  ICE Decl. ¶6.

### C. *Plaintiff Has Not Established He Will Suffer Irreparable Harm Absent Injunctive Relief*

For the same reasons that Plaintiff is unlikely to succeed on the merits of their claims, he also cannot establish that he will be subject to irreparable harm in the absence of injunctive relief.  "The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (internal quotation marks and citations omitted).  A movant can establish irreparable harm if she shows that "there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Id.* (internal quotation marks and citations omitted).  Monetary harm is insufficient; a party seeking a preliminary injunction must show "evidence of damage that cannot be rectified by financial compensation." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989). Moreover, the irreparable harm alleged must be shown to be "actual and imminent, not remote or speculative." *Kamerling*, 295 F.3d at 214.  The "mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction" or a TRO.  *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991).

Here, Plaintiff does not really argue that the alleged conditions of confinement constitute irreparable harm.  *See* Pl. Br. at 27-28.  That is likely because the alleged harms are susceptible

to monetary compensation.  *Tucker*, 888 F.2d at 975.  Indeed, because 26 Federal Plaza is a short-term processing and holding facility, any alleged injury will be temporally limited. Furthermore, many of the conditions about which Plaintiff complains are refuted by the Declaration submitted by the Defendants.

Similarly, Plaintiff's complaint about the denial of in-person access to legal counsel fails to establish irreparable harm.  Pl. Mot. at 27-28.  Individuals in custody at 26 Federal Plaza are provided access to counsel through unmonitored telephone calls.  Moreover, the lack of in-person legal access is short-lived.  As such, it does not rise to the level of irreparable harm.

### D.  The Public Interest Weighs Against Granting a TRO

The public interest weighs against granting a TRO.  "Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest.  These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Here, those factors favor the Government.

There is a recognized public interest in the enforcement of United States law, including the immigration laws.  *Nken*, 556 U.S. at 435-36 ( "[i]n considering [the merged final two stay factors], courts must be mindful that the Government's role as the respondent in every removal proceeding does not make the public interest in each individual one negligible.").  *Nken*, 556 U.S. at 435.  Moreover, in the context of detention, the Supreme Court has recognized that "the problems of prisons . . . require expertise, comprehensive planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government."  *Procunier v. Martinez*, 416 U.S. 396, 404-05 (1973).  "[C]ourts," by contrast, "are ill equipped to deal with the increasingly urgent problems of prison administration and reform."  *Id.* at 405.  Running a prison "is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the

province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 85 (1987). The "formidable task of running a prison" falls to those other two branches, and "separation of powers concerns counsel a policy of judicial restraint" and "deference to the appropriate prison authorities." *Id.*

With respect specifically to Plaintiff's requests, the relief sought could harm Defendant's ability to effectively manage its operations at 26 Federal Plaza. For example, if a court were to order Defendants to provide in-person legal visits at 26 Federal Plaza that would create immense logistical difficulties. Accordingly, the public interest weighs against injunctive relief.

## II.  The Court Should Require a Bond

If the Court is inclined to grant a temporary restraining order, it may do so "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Accordingly, the Court should require Plaintiff to post bond pursuant to Rule 65(c).[3]

---

[3] The Government intends to address Plaintiff's motion for class certification (ECF No. 34) in a separate memorandum of law at a later date.

**CONCLUSION**

For the foregoing reasons, Respondent respectfully requests that the Court deny

petitioners' motion for a preliminary injunction and for provisional class certification.

Dated:  New York, New York
        August 11, 2025

                                        Respectfully submitted,

                                        JAY CLAYTON
                                        United States Attorney for the
                                        Southern District of New York


                              By:    /s/ *Jeffrey Oestericher*
                                     JEFFREY OESTERICHER
                                     Assistant United States Attorney
                                     86 Chambers Street, 3rd Floor
                                     New York, New York 10007
                                     Telephone:  (212) 637-2695
                                     E-mail:  jeffrey.oestericher@usdoj.gov

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 4,874 words.