**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SERGIO ALBERTO BARCO MERCADO,
on his own behalf and on behalf of all others
similarly situated,

        Plaintiff,

        v.

KRISTI NOEM, Secretary, U.S. Department
of Homeland Security, in her official
capacity, *et al.*,

        Defendants.

No. 25 Civ. 6568 (LAK)

# MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone:  (212) 637-2695

JEFFREY OESTERICHER
Assistant United States Attorney
    - Of Counsel -

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ....................................................................................................................... 2

    I.     This Action and the Court's TRO ................................................................................ 2

    II.    ICE's Holding Rooms at 26 Federal Plaza .................................................................. 3

    III.   Plaintiff's Detention ..................................................................................................... 7

ARGUMENT .......................................................................................................................... 8

    I.     Plaintiff Is Not Entitled to a Preliminary Injunction ................................................. 8

        A.   *Applicable Legal Standards* ................................................................................. 8

            1.    *Standard for a Preliminary Injunction Against a Government Agency* ............................................................................ 8

            2.    *Fifth Amendment Due Process* ..................................................... 11

        B.   *Plaintiff Is Unlikely to Succeed on the Merits of His Claims* ................... 13

            1.    *26 Federal Plaza Is a Temporary Holding Facility That Provides Adequate Food, Clothing, Shelter, and Medical Care* ................................................................................ 13

            2.    *The Short-Term Lack of In-Person Legal Visits Does Not Violate the Constitution* .............................................................. 15

        C.   *Plaintiff Has Not Established He Will Suffer Irreparable Harm Absent Injunctive Relief* ................................................................................. 17

        D.   *The Public Interest Weights Against Granting a PI* ................................. 18

    II.    The Court Should Require a Bond ........................................................................ 19

CONCLUSION ...................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Able v. United States*,
   44 F.3d 128 (2d Cir. 1995) ..................................................................................... 8

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.*,
   815 F.3d 105 (2d Cir. 2016) ................................................................................. 10

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
   784 F.3d 887 (2d Cir. 2015) ................................................................................... 8

*Borey v. Nat'l Union Fire Ins. Co.*,
   934 F.2d 30 (2d Cir. 1991) ................................................................................... 17

*Charles v. Orange County*,
   925 F.3d 73 (2d Cir. 2019) ............................................................................. 11, 12

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
   598 F.3d 30 (2d Cir. 2010) ..................................................................................... 8

*Cuoco v. Moritsugu*,
   222 F.3d 99 (2d Cir. 2000) ................................................................................... 11

*Darnell v. Pineiro*,
   849 F.3d 17 (2d Cir. 2017) ............................................................... 11, 12, 13, 14

*Farmer v. Brennan*,
   511 U.S. 825, 114 S. Ct. 1970 (1994) ......................................................... 11, 12, 14

*Freedom Holdings, Inc. v. Spitzer*,
   408 F.3d 112 (2d Cir. 2005) ................................................................................... 9

*Hathaway v. Coughlin*,
   99 F.3d 550 (2d Cir. 1996) ............................................................................. 12, 14

*Holland v. Goord*,
   758 F.3d 215 (2d Cir. 2014) ................................................................................. 10

*Huanga v. Decker*,
   599 F. Supp. 3d 131 (S.D.N.Y. 2022) ................................................................. 18

*Int'l Gemmological Inst., Inc. v. Indep. Gemological Labs, Inc.*,
   No. 00 Civ. 4897 (LAK), 2000 WL 1278179 ..................................................... 10

*Kamerling v. Massanari*,
   295 F.3d 206 (2d Cir. 2002) ................................................................................. 17

*Landon v. Plasencia*,
   459 U.S. 21, 103 S. Ct. 321 (1982) ........................................................................ 18

*Lyon v. ICE*,
   171 F. Supp. 3d 961 (N.D. Cal. 2016) .................................................................... 16

*Mazurek v. Armstrong*,
   520 U.S. 968, 117 S. Ct. 1865 (1997) ...................................................................... 8

*Munaf v. Geren*,
   553 U.S. 674, 128 S. Ct. 2207 (2008) ...................................................................... 8

*National Council of Nonprofits v. Office of Management and Budget*,
   775 F. Supp. 3d 100 (D.D.C. 2025) ........................................................................ 15

*Nken v. Holder*,
   556 U.S. 418, 129 S. Ct. 1749 (2009) .................................................................... 18

*Procunier v. Martinez*,
   416 U.S. 396, 94 S. Ct. 1800 (1973) ...................................................................... 19

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004) .................................................................................... 9

*RQ Innovasion, Inc. v. Carson Optical, Inc.*,
   No. 19 Civ. 3886 (CBA) (RER), 2019 WL 4359456 (E.D.N.Y. Aug. 21, 2019), *report and
   recommendation adopted by* 2019 WL 4346264 (E.D.N.Y. Sept. 12, 2019) .................... 10, 11

*Sussman v. Crawford*,
   488 F.3d 136 (2d Cir. 2007) .................................................................................... 9

*Time Warner Cable v. Bloomberg L.P.*,
   118 F.3d 917 (2d Cir. 1997) .................................................................................... 9

*Trump v. Deutsche Bank AG*,
   943 F.3d 627 (2d Cir. 2019) .................................................................................... 8

*Tucker Anthony Realty Corp. v. Schlesinger*,
   888 F.2d 969 (2d Cir. 1989) .................................................................................. 17

*Turkmen v. Ashcroft*,
   No. 02-CV-2307 (JG), 2006 WL 1662663 (E.D.N.Y. June 14, 2006) .................................... 16

*Turner v. Safly*,
   482 U.S. 78, 107 S. Ct. 2254 (1987) ................................................................ 16, 19

*U.S. v. W.T. Grant Co.*, 345 U.S. 629, 73 S. Ct. 894 (1953) ........................................................ 16

iii

*Vargas v. Viacom Int'l , Inc.*,
    366 F. Supp. 3d 578 (S.D.N.Y. 2019) .................................................................... 9, 10, 11, 15

*Wilson v. Seiter*,
    501 U.S. 294, 111 S. Ct. 2321 (1991) ................................................................................ 11

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7, 129 S. Ct. 365 (2008) ................................................................................. 9, 17

**Statutes**

NY Penal Law § 240.26(3) ......................................................................................................... 7

NY Penal Law § 240.30(4) ......................................................................................................... 7

8 U.S.C. § 1225(b) ..................................................................................................................... 7

**Rules**

Fed. R. Civ. P. 65(c) ................................................................................................................. 19

Defendants (the "Government"), by their attorney, Jay Clayton, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in opposition to Plaintiff's motion for a preliminary injunction.  For the reasons explained herein, this Court should deny Plaintiff's motion.

<div align="center">

**PRELIMINARY STATEMENT**

</div>

Plaintiff, and the putative class on whose behalf he seeks to bring this case, filed this action to challenge the conditions of confinement at 26 Federal Plaza and the limitations on attorney access.  *See* ECF No. 51 (Complaint).  Specifically, Plaintiff sought a temporary restraining order ("TRO") and preliminary injunction ("PI") enjoining Defendants to ensure that (a) hold rooms at 26 Federal Plaza are not overcrowded, (b) adequate food, bedding, and hygiene products are provided to detainees; (c) detainees have access to prescribed medication as necessary; and (d) detainees have access to legal visitation seven days per week.  (ECF No. 9).  Plaintiff's motion, however, fails to appreciate that 26 Federal Plaza is not a detention facility but rather is a field office processing and holding facility with rooms designed to temporarily hold individuals during arrest processing and while awaiting transport to detention facilities.  As such, 26 Federal Plaza is designed to hold individuals for relatively brief periods of time.  Nonetheless, during their short stays at 26 Federal Plaza (on average two days), detainees are provided adequate food, clothing, shelter, and medical care.  Moreover, detainees are provided access to attorneys through the availability of telephone calls.

Accordingly, Plaintiff cannot demonstrate a constitutional violation.  Nor can Plaintiff establish irreparable harm, especially given the short period of time in which detainees are held at 26 Federal Plaza.  Therefore, Plaintiff's motion for a PI should be denied.

In the event the Court were inclined to rule that Plaintiff has shown a likelihood of success on the merits of his constitutional claims and that he has met his burden of showing irreparable

harm and the other elements necessary to obtain preliminary injunctive relief, then the  Court should enter a preliminary injunction that is no broader than the TRO the Court has entered in this case.

## BACKGROUND

### I.  This Action and the Court's TRO

Plaintiff filed this action on August 8, 2025, on his own behalf and on behalf of a class of others similarly situated.  ECF No. 51.  Plaintiff alleges that the conditions of confinement at 26 Federal Plaza violate Plaintiff's (and the class members') Fifth Amendment rights and that the limitations on access to legal counsel violate Plaintiff's (and the class members') First and Fifth Amendment rights.  *See* Plaintiff's Memorandum of Law in Support of Motion for a Temporary Restraining Order, dated August 8, 2025 ("Pl. Br.") (ECF No. 10), at 17-30.  Plaintiff sought a TRO enjoining Defendants to remedy the alleged unconstitutional conditions of confinement and provide legal visitation seven days per week, eight hours per day on business days and four hours per day on weekends and holidays.  *Id.* at 31-32; ECF No. 9 ¶¶ 1-8 (proposed order).

Defendants filed their opposition to Plaintiff's motion for a TRO on August 11, 2025, ECF No. 54, and the Court heard oral argument on the motion on August 12, 2025, ECF No. 65.  Later that same day, the Court entered a TRO, finding that "plaintiff and members of the alleged class have suffered, and are likely to suffer, irreparable harm absent the temporary relief granted herein, and to prevail on the merits of their claims to the extent that would justify preliminary and permanent relief substantially as set forth below."  *Id.*  The Court ordered Defendants to ensure, *inter alia*, that:

(a)  each detainee at 26 Federal Plaza shall have at least 50 square feet of floor area and  be furnished with a clean bedding mat and adequate supplies of soap, towels, toilet papers, oral hygiene products, and feminine hygiene products;

2

(b) the hold rooms are cleaned thoroughly at least three times each day;

(c) detainees are provided with means of making confidential, unmonitored, unrecorded, temporally unrestricted free telephone calls within 24 hours of being detained and at least once during each subsequent 12-hour period while they are detained together with the ability to schedule legal calls with counsel within 6 hours of a request made within the period 9 a.m. to 4 p.m. and within 16 hours of a request made thereafter;

(d) at least one land line telephone is dedicated solely to accommodating detainee legal calls for each five (or fewer) detainees in each hold room;

(e) each detainee is provided, within one hour after the detainee's arrival, a printed Notice of Rights in English and Spanish stating the rights specified in the TRO; and

(f) a telephone number for attorneys to call to schedule calls with detainees is conspicuously displayed on the ICE web site and monitored and answered without undue delay from 9 a.m. until 5 p.m.

TRO ¶¶ 1-8.[1]  By memo endorsement dated August 14. 2025 (ECF No. 68), the Court stayed the TRO to the extent it required Defendants to provide (a) toothbrushes instead of teeth cleaning wipes, and (b) interpreter services for confidential attorney phone calls.  The Court modified two provisions of the TRO relating to access to interpretation services for attorney calls and retention of inhaled medication by Order dated August 17, 2025 (ECF No. 70).

## II.  ICE's Holding Rooms at 26 Federal Plaza

26 Federal Plaza is a high-rise federal building located in lower Manhattan.  Complaint ¶ 1; Declaration of Nancy Zanello, dated August 11, 2025 (ECF No. 58) ("ICE Decl.") ¶ 2. Immigration court hearings are held at 26 Federal Plaza.  Complaint ¶ 2.  In addition, 26 Federal

---

[1] The TRO shall continue until "the earlier of (a) the determination of plaintiff's motion for a preliminary injunction and (b) 11:59 p.m. on August 26, 2025."  TRO at 1.

Plaza contains a field office processing and holding facility for U.S. Immigration and Customs Enforcement ("ICE"), with rooms designed to temporarily hold individuals during arrest processing and while awaiting transport to detention facilities.  ICE Decl. ¶¶ 2-3.

The 26 Federal Plaza ICE Field Office processing area has two large holding rooms and two smaller sized holding rooms on the tenth floor.  *Id.* ¶ 3.  The dimensions of the rooms are as follows:  Room #1 820.78 sq. ft., Room #2 173.87 sq. ft., Room #3 173.04 sq. ft., and Room #4 655.12 sq. ft.  *Id.*  The hold rooms are solely used for the short-term confinement of aliens who have been recently detained or are being transferred to or from a detention facility, other holding facility, other agency, a court, or for removal.  *Id.* ¶ 4; Supplemental Declaration of Nancy Zanello, dated August 18, 2025 ("ICE Suppl. Decl."), ¶ 4.  The combined capacity for all four hold rooms is 154 individuals.  *Id.* ¶ 3.

Each hold room has bathroom facilities consisting of toilets and sinks.  ICE Decl. ¶ 8.  The largest hold room is equipped with three toilets and three sinks; the second largest has two toilets and two sinks, and the remaining two rooms have one toilet and one sink each.  ICE Suppl. Decl. ¶ 8.[2]  The lavatory areas are partitioned off by half walls to maintain sight supervision for safety and security and reasonable privacy for detainees.  *Id.*  The hold rooms and lavatory areas are cleaned at least three times a day.  *Id.* ¶ 12.  When providing at least 50 square feet of floor area to each detainee (exclusive of floor area within 8 feet of any toilet) pursuant to the TRO, the maximum capacity of each hold room is as follows:  Room 1 – 11 detainees; Room 2 – 1 detainee;

---

[2] ICE's supplemental declaration corrects a partial error in its original declaration with respect to the number of sinks and toilets in the large hold rooms.  *See* ICE Decl. ¶ 8 ("Each ICE hold room is equipped with at least one toilet and sink, with one of the ICE hold rooms equipped with two each.").

Room 3 – 1 detainee; Room 4 – 9 detainees. *Id.* ¶ 9. Accordingly, the maximum capacity of the four hold rooms combined under the TRO is 22 detainees. *Id.*

Individuals in custody are separated by sex. *Id.* ¶ 7. The hold rooms do not have beds, but in compliance with the TRO, individuals in custody overnight are provided with bedding mats. *Id.* ¶ 10. Individuals in custody are provided with blankets, which are cleaned regularly. *Id.* ¶ 11.

Hygiene products, including soap, paper towels, toilet paper, and feminine hygiene supplies, are made available. *Id.* ¶ 13.[3] Individuals in custody are permitted to change clothes and are issued a change of clothes upon request. *Id.* ¶ 14.

ICE Health Service Corps ("IHSC"), a branch of the United States Public Health Service, has medical personnel assigned to the 26 Federal Plaza Field Office. *Id.* ¶ 15. IHSC currently has staff available daily from 7 a.m. until 9:30 p.m. *Id.* In the event there is a medical emergency requiring additional medical intervention, individuals in custody are transported to nearby medical facilities. *Id.*

Individuals in custody are permitted to bring any medication they had in their possession at the time of their arrest. *Id.* ¶ 16. An attorney or family member may also later bring prescribed medication for a detainee to the ICE field office. *Id.* All medication, whether brought by the detainee or later, is received by IHSC and administered according to proper medical procedures (except for emergency-use inhalers which detainees may keep with them in the hold rooms). *Id.*

Individuals in custody are provided with four meals per day. *Id.* ¶ 18. Mealtimes may fluctuate due to unforeseen mission requirements or operational circumstances. *Id.* ICE can

---

[3] ICE is in the process of making toothbrushes available to individuals in custody pursuant to the TRO. *Id.* ¶ 13.

accommodate medical and religious dietary requirements for individuals in custody. *Id.* Bottled water is also provided to individuals in custody. *Id.* ¶ 17.

While detained at the 26 Federal Plaza Field Office, individuals in custody may make calls to attorneys via a landline telephone. *Id*. ¶¶ 20-24. Within the first 24 hours of a detainee's arrival at the 26 Federal Plaza Field Office, the detainee is typically provided with three opportunities to make phone calls – immediately upon arrival; during processing; and during the detainee's first evening in detention. *Id*. ¶ 20. In accordance with the TRO, there are six landlines available to individuals in custody. *Id.* ¶ 21. In addition, in accordance with the TRO, individuals in custody are able to make additional cost-free, unmonitored, unrecorded, and temporally unrestricted calls to their attorneys at a minimum of once during each subsequent 12-hour period in which they are detained. *Id.* ¶ 22. Individuals in custody are also provided the opportunity to schedule legal calls with their attorneys between the hours of 9:00 a.m. to 4:00 p.m., with those requests being honored within at least six hours. *Id.* Attorneys who have submitted properly completed Forms G-28, Notice of Entrance of Appearance as Attorney or Accredited Representative may schedule calls with their clients in detention at the 26 Federal Plaza Field Office by calling a dedicated phone number or submitting an email request. *Id.* ¶ 24. There is no dedicated attorney call room. *Id.* ¶ 23.

The majority of individuals in custody at the 26 Federal Plaza Field Office are currently transported to other facilities within 72 hours, except in exceptional circumstances. *Id.* ¶ 4; *see* ICE Directive 11087.2 (nationwide hold room waiver allowing detention for up to 72 hours); Complaint ¶¶ 21-22. From July 21 to August 13, 2025, the average length of stay for individuals in custody was two days. *Id.* ¶ 6.

ICE maintains an Online Detainee Locator System at https://locator.ice.gov/odls/#/search which accurately identifies the location of detainees held at 26 Federal Plaza by instructing the searcher to contact the New York Field Office at 26 Federal Plaza.  ICE Decl. ¶ 6.  The system will not display location information while a detainee is in-transit to another facility.  *Id.*  For those individuals in custody at 26 Federal Plaza, the Online Detainee Locator System depicts them as being held at "26 Federal Plaza, New York, NY 10278."  *Id.*  The data on the ICE Detainee Locator System refreshes on automated intervals every eight hours.  ICE Suppl. Decl. ¶ 5.

In accordance with the TRO, every newly detained individual is promptly provided with a written Notice of Rights in English and/or Spanish.  *Id.* ¶ 19.

### III. Plaintiff's Detention

On July 4, 2022, Plaintiff unlawfully entered the United States near San Luis, Arizona from Mexico at a time and place other than as designated by the Secretary of Homeland Security.  ICE Decl. ¶ 22.  On July 6, 2022, Plaintiff was served with a Notice to Appear, and placed in removal proceedings, per Section 212(a)(6)(A)(i) of the INA, and released on bond.  *Id.* ¶ 23.  On June 26, 2023, the New York City Police Department arrested Plaintiff and charged him with Aggravated Harassment in the 2nd Degree under NY Penal Law § 240.30(4) and Harassment in the 2nd Degree under NY Penal Law § 240.26(3), a misdemeanor and violation respectively.  *Id.* ¶ 24.

On August 8, 2025, Plaintiff appeared before an Immigration Judge at 26 Federal Plaza. *Id.* ¶ 25.  During this hearing, it came to light that he resided in New Jersey and the Immigration Judge ordered a change of venue to the Newark Immigration Court.  *Id.*  Upon departing court, Plaintiff  was apprehended by ICE and detained without bond pursuant to 8 U.S.C. § 1225(b).  *Id.* ¶ 26.  He was provided with a phone call and with his assent, consular notification was provided to the Peruvian consulate.  *Id.*  On August 10, 2025, Plaintiff was transported to the Orange County Jail for detention.  *Id.* ¶ 27.

# ARGUMENT

## I.  Plaintiff Is Not Entitled to a Preliminary Injunction

### A.  *Applicable Legal Standards*

#### 1.  *Standard for a Preliminary Injunction Against a Government Agency*

A preliminary injunction is "an extraordinary and drastic remedy," which "is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90, 128 S. Ct. 2207, 2219 (2008) (internal quotation marks omitted); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 1867 (1997) ("a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion" (emphasis in original; quotation marks omitted)).  Ordinarily, a party seeking a preliminary injunction must demonstrate:

> (1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction.

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (internal quotation marks and ellipsis omitted).  However, the Second Circuit has "repeatedly stated that the serious-questions standard cannot be used to preliminarily enjoin governmental action." *Trump v. Deutsche Bank AG*, 943 F.3d 627, 637 (2d Cir. 2019); *accord Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) ("Where the moving party seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous 'serious questions' standard and should not grant the injunction unless the moving party establishes, along with irreparable

injury, a likelihood that he will succeed on the merits of his claim." (alterations omitted) (quoting *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995))).

Under this "more rigorous" standard, "plaintiffs must establish a clear or substantial likelihood of success on the merits." *Sussman v. Crawford*, 488 F.3d 136, 140 (2d Cir. 2007) (per curiam) (internal quotation marks omitted); *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 424 (2d Cir. 2004) (because "government action[s] taken in furtherance of a regulatory or statutory scheme [are] presumed to be in the public interest[,] in such situations, a plaintiff must meet a 'more rigorous likelihood-of-success standard'" to obtain preliminary injunctive relief) (citation omitted).

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005). To establish irreparable harm, Plaintiff must demonstrate that, in the absence of a preliminary injunction, he "will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* (internal quotation marks omitted). Indeed, the Supreme Court has instructed that the preliminary injunction standard requires plaintiffs "to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 375 (2008) (emphasis in original); *see also Vargas v. Viacom Int'l , Inc.*, 366 F. Supp. 3d 578, 582 (S.D.N.Y. 2019) ("Demonstrating the mere possibility of harm is not sufficient to warrant the drastic imposition of a preliminary injunction.") (internal quotation marks and citation omitted).

Further, "[w]henever a request for a preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests in deciding whether a

plaintiff's threatened irreparable injury and probability of success on the merits warrants injunctive relief." *Time Warner Cable v. Bloomberg L.P.*, 118 F.3d 917, 929 (2d Cir. 1997).

Finally, although a defendant's "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice, it is nonetheless an important factor bearing on the question whether a court should exercise its power to entertain a request for injunctive relief or declare it moot." *Holland v. Goord*, 758 F.3d 215, 223 (2d Cir. 2014) (internal quotation marks omitted). Put otherwise, "in order to obtain an injunction . . . the moving party must satisfy the court that relief is needed—there must be some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Vargas*, 366 F. Supp. 3d at 583 (in context of analyzing irreparable harm); *accord, e.g.*, *Int'l Gemmological Inst., Inc. v. Indep. Gemological Labs, Inc.*, No. 00 Civ. 4897 (LAK), 2000 WL 1278179, at *1 (S.D.N.Y. Sept. 7, 2000); *RQ Innovasion, Inc. v. Carson Optical, Inc.*, No. 19 Civ. 3886 (CBA) (RER), 2019 WL 4359456, at *8 (E.D.N.Y. Aug. 21, 2019), *report and recommendation adopted by* 2019 WL 4346264 (E.D.N.Y. Sept. 12, 2019).

Courts therefore have declined to issue preliminary injunctions where defendants took corrective action and indicated that they would not again commit the challenged conduct. *See, e.g.*, *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109-10 (2d Cir. 2016) (in context of addressing mootness due to voluntary cessation, stating that corrective actions taken by defendant and defendant's representation in its brief and at oral argument that it would not again commit the challenged conduct, coupled with the lack of ongoing or lingering harm to plaintiff, supported vacating the preliminary injunction); *Vargas*, 366 F. Supp. 3d at 583-84 (similar, in context of analyzing irreparable harm). A plaintiff's speculative assertion that there is a future possibility of a recurrent violation if a court does not issue a preliminary injunction is insufficient

to defeat the resulting lack of harm that flows from a defendant's corrective action and representation that harm will not reoccur. *See, e.g.*, *Vargas*, 366 F. Supp. 3d at 584; *RQ Innovasion*, 2019 WL 4359456, at *8.

       2. *Fifth Amendment Due Process*

      While claims of convicted inmates relating to conditions of confinement and deprivations of medical care are properly brought under the Eighth Amendment's prohibition against cruel and unusual punishment, such claims brought by federal pre-trial or immigration detainees are properly brought under the Fifth Amendment's Due Process Clause. *See Farmer v. Brennan*, 511 U.S. 825, 832-34, 114 S. Ct. 1970, 1976-77 (1994)*; Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000); *Darnell v. Pineiro*, 849 F.3d 17, 21 n.3, 29, 33 n.9 (2d Cir. 2017). The standards under both Amendments are similar.

      "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer*, 511 U.S. at 832, 114 S. Ct. at 1976. Prison officials must ensure that an inmate receives adequate food, clothing, shelter, and medical care. *Id.* However, "only those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis" for a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991). A petitioner can prevail only by showing that the government's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Charles v. Orange County*, 925 F.3d 73, 85 (2d Cir. 2019) (quotation marks omitted).

      A prison official violates the Fifth Amendment when his actions violate the relevant objective and subjective standards. *See Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977; *Darnell*, 849 F.3d at 29. To establish an objective deprivation under the Fifth Amendment, the inmate must demonstrate that the deprivation is "sufficiently serious" such that it results in the denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977; *see*

*also Darnell*, 849 F.3d at 30.  Likewise, the inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977. The alleged deprivation thus "must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks and citation omitted).  "Each . . . condition[] must be measured by its severity and duration, not the resulting injury, and none of the[] conditions is subject to a bright-line durational or severity threshold." *Darnell*, 849 F.3d at 32.  In the case of alleged deprivation of medical care, the inmate must show a "serious medical need," *i.e.*, "a condition of urgency." *Charles*, 925 F.3d at 86 (citing *Hathaway*, 99 F.3d at 553).

The subjective component of a claim based on an inmate's conditions of confinement or deprivation of medical care under the Fifth Amendment requires the plaintiff to show the defendant's "deliberate indifference" to an objectively serious condition of confinement.  *See Farmer*, 511 U.S. at 836-37, 114 S. Ct. at 1978-79; *Darnell*, 849 F.3d at 32. This requires a *mens rea* of recklessness.  *See Farmer*, 511 U.S. at 836, 114 S. Ct. at 1978; *Darnell*, 849 F.3d at 32. The Second Circuit has held that the Eighth Amendment adopts the criminal definition of *mens rea*, while the Fifth Amendment adopts the civil definition.  *See Darnell*, 849 F.3d at 35.

Under the Fifth Amendment, to establish deliberate indifference, a pretrial detainee must prove "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35; *see also Charles*, 925 F.3d at 87.  "In other words, the 'subjective prong' (or '*mens rea* prong') of a deliberate indifference claim is defined objectively" under the Fifth Amendment. *Darnell*, 849 F.3d at 35.  However, even under

the Fifth Amendment, prison officials cannot be liable for negligent conduct.  *Darnell*, 849 F.3d at 35.

**B.  *Plaintiff Is Unlikely to Succeed on the Merits of His Claims***

   1.  *26 Federal Plaza Is a Temporary Holding Facility That Provides Adequate Food, Clothing, Shelter, and Medical Care*

Plaintiff alleges in his Complaint that Defendants subject individuals in custody at 26 Federal Plaza to overcrowding and punitive conditions.  Complaint ¶¶ 35-48.  However, as shown by the Government's declarations submitted in opposition to the motion for a TRO and PI, Plaintiff is not likely to succeed on his claims.  Rather, the declarations demonstrate that Defendants provide adequate food, clothing, shelter, and medical care to individuals in custody during the brief period that they are detained at the 26 Federal Plaza Field Office before being transported to a detention facility.

Specifically, with regard to food, individuals in custody are provided with four meals per day, ICE Suppl. Decl. ¶ 18, and bottled water is provided throughout the day, *id.* ¶ 17.  Furthermore, individuals in custody are permitted to change clothes and are issued a change of clothes upon request.  ICE Decl. ¶ 9; ICE Suppl. Decl. ¶ 14.  Medical care is provided by IHSC from 7 a.m. until 9:30 p.m. and, in the event of a medical emergency, individuals in custody are transported to nearby medical facilities.  ICE Suppl. Decl. ¶ 15.  Moreover, individuals in custody are permitted to bring any medication they had in their possession at the time of their arrest.  *Id.* ¶ 16.  An attorney or family member may also later bring prescribed medication for a detainee to the ICE field office.  *Id.*  All medications are administered by IHSC, except for inhalers.  *Id.*

Each hold room has bathroom facilities consisting of toilets and sinks.  *Id.* ¶ 8.  The hold rooms and lavatory areas are cleaned at least three times a day.  *Id.* ¶ 12.  Hygiene products, including soap, paper towels, toilet paper, and feminine hygiene supplies, are made available.  *Id.*

¶ 13. Bedding mats are furnished to each individual in custody who is detained overnight and cleaned after use by each individual in custody. *Id.* ¶ 10. Blankets are also furnished and regularly cleaned. *Id.* ¶ 11.

The majority of individuals in custody at the 26 Federal Plaza Field Office are currently transported to other facilities within 72 hours, absent exceptional circumstances. *Id*. ¶ 4. More specifically, from July 21 to August 13, 2025, the average length of stay for individuals in custody at the 26 Federal Plaza Field Office was 2 days. *Id*. ¶ 6. The total capacity for the four hold rooms at 26 Federal Plaza is 154 individuals. *Id.* ¶ 3. The maximum total capacity of the four hold rooms under the TRO is 22 detainees. ICE Suppl. Decl. ¶ 9.

In short, while 26 Federal Plaza – as a short-term processing and holding space – does not contain certain features found in detention facilities, it does not fall below the constitutional minimum. In particular, due to the generally very short duration of detention at the 26 Federal Plaza Field Office, Plaintiff cannot meet his burden of showing on his motion for a PI "that he is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists," *Hathaway*, 99 F.3d at 553. *See also Darnell*, 849 F.3d at 32 ("Each . . . condition[] must be measured by its severity and duration, not the resulting injury, and none of the[] conditions is subject to a bright-line durational or severity threshold."). Indeed, given the measures that Defendants have implemented in compliance with the TRO, there is no need for entry of a PI.

Current conditions of confinement at the 26 Federal Plaza Field Office do not violate the Constitution. And while some of the measures Defendants implemented were in response to the Court's TRO, these measures are now the regular practice at the facility. *See* ICE Suppl. Decl. ¶ 9 (noting that as of 11:59 p.m. on August 15, 2025, there were 8 individuals in custody at the 26

Federal Plaza Field Office).  As such, in this case, Defendants' voluntary cessation of allegedly unlawful conduct and the lack of irreparable harm counsels against the Court entering a PI.  *See Vargas*, 366 F. Supp. 3d at 583 (denying PI motion where there was "a possibility but not a present danger of a recurrent violation"); *but see National Council of Nonprofits v. Office of Management and Budget*, 775 F. Supp. 3d 100, 119 (D.D.C. 2025) ("At the preliminary injunction stage, Defendants cannot simply claim that the need for an injunction is now moot because [they have] ceased [their] wrongful conduct.  This rings especially true when the cessation follow[s] the entry of a TRO.") (internal quotation marks and citations omitted); *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S. Ct. 894, 897-98 (1953).

2.  *The Short-Term Lack of In-Person Legal Visits Does Not Violate the Constitution*

Plaintiff also cannot show a likelihood of success on his claim relating to denial of access to legal counsel.  *See* Complaint ¶¶ 49-57.  Both before and after entry of the TRO, individuals detained at the 26 Federal Plaza Field Office have been able to make calls to attorneys via a landline telephone.  ICE Decl. ¶¶ 16-17; ICE Suppl. Decl. ¶¶ 20-24.  Within the first 24 hours of a detainee's arrival at the 26 Federal Plaza Field Office, the detainee is typically provided with three opportunities to make phone calls.  ICE Suppl. Decl. ¶ 20.  In addition, in accordance with the TRO, individuals in custody are able to make additional cost-free, unmonitored, unrecorded, and temporally unrestricted calls to their attorneys at a minimum of once during each subsequent 12-hour period in which they are detained.  *Id.* ¶ 22.  Individuals in custody are also provided the opportunity to schedule legal calls with their attorneys and attorneys may schedule calls with their clients.  *Id.* ¶¶ 22, 24.  The calls are free, there is no time limitation on attorney calls for individuals in custody, and the calls are confidential – *i.e.,* not recorded or monitored.  *Id.*[4]

---

[4] The 26 Federal Plaza Field Office does not have dedicated attorney call rooms for detainees.  *Id.* ¶ 23.

Courts generally uphold detention regulations as long as they are "reasonably related to legitimate penological interests," considering (1) whether there is a "valid, rational connection between the [prison] regulation and a legitimate and neutral governmental interest put forward to justify it," (2) "whether there are alternative means of exercising the asserted constitutional right that remain open to prison inmates," (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) "the absence of ready alternatives." *Turner v. Safly*, 482 U.S. 78, 89, 107 S. Ct. 2254, 2262 (1987).[5]  Under the circumstances, the detainees' lack of access to in-person legal visits does not violate their constitutional rights given the availability of confidential communications with legal access through the telephone, the lack of ready alternatives because of the layout of the 26 Federal Plaza Field Office holding area, and the short-term nature of the deprivation. *See generally id.*  In-person visits with attorneys are not a constitutional requirement when other means of communication are available.  *See Lyon v. ICE*, 171 F. Supp. 3d 961, 983 (N.D. Cal. 2016) (challenging only protocols for telephone access because the location of the facilities makes in-person visits "impractical at best," making telephonic access "critical") *cf. Turkmen v. Ashcroft*, No. 02-CV-2307 (JG), 2006 WL 1662663, at *49 (E.D.N.Y. June 14, 2006), *aff'd in part, vacated in part, remanded*, 589 F.3d 542 (2d Cir. 2009) (finding facts showing total "communications blackout" prior to immigration court hearings was sufficient to state a claim for relief).

---

[5] Plaintiff's citation to ICE's Performance-Based National Detention Standards ("PBNDS") governing attorney communication and access in immigration detention facilities nationwide, Complaint ¶ 54, is misplaced.  The 26 Federal Plaza Field Office is a holding facility *see id.* ¶ 21, not a detention facility; accordingly, the PBNDS standards do not apply.  Plaintiff's citation to the in-person attorney visitation policies at Riker's Island and the Metropolitan Detention Center, Pl. Br. at 26, is inapt for the same reason.

16

Furthermore, Plaintiff's suggestion that Defendants are interfering with detainees' access to attorneys by failing to accurately list an individual's location when the individual is being held at 26 Federal Plaza, Complaint ¶ 52, is not accurate. ICE's Online Detainee Locator System accurately identifies the location of detainees held at 26 Federal Plaza. ICE Decl. ¶ 6; ICE Suppl. Decl. ¶ 5.

### C. *Plaintiff Has Not Established He Will Suffer Irreparable Harm Absent Injunctive Relief*

For the same reasons that Plaintiff is unlikely to succeed on the merits of his claims, he also cannot establish that he will be subject to irreparable harm in the absence of injunctive relief. "The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (internal quotation marks and citations omitted). A movant can establish irreparable harm if she shows that "there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Id.* (internal quotation marks and citations omitted). Monetary harm is insufficient; a party seeking a preliminary injunction must show "evidence of damage that cannot be rectified by financial compensation." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989). Moreover, the irreparable harm alleged must be "actual and imminent, not remote or speculative." *Kamerling*, 295 F.3d at 214. The "mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction" or a TRO. *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991); *see also Winter*, 555 U.S. at 22, 129 S. Ct. at 375.

Here, Plaintiff only briefly argues that the alleged conditions of confinement constitute irreparable harm. *See* Pl. Br. at 27-28. Plaintiff fails to contest that the alleged harms are susceptible to monetary compensation. *See id.*; *Tucker*, 888 F.2d at 975. Indeed, because 26

Federal Plaza is a short-term processing and holding facility, any alleged injury will be temporally limited.  Furthermore, many of the conditions about which Plaintiff complains are refuted by the declarations submitted by the Defendants or have been addressed by measures taken in compliance with the TRO.

Similarly, Plaintiff's complaint about the denial of in-person access to legal counsel fails to establish irreparable harm.  Pl. Br. at 27-28.  Individuals in custody at 26 Federal Plaza are provided access to counsel through unmonitored telephone calls.  Moreover, the lack of in-person legal access is short-lived.  As such, it does not rise to the level of irreparable harm.

### D.  *The Public Interest Weighs Against Granting a PI*

The public interest weighs against granting a PI.  "Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest.  These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435, 129 S. Ct. 1749, 1762 (2009).  Here, those factors favor the Government.

The Government has a recognized public interest in the enforcement of United States law, including the immigration laws.  *Nken*, 556 U.S. at 435, 129 S. Ct. at 1762 ("[i]n considering [the merged final two stay factors], courts must be mindful that the Government's role as the respondent in every removal proceeding does not make the public interest in each individual one negligible."); *see also Huanga v. Decker,* 599 F. Supp. 3d 131, 145 (S.D.N.Y. 2022) ("The Government's interest in the enforcement of immigration laws is considerable. '[I]t must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.'") (quoting *Landon v. Plasencia,* 459 U.S. 21, 34, 103 S. Ct. 321, 330 (1982)).  Furthermore, in the context of detention, the Supreme Court has recognized that "the problems of prisons . . . require expertise, comprehensive planning, and

18

the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Procunier v. Martinez*, 416 U.S. 396, 404-05, 94 S. Ct. 1800, 1807 (1973).  "[C]ourts," by contrast, "are ill equipped to deal with the increasingly urgent problems of prison administration and reform." *Id.* 416 U.S. at 405; 94 S. Ct. at 1807.  Running a prison "is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Safley*, 482 U.S. at 85, 107 S. Ct. at 2259.  The "formidable task of running a prison" falls to those other two branches, and "separation of powers concerns counsel a policy of judicial restraint" and "deference to the appropriate prison authorities." *Id.*

With respect specifically to Plaintiff's requests, the relief sought could harm Defendants' ability to effectively manage its operations at the 26 Federal Plaza Field Office.  For example, if a court were to order Defendants to provide in-person legal visits at the 26 Federal Plaza Field Office that would create immense logistical difficulties.  ICE Suppl. Decl. ¶ 23.  Accordingly, the public interest weighs against injunctive relief.

## II.  The Court Should Require a Bond

The Court has required Plaintiff to post a $10 bond for purposes of the TRO.  TRO ¶ 8.  If the Court is inclined to grant a preliminary injunction, it may do so "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c). Accordingly, the Court should require Plaintiff to post bond pursuant to Rule 65(c).

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's

motion for a preliminary injunction.

Dated:  New York, New York
        August 18, 2025

<div style="margin-left:40%">

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:     /s/ *Jeffrey Oestericher*_____
        JEFFREY OESTERICHER
        Assistant United States Attorney
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        Telephone:  (212) 637-2695
        E-mail:  jeffrey.oestericher@usdoj.gov

</div>

20

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 6,248 words.