UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

SERGIO ALBERTO BARCO MERCADO. on
his own behalf and on behalf of others similarly situated,

               *Plaintiff*,                          No. 25 Civ. 6568 (LAK)

      v.

KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity; DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, Acting Director, Immigration and Customs Enforcement, in his official capacity; IMMIGRATION AND CUSTOMS ENFORCEMENT; MARCOS CHARLES, Acting Executie Associate Director, Immigration and Customs Enforcement, Enforcement and Removal Operations, in his official capacity; and LADEON FRANCIS, Acting Field Office Director of New York, Immigration and Customs Enforcement, in his official capacity,

               *Defendants*.
_____

**BRIEF FOR AMICUS CURIAE STATE OF NEW YORK
IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

|  |  |
|---|---|
| | LETITIA JAMES |
| |  *Attorney General* |
| |  *State of New York* |
| | 28 Liberty Street |
| BARBARA D. UNDERWOOD | New York, NY 10005 |
|  *Solicitor General* | (212) 416-6279 |
| ESTER MURDUKHAYEVA | ester.murdukhayeva@ag.ny.gov |
|  *Deputy Solicitor General* | |
|     *of Counsel* | |

# TABLE OF CONTENTS

                                                                 **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION AND INTERESTS OF AMICUS CURIAE ......................................................1

ARGUMENT

    DEFENDANTS MUST ENSURE THAT 26 FEDERAL PLAZA IS APPROPRIATE FOR
    EXTENDED DETENTION OR REFRAIN FROM USING 26 FEDERAL PLAZA FOR SUCH
    PURPOSES .............................................................................................................................3

CONCLUSION......................................................................................................................8

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Coniglio v. Thomas*,
    657 F. Supp. 409 (S.D.N.Y. 1987) ...................................................................................4

**Laws & Regulations**

N.Y. Correction Law
    § 45..................................................................................................................................5
    § 121................................................................................................................................4
    § 504................................................................................................................................5

9 N.Y.C.R.R.
    pt. 7210 ...........................................................................................................................5
    § 7210.4...........................................................................................................................5
    § 7210.6...........................................................................................................................5
    § 7210.10.........................................................................................................................5

**Miscellaneous Authorities**

Am. Immigr. Council, *Immigrants in New York* (2025),
    https://map.americanimmigrationcouncil.org/locations/new-york/ ..........................2

Bill Chappell, "*We Love Them": Small N.Y. Town Embraces a Family Freed from
    Immigration Detention*, NPR (Apr. 8, 2025), https://www.npr.org/2025/04/08/nx-s1-
    5354933/sackets-harbor-family-detained ...................................................................2

Carolyn Gusoff, *Outrage on Long Island after ICE Detains Bagel Shop Manager*, CBS
    News (updated June 23, 2025), https://www.cbsnews.com/newyork/news/ice-detains-
    long-island-bagel-shop-manager/ ................................................................................2

Dorsey & Whitney LLP, *Severing a Lifeline: The Neglect of Citizen Children in
    America's Immigration Enforcement Policy* (2009), https://www.dorsey.com/-
    /media/files/pro-bono/severing-a-lifeline-the-neglect-of-citizen-childre.pdf............3

Gwynne Hogan & Haidee Chu, *'Like Dogs in Here' - Videos Expose ICE Lockup Inside
    26 Federal Plaza*, The City (July 22, 2025), https://www.thecity.nyc/2025/07/22/
    video-26-federal-plaza-immigration-ice-dhs-cells/ ................................................ 5-6

Heather Koball et al., Urban Inst. & Migration Policy Inst., *Health and Social Service Needs
    of US-Citizen Children with Detained or Deported Immigrant Parents* (2015),
    https://www.urban.org/sites/default/files/publication/71131/2000405-Health-and-Social-
    Service-Needs-of-US-Citizen-Children-with-Detained-or-Deported-Immigrant-
    Parents.pdf .....................................................................................................................3

**Miscellaneous Authorities**                                                                                          **Page(s)**

Michael Elsen-Rooney, *A Bronx High Schooler Showed up for a Routine Immigration Court Date. ICE Was Waiting*, Chalkbeat N.Y. (May 26, 2025), https://www.chalkbeat.org/newyork/2025/05/27/bronx-high-school-student-detained-by-immigration-ice-agents ................................................................................................ 2

N.Y. Off. of the State Comptroller, Report 2017-S-2, *Facility Oversight and Timeliness of Response to Complaints and Inmate Grievances* (2018), https://osc.state.ny.us/audits/allaudits/093018/sga-2018-17s2.pdf ............................................. 4

N.Y. State Comm'n of Corr., *The Worst Offenders: The Most Problematic Local Correctional Facilities of New York State* (2018), https://scoc.ny.gov/system/files/documents/2023/09/problematic-jails-report-2-2018.pdf ............................................................ 4

Randy Capps et al., Urban Inst. & Migration Policy Inst., *Implications of Immigration Enforcement Activities for the Well-Being of Children in Immigrant Families: A Review of the Literature* (2015), https://www.migrationpolicy.org/sites/default/files/publications/ASPE-ChildrenofDeported-Lit%20Review-FINAL.pdf ............................... 3

U.S. Immigr. & Customs Enf't, ICE Directive No. 11087.2, Operations of ERO Holding Facilities (issued Jan. 31, 2024), https://www.ice.gov/doclib/foia/policy/directive11087.2.pdf ..................................................... 1

**INTRODUCTION AND INTERESTS OF AMICUS CURIAE**

The State of New York submits this amicus curiae brief in support of plaintiff's motion for a preliminary injunction with respect to detention conditions at 26 Federal Plaza. Since May 2025, defendants have escalated civil immigration enforcement activity in New York, including mass arrests and detention of individuals attending immigration court proceedings and routine-check-in appointments at the Immigration and Customs Enforcement (ICE) New York field office, located at 26 Federal Plaza in downtown Manhattan. Like other ICE field offices, 26 Federal Plaza contains several small holding rooms that are intended only for "short-term confinement of individuals who have recently been detained, or are being transferred to or from a court, detention facility, other holding facility, or other agency."[1]

Prior to June 2025, ICE guidelines restricted the use of field office holding rooms for detention to a maximum of 12 hours, absent exceptional circumstances.[2] But since then, ICE has authorized the use of field office holding facilities for up to 72 hours of detention.[3] The only justification given for this substantial change was "additional strain on finding and coordinating transfers" to available immigration detention facilities due to "increased enforcement efforts" and new policies precluding field officers from discretionarily releasing certain immigrants or declining to take certain immigrants into custody.[4] Although the memorandum provides that "[a]ll other hold room and hold facilities requirements continue to apply to ensure the safety, security and humane

---

[1] ICE Directive No. 11087.2, Operations of ERO Holding Facilities § 3.2 (issued Jan. 31, 2024) (footnote omitted).

[2] *Id*. at 2 n.3, *see also id.* at § 5.1(1).

[3] Memorandum for All ERO Field Office Directors 1 (June 24, 2025) (available as Exhibit 4 to Declaration of Heather Gregorian, ECF No. 11-4).

[4] *Id.* at 2.

treatment of those in custody in hold rooms and hold facilities,"[5] there is no indication that ICE evaluated whether any particular field office was in fact capable of housing more people for a longer time period consistent with such requirements.

The State has compelling interests in this litigation, and relevant experience as well. New York State is home to more than 4.5 million immigrants, who are valued and active contributors to our communities, work forces, and civic organizations.[6] Approximately one-quarter of New York's population was born outside of the United States, and immigrants comprise substantial segments of the State's workforce in key sectors such as health care, construction, and food service.[7] Many of the individuals recently detained by defendants reside in a household with United States citizen children; indeed nearly 500,000 New Yorkers reside in a home with at least one undocumented family member.[8] Defendants' vastly accelerated civil immigration enforcement activities have resulted not only in the detention conditions at issue in this litigation, but also in serious disruption in schools, workplaces, and public spaces across the State.[9]

Immigration detention in general has well-established detrimental effects on close family members, include housing insecurity, economic instability, and psychological and emotional

---

[5] *Id.*

[6] Am. Immigr. Council, *Immigrants in New York* (2025).

[7] *Id.*

[8] *Id.*

[9] *See, e.g.*, Bill Chappell, *"We Love Them": Small N.Y. Town Embraces a Family Freed from Immigration Detention*, NPR (Apr. 8, 2025); Carolyn Gusoff, *Outrage on Long Island after ICE Detains Bagel Shop Manager*, CBS News (updated June 23, 2025); Michael Elsen-Rooney, *A Bronx High Schooler Showed up for a Routine Immigration Court Date. ICE Was Waiting*, Chalkbeat N.Y. (May 26, 2025).

trauma.[10] When that detention occurs in overcrowded conditions that inflict undue suffering on the detainees, these effects are exacerbated.

At the same time, the State is sensitive to the governmental considerations at issue in this case. Like defendants, the State operates detention facilities across the State and exercises oversight over local jails and lockups operated by municipal and county governments. The State's experience in ensuring that facilities used for detention are in fact fit for such use reflects the State's strong interest in the health, welfare, and dignity of all of its residents, including incarcerated individuals, pretrial detainees, and others who are involuntarily held at government-operated secure facilities. Accordingly, the State is committed to supporting policies and practices that safeguard the rights of all New Yorkers, including immigrants detained by the federal government.

## ARGUMENT

### DEFENDANTS MUST ENSURE THAT 26 FEDERAL PLAZA IS APPROPRIATE FOR EXTENDED DETENTION OR REFRAIN FROM USING 26 FEDERAL PLAZA FOR SUCH PURPOSES

The State understands the gravity and challenges of maintaining and operating detention facilities. The New York State Department of Corrections and Community Supervision (DOCCS) operates the state prison system, which is primarily responsible for the long-term institutionalization and rehabilitation of offenders who have been convicted and have received prison sentences of longer than one year. In addition, the New York State Office of Mental Health

---

[10] Randy Capps et al., Urban Inst. & Migration Policy Inst., *Implications of Immigration Enforcement Activities for the Well-Being of Children in Immigrant Families: A Review of the Literature* 10-11 (2015); Heather Koball et al., Urban Inst. & Migration Policy Inst., *Health and Social Service Needs of US-Citizen Children with Detained or Deported Immigrant Parents* 5-9 (2015); *see also* Dorsey & Whitney LLP, *Severing a Lifeline: The Neglect of Citizen Children in America's Immigration Enforcement Policy* 65-68 (2009).

3

operates numerous facilities for individuals requiring intensive inpatient mental health services, including secure treatment facilities for dangerous sex offenders requiring civil confinement and individuals requiring forensic evaluations and related services. The New York State Office for People with Developmental Disabilities likewise operates several secure facilities for severely developmentally disabled individuals requiring intensive active treatment. Finally, municipal and county governments operate local jails or lockups, which primarily house individuals awaiting an initial appearance, trial, or sentencing, as well as convicted offenders who were sentenced to one year or less of imprisonment.[11] Although the State is not involved in the day-to-day operation and maintenance of local correctional facilities, the New York State Commission of Correction, an independent state agency tasked with monitoring all correctional facilities in the State, focuses its oversight efforts primarily on local and county institutions.[12]

In exercising its operational and oversight functions, the State has recognized both the interests of detained individuals who are "entitled to safe conditions of confinement,"[13] and the governmental prerogative to detain individuals when necessary and in accordance with the law. Although state law gives considerable flexibility to the agencies operating correctional and other

---

[11] New York law generally prohibits "the private operation or management" of correctional facilities. N.Y. Correction Law § 121.

[12] *See* N.Y. Off. of the State Comptroller, Report 2017-S-2, *Facility Oversight and Timeliness of Response to Complaints and Inmate Grievances* 7 (2018). Among other responsibilities, the Commission "regulates the construction and improvement of local facilities, the care, custody, correction, treatment, supervision, discipline, health standards," and other aspects of facility operation. N.Y. State Comm'n of Corr., *The Worst Offenders: The Most Problematic Local Correctional Facilities of New York State* 4 (2018).

[13] *Coniglio v. Thomas*, 657 F. Supp. 409, 413 (S.D.N.Y. 1987) (citing *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982)).

secure facilities, it recognizes that a facility should not be used for detention if it is unfit for such use.

For example, Correction Law § 504 expressly authorizes the transfer of incarcerated individuals from a local correctional facility to a different local facility when the original jail "becomes unfit or unsafe for the confinement of some or all of the incarcerated individuals," including when the original jail is no longer able to provide medical or mental health services or otherwise ensure the safety and welfare of some or all detainees.[14] Section 504 also allows DOCCS to accept the transfer of incarcerated individuals from local jails that are deemed "unfit or unsafe."[15] Finally, the Commission of Correction may seek an order to close a local facility in whole or in part because it is unsafe, unsanitary, or otherwise inadequate under the law.[16]

As noted above (at 1), the holding cells at 26 Federal Plaza have historically been authorized for use for up to twelve hours of detention. According to ICE data analyzed by *The City*, the average length of detention in these holding cells in June 2024 ranged from two to three hours, with virtually no overnight detentions.[17] By contrast, the average length of detention at 26 Federal Plaza in June 2025 was 103 hours.[18] In addition, an average of 89 people were detained

---

[14] *See* N.Y. Correction Law § 504; 9 N.Y.C.R.R. pt. 7210.

[15] N.Y. Correction Law § 504(2). The Commission of Correction must issue an order approving the transfer of persons between local jails, or the transfer of persons from a local jail to a DOCCS facility. *See* 9 N.Y.C.R.R. §§ 7210.4, 7210.6. Once the Commission has determined that such transfer "is no longer appropriate or necessary," it may revoke the transfer order and restore custody to the original facility. *Id.* § 7210.10.

[16] N.Y. Correction Law § 45(8)(a).

[17] Gwynne Hogan & Haidee Chu, *'Like Dogs in Here' – Videos Expose ICE Lockup Inside 26 Federal Plaza*, The City (July 22, 2025) (analyzing ICE data produced in response to Freedom of Information Act requests).

[18] *Id.*

5

overnight in the month of June 2025, with a peak of 186 persons detained overnight on June 5.[19] There is no indication in the ICE memorandum extending the use of holding cells for detention from 12 hours to 72 hours that defendants evaluated whether any field office, much less 26 Federal Plaza specifically, is equipped to provide a basic level of care to dozens of persons in detention for days at a time.

The admissions made to date by defendants in this litigation strongly suggest that the holding rooms at 26 Federal Plaza are not appropriate for routine overnight detention, much less for large groups of detainees. The declaration provided by an assistant field office director at 26 Federal Plaza explained that two of the four hold rooms used for detention are approximately 173 square feet in size, while the other two rooms are approximately 655 square feet and 821 square feet, respectively.[20] Three of the four rooms have only one toilet and sink, while the fourth room has two of each, and none of these facilities are private.[21] Counsel for defendants acknowledged "that there are no beds in these holding rooms and that [detainees] are not provided with sleeping mats" and "only provided with blankets."[22] Defendants also acknowledged that detainees "are provided two meals [per day] instead of three,"[23] and that the "meals are generally provided at least six hours apart."[24] Defendants admitted that medical personnel are not available at the facility overnight[25] and that detainees are allowed only "to bring in their prescription medication that they

---

[19] *Id.*

[20] *See* Decl. of Nancy Zanello ¶ 3 (Aug. 11, 2025), ECF No. 58.

[21] *Id.* ¶ 8.

[22] Tr. of Hearing on T.R.O. at 9:20-23 (Aug. 12, 2025), ECF No. 64.

[23] *Id.* at 9:24-25.

[24] Zanello Decl. ¶ 12.

[25] *Id.* ¶ 14.

had in their possession at the time of arrest" or "to have their attorney or family member later bring their prescription medication."[26] Finally, defendants conceded that in-person visitation from either family members or legal counsel is not available,[27] and that there are no dedicated attorney phone lines or private rooms for phone calls.[28]

Defendants have identified no possible justification for increasing immigration enforcement activity when they lack the facilities and infrastructure to do so responsibly, nor could they do so. The government is simply not permitted to detain people in numbers, and for periods of time, that cannot be adequately accommodated by the available housing. This Court should ensure that defendants carry out their civil immigration enforcement activity in accordance with the Constitution and governing law.

---

[26] *Id.* ¶ 15.

[27] *Id.* ¶ 18; Tr. at 9:5-7, 10:11-13.

[28] Tr. at 9:7-12; *see id.* at 13:16-14:8.

**CONCLUSION**

This Court should grant plaintiffs' request for a preliminary injunction.

Dated:    New York, New York
          August 19, 2025

                                              Respectfully submitted,

                                              LETITIA JAMES
                                                *Attorney General*
                                                *State of New York*
                                              Attorney for Amicus Curiae
                                              State of New York

                                  By:    */s/ Ester Murdukhayeva*
                                             ESTER MURDUKHAYEVA
                                             Deputy Solicitor General

BARBARA D. UNDERWOOD                28 Liberty Street
  *Solicitor General*                            New York, NY 10005
ESTER MURDUKHAYEVA                 (212) 416-6279
  *Deputy Solicitor General*           ester.murdukhayeva@ag.ny.gov
    *of Counsel*

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 19, 2025, I filed the foregoing document on the Electronic Case Filing system which caused the document to be served on all counsel of record.

Dated:    New York, New York
            August 19, 2025

                                                  */s/ Ester Murdukhayeva*
                                                  ESTER MURDUKHAYEVA