**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SERGIO ALBERTO BARCO MERCADO, on his own behalf and on behalf of others similarly situated, <br><br>                            Plaintiff, <br><br>         v. <br><br> KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity; DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, Acting Director, Immigration and Customs Enforcement, in his official capacity; IMMIGRATION AND CUSTOMS ENFORCEMENT; MARCOS CHARLES, Acting Executive Associate Director, Immigration and Customs Enforcement, Enforcement and Removal Operations, in his official capacity; LADEON FRANCIS, Acting Field Office Director of New York, Immigration and Customs Enforcement, in his official capacity; <br><br>                        Defendants. | Case No. 25 Civ. 6568 (LAK) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

## PRELIMINARY STATEMENT

This action addresses unconstitutional conditions of confinement that Defendants have imposed on detained immigrants held at 26 Federal Plaza ("26 Fed").  Despite Defendants' efforts over the past two weeks to obscure and deny these conditions, Plaintiff Barco Mercado has submitted extensive first-hand evidence of Defendants' practice of crowding immigrants into short-term processing rooms and holding them there for lengthy periods, without beds, showers, sufficient food, hygiene supplies, prescription medication, or access to lawyers.  Defendants' unconstitutional practices are ongoing.  Even after this Court issued a Temporary Restraining Order, ECF No. 65 ("TRO") ordering Defendants to improve conditions and allow for confidential communication with attorneys, Defendants have flouted the court's order.

Plaintiff has demonstrated a strong likelihood of success on his First and Fifth Amendment claims.  Defendants have not denied the conditions described by Plaintiffs, nor do they argue that the described conditions are constitutional.  Instead, they argue that *current* conditions at 26 Fed are constitutional and that a preliminary injunction is unnecessary.  But current conditions continue to violate both the Constitution and the Court's TRO.  Defendants' obfuscation since this lawsuit was filed – including emptying the 26 Fed hold rooms just hours before filing a sworn declaration denying crowding; averring misleading and unsupported statements to the Court; and violating the TRO even while they submit sworn declarations professing adherence to it – make clear there is no basis to believe that any temporary changes will remain in place, absent further injunctive relief.  Defendants have fallen far short of their stringent and formidable burden to show that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.  The Court should enter a Preliminary Injunction extending the requirements in the TRO and modifying them as requested below.

## <u>FACTUAL AND PROCEDURAL HISTORY</u>

Mr. Barco Mercado filed this case on August 8, 2025 after he was arrested and detained at 26 Fed.  Complaint, ECF No. 1.  He seeks to represent a class of all immigrants who are detained and who will be detained by ICE at 26 Fed.  Corrected Complaint, ECF No. 51, ¶ 59.

Plaintiff submitted 21 declarations showing that immigrants have been detained in inhumane and unsanitary conditions at 26 Fed for several days and often weeks at a time, and denied basic necessities and any ability to communicate confidentially with their attorneys.  *See* Mem. of Law in Supp. of Pl.'s Mot. for a TRO, ECF No. 10 ("TRO Mem."), at 6–16; ECF Nos. 12–22, 25–32, 62–63 (Decls. Submitted in Supp. of Pl.'s Mot. for TRO).  Video footage of 26 Fed has confirmed these conditions.  Ex. 5, ECF No. 11-5.  According to ICE's own data, the average length of detention at 26 Fed in June 2025 was 103 hours, and an average of 89 people were detained each day in June 2025, with a peak of 186 individuals held overnight on June 5.[1]

Additional declarations reveal a bleak picture of conditions at 26 Fed between August 3 and August 15—a period covering the days prior to, during, and shortly after the filing of this lawsuit and this Court's orders.

For example, Defendants held Oscar Pascual Lopez at 26 Fed from August 3 to August 11 and held Dulys Argueta Garcia from August 9 until August 11.  *See* Declaration of Oscar Pascual Lopez ("Pascual Decl."), ¶ 5; Declaration of Dulys Argueta Garcia ("Argueta Decl."), ¶ 3.  Both men experienced the same conditions reported over the previous months.  *See* Pascual Decl. ¶¶ 6–14; Argueta Decl. ¶¶ 4–11.  They reported crowding, sleeping on the floor, extreme temperatures, receiving cold food only twice a day, an inability to bathe or change clothes, and a

---

[1] Gwynne Hogan & Haidee Chu, *'Like Dogs in Here' – Videos Expose ICE Lockup Inside 26 Federal Plaza*, The City (July 22, 2025), *available at* https://www.thecity.nyc/2025/07/22/video-26-federal-plaza-immigration-ice-dhs-cells/ (analyzing ICE data).

lack of medical treatment.  Pascual Decl. ¶¶ 6–9, 13, Argueta Decl. ¶¶ 5–9.  Mr. Pascual reported people sleeping near the toilets because "there was not enough space for everyone to lay down." Pascual Decl. ¶ 7.  Both men were limited to a few short outgoing calls closely monitored by guards, and neither could contact a lawyer.  *Id.* ¶¶ 10–11; Argueta Decl. ¶¶ 10–11.

Meanwhile, on August 11, the Court was assigned this case.  At approximately 10:30 a.m., the Court ordered the government to file a response by 5 p.m. the same day and set a Temporary Restraining Order hearing for the following day at 10 a.m.  Order, ECF No. 54.

Both Mr. Pascual and Mr. Argueta reported that around the time that the Court issued its order and a few hours before the government's response was due, ICE officers loaded them into vans with most of the people detained at 26 Fed and drove them to a New Jersey airport.  Pascual Decl. ¶ 15; Argueta Decl. ¶ 12.  ICE officers put them on a plane, which flew them to the Midwest and then to Texas.  Pascual Decl. ¶ 16; Argueta Decl. ¶¶ 12–13.

A few hours after essentially emptying 26 Fed, Defendants proceeded to file, at 4:56 p.m., a declaration by Nancy Zanello, Assistant Field Office Director in the New York City Field Office of Enforcement and Removal Operations for ICE, that stated: "Currently, there are 24 [noncitizens] in custody at [26 Fed]."  Declaration of Nancy Zanello, ECF No. 58, ¶ 3.

Ms. Zanello's declaration said nothing about conditions at 26 Fed over the previous months.  She described conditions in present tense, stating that hygiene products, a change of clothes, multiple blankets, bottled water, and a third meal per day are made available to detained individuals; that hold rooms and bathrooms are cleaned multiple times a day, and that individuals can access prescription medications.  *Id.* ¶¶ 8–15.  She stated detained individuals "can make as many free, unmonitored legal calls to their attorneys via an available landline," with language assistance services, and that there is "no time restriction on the legal calls."  *Id.* ¶¶ 16–18.

At the August 12 TRO hearing, defense counsel stated that "it does not appear presently that there is overcrowding at 26 Federal" and that "presently . . . there are 26 individuals total in the four rooms combined."  TRO Hr'g Tr., ECF No. 64 ("Tr."), at 6:23-24.  When the Court challenged defense counsel, noting that, "voluntary cessation of improper behavior does not defeat an application for equitable relief because the improper behavior, absent that relief, could resume overnight or in short order," *id.* at 7:18-21, Defendants' counsel reiterated that crowding was not present "and the inference that the government is then going to relapse into overcrowding is one that we, at least at present, would reject."  *Id.* at 7:24–8:2.

Shortly after 4 p.m. the same day, this Court issued a TRO finding that "plaintiff and members of the alleged class have suffered, and are likely to suffer, irreparable harm absent the temporary relief granted herein, and to prevail on the merits of their claims to an extent that would justify preliminary and permanent relief substantially as set forth below."  TRO, ECF No. 65 ("TRO"), at 1.  The Court ordered Defendants to immediately improve conditions at 26 Fed, including by providing at least 50 square feet for each detained individual; providing clean bedding mats, soap, towels, toilet paper, oral hygiene products, and feminine hygiene supplies; cleaning the facility thoroughly three times per day; and allowing for "confidential, unmonitored, unrecorded, temporally unrestricted, and free telephone calls to counsel."  *Id.* ¶ 1.  The Court also ordered Defendants to distribute a notice of rights specifying that detained individuals be allowed additional food, water, blankets, and medical care upon request, and ordered that no later than August 14, Defendants must provide procedures for attorneys to schedule calls.  *Id.* ¶¶ 2, 4.[2]

The same day this Court issued the TRO, Manuel Lucero Lojano was arrested at a check-in appointment and detained at 26 Fed.  Declaration of Manuel Lucero Lojano ("Lucero Decl."),

---

[2] The Court modified the TRO on August 17, clarifying provisions regarding interpreter services and prescription medication and denying Defendants' request to modify the requirement to provide toothbrushes.  ECF No. 70.

¶ 3.  Defendants held him at 26 Fed from August 12 through August 14, and his report of the conditions confirms that Defendants failed to implement any of the TRO's requirements.  In fact, certain conditions appear to have worsened since the TRO went into effect.

Mr. Lucero reported getting food only once or twice a day.  *Id.* ¶ 4.  Detained individuals wore the clothes they arrived in, and when Mr. Lucero asked for new clothes, guards refused to provide him any.  *Id.*  Mr. Lucero reported sleeping on the cold floor and was not provided even an aluminum blanket until the second day, so he spent the first night "freezing and worried [he] would get sick."  *Id.* ¶ 5.  He saw people forced to wait a day for care after requesting medical assistance.  *Id.* ¶ 10.  Mr. Lucero saw the room cleaned just once during his two and a half days there, and reported not "even hav[ing] sufficient toilet paper."  *Id.* ¶¶ 5, 7.  He did not receive anything to clean his teeth, not even a wipe.  *Id.*  He was able to call his family twice, but the calls were "very short—maybe 3 or 5 minutes—and a guard was always listening."  *Id.* ¶ 8.  When he asked for a call on August 12, "the guards said no."  *Id.*

It appears that as of August 15, Defendants were still not allowing confidential, temporally unrestricted legal calls.  For example, Sheila Bracamontes was detained at 26 Fed from August 7 through August 18 apart from a brief period when 26 Fed was evacuated; her attorney Amy Leipziger only received brief, two-minute-long calls with her and could hear other people nearby.  Declaration of Amy Leipziger ("Leipziger Decl."), ¶¶ 5, 9–10.  Ms. Bracamontes reported sleeping on the ground and not receiving adequate food, and when her legal team brought a toothbrush and change of clothes, neither were provided to her.  *Id.* ¶ 11.

Finally, despite defense counsel's assurances that the government would not "relapse into overcrowding," Tr. at 7:25–8:2, that is exactly what happened.  When Mr. Lucero arrived on August 12, his understanding was that "a large group had just left" (*i.e.* in the vans the government

filled prior to filing its August 11 opposition). Lucero Decl. ¶ 6. However, within days, the room "held as many as 30 or 40 people." *Id*. Even assuming some TRO requirements may have taken a few days to implement, there is no excuse for the immediate re-crowding of the hold rooms *after* they were reduced to 26 people across all four rooms, and *after* the Court ordered 50 square feet of space per person, which Defendants acknowledge means even the largest room could only hold 11 people. Supplemental Declaration of Nancy Zanello, ECF No. 74 ("Zanello Suppl. Decl."), ¶ 9. Meanwhile, on August 13, Tricia McLaughlin, a Department of Homeland Security spokeswoman, stated that "[t]his order and this lawsuit are driven by complete fiction about 26 Federal Plaza."[3]

On August 18, Defendants filed their opposition to this motion, submitting as evidence only Ms. Zanello's supplemental declaration. *See* Zanello Suppl. Decl. Ms. Zanello once again provides no detailed information regarding conditions over the past several months (beyond noting the average length of detention between July 21 and August 13, 2025 was two days), and there is no indication she has even visited the facility. Her declaration once again merely lists conditions in the present tense, essentially describing the TRO's requirements. *Id.* ¶¶ 7–25.

## **ARGUMENT**

### I.    **A Preliminary Injunction Is Warranted and Necessary**

Plaintiff has made a clear showing of a likelihood of success on the merits.[4] He has submitted 25 declarations from formerly detained individuals and attorneys consistently detailing conditions of confinement. Declarations obtained in recent days confirm conditions are ongoing despite the entry of the TRO. Plaintiff has also cited extensive case law supporting a finding that

---

[3] Luis Ferré-Sadurní, *ICE Must Improve Conditions in N.Y.C. Migrant Holding Cells, Judge Rules*, N.Y. Times (Aug, 12, 2025) (updated Aug, 13, 2025), *available at* https://www.nytimes.com/2025/08/12/nyregion/immigrant-detention-conditions-court-order.html.

[4] Plaintiff reincorporates all arguments, including regarding the balance of the equities and the bond requirement, from his opening papers. TRO Mem. at 28–31.

these conditions violate the First and Fifth Amendments and are causing irreparable harm. *See*
TRO Mem. at 17–31. In response to the mountain of evidence and legal authorities, Defendants
have submitted only Ms. Zanello's declaration, which as noted, merely recites the TRO
requirements. Notably, neither Ms. Zanello's declaration nor Defendants' opposition brief, ECF
No. 73 ("Defs.' Opp'n"), denies the conditions described in Plaintiff's 25 declarations. Nor do
they cite any authority for the proposition that the conditions described in these declarations
would meet the constitutional standards. Instead, Defendants ask the Court to credit the general
assertions of Ms. Zanello's declaration instead of Plaintiff's specific factual record and to thus
find that Plaintiff is not likely to succeed on his claims.

In short, Defendants assert, based on a single declaration belied by extensive first-hand
evidence, that current conditions are constitutionally adequate and that no further Court oversight
is needed. They invite the Court to blindly trust them to comply with their constitutional
obligations, even while their opposition papers obfuscate and attempt to mislead, they refuse to
acknowledge that there has been any problem, and even as a DHS spokesperson calls this entire
lawsuit and the extensive evidence that has been submitted a "complete fiction."

The Court should reject Defendants' invitation and issue a Preliminary Injunction for
several reasons. First, Plaintiff has already submitted substantial evidence showing that
Defendants are not complying with the TRO, and that the conditions described in Defendants'
opposition papers have no basis in reality. *See* Lucero Decl.; Leipziger Decl. Second,
Defendants do not even claim that a new policy has been put in place, let alone one that will be
permanent and binding. Instead, they merely pronounce that "[c]urrent conditions of
confinement . . . do not violate the Constitution" and that "while some of the measures
Defendants implemented were in response to the Court's TRO, these measures are now the

regular practice at the facility." Defs.' Opp'n at 14. The only supporting evidence for this proposition is a paragraph in Ms. Zanello's supplemental declaration stating that as of 11:59 p.m. on August 15, 2025, there were 8 individuals in custody at 26 Fed. Zanello Suppl. Decl. ¶ 9. A purported "regular practice" is not the same as a future commitment. Defendants have not even alluded to any forward-looking policies or practices.

Finally, even if Defendants were *currently* complying with the TRO and had expressed an intention to continue doing so, neither of which is the case, they still would not meet the requirements of the voluntary cessation doctrine, which places a "stringent, and a formidable burden" on Defendants "of showing that it is *absolutely clear* the allegedly wrongful behavior could not reasonably be expected to recur." *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 603–04 (2d Cir. 2016) (emphasis in original) (citations omitted). As Defendants concede, "[a]t the preliminary injunction stage, Defendants cannot simply claim that the need for an injunction is now moot because [they have] ceased [their] wrongful conduct." Defs.' Opp'n at 15 (quoting *Nat'l Council of Nonprofits v. OMB*, 775 F. Supp. 3d 100, 119 (D.D.C. 2025)). Defendants also concede this is "especially true when the cessation follow[s] the entry of a TRO." *Id.*; *see also Costa v. Bazron*, 464 F. Supp. 3d 132, 142 (D.D.C. 2020) ("If compliance with the terms of a TRO were sufficient to defeat entry of a preliminary injunction, few—if any—cases would make it past the TRO stage.").

## II.    Irreparable Harm Is Certain Without a Preliminary Injunction

It is clear that the putative class members will be irreparably harmed absent a preliminary injunction, and Defendants do not contest this point. The constitutional violations at 26 Fed are ongoing even with a TRO in place; additional court oversight is needed to ensure that Defendants do not cause additional harm.

Beyond the "presumption of irreparable injury that flows from a violation of constitutional rights," *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996), Plaintiff's declarations reveal multiple accounts of detained individuals suffering severe emotional, psychological, and physical harm from Defendants' mistreatment. Ms. Chipantiza, who was forced to spend five days in blood-soaked clothes because she was not given menstrual products, still has nightmares from what she experienced at 26 Fed. Declaration of Joselyn Chipantiza Sisalema, ECF No. 28, ¶¶ 6, 16. Her gastritis has worsened as well. *Id.* ¶ 16. Mr. Quevedo, detained for nine days at 26 Fed, is "extremely traumatized" from the experience and noted that he "did not even go through something like this in [his] home country" of Venezuela, which he fled because he feared for his life. Declaration of Daniel Quevedo, ECF No. 31, ¶¶ 2, 9. He still has back pain from sleeping on the concrete floor and nightmares about the lights being kept on for hours. *Id.* ¶ 12. Mr. Maradiaga stated that the horrific conditions made him feel like he "was losing [his] head," and "[i]t was like being in hell." Declaration of Geovani Maradiaga Ochoa, ECF No. 15, ¶ 19. He was denied access to his lawyer during the six days of his detention and could not stay in the country with his wife and children, who are all U.S. citizens. *Id.* ¶ 6–7, 11, 21. Ms. Bracamontes is currently hospitalized due to alleged suicidal ideations after spending nine days at 26 Fed. Leipziger Decl. ¶¶ 5, 8. There is no question that putative class members are at risk of irreparable harm if these conditions continue.

### III. The Court Should Issue a Preliminary Injunction That Extends the Provisions of the TRO With Minor Modifications

In light of the foregoing, Plaintiff respectfully requests that the Court issue a Preliminary Injunction that extends the provisions of the TRO, with certain tailored modifications.

First, several TRO sections state that certain items, including clean clothing, a private area for changing, blankets, bottled water, and a third meal per day, be made available only upon

request. *See* TRO ¶ 2. The evidence makes clear, however, that when detained individuals ask for items from officers, they are often ignored or berated. *See, e.g.*, Lucero Decl. ¶ 4 ("I asked to also get new clothes but the guards said no."); Declaration of Adelfo Eliseo Bautista Sanchez, ECF No. 62, ¶ 12 ("When we asked for water or blankets, the guards would get angry and not give us anything that we asked for."); Supplemental Declaration of Sergio Alberto Barco Mercado, ECF No. 61, ¶ 12 (noting that when diabetics who were not receiving their medication asked for different food, "the guards would not give them anything different."). Plaintiff thus respectfully requests that Paragraph 2 be modified to state that the listed items be provided periodically, at least twice per day, rather than upon request.

Second, Plaintiff respectfully requests that the retaliation provision be modified to read: "They shall not retaliate in any manner against Plaintiff or any witnesses (including in their immigration proceedings or in any other context) for complaining about unconstitutional conditions at 26 Federal Plaza or about any alleged violation of this preliminary injunction."

Finally, Plaintiff requests that the Court require Defendants to file a status report with the Court biweekly (every other week) detailing their specific compliance or any lack of compliance with the Preliminary Injunction and including, *inter alia*, updates on the number of detained individuals and the average length of stay during that period.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for a Preliminary Injunction and modify the provisions as detailed above.

DATED:  New York, New York                    Respectfully submitted,
        August 21, 2025

AMERICAN CIVIL LIBERTIES                       WANG HECKER LLP
UNION FOUNDATION
Eunice Cho                                     s/ Heather Gregorio
915 15th Street, N.W.                          Heather Gregorio
Washington, DC 20005                           Mariann Meier Wang
202-548-6616                                   Alice Reiter
echo@aclu.org                                  Daniel Mullkoff
                                               Lily Sawyer Kaplan**
AMERICAN CIVIL LIBERTIES                       111 Broadway, Suite 1406
UNION FOUNDATION                               New York, New York 10006
Kyle Virgien*                                  (212) 620-2600
425 California Street, Suite 700               hgregorio@wanghecker.com
San Francisco, CA 94104                        mwang@wanghecker.com
(415) 343-0770                                 areiter@wanghecker.com
kvirgien@aclu.org                              dmullkoff@wanghecker.com
                                               lsawyerkaplan@wanghecker.com
NEW YORK CIVIL LIBERTIES UNION
FOUNDATION                                     MAKE THE ROAD NEW YORK
Amy Belsher                                    Harold A. Solis
Robert Hodgson                                 Paige Austin
Claire Molholm**                               301 Grove Street
Molly K. Biklen                                Brooklyn, NY 11237
125 Broad Street, 19th Floor                   Tel. (718) 418-7690
New York, NY 10004                             Fax (866) 420-9169
Tel: (212) 607-3300                            harold.solis@maketheroadny.org
abelsher@nyclu.org                             paige.austin@maketheroadny.org
rhodgson@nyclu.org
cmolholm@nyclu.org
mbiklen@nyclu.org


*Application for *Pro hac vice* admission forthcoming    **SDNY admission pending


*Attorneys for Plaintiff and proposed Class Counsel*