UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SERGIO ALBERTO BARCO MERCADO, on his own behalf and on behalf of others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity; DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, Acting Director, Immigration and Customs Enforcement, in his official capacity; IMMIGRATION AND CUSTOMS ENFORCEMENT; MARCOS CHARLES, Acting Executive Associate Director, Immigration and Customs Enforcement, Enforcement and Removal Operations, in his official capacity; LADEON FRANCIS, Acting Field Office Director of New York, Immigration and Customs Enforcement, in his official capacity;<br><br>  Defendants. | Case No. 25 Civ. 6568 (LAK) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**PRELIMINARY STATEMENT**

For months, Defendants have arrested and then detained immigrants at 26 Federal Plaza in Manhattan ("26 Fed") in inhumane and unconstitutional conditions and subjected them to the same ongoing practices.  Defendants have held detainees in crowded conditions; forced them to sleep on the concrete floor with only an aluminum blanket; denied them basic hygiene products; provided only two small meals per day; denied them access to prescription medications and adequate medical care; and denied them the ability to have confidential communications with lawyers.  These are exactly the conditions that Plaintiff experienced after he was arrested and detained at 26 Fed on August 8, and he has submitted 25 declarations from detained individuals and attorneys that describe these ongoing conditions in remarkably consistent detail.  Plaintiff's constitutional claims are quintessential claims routinely held to warrant class-wide resolution.

Defendants nevertheless try to defeat class certification by attempting to split hairs.  First, they argue without any factual basis that the proposed class is overbroad because some individuals may theoretically be held only for a few hours, speculating without record support that such a brief detention in these conditions would not be unconstitutional.  They further argue that Plaintiff is not a typical or adequate representative because he was held for two and a half days and did not suffer every specific deprivation or harm that other detained individuals have suffered, notwithstanding that it was Defendants' choice to move him out quickly after this suit was filed.  But this is not the correct class certification standard.  Under Defendants' logic, a class could never be certified based on conditions of confinement because of minor variations in the class members' actual experiences, and any class representative could quickly be "picked off" by being transferred out of detention before suffering the full extent of harms.

That is not the law. It is well established that commonality is satisfied when a lawsuit challenges a practice or policy that affects all putative class members, and that some variation in individual experiences will not preclude a finding of commonality. Moreover, Plaintiff easily meets the standards for typicality and adequacy under Rule 23, both because he was subject to the range of unconstitutional conditions at 26 Fed and because he has demonstrated a commitment to representing and advocating for the putative class going forward.

The Court should reject Defendants' arguments and certify the class.

## FACTUAL BACKGROUND[1]

Plaintiff was detained by Immigration and Customs Enforcement ("ICE") officers on Friday, August 8. Corrected Complaint, ECF No. 51, ¶ 6. That evening, Plaintiff moved for class certification in this action to challenge unconstitutional conditions of confinement and denial of access to counsel on behalf of all individuals who are and will be detained at 26 Fed.

Defendants transferred Mr. Barco Mercado from 26 Fed on August 10. Supplemental Declaration of Sergio Barco Mercado, ECF No. 61 ("Barco Mercado Suppl. Decl."), ¶ 5. On Monday, August 11—the first business day following the filing of this lawsuit and around the time the Court ordered Defendants to respond to the emergency filing and set the TRO hearing, ECF No. 54—Defendants nearly emptied the facility. Defendants transferred dozens of detained individuals out of 26 Fed, loaded them into vans, and drove them to an airport. Declaration of Oscar Pascual-Lopez, ECF No. 82 ("Pascual-Lopez Decl."), ¶¶ 15–17; Declaration of Dulys Argueta Garcia, ECF No. 83 ("Argueta Decl."), ¶¶ 12–13. A few hours later, Defendants stated in their opposition papers, ECF No. 57, that only 24 individuals remained at 26 Fed. They

---

[1] Plaintiff hereby incorporates by reference the facts set forth in Plaintiff's memorandum of law in support of the Motion for Class Certification, ECF No. 37, at 2–12.

2

subsequently stated that as of 11:59 p.m. on August 15, 2025, there were 8 individuals detained there.  Supplemental Declaration of Nancy Zanello, ECF No. 74 ("Zanello Suppl. Decl."), ¶ 9.

Mr. Barco Mercado has confirmed that he endured the very same unconstitutional and inhumane conditions of confinement at the facility as others have for months.  *See* Barco Mercado Suppl. Decl. ¶¶ 6–12.  His account makes clear that on the eve of the sudden emptying of 26 Fed, he was detained in a hold room approximately 20 ft by 50 ft in size with roughly 40 other people.  *Id.* ¶ 8.  For the more than two days he was held at 26 Fed, Mr. Barco Mercado slept on the concrete floor, "freezing," with only an aluminum blanket to cover him; was held in an overcrowded room that "smelled like sewage"; had no access to a shower; was offered only two meals per day, which were "inedible;" had insufficient water, which was on at least one occasion squirted by a guard into the mouths of multiple detained individuals, "like we were animals."  *Id.* ¶¶ 6–7, 9.  Mr. Barco Mercado could not make or receive a confidential legal call.  *Id.* ¶ 10.  He spoke with his attorney on August 8, but the conversation was one or two minutes long and was not confidential; it was made with a guard standing next to him and Mr. Barco Mercado could hear breathing on the line.  *Id.* ¶ 11.  He did not receive prompt or adequate medical treatment for his toothache while he was detained.  *Id.* ¶ 12.  The experience strengthened Mr. Barco Mercado's resolve to represent the putative class; he has stated, "I want to stand up for the people who are there.  What is happening to them is not fair."  *Id.* ¶ 14.

The conditions alleged in the Complaint and established by the 25 declarations have continued, if not worsened, since the TRO hearing on August 12, including the continued denial of access to counsel in a confidential setting, inadequate provision of food and water, denial of a change of clothes or opportunity to bathe, and a lack of oral hygiene products.  *See* Declaration

3

of Manuel Lucero Lojano, ECF No. 84 ("Lucero Decl."), ¶¶ 4–5, 7–10; Declaration of Amy Leipziger, ECF No. 85 ("Leipziger Decl."), ¶¶ 5, 9–11.

## ARGUMENT

**I.    The Class Definition Is Not Overbroad and Satisfies the Commonality Requirement**

The Court should reject Defendants' baseless assertion that the definition of the class is overbroad and undermines commonality.

First, the class definition is proper. At the time an individual is detained at 26 Fed, there is no way to know how long they will be kept there.[2] *See, e.g.*, Declaration of Hugo Sanchez Trillos, ECF No. 27 ("Trillos Decl."), ¶ 6; Declaration of Geovani Maradiaga Ochoa, ECF No. 15 ("Maradiaga Decl."), ¶ 6; Declaration of Carlos Lopez Benitez, ECF No. 16, ¶ 10. Notably, Defendants do not claim that there is a definite group of individuals for whom it is known, at the time they are detained at 26 Fed, that they will be held there for only a few hours. Plaintiff challenges the same common conditions of confinement to which all individuals detained at 26 Fed are subject.[3] Thus, the putative class appropriately encompasses every individual who is detained or will be detained at 26 Fed, because every such individual risks suffering harm caused by Defendants' unlawful practice or policy. *Unknown Parties v. Johnson*, 163 F. Supp. 3d 630, 638–39 (D. Ariz. 2016) (holding that variations in the "length of individual detentions, the placement or grouping of individual detainees, or other personalized factors" are "irrelevant to the commonality determination"); *Parsons v. Ryan*, 754 F.3d 657, 683 (9th Cir. 2014).

---

[2] Indeed, record evidence shows that transfer out of 26 Fed does not guarantee an individual will not be detained there again. Trillos Decl. ¶ 6; Declaration of Adelfo Eliseo Bautista Sanchez, ECF No. 62 ("Sanchez Decl."), ¶ 5.
[3] Defendants "dispute[]" that individuals are denied access to counsel, Defs.' Br. in Opp'n to Pl.'s Mot. for Class Cert., ECF No. 79 ("Defs.' Opp'n"), at 6, but such consideration of the merits is inappropriate on a class certification motion. *Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 43 (S.D.N.Y. 2018); *Unknown Parties v. Johnson*, 163 F. Supp. 3d 630, 636 (D. Ariz. 2016) (class certification "is not an opportunity to hold a dress rehearsal for the trial on the merits") (internal quotations and citation omitted). Regardless, the record shows that 26 Fed detainees, including Plaintiff, have been denied attorney access, and whether that denial violates the Constitution is common to all putative class members.

Defendants rely on inapposite cases to support their mistaken framing of the putative class. In *Sheehan v. Purolator, Inc.*, the court did not find the class definition overbroad; in fact, it denied certification of the proposed class because it found there was no aggrieved class, and the named plaintiffs were inadequate class representatives. 103 F.R.D. 641, 650 (E.D.N.Y. 1984), *aff'd*, 839 F.2d 99 (2d Cir. 1988). And in *Faralli v. Hair Today, Gone Tomorrow*, the court rejected the class definition as overly broad because it sought to encompass customers who were satisfied with the product and therefore suffered no harm from the alleged fraudulent representations. No. 06-CV-504, 2007 WL 120664, at *6 (N.D. Ohio Jan. 10, 2007) ("A proposed class may be deemed overly broad if it would include members who have not suffered harm at the hands of the defendant *and are not at risk to suffer such harm*.") (emphasis added and emphasized clause omitted from Defendants' quotation). Here, every individual taken into custody at 26 Fed risks suffering the unconstitutional harms alleged in the Complaint.

Second, Defendants' contention that variation in length of detention across class members defeats commonality is wrong. All putative class members have been or will be subject to the same unconstitutional conditions and denial of attorney access resulting from Defendants' common policies and practices. That is what matters for purposes of commonality. *Johnson*, 163 F. Supp. 3d at 638 ("Where system-wide conditions such as those presented here underlie the various alleged harms, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality.") (internal quotation marks and citation omitted); *MacNamara v. City of New York*, 275 F.R.D. 125, 149 (S.D.N.Y. 2011) (different detention lengths did not defeat certification where all class members were subject to same policies and conditions).

5

Plaintiff has submitted a robust factual record replete with accounts of consistent conditions and uniform conduct on the part of Defendants at 26 Fed. Across 13 declarations from detained noncitizens and 12 attorney declarations, the evidence establishes unequivocally that Defendants consistently deny detained individuals at 26 Fed access to attorneys, beds, adequate meals and water, showers, toothbrushes, and prescription medications, and subject them to extreme temperatures. And, notwithstanding Defendants' generalized declaration, Zanello Suppl. Decl., new evidence shows that they continue to subject noncitizens to these same conditions, even following this Court's entry of a TRO directing Defendants to improve conditions at 26 Fed. Lucero Decl. ¶¶ 4–8; Leipziger Decl. ¶ 11. Accordingly, putative class members are all detained by Defendants at 26 Fed and are subject to the same aforementioned conditions. The resolution of whether those conditions violate the constitution is common to the class. *See Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137–38 (2d Cir. 2015).

Defendants boldly assert, without support, that the "customary use" of the holding cells at 26 Fed—*i.e.* to hold people for only a few hours before they are transferred elsewhere—was not unconstitutional, and that to the extent those rooms are occasionally still used in that manner, there would be no constitutional violation. Defs.' Opp'n at 6. This is a red herring. Nothing in the factual record suggests that the hold rooms are being used as they were initially intended; to the contrary, ICE's own data shows that while the average length of detention in June 2024 ranged from two to three hours, with virtually no overnight detentions, the average length of detention in June 2025 was 103 hours. Br. for *Amicus Curiae* State of N.Y. in Supp. of Pl.'s Mot. for a Prelim. Inj., ECF No. 76, at 5 (citing Gwynne Hogan & Haidee Chu, *'Like Dogs in Here' – Videos Expose ICE Lockup Inside 26 Federal Plaza*, The City (July 22, 2025) (analyzing

6

ICE data produced in response to Freedom of Information Act requests)). Once again, Defendants refuse to grapple with the evidence documenting long stays at 26 Fed.

Even assuming Defendants have or will maintain reduced detention lengths at 26 Fed, an assumption that is unsupported by the record, the voluntary cessation doctrine places a "stringent, and a formidable burden" on them to show "that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 603–04 (2d Cir. 2016) (citations omitted); *see also* Pl.'s Reply Mem. of L. in Supp. of Pl.'s Mot. for a Prelim. Inj., ECF No. 81, at 8. Defendants' vague and present-tense assertions come nowhere close to meeting that formidable burden, and the "suspicious timing and circumstances" of Defendants' moving dozens of detained individuals out of 26 Fed hours before the deadline to oppose Plaintiff's motion for temporary injunctive relief, Pascual-Lopez Decl. ¶ 15; Argueta Decl. ¶ 12, make clear that there is no basis to believe unconstitutional practices will cease. *Mhany Mgmt.*, 819 F.3d at 604; *accord Am. Council of Blind of N.Y., Inc. v. City of New York*, 495 F. Supp. 3d 211, 248–49 (S.D.N.Y. 2020) (applying voluntary cessation exception to mootness in class action where defendants implemented new policy on summary judgment deadline). Defendants made no efforts to remedy conditions at 26 Fed for months, despite news coverage and demands from members of Congress and others, until the moment they were forced to respond to this lawsuit and even after the entry of a TRO. Regardless, the record suggests the unlawful conduct continues.

## II.     Plaintiff Satisfies Rule 23's Typicality and Adequacy Requirements

### A. Plaintiff's Claims Are Typical of the Claims of Unnamed Class Members

Defendants argue that because Mr. Barco Mercado was moved after approximately two days, he did not suffer the same constitutional harms as the putative class members. To the

7

contrary, Mr. Barco Mercado was subject to the same conditions typical of unnamed class members: he was denied a bed and was forced to sleep on the concrete floor; he was denied meals every six hours and the regular provision of water; he was denied access to a shower; and he was denied basic hygiene products. *See* Barco Mercado Suppl. Decl. ¶¶ 6–9. He was also deprived meaningful, confidential access to his attorney. *Id.* ¶¶ 10–11. The sleeping conditions he endured are *per se* unconstitutional. *Vazquez v. Gray*, 523 F. Supp. 1359, 1365 (S.D.N.Y. 1981) (citing *Lareau v. Manson*, 651 F.2d 96, 105 (2d Cir. 1981)). Further, the denial of sufficient meals and water for the more than two days that Plaintiff spent at 26 Fed, particularly when compounded with the unsanitary conditions and overcrowding, is sufficient to establish constitutional violations of the same kind as other class members held there for even longer durations. *See, e.g.*, *Edwards v. Arocho*, 125 F.4th 336, 351 (2d Cir. 2024).

      Defendants attempt unavailingly to distinguish Plaintiff's experience. While Plaintiff received some pain medication, his swollen tooth went untreated. Barco Mercado Suppl. Decl. ¶ 12. His youth and relative health, *id.* ¶ 13, are not material to his constitutional claims because they do not show that he endured different conditions caused by Defendants' conduct. *See Parsons*, 754 F.3d at 679 ("[I]nadequate health care in a prison system endangers every inmate[.]"). The nonconfidential phone call that Plaintiff had with his attorney was only one or two minutes long, and two officers monitored the conversation. Barco Mercado Suppl. Decl. ¶ 11. That Mr. Barco Mercado had already retained counsel at the time of his detention does not make him atypical in this case alleging violations of the First and Fifth Amendments, as whether or not a noncitizen has retained a lawyer does not impact their right to access counsel. *See Torres v. DHS*, 411 F. Supp. 3d 1036, 1067 (C.D. Cal. 2019). Moreover, many other detained

individuals likewise have counsel at the time of their detention.  *E.g.*, Sanchez Decl. ¶ 7; Maradiaga Decl. ¶ 7.

Plaintiff's claim thus "arises from the same course of events," and he "makes similar legal arguments to prove [Defendants'] liability."  *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).  He alleges the same claims and injury—constitutional violations arising from Defendants' denial of attorney access and the risk of harm created by the unsafe, unsanitary conditions at 26 Fed.  The differences identified by Defendants are not material for purposes of typicality.  *See id.* at 937; *MacNamara*, 275 F.R.D. at 152.

Finally, to the extent Defendants argue Mr. Barco Mercado was detained for too short a time to qualify as class representative—an argument that fails for the reasons above—it also bears noting that Defendants *chose* to move Mr. Barco Mercado during his third day at 26 Fed.  A defendant cannot avoid liability for unlawful conduct by temporarily and strategically ceasing unlawful conduct or by picking off proposed class representatives.  *See Am. Council of Blind*, 495 F. Supp. 3d at 248 ("[S]uch timing suggests a litigation-driven motivation, as opposed to an authentic, durable commitment on the part of the defendant to mend its ways."); *Leslie v. City of New York*, No. 22 Civ. 2305 (NRB), 2023 WL 2612688, at *8 (S.D.N.Y. 2023) (allowing defendants to pick off class representatives would "risk placing the defendant in control of a putative class action, effectively allowing the use of tactical procedural maneuvers to thwart class litigation at will").  Here, Defendants could rapidly transfer any class representative and claim his or her experience was thus atypical.  As the additional declarations in the record demonstrate, Defendants' unlawful actions are ongoing and class-wide relief is warranted.

### B. Mr. Barco Mercado Will Adequately Protect the Interests of the Proposed Class

The final requirement of Rule 23(a), that "the representative parties will fairly and

adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), requires two showings: "the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) (citations omitted). Plaintiff easily meets both requirements.

Mr. Barco Mercado is motivated to represent the class because he believes that "what is happening at 26 Federal Plaza is not right," and "people do not have lawyers and they cannot fight on their own." Barco Mercado Suppl. Decl. ¶¶ 13–14. He understands the claims and developments in the case, has reviewed the pleadings, understands the duties of a class representative, and has recent knowledge of the conditions at 26 Fed as he was moved only 11 days ago. *Id.* ¶¶ 6, 13–14; Sec. Suppl. Decl. of Sergio Barco Mercado, ¶¶ 3–6. Defendants have identified no interests of Plaintiff that are antagonistic to the interests of other class members.

Finally, Defendants argue that Mr. Barco Mercado does not suffer the same injuries as other class members because Defendants chose to transfer him soon after he filed this lawsuit. Defs.' Opp'n at 8–9. This argument rehashes Defendants' typicality arguments, and for the reasons already stated, should be rejected. *Cf. In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123 (S.D.N.Y. 2001) ("[T]he named representatives only need to be adequate and do not need to be the best or most typical of all possible representatives."); *Unknown Parties v. Johnson*, 163 F. Supp. 3d 630, 640 (D. Ariz. 2016).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant the motion for class certification, appoint Mr. Barco Mercado representative of the class, and appoint undersigned counsel as class counsel.

DATED:  New York, New York  
          August 22, 2025

Respectfully submitted,

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>Eunice Cho<br>915 15th Street, N.W.<br>Washington, DC 20005<br>202-548-6616<br>echo@aclu.org<br><br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>Kyle Virgien*<br>425 California Street, Suite 700<br>San Francisco, CA 94104<br>(415) 343-0770<br>kvirgien@aclu.org<br><br>NEW YORK CIVIL LIBERTIES UNION FOUNDATION<br>Amy Belsher<br>Robert Hodgson<br>Claire Molholm**<br>Molly K. Biklen<br>125 Broad Street, 19th Floor<br>New York, NY 10004<br>Tel: (212) 607-3300<br>abelsher@nyclu.org<br>rhodgson@nyclu.org<br>cmolholm@nyclu.org<br>mbiklen@nyclu.org | WANG HECKER LLP<br><br>s/ Heather Gregorio<br>Heather Gregorio<br>Mariann Meier Wang<br>Alice Reiter<br>Daniel Mullkoff<br>Lily Sawyer Kaplan**<br>111 Broadway, Suite 1406<br>New York, New York 10006<br>(212) 620-2600<br>hgregorio@wanghecker.com<br>mwang@wanghecker.com<br>areiter@wanghecker.com<br>dmullkoff@wanghecker.com<br>lsawyerkaplan@wanghecker.com<br><br>MAKE THE ROAD NEW YORK<br>Harold A. Solis<br>Paige Austin<br>301 Grove Street<br>Brooklyn, NY 11237<br>Tel. (718) 418-7690<br>Fax (866) 420-9169<br>harold.solis@maketheroadny.org<br>paige.austin@maketheroadny.org |

*Application for *Pro hac vice* admission forthcoming   **SDNY admission pending

*Attorneys for Plaintiff and proposed Class Counsel*

11