# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---

SERGIO ALBERTO BARCO MERCADO, on his own behalf and on behalf of others similarly situated,

　　　　　　　Plaintiff,

　　v.

KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity; DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, Acting Director, Immigration and Customs Enforcement, in his official capacity; IMMIGRATION AND CUSTOMS ENFORCEMENT; MARCOS CHARLES, Acting Executive Associate Director, Immigration and Customs Enforcement, Enforcement and Removal Operations, in his official capacity; LADEON FRANCIS, Acting Field Office Director of New York, Immigration and Customs Enforcement, in his official capacity;

　　　　　　　Defendants.

Case No. 25 Civ. 6568 (LAK)

---

# MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR CONTEMPT AND SANCTIONS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................. 1

FACTS ....................................................................................................................................... 2

    A.  Procedural History ......................................................................................................... 2

    B.  Defendants Have Repeatedly Flouted the Law and this Court's Orders ........................... 3

ARGUMENT ............................................................................................................................ 13

I.     The Court Should Hold Defendants in Civil Contempt.................................................... 13

    A.  The Terms of the TRO and the Preliminary Injunction Are Clear
        and Unambiguous ....................................................................................................... 14

    B.  Clear and Convincing Evidence Establishes that Defendants Have
        Failed to Comply with the Court's Orders.................................................................... 16

    C.  Defendants Have Not Attempted to Comply in a Reasonable Manner ...................... 19

II.    The Court Should Impose Monitoring Mechanisms to Ensure Future Compliance......... 21

III.   The Court Should Award Coercive Sanctions and Attorneys' Fees................................. 23

CONCLUSION......................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*A.B. by & through Trueblood v. Washington State Dep't of Soc. & Health Servs.*,
   681 F. Supp. 3d 1149 (W.D. Wash. 2023) ................................................................ 20

*Amaker v. Goord*, No.
06 Civ. 490A (SR), 2012 WL 4718661 (W.D.N.Y. Aug. 16, 2012) ................................ 19, 20, 21

*Benjamin v. Fraser*,
   No. 75 Civ. 3073, 2002 WL 31845111 (S.D.N.Y. Dec. 16, 2002) ........................... 24

*Casale v. Kelly*,
   710 F. Supp. 2d 347 (S.D.N.Y. 2010) .................................................... 22, 23, 24, 25

*Donovan v. Sovereign Sec. Ltd.*,
   726 F.2d 55 (2d Cir. 1984) ........................................................................ 14

*Flaherty v. Filardi*,
   No. 03 Civ. 2167 (LTS)(HBP), 2009 WL 3762305 (S.D.N.Y. Nov. 10, 2009) ...................... 14

*Hernandez v. County of Monterey*,
   2023 WL 6299863 (N.D. Cal. Sept. 26, 2023) ............................................ 25

*In re Dickinson*,
   763 F.2d 84 (2d Cir. 1985) ....................................................................... 21

*King v. Allied Vision, Ltd.*,
   65 F.3d 1051 (2d Cir. 1995) ..................................................................... 14

*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*,
   885 F.2d 1 (2d Cir. 1989) ....................................................................... 20

*Medina v. Buther*,
   No. 15 Civ. 1955, 2019 WL 581270 (Feb. 13, 2019) ................................... 23, 24, 25

*Mobile Cnty. Jail Inmates v. Purvis*,
   551 F. Supp. 92, 97 (S.D. Ala. 1982), *aff'd sub nom. Mobile Cnty. v. Purvis*,
   703 F.2d 580 (11th Cir. 1983) .......................................................... 20, 25

*Nunez v. N.Y.C Dep't of Corr.*,
   758 F. Supp. 3d 190 (S.D.N.Y. 2024) ...................................................... *passim*

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*,
   369 F.3d 645 (2d Cir. 2004) ................................................... 14, 21, 23, 24

*Parsons v. Ryan*,
    949 F.3d 443 (9th Cir. 2020)…………………………………………….…………….. 24

*Powell v. Ward*,
    487 F. Supp. 917 (S.D.N.Y. 1980), *aff'd as modified*,
    643 F.2d 924 (2d Cir.), *cert. denied*, 454 U.S. 832, 102 S. Ct. 131 (1981)............ 22, 23, 24, 25

*Telenor Mobile Commc'ns AS v. Storm LLC*,
    587 F. Supp. 2d 594 (S.D.N.Y. 2008) ................................................................... 14

*Zino Davidoff SA v. CVS Corp.*,
    No. 06-CV-15332-RJS, 2008 WL 1775410 (S.D.N.Y. Apr. 17, 2008).................................... 19

## PRELIMINARY STATEMENT

Plaintiff Sergio Alberto Barco Mercado, on his own behalf and on behalf of the now-provisionally certified class (collectively, "Plaintiffs"), brought this case after he was detained at 26 Federal Plaza ("26 Fed") to address the unlawful conditions of confinement and lack of attorney access at the facility.

From the earliest stages of this action and continuing to the present, Defendants Kristi Noem, Department of Homeland Security, Todd Lyons, Immigration and Customs Enforcement ("ICE"), Marcos Charles, and LaDeon Francis ("Defendants") have engaged in a pattern of obfuscation: representing to the Court and in public statements that they are acting lawfully and that there is no basis to Plaintiffs' claims, while continuing to flout the law, their own policies, and this Court's orders.

More than three months have passed since this Court issued a Temporary Restraining Order on August 12, 2025 requiring Defendants to implement specific and detailed policies to rectify their unconstitutional practices, which were later incorporated into a Preliminary Injunction issued on September 17, 2025. In contravention of these orders, however, Defendants appear never to have implemented many of the required procedures, particularly those regarding attorney access, hygiene, and the provision of the Notice of Rights to all detained individuals.

Plaintiffs have conferred with Defendants on multiple occasions, but attempts to obtain assurances that Defendants will comply with this Court's orders remain futile. Defendants provided a wholly insufficient response to Plaintiffs' first letter regarding these issues and have not responded substantively to Plaintiffs' second letter. Meanwhile, testimony from detained individuals and the attorneys who have tried in vain to speak with them continues to accumulate, showing that more than three months after this Court ordered immediate changes to their

practices, Defendants continue to ignore these directives.  Plaintiffs now seek the Court's

assistance.  Defendants' ongoing, intentional violations of Court orders merit a finding of

contempt and the imposition of sanctions.  The Court's orders are clear and unambiguous, the

proof of noncompliance is clear and convincing, and the evidence shows that Defendants have

been far from diligent in any attempts to reasonably comply with the Court's orders.  As such, a

finding of contempt with associated fines and sanctions, including attorneys' fees, is appropriate.

## FACTS

### A.  Procedural History

On August 8, 2025, Mr. Barco Mercado was arrested at a scheduled court appearance and

detained at 26 Fed.  Corrected Compl., ECF No. 51 ("Compl."), ¶ 6, attached as Exhibit 1 ("Ex.

1") to the Declaration of Heather Gregorio in Supp. of Pls.' Mot. for Contempt ("Gregorio

Decl.").  Shortly thereafter, he filed this action, which included an emergency request for a

Temporary Restraining Order ("TRO"), seeking to represent himself and other immigrants who

were or would be detained by ICE at 26 Fed.  *Id.*, ¶ 59; Order to Show Cause for a TRO &

Prelim. Inj., ECF No. 9.

Plaintiffs submitted 21 declarations showing that for months, immigrants routinely had

been detained in inhumane and unsanitary conditions at 26 Fed for several days and sometimes

weeks at a time, and without exception were denied basic necessities and any ability to

communicate confidentially with their attorneys.  *See* Mem. of Law in Supp. of Pl.'s Mot. for a

TRO, ECF No. 10 ("TRO Mem."), at 6–16; ECF Nos. 12–22, 25–32, 62–63 (Decls. Submitted in

Supp. of Pl.'s Mot. for TRO).

**B. Defendants Have Repeatedly Flouted the Law and this Court's Orders**

From the start of the case, Defendants have made misleading statements, evaded accountability, and continued the unlawful conditions at 26 Fed.

On August 11, at approximately 10:30 a.m., the Court ordered the government to file a response to Mr. Barco Mercado's emergency motion by 5 p.m. that day, and set a TRO hearing for the following day at 10 a.m.  Order, ECF No. 54.  Within hours, ICE officers loaded the majority of individuals detained at 26 Fed into vans and drove them to a New Jersey airport, where they were flown to other detention facilities.  *See* Declaration of Oscar Pascual Lopez ("Pascual Decl."), ECF No. 82, ¶ 15–16; Declaration of Dulys Argueta Garcia ("Argueta Decl."), ECF No. 83, ¶ 12–13.  Promptly after depopulating 26 Fed, Defendants filed a declaration by Nancy Zanello, Assistant Field Office Director of ICE's New York City Field Office of Enforcement and Removal Operations, stating that there were "[c]urrently" only 24 individuals at 26 Fed across the four hold rooms, Declaration of Nancy Zanello, ECF No. 58 ("Zanello Decl."), ¶ 3, whereas Plaintiffs' declarants had reported between 50 and 90 individuals packed into just *one* of the four hold rooms during the prior weeks.  *See* TRO Mem. at 6.

Ms. Zanello's August 11 declaration said nothing about conditions at 26 Fed over the previous weeks or months, stating only in the present tense that hygiene products, a change of clothes, multiple blankets, bottled water, and a third meal per day were made available to detained individuals; that the hold rooms and bathrooms were cleaned multiple times a day; and that individuals could access prescription medications.  Zanello Decl., ¶¶ 8–15.  She stated that detained individuals "can make as many free, unmonitored legal calls to their attorneys via an available landline," with language assistance services, and that there is "no time restriction on the legal calls."  *Id.*, ¶¶ 16–19.  The conditions that she described were unrecognizable as compared

to the conditions described in the numerous supporting declarations filed three days prior. In fact, on August 12, Mr. Barco Mercado reported that between August 8 and 10, he had experienced "exactly the conditions that [the Complaint] describes" at 26 Fed, including freezing temperatures, insufficient food and water, serious crowding of more than 40 people into a single hold room, no ability to make confidential legal calls, and lack of proper medical treatment. *See* Second Declaration of Sergio Alberto Barco Mercado ("Second Barco Mercado Decl."), ECF No. 61, ¶¶ 6–12.

At the August 12 TRO hearing, defense counsel echoed Ms. Zanello's declaration, stating, "it does not appear presently that there is overcrowding at 26 Federal" and that "presently . . . there are 26 individuals total in the four rooms combined." TRO Hr'g Tr., ECF No. 64 ("Tr."), at 6:6–7; 6:23–24. When the Court challenged defense counsel, noting that, "voluntary cessation of improper behavior does not defeat an application for equitable relief because the improper behavior, absent that relief, could resume overnight or in short order," *id.* at 7:18–21, defense counsel reiterated that crowding was not present, "and the inference that the government is then going to relapse into overcrowding is one that [Defendants], at least at present, would reject." *Id.*, at 7:24–8:2.

Later that day, this Court issued a TRO ordering Defendants immediately to improve conditions at 26 Fed, including by providing at least 50 square feet for each detained individual; providing clean bedding mats, soap, towels, toilet paper, oral hygiene products, and feminine hygiene supplies; cleaning the facility thoroughly three times per day; and allowing for "confidential, unmonitored, unrecorded, temporally unrestricted, and free telephone calls to counsel." TRO, ECF No. 65, at 1–2. The Court also ordered Defendants to distribute a Notice of Rights specifying that detained individuals must be allowed additional food, water, blankets,

and medical care upon request, and ordered that no later than August 14, Defendants must provide procedures for attorneys to schedule calls with individuals detained at 26 Fed.  *Id.*, ¶¶ 2–4.[1]

Notwithstanding Ms. Zanello's description of the conditions at 26 Fed as of August 11 and notwithstanding the Court's August 12 TRO, evidence quickly emerged that from August 12 through 15, Defendants failed to implement any of the TRO's requirements, and that in fact certain conditions appeared to worsen after the TRO went into effect.  For instance, Manuel Lucero Lojano, who was detained from August 12 through 14, experienced overcrowding, received food only once or twice per day, and slept on a cold floor without a blanket.  *See* Declaration of Manuel Lucero Lojano ("Lucero Decl."), ECF No. 84, ¶¶ 3–6.  He reported that guards refused to provide him with clothes upon request, that people were forced to wait for medical assistance, and that there was insufficient cleaning of the room, a lack of toilet paper, and nothing with which to clean his teeth.  *Id.*, ¶¶ 4–7, 10.  Further, he was permitted only three-to-five-minute phone calls once or twice that were closely monitored.  *Id.* at ¶ 8.  When he asked if he could call a lawyer, an officer told him no.  *Id.*, ¶ 9.  Attorney Amy Leipziger reported that she and her client, who was detained from August 7 to August 18, could only speak for two-minute-long calls, that her client was sleeping on the ground without adequate food, and that she was denied a toothbrush and change of clothes despite her requests for such items.  Declaration of Amy Leipziger ("Leipziger Decl."), ECF No. 85, ¶¶ 5, 9–11.

---

[1] The Court modified the TRO on August 17, clarifying provisions regarding interpreter services and prescription medication and denying Defendants' request to modify the requirement to provide toothbrushes.  ECF No. 70.

On August 13, Tricia McLaughlin, a spokeswoman for Defendant Department of Homeland Security, stated that "[t]his order and this lawsuit are driven by complete fiction about 26 Federal Plaza."[2]

On August 18, Defendants filed their opposition to Plaintiff's motion for a preliminary injunction, submitting as evidence only Ms. Zanello's supplemental declaration. *See* Supplemental Declaration of Nancy Zanello, ECF No. 74 ("Zanello Suppl. Decl."). Ms. Zanello once again provided no information regarding conditions over the past months (beyond noting that the average length of detention between July 21 and August 13, 2025 was two days). *Id.*, ¶ 6. There was no indication she had even visited the facility. She once again merely listed conditions in the present tense, essentially describing the TRO's requirements and stating that they were all in effect. *Id.*, ¶¶ 7–25.

Meanwhile, Defendants continued flagrantly to violate the TRO's provisions. On August 21, a 19-year-old immigrant was taken into custody at 26 Fed. *See* Declaration of Nathan Yaffe ("Yaffe Decl."), ¶ 4–5. The individual's attorney, Nathan Yaffe, made several attempts to contact him that afternoon and the following morning by phone and by email. *Id.*, ¶ 6–8. Despite the TRO's requirement that "a telephone number for attorneys to call in order to schedule telephone calls with Detainees [be] conspicuously displayed on the ICE internet web site," and that such number be "monitored and answered without undue delay from 9 a.m. until 5 p.m.," TRO ¶ 4(a)–(b), Mr. Yaffe could not reach anyone through those publicly listed numbers, Yaffe Decl., ¶ 6–8. *See also* Prelim. Inj. ¶ 4(a)–(b), ECF No. 97 (ordering same). The

---

[2] Luis Ferré-Sadurní, *ICE Must Improve Conditions in N.Y.C. Migrant Holding Cells, Judge Rules*, N.Y. Times (Aug. 12, 2025) (updated Aug. 13, 2025), *available at* https://www.nytimes.com/2025/08/12/nyregion/immigrant-detention-conditions-court-order.html.

number listed on the ICE website for the New York Field Office (212-436-9315) led to a recording stating that the line was disconnected, and no one answered the number listed on the ICE Detainee Locator (212-620-3441) despite several calls on August 21 and August 22 during business hours. Yaffe Decl., ¶ 7. When Mr. Yaffe emailed newyork.outreach@ice.dhs.gov on August 22, he was told he needed to submit a "duly executed G-28 on behalf of [his] client." Yaffe Dec., Ex. 1, at 7 (Email exchanges dated August 22, 2025). Mr. Yaffe pointed out that the TRO did not require submission of a Form G-28. *Id.* at 6. Ms. Zanello responded to his email, writing "I am well versed in Barco Mercado." *Id.* at 5. She told Mr. Yaffe that a signed G-28 was required, and that "your G-28 is unsigned by your supposed client or authorized signatory therefore we cannot disclose information nor facilitate a call." *Id.* But when Mr. Yaffe thereafter submitted a signed Form G-28 to nycdetaineeinquiry@ice.dhs.gov, an ICE official told him that no calls were available for four days, until the afternoon of August 26. Yaffe Decl. at ¶ 8; *see also* Yaffe Decl., Ex. 2 (Email exchanges dated August 22, 2025). His client was moved out of 26 Fed before Mr. Yaffe was able to schedule a call with him. Yaffe Decl., ¶ 8.

The Form G-28 requirement appears nowhere in the Preliminary Injunction and makes it functionally impossible for attorneys to schedule calls, because detained individuals cannot sign such forms and because the call itself may be a precursor to establishing the requisite attorney-client relationship that a Form G-28 memorializes. ICE has clearly stated that a Form G-28 is not required for pre-representational legal calls. *See, e.g.*, ICE Performance-Based National Detention Standards 2011 (2016), at 399.

Another attorney, Matthew Bray, emailed NYCDetaineeInquiry@ice.dhs.gov with a duly executed G-28 form on Tuesday, September 9, 2025, requesting a call with his client who was detained at 26 Fed. *See* Declaration of Matthew Bray ("Bray Decl."), at ¶ 7; Bray Decl., Ex. 1.

He received a response later that day indicating that "this week's schedule for calls [was] full" and asking him to choose a time the following week. Bray Decl., Ex. 1 at 2. The earliest available appointment offered was six days later, on September 15. *Id.*, at 3. His client was transferred out of 26 Fed before that time. Bray Decl., ¶ 8.

Meanwhile, on September 17, the Court issued a Preliminary Injunction that extended the provisions in the TRO until resolution of this case. Prelim. Inj., ECF No. 97. The Court also provisionally certified a class of "all immigration detainees who now or will be detained for 12 or more hours by U.S. Immigration and Customs Enforcement at 26 Federal Plaza, New York, NY." Op., ECF No. 96 at 53.

The Court's issuance of the Preliminary Injunction appeared to have no impact on Defendants' pattern of noncompliance. On September 26, another attorney, Diana Yanguas Rosen, repeatedly attempted to contact a detained individual to no avail. *See* Declaration of Diana Yanguas Rosen, *P.R.P. v. Francis et al.*, No. 25 Civ. 8112, ECF No. 4-1 ("Rosen Decl."), at ¶ 30. The number listed on the Detainee Locator went straight to voicemail and stated that no voicemail service was set up. *Id.*, ¶ 31. A few hours later she called again and reached someone at that number, but the person stated that a legal call would not be possible because 26 Fed was a "holding facility" instead of a detention center. *Id.*, ¶¶ 32–33. When Ms. Rosen informed the official of the Preliminary Injunction in this case, the man stated that he had never heard of the court order and that there were no legal calls at 26 Fed. *Id.*, ¶¶ 34–35. After additional efforts to contact her client and repeatedly informing the government official of the orders in this case, Ms. Rosen was told that her client would call her, but the official refused to confirm whether the line would be confidential. *Id.*, ¶¶ 36–38.

On Wednesday, October 1, 2025, Harold Solis, one of Plaintiffs' counsel, attempted to schedule a call with a client at 26 Fed by email.  *See* Emails dated October 1–2, 2025, attached as Exhibit 2 to the Gregorio Decl.  The person who responded first told Mr. Solis that a G-28 form was required, and then once one was provided, stated that there was no availability that week, noting that the earliest available time to schedule a call with the client was six days later on the following Tuesday (October 7).  *Id.*

On October 7, 2025, Plaintiffs' counsel wrote to Jeffrey Oestericher, counsel for Defendants, informing him of these violations of the TRO and Preliminary Injunction.  *See* Letter from Heather Gregorio to Jeffrey Oestericher, dated October 7, 2025, attached as Exhibit 3 to the Gregorio Decl. ("Oct. 7 Letter").  In an attempt to meet and confer in good faith, Plaintiffs' counsel requested that by October 15, Defendants provide: (1) a copy of the Notice of Rights required by the Preliminary Injunction, (2) a sworn declaration stating, *inter alia*, that the attorney access issues had been remedied, that a telephone number for attorneys to call to schedule calls with detained individuals was publicly posted, monitored and answered without undue delay from 9 a.m. to 5 p.m., that attorneys could schedule calls with detained individuals "on the date and time requested or promptly thereafter, and no later than 24 hours after the time requested" and that such calls were confidential, and (3) a copy of all email exchanges in which attorneys had requested legal calls following the implementation of the TRO and a copy of all responses to such requests.  *Id.*

Meanwhile, Plaintiffs' counsel continued to receive information reflecting Defendants' noncompliance with the Preliminary Injunction.  On October 9, 2025, attorney Zoey Jones received a call from her client, who had been arrested and detained that day at 26 Fed. Declaration of Zoey Jones ("Jones Decl."), ¶ 4.  Ms. Jones could tell from the background noise

that the call was not confidential.  *Id.*  The next day, October 10, Ms. Jones called (212) 436-

9315, the number listed on ICE's New York Field Office website for 26 Fed.  On her second

attempt, an officer answered and informed her that it was not possible to schedule a legal call

with her client and that she had to wait for her client to call her.  *Id.*, ¶ 6.  However, the officer

refused to confirm that her client could make phone calls and stated that there was no way for her

to request or schedule a call.  *Id.*  He even refused to confirm whether her client was still at 26

Fed.  *Id.*  Ms. Jones never received any call from her client, and she learned on October 13 that

he had been removed from the country.  *Id.*, ¶¶ 7–8.

On October 15, 2025, in response to Plaintiffs' October 7 Letter, defense counsel

provided a declaration by William Joyce, Deputy Field Office Director in the New York City

Field Office of Enforcement and Removal Operations at ICE.  *See* Declaration of William Joyce

with attached exhibit, dated October 15, 2025, attached as Exhibit 4 to the Gregorio Decl.

("Joyce Decl.").  Mr. Joyce did not contest any of the specific assertions of non-compliance in

Plaintiffs' letter.  Mr. Joyce's declaration stated that (212) 436-9400 had been designated as the

phone number for attorneys to call to schedule legal calls, and that

NYCIntakeInquiries@ice.dhs.gov had just been designated as an email address for scheduling

attorney-client calls.  *Id.*, ¶¶ 5–6.  However, Mr. Joyce acknowledged that the email address was

not yet functional at the time of his declaration.  *Id.*, ¶ 6.  He was further silent on the primary

concerns that Plaintiffs' counsel had raised, namely Defendants' delays in responding to attorney

requests to schedule calls and the inability of attorneys to obtain a scheduled call promptly after

requesting one, if at all.  The Notice of Rights attached to Mr. Joyce's declaration consisted of

nothing more than a paragraph pasted from the Preliminary Injunction, without any context or

instructions for the detained individuals who receive it.  *See* Joyce Decl., Ex. 1.

Following receipt of Defendants' insufficient response, Plaintiffs' counsel received several additional reports of ongoing noncompliance at 26 Fed.

On October 21, attorney Deisy Flores called (212) 436-9400, the number listed in Mr. Joyce's declaration, and was told that it was not the right number and that these types of calls get routed to them "a lot."  *See* Declaration of Deisy Flores ("Flores Decl."), ¶ 4–5.  The person who answered the phone told Ms. Flores to instead send an email to newyork.outreach@ice.dhs.gov to schedule legal calls.  *Id.*, ¶ 5.  This is a different email address than the one designated in Mr. Joyce's declaration.  *See* Joyce Decl., ¶ 6.

Plaintiffs' counsel was further informed that on November 4, Carlos Chalco Chango, an immigrant from Ecuador who is blind, was detained for about four days at 26 Fed.  He was not provided with an accessible Notice of Rights or the ability to make confidential calls to an attorney.  *See* Declaration of Carlos Chalco Chango ("Chalco Decl."), ¶¶ 2, 6.

Plaintiffs' counsel wrote again to Mr. Oestericher on November 12, raising these additional concerns, explaining the insufficiency of Mr. Joyce's response and attaching a revised, more comprehensible Notice of Rights along with a Spanish translation.  *See* Letter from Heather Gregorio to Jeffrey Oestericher dated November 12, 2025, attached as Exhibit 5 to the Gregorio Decl. ("Nov. 12 Letter").  Plaintiffs' counsel also expressed concerns regarding the government's practice of requiring G-28 forms as a threshold requirement to schedule a legal call, pointing out that (a) this made it functionally impossible for attorneys to schedule calls, and (b) that ICE has clearly stated such forms are not required for pre-representational calls.  *Id.* at 3.

Plaintiffs' counsel requested that by no later than November 19, 2025, Defendants provide:

- Confirmation that Defendants would adopt and provide the revised Notice of Rights.

- An updated sworn declaration that stated, as previously requested, that the posted phone number and email address for scheduling attorney-client calls are monitored and answered without undue delay from 9 a.m. until 5 p.m.; that attorneys can schedule calls with detained individuals on the date and time requested or promptly thereafter, and no later than 24 hours after the time requested; and that such legal calls are confidential.

- A sworn statement that individuals are not being detained or held for any duration on any floors in 26 Fed other than the 10th floor.

- A copy of all email exchanges in which attorneys have requested legal calls following entry of the August 12 TRO, and any and all responses to those requests, as previously requested.

Nov. 12 Letter, at 3.

Defendants did not respond on November 19 and still have not responded substantively.[3]

Meanwhile, on November 20, Plaintiffs' counsel learned from Mr. Chalco that in addition to not being informed about the ability to make confidential calls with an attorney or being given an accessible Notice of Rights, he had been forced to stay in the same clothes during the four-day period he was at 26 Fed, that his arms had ached at night from cold with only an aluminum blanket for cover, that there was no soap, that the food portion sizes were "very small," and that he and others were "always hungry." Chalco Decl., ¶¶ 8–12[4] (noting they received a donut or roll in the morning, a sandwich at midday, and beans with some crackers and

---

[3] On the evening of November 24, after this motion was fully drafted, defense counsel emailed Plaintiffs' counsel apologizing for missing the November 19 deadline and stating that he "intend[ed] to respond this week."

[4] *See also* Benjamin Weiser & Luis Ferré-Sadurní, *ICE Frees Blind Migrant Who Was Detained for Days in Isolation*, N.Y. Times (Nov. 18, 2025), available at https://www.nytimes.com/2025/11/18/nyregion/blind-immigrant-ice-detention-judge-orders-release.html (describing Mr. Chalco's arrest and detention by ICE).

chocolate at night).  Mr. Chalco further reported that another detained individual was never given a change of clothing despite requesting them.  *Id.*, ¶ 9.

Jose Javier Cuy Cumes likewise was detained at 26 Fed during the same period, from November 4 until November 6.  Declaration of Jose Javier Cuy Cumes ("Cuy Decl."), ¶ 3.  Mr. Cuy "never heard any guards . . . mention legal calls or private calls." *Id.*, ¶ 4.  Any calls detained individuals were permitted to make were not confidential, as there were always guards listening by the phones. *Id.*  According to Mr. Cuy, there was a small paper posted stating that detained individuals had a right to a 10-minute call each day, but he was not permitted to speak for that long. *Id.*, ¶ 5.  Mr. Cuy did not receive soap or a toothbrush until another detained man told him to ask. *Id.*, ¶¶ 6, 10.  He wore the same clothes for the duration of his time at 26 Fed and "was not allowed to wear [his] jacket even though it was very cold;" the detained individual who had told him to request a toothbrush ultimately obtained a sweater for Mr. Cuy by asking a guard on his behalf, though individuals who asked afterward only received thin shirts. *Id.*, ¶¶ 7– 8.  Mr. Cuy reported that the meals provided were very small: like Mr. Chalco, he reported that the meals were bread, a small sandwich, and an aluminum bag of rehydrated rice and beans and some crackers.  He was hungry and lost six pounds during the overall period of his detention**,** which he attributed primarily to his time at 26 Federal Plaza. *Id.*, ¶ 9.  Mr. Cuy further reported that a man with a cough did not appear to receive medicine despite requests on his behalf to a guard. *Id.*, ¶ 11.

## ARGUMENT

## I.    The Court Should Hold Defendants in Civil Contempt

All elements are satisfied to hold Defendants in civil contempt for failing to comply with the TRO and Preliminary Injunction (collectively, the "Orders"): "'(1) the order[s] . . . [are] clear

and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)). While there is plenty of evidence that Defendants' noncompliance is intentional and flagrant, "[i]t need not be established that the violation was willful." *Id.* (citing *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 59 (2d Cir. 1984)). When these elements are established, as they are here, "the Court may invoke its 'inherent power to hold a party in contempt,' which is 'a necessary function for purposes of managing and maintaining order in the efficient and expeditious administration of justice.'" *Nunez v. N.Y.C Dep't of Corr.*, 758 F. Supp. 3d 190, 217–18 (S.D.N.Y. 2024) (quoting *Flaherty v. Filardi*, No. 03 Civ. 2167 (LTS)(HBP), 2009 WL 3762305, at \*4 (S.D.N.Y. Nov. 10, 2009)). The Court should exercise its inherent power to hold the Defendants in contempt.

## A. The Terms of the TRO and the Preliminary Injunction Are Clear and Unambiguous

With respect to the first element, "[a]n order is clear and unambiguous where it is specific and definite enough to apprise those within its scope of the conduct that is being proscribed or required." *Nunez*, 758 F. Supp. 3d at 218 (quoting *Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 615 (S.D.N.Y. 2008) (other internal quotation marks omitted)). Here, the requirements of the Orders regarding attorney access, conditions of confinement, and provision of the Notice of Rights to individuals detained in the hold rooms at 26 Fed easily meet this threshold.

Regarding attorney access, the Orders require Defendants to ensure that:

> "(a) a telephone number for attorneys to call in order to schedule telephone calls with Detainees is conspicuously displayed on the ICE internet web site;

(b) the aforementioned telephone number is monitored and answer[ed] without undue delay from 9 a.m. until 5 p.m.;

(c) a call with the relevant Detainee is scheduled for the date and time requested b[y] the attorney or as soon thereafter as is reasonably possible;

(d) the relevant Detainee is informed of the requested call with the Detainee and the scheduled date and time fixed for the call and that the Detainee is provided with the means necessary to conduct [a] confidential, unmonitored, unrecorded, temporally unrestricted attorney call as scheduled."

Prelim. Inj. ¶ 4; TRO ¶ 4.  The Orders also clearly state that detained individuals must be "provided with means of making confidential, unmonitored, unrecorded, temporally unrestricted, and free telephone calls to counsel . . . within 24 hours after being detained and at least once during each subsequent 12 hour period while they are detained, together with the ability to schedule legal calls with counsel within 6 hours of a request made within the period 9 a.m. to 4 p.m. and within 16 hours of a request made thereafter."  Prelim. Inj. ¶ 1(e); TRO ¶ 1(e).

The Notice of Rights provisions in the Orders also are clear and unambiguous.  They require that "Defendants shall ensure that *every* Detainee held in a Hold Room shall, ***within one hour*** after his/her arrival in a Hold Room, ***be given*** a printed Notice of Rights stating that the Detainee has the following rights, which defendants shall ensure are respected and complied with" followed by a list of 10 specific categories of rights.  Prelim. Inj. ¶ 2; TRO ¶ 2 (emphasis added).

The Orders further require that Defendants "ensure that no person detained by ICE at 26 Federal Plaza . . . is held or detained in any [hold room] . . . that is not furnished with adequate supplies of soap, towels, toilet paper, oral hygiene products (including toothbrushes and toothpaste)."  Prelim. Inj. ¶ 1(d); TRO ¶ 1(d).  That provision specifically enumerates the types of cleaning and hygiene products that must be available to detained persons in the hold rooms.

15

There is nothing unclear about those requirements, nor have Defendants ever suggested that there was or "that additional clarity was needed." *Nunez*, 758 F. Supp. 3d at 218.

## B. Clear and Convincing Evidence Establishes that Defendants Have Failed to Comply with the Court's Orders

With respect to the second element, there is clear and convincing evidence that Defendants have failed, at a minimum, to comply with the attorney access, hygiene products, and Notice of Rights provisions of the Orders. Defendants continue routinely to violate Plaintiffs' First and Fifth Amendment rights, which the Court's Orders were designed to protect.

As detailed above, since the Court issued the TRO, attorneys who have attempted to schedule legal calls have encountered significant delays and barriers; most were never able to speak with their clients while they were being detained at 26 Fed. Defendants repeatedly have changed the designated phone number and email address through which attorneys can schedule calls, without ensuring that an official reliably answers, responds, and is authorized to schedule calls. To the contrary, officials have stated that legal calls are not possible. Rosen Decl., ¶¶ 32–35; Jones Decl., ¶ 6. Not one of the phone numbers designated by Defendants has been consistently staffed or has reliably worked for attorneys. Flores Decl., ¶ 4–5; Yaffe Decl., ¶ 7.

When attorneys finally have reached an official, the responses have been far from compliant with the terms of the Court's Orders, which require calls to be "scheduled for the date and time requested b[y] the attorney or as soon thereafter as is reasonably possible," Prelim. Inj. ¶ 4. *See, e.g.*, Yaffe Decl., ¶ 8 (no response for two days, followed by an offer to schedule a call four days later; his client was transferred before that date); Bray Decl., ¶ 7 (offer to schedule call six days later, client was transferred before that date); Ex. 2, at 3 (Solis email, offering to schedule call six days later). Defendants have also created new, burdensome, and unnecessary barriers that flout the terms of the decree, such as requiring a signed G-28 form in order to

16

schedule a legal call with an individual being detained at 26 Fed.  *See* Yaffe Decl., Ex. 1 (Yaffe email exchange).

Furthermore, when legal calls have taken place, Defendants have routinely violated the Orders' requirements that the calls be "confidential, unmonitored, unrecorded, [and] temporally unrestricted".  Prelim. Inj., ¶ 2(b); TRO ¶ 2(b).  Calls have been monitored by guards and not conducted in private settings.  Leipziger Decl., ¶ 9; Jones Decl., ¶ 4; Cuy Decl., ¶ 4; Rosen Decl., ¶¶ 38–39; Chalco Decl., ¶ 6; Lucero Decl., ¶ 8.

Meanwhile, detained individuals still are not aware of their rights, including their right to make confidential legal calls to their attorneys.  Mr. Lucero was informed that he could not contact an attorney, although the attorney access provisions of the TRO went into effect during his detention at 26 Fed.  Lucero Decl., ¶ 9.  Mr. Cuy, who was detained at 26 Fed from November 4 to November 6, reported that guards never mentioned legal or private calls.  Cuy Decl., ¶ 4; *see also* Chalco Decl., ¶ 6.  Mr. Cuy recalled eventually seeing a posting in the hold rooms stating that individuals had a right to a 10-minute call, *Id.*, ¶ 5, which itself would be a violation of the Preliminary Injunction, which requires calls to be temporally unlimited.  In any event, Defendants did not even allow Mr. Cuy to remain on the phone for ten minutes, cutting him off before then.  *Id.*  Mr. Chalco, who is blind, only learned about certain rights when he heard from another detained individual that officials had written on a window that detained individuals "have the option to request food, clothes and a private room to change clothes." Chalco Decl., ¶ 8.

Defendants clearly are not complying with the Orders' requirements that every detained individual "within one hour after his/her arrival in a Hold Room, be given a printed Notice of Rights" in English and Spanish, with other translation as necessary.  Prelim. Inj., ¶¶ 2, 5.  Even if

the full Notice of Rights provided by Mr. Joyce on October 15 in response to Plaintiffs' October 7 Letter was thereafter posted on a window – and it is not clear what exactly was posted – the Notice is plainly not being given to each individual within one hour of their arrival.  Not a single declarant has reported receiving such a notice, and Mr. Chalco, as a blind individual, should have received the information contained on the notice in an accessible fashion.  In any event, the evidence shows that even when detained individuals request the items in the Notice of Rights, they often are ignored or denied.  *See, e.g.*, Lucero Decl., ¶ 4 (request for a change of clothes was denied); Chalco Decl., ¶ 9 (same).

Undisputed evidence further shows that Defendants have flouted the Orders' provisions pertaining to hygiene.  Under the clear terms of the Orders, hygiene products must be furnished to detained individuals, Prelim Inj. at ¶ 1(d), TRO at ¶ 1(d), yet there is still no soap or (as noted above) a reliable ability to receive a change of clothes at the hold rooms.  Chalco Decl., ¶¶ 8–11; Lucero Decl., ¶¶ 4–5; Cuy Decl., ¶¶ 7, 10.  Defendants appear to offer towels, toothbrushes, and toothpaste only inconsistently.  Mr. Lucero did not receive anything with which to brush his teeth.  Lucero Decl., ¶ 5.  Mr. Cuy ultimately only obtained a toothbrush after asking for one, and not until his last day at 26 Fed.  *Id.*, ¶ 6.  Similarly, without one of the other detained individuals knowing to ask, Mr. Cuy and others would not have received the supplies they were entitled to under the Court's Orders.  *Id.*, ¶¶ 6–8.

For each of these provisions, this is the type of "copious, undisputed evidence" that is "more than enough" to show by clear and convincing evidence that Defendants have failed to comply with the Court's orders.  *See Nunez*, 758 F. Supp. 3d at 218 (considering evidence, *inter alia*, of the Department of Correction's failure to implement new policies and adequately supervise employees, the ongoing high rates of use of force, and a lack of cooperation with the

Monitor); *Amaker v. Goord*, No. 06 Civ. 490A (SR), 2012 WL 4718661, at *9 (W.D.N.Y. Aug.

16, 2012) (holding state prison officials in contempt for failing to comply with preliminary

injunction when officials instructed the plaintiff to remove his dreadlocks in violation of the

court's order and disciplined the plaintiff when he protested).

### C.  Defendants Have Not Attempted to Comply in a Reasonable Manner

With respect to the third element, Defendants unequivocally have not attempted to

comply with the Preliminary Injunction in a reasonable manner.  To the contrary, Defendants

repeatedly have flouted both Orders and ignored Plaintiffs' efforts to press for compliance.

"Reasonable diligence, at the very least, requires a party to develop reasonably effective

methods of compliance."  *Nunez*, 758 F. Supp. 3d at 218 (quoting *Zino Davidoff SA v. CVS*

*Corp.*, No. 06-CV-15332-RJS, 2008 WL 1775410, at *8 (S.D.N.Y. Apr. 17, 2008)).  Defendants

are required to "'energetically police' the effectiveness of its compliance measures and, when

advised that such measures have fallen short, to modify them accordingly.'"  *Id.* at 219 (quoting

*Zino Davidoff*, 2008 WL 1775410, at *8).  Defendants' efforts thus far have fallen far short of

that standard.

In Defendants' response to Plaintiffs' initial communications regarding noncompliance in

early October, Mr. Joyce did not even address or contest Plaintiffs' concerns about attorney

access, nor did he contest the asserted violations.  *See* Joyce Decl., at 1–2.  Plaintiffs' more

recent attempts to ensure compliance have not been substantively addressed at all.  Months have

passed since the TRO and Preliminary Injunction were issued, and the mounting evidence

demonstrating noncompliance has not abated.

Here, the evidence overwhelmingly shows that Defendants have not even informed their

employees of the Orders or instructed them to comply with the Orders' directives.  As discussed

above, officials responsible for the phone and email lines appear to still be unaware of the

Court's Orders, as are guards staffing the hold rooms.  Rosen Decl., ¶¶ 32–39; Jones Decl., ¶ 6;

Cuy Decl., ¶ 4–5; Chalco Decl., ¶¶ 6–7; *see, e.g.*, *Amaker*, 2012 WL 4718661, at *8 ("None of

[the Department of Correction's] officers, agents, servants or employees at Elmira had any

knowledge of the preliminary injunction at issue in this case.").  The Second Circuit has found

that this element is met even if a contemnor has instructed its employees to comply, without

additional follow-through.  *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5

(2d Cir. 1989).  Defendants appear to have done far less here.

Defendants have been on notice of the compliance problems at least since Plaintiffs

submitted their reply brief in support of the motion for a preliminary injunction on August 21, in

which Plaintiffs raised ongoing constitutional violations.  Reply Mem. of L. in Supp. of Pl.'s

Mot. for a Prelim. Inj., ECF No. 81, at 4–6 (raising Defendants' lack of compliance with attorney

access, hygiene, and other conditions issues).  Since the Court issued the Preliminary Injunction,

Plaintiffs' counsel continued to hear of such violations and raised them with Defendants in

October and November.  *See* Oct. 7 Letter and Nov. 12 Letter.  Where defendants have notice of

noncompliance and do not take corrective action, Courts have found that they have not

reasonably attempted to comply.  *See Nunez*, 758 F. Supp. at 219 (finding that the defendants'

notice of noncompliance demonstrated their failure to comply in a reasonable manner); *see also*

*Mobile Cnty. Jail Inmates v. Purvis*, 551 F. Supp. 92, 97 (S.D. Ala. 1982), *aff'd sub nom. Mobile*

*Cnty. v. Purvis*, 703 F.2d 580 (11th Cir. 1983) (same); *A.B. by & through Trueblood v.*

*Washington State Dep't of Soc. & Health Servs.*, 681 F. Supp. 3d 1149, 1175–76 (W.D. Wash.

2023), *appeal dismissed sub nom. Trueblood , next friend of A.B. v. Washington State Dep't of*

*Soc. & Health Servs.*, No. 23-35534, 2025 WL 2217635 (9th Cir. Apr. 25, 2025) (explaining that defendants were or should have been aware of their ongoing lack of compliance).

Although "[i]t need not be established that the violation was willful" for a court to issue a civil contempt order, *Paramedics Electromedicina Comercial*, 369 F.3d at 655, Defendants' months-long pattern of noncompliance, even after Plaintiffs have repeatedly raised concerns with defense counsel about the noncompliance, supports a finding that the violations here were in fact willful. Defendants' public rejection of the facts underlying the Court's order through a spokesperson's statement that the TRO is "driven by complete fiction," one day after the Court issued a TRO based on the voluminous evidence presented, further demonstrates their disregard of their obligations.[5] For the foregoing reasons, the Court should find Defendants in contempt.

## II.    The Court Should Impose Monitoring Mechanisms to Ensure Future Compliance

"The 'primary purpose' of a finding of civil contempt, and the imposition of related remedies, is 'to coerce the contemnor into future compliance and to remedy past non-compliance, rather than to punish [the contemnor].'" *Nunez*, 758 F. Supp. 3d at 222 (quoting *In re Dickinson*, 763 F.2d 84, 87 (2d Cir. 1985)) (alteration in the original). "[T]he Supreme Court and the Second Circuit have long recognized that courts possess broad equitable powers to fashion relief that compels compliance with their orders." *Id.*; *see, e.g.*, *id.* at 224 (holding that it is within Court's discretion to "impose a receivership: namely, a remedy that will make the management of the use of force and safety aspects of the Rikers Island jails ultimately answerable directly to the Court"); *Amaker*, 2012 WL 4718661, at *9 (ordering monetary sanctions against state prison officials for violating preliminary injunction).

---

[5] Ferré-Sardurní, *supra* n.2.

Here, Plaintiffs contend that meaningful monitoring mechanisms are necessary to ensure future compliance with the Court's Orders.  Specifically, Plaintiffs believe that the following provisions would facilitate future compliance with the Court's Orders:

- Ordering Defendants to provide weekly logs to Plaintiffs' counsel and the Court with the following information:

  - The number of individuals who have been held at 26 Fed during the preceding calendar week;
  - The name, A-number, country of origin, dates of entry (and if applicable, departure) from 26 Fed, of each individual who has been held at 26 Fed during the preceding calendar week; and
  - The number of attorney-client calls that occurred during the preceding calendar week.

- Ordering Defendants to provide biweekly sworn declarations affirming that the terms of the Preliminary Injunction have been complied with for the preceding two calendar weeks and providing details regarding any instances of noncompliance during the preceding two calendar weeks.  If Defendants are unable to certify such compliance, Defendants shall not hold any detainee at the ICE facility at 26 Fed for more than 12 hours.

- Permitting Plaintiffs' counsel, and/or any experts or representatives they so designate, and a photographer (with photographic equipment), with four hours notice by Plaintiffs' counsel, provided such notice is given during ordinary business hours of 9 a.m. to 5 p.m., to inspect, survey, and photograph areas of 26 Fed being used to detain individuals in ICE custody to ensure compliance with the Preliminary Injunction.  Defendants may not interfere with such inspections or impede access to the portions of the building at 26 Fed that are used for detainee operations.

In the event that Defendants' noncompliance persists, the Court is authorized to, and should, fashion more intrusive remedies.  *See, e.g.*, *Powell v. Ward*, 487 F. Supp. 917 (S.D.N.Y. 1980), *aff'd as modified*, 643 F.2d 924 (2d Cir. 1981), *cert. denied*, 454 U.S. 832, 102 S. Ct. 131 (1981) (imposing conditional fines, ordering injunctive relief, appointing a Special Master to oversee compliance, and converting preliminary injunction into a permanent one).

**III.    The Court Should Award Coercive Sanctions and Attorneys' Fees**

"A sanction imposed on a party held in civil contempt may serve either or both of two purposes: to coerce the contemnor to comply in the future with the court's order, or to compensate the complainant for losses resulting from the contemnor's past non-compliance." *Casale v. Kelly*, 710 F. Supp. 2d 347, 363 (S.D.N.Y. 2010).

Here, in addition to implementing procedures to monitor Defendants' compliance with the Orders, the Court should also order Defendants to pay coercive fines and attorneys' fees in an amount to be determined. *See Powell*, 487 F. Supp. at 936 (imposing fines and awarding attorneys' fees); *Casale*, 710 F. Supp. 2d at 367 (same).

"The district court is counseled to consider several factors in calculating a fine, including the character and magnitude of the harm threatened by continued contumacy, the probable effectiveness of any suggested sanction in bringing about [compliance], and the contemnor's ability to pay." *Casale*, 710 F. Supp. 2d at 363 (S.D.N.Y. 2010) (quoting *Paramedics Electromedicina Comercial*, 369 F.3d at 657–58). Defendants' noncompliance need not be willful in order to award sanctions and fees, although as discussed above, Defendants have acted willfully in their refusal to comply with the Orders.

As to the first factor, Defendants' noncompliance has caused and continues to cause irreparable harm. *See Powell*, 487 F. Supp. at 935 (ongoing due process violations caused irreparable harm); *Medina v. Buther*, No. 15 Civ. 1955, 2019 WL 581270, at *28 (S.D.N.Y. Feb. 13, 2019) (holding that the plaintiff suffered "irreparable harm" because of ongoing "deprivation of [his] constitutional rights" and from suffering pain and discomfort) (quoting *Powell*, 487 F. Supp. at 935) (alteration in the original). Individuals detained at 26 Fed face either some type of removal proceedings or imminent removal from the United States, and Defendants' refusal to

implement the attorney access requirements of the Court's Orders means that class members have been transferred and/or deported without being able to speak with their attorneys. Bray Decl., ¶ 8; Jones Decl., ¶ 8. The ongoing deprivation of detained individuals' constitutional rights in the failure to provide adequate conditions of confinement constitutes irreparable harm as well. *See Powell*, 487 F. Supp. at 935; *Medina*, 2019 WL 581270, at *28.

Second, a fine would encourage Defendants' future compliance. Despite two Court orders and two letters from Plaintiffs' counsel, Defendants have "shown [themselves] to lack the resolve to end the illegal [practices] on [their] own," along with an "apathetic attitude towards" compliance. *Casale*, 710 F. Supp. 2d at 364. Clearly, additional steps are necessary to motivate them to comply with this Court's directives.

Third, Defendants carry the burden of production to show an inability to pay. *Paramedics Electromedicina Comercial*, 369 F.3d at 658. In *Casale*, the court found that New York City's $59.5 billion operating budget afforded it the ability to pay a modest fine. *Casale*, 710 F. Supp. 2d at 364, n.111. There is nothing to suggest that the federal government could not pay the sanctions proposed here.

Plaintiffs propose that the Court impose a conditional coercive fine of $50,000 to be paid thirty days from the date of the entry of an order holding Defendants in contempt, along with $1,000 per person detained at 26 Fed per day for every additional day that Defendants are not in compliance with the order. *See, e.g.*, *Casale*, 710 F. Supp. 2d at 363–64 (imposing escalating fine of $500 to $5,000 per incident of noncompliance); *Benjamin v. Fraser*, No. 75 Civ. 3073, 2002 WL 31845111 (S.D.N.Y. Dec. 16, 2002) (imposing fine of $200 to $500 for each incident of non-compliance); *Powell*, 487 F. Supp. at 935 ($5,000 plus $1,000 in 1980 dollars for every day of non-compliance); *see also Parsons v. Ryan*, 949 F.3d 443, 452, 473 (9th Cir. 2020)

(affirming district court's contempt finding and sanctions award of $1,000 sanction per violation for a total of $1,445,000); *Hernandez v. County of Monterey*, 2023 WL 6299863, at *15 (N.D. Cal. Sept. 26, 2023) ($25,000 coercive fine for each of the forty-three requirements of a settlement agreement); *Mobile Cnty. Jail Inmates v. Purvis*, 551 F. Supp. 92, 97 (S.D. Ala. 1982) (imposing fine of $5,000 per day in 1982 dollars for every day that defendants did not comply with order to reduce jail overcrowding).  Plaintiffs further propose that if Defendants achieve compliance with the order within the thirty-day window, the Court quash the contempt citation and revoke the fine.

Attorneys' fees are also appropriate in light of Defendants' willful repeated violations of the Orders.  *Casale*, 710 F. Supp. 2d at 367 (awarding reasonable attorneys' fees and costs to plaintiffs for contempt and discovery sanctions motion); *see Powell*, 487 F. Supp. at 936 (imposing coercive fines and awarding attorneys' fees); *see also Medina*, 2019 WL 581270, at *29 (awarding attorneys' fees and costs where defendants willfully failed to comply with court order, noting that it is an open question whether willfulness is required).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the following relief:

A. Issuing an order holding Defendants in civil contempt for their failures to comply with the TRO and Preliminary Injunction;

B. Ordering Defendants to provide weekly logs to Plaintiffs' counsel and the Court with the following information:

- The number of individuals who have been held at 26 Fed during the preceding calendar week;

- The name, A-number, country of origin, dates of entry (and, if applicable, departure) from 26 Fed, of each individual who has been held at 26 Fed during the preceding calendar week; and

- The number of attorney-client phone calls that occurred during the preceding calendar week.

C. Ordering Defendants to provide biweekly sworn declarations affirming that the terms of the Preliminary Injunction have been complied with for the preceding two calendar weeks and providing details regarding any instances of noncompliance during the preceding two calendar weeks. If Defendants are unable to certify compliance, Defendants shall not hold any detainee at the ICE facility at 26 Fed for more than 12 hours.

D. Permitting Plaintiffs' counsel, and/or any experts or representatives that they so designate, and a photographer (with photographic equipment), with four hours' notice by Plaintiffs' counsel, provided such notice is given during ordinary business hours of 9 a.m. to 5 p.m., to inspect, survey, and photograph areas of 26 Fed being used to detain individuals in ICE custody to ensure compliance with the Preliminary Injunction. Defendants may not interfere with such inspections or impede access to the portions of the building at 26 Fed that are used for detainee operations.

E. Imposing a conditional coercive fine of $50,000 to be paid thirty days from the date of the entry of an order holding Defendants in contempt, along with $1,000 per person detained at 26 Fed per day for every additional day that Defendants are not in compliance with the order, to be quashed if Defendants achieve compliance with the order within the thirty-day window.

F.  Awarding attorneys' fees to Plaintiffs' counsel for the fees and costs incurred in seeking to bring Defendants into compliance with the Court's Orders; and

G.  If the Court deems appropriate, scheduling a hearing to address Defendants' ongoing noncompliance.

Dated: November 25, 2025

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
Eunice Cho
915 15th Street, N.W.
Washington, DC 20005
202-548-6616
echo@aclu.org

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
Kyle Virgien
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
kvirgien@aclu.org

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
Amy Belsher
Robert Hodgson
Claire Molholm
Molly K. Biklen
125 Broad Street, 19th Floor
New York, NY 10004
Tel: (212) 607-3300
abelsher@nyclu.org
rhodgson@nyclu.org
cmolholm@nyclu.org
mbiklen@nyclu.org

Respectfully submitted,

WANG HECKER LLP

s/ Heather Gregorio
Heather Gregorio
Mariann Meier Wang
Alice Reiter
Daniel Mullkoff
Lily Sawyer Kaplan
111 Broadway, Suite 1406
New York, New York 10006
(212) 620-2600
hgregorio@wanghecker.com
mwang@wanghecker.com
areiter@wanghecker.com
dmullkoff@wanghecker.com
lsawyerkaplan@wanghecker.com

MAKE THE ROAD NEW YORK
Harold A. Solis
Paige Austin
301 Grove Street
Brooklyn, NY 11237
Tel. (718) 418-7690
Fax (866) 420-9169
harold.solis@maketheroadny.org
paige.austin@maketheroadny.org

*Attorneys for Plaintiff and the provisionally certified class*

**ATTORNEY CERTIFICATION PURSUANT TO LOCAL RULE 7.1**

I, Heather Gregorio, an attorney duly admitted to practice law before the courts of the Southern District of New York, hereby certify that this memorandum of law complies with the word count limit set forth in Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York because it contains 8,304 not including the parts of the memorandum excluded under the Rule. This memorandum of law also complies with the Court's rule that memoranda of law in support of motions may not exceed thirty-five pages, double-spaced. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum.

Dated:  November 25, 2025
          New York, New York