# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

SERGIO ALBERTO BARCO MERCADO, on his own behalf and on behalf of others similarly situated,

Plaintiff,

v.

KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity; DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, Acting Director, Immigration and Customs Enforcement, in his official capacity; IMMIGRATION AND CUSTOMS ENFORCEMENT; MARCOS CHARLES, Acting Executive Associate Director, Immigration and Customs Enforcement, Enforcement and Removal Operations, in his official capacity; and LADEON FRANCIS, Acting Field Office Director of New York, Immigration and Customs Enforcement, in his official capacity,

Defendants.

Case No. 25 Civ. 6568

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1.       Plaintiff and the putative Class members in this case are immigrants being detained in crowded rooms at a federal building in the heart of Manhattan without beds, sufficient food, hygiene products, access to showers, or the ability to communicate confidentially with attorneys. They bring this action to challenge these unlawful conditions of confinement and ban on attorney access.

2.      On May 21, 2025, Defendant Kristi Noem and other Trump administration officials ordered Immigration and Customs Enforcement ("ICE") agents nationwide to arrest a quota of 3,000 people per day.  Following this order, ICE agents aggressively escalated their arrest and detention of immigrants throughout the New York City area.  For weeks now, ICE agents have been systematically arresting individuals who appear at immigration court hearings in New York City and at regularly scheduled check-in appointments at the ICE office at 26 Federal Plaza ("26 Fed") in Manhattan. They have also ramped up enforcement activities and raids at homes, workplaces, and community spaces.  These arrests have caused widespread fear and chaos.

3.      ICE has been detaining these immigrants it has arrested by the thousands at courthouses, check-in appointments, and raids inside a transitional holding station at 26 Fed.  This holding station consists of concrete cells, segregated by gender, designed to hold people only temporarily for a matter of hours as they are processed before release or transport to a longer-term detention facility.  It has no beds, showers, or adequate medical support.  However, as ICE has increased its arrests of immigrants, it has packed people into the holding units at 26 Fed.  At 26 Fed, people are detained for extended periods of time, often for a week or more, sleeping on the concrete floor next to the toilet, in cells that are either freezing or oppressively hot, without medication, an opportunity to bathe, brush their teeth, or change their clothes.  The detained individuals receive at most only two small meals a day.  Many have fallen ill under these egregious conditions.

4.      Detained individuals are denied prescribed medications and medical treatment. One stroke survivor did not receive his medication, which led to dangerously high blood pressure.

5.      Immigrants detained at 26 Fed have no means to communicate confidentially with legal counsel.  Defendants have not afforded Plaintiff and the putative Class members any access

to attorneys—either in person or by telephone.  Detained individuals are only permitted sporadic, short, non-confidential calls to family members or friends, which are closely monitored.  When attorneys have attempted to visit or speak with their clients, Defendants have ignored the requests or informed counsel that their client is "in transit" and cannot be contacted.  Defendants often refuse even to confirm the location of detained noncitizens.  ICE has consistently refused to allow attorneys to place or schedule confidential phone calls or to meet with their clients in person, including with individuals with whom they have established attorney-client relationships.  Attorneys who request in-person visitation with their clients held at 26 Fed are turned away.  And because of ICE's policies, noncitizens who have not yet retained counsel have no opportunity to do so.  In addition, ICE has refused to update its online locator, claiming only that noncitizens are "in transit" or telling inquiring counsel to call the field office.

6.      Plaintiff Sergio Alberto Barco Mercado was taken into custody at 26 Fed on August 8, 2025 after a scheduled court appearance.  When his attorney attempted to contact him after he was detained, he was refused access to his client.  Like Plaintiff, putative Class members are currently or soon will be detained in civil detention in holding cells at 26 Fed.

7.      These crowded, squalid, and punitive conditions, along with the ban on attorney access, are publicly documented and well-known to Defendants.  Defendants nonetheless have been deliberately indifferent to these conditions, the constitutional rights they are violating, and the risk of harm they cause to Plaintiff and the thousands of other detained individuals at 26 Fed. Defendants have not remedied these problems or ensured that they even adhere to their own policies on the appropriate duration and conditions of confinement, instead issuing public statements that brazenly deny these widespread and well documented violations of the putative Class members' rights.  Defendants are causing significant, ongoing, and irreparable harm to

Plaintiff and the putative Class members.  Court intervention is therefore required to enjoin these violations.

8.      Defendants are responsible for the policy and practice of denying attorney access and depriving Plaintiff and the putative Class members of lawful conditions and duration of confinement at 26 Fed.  The policy and practice, which has grievously harmed Plaintiff and the putative Class members, violates the Due Process Clause of the Fifth Amendment and the First Amendment to the U.S. Constitution.  Plaintiff and the putative Class members seek declaratory and injunctive relief to end Defendants' unlawful policy and practice and the enormous and unnecessary harm they inflict.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. §§ 2201, § 2202 (Declaratory Judgment Act); and Fed. R. Civ. P. 65 (injunctive relief).

10.      Venue is proper under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(e) because at the time of the filing of this action Plaintiff is detained in the Defendants' custody within this District; a substantial part of the events and omissions giving rise to these claims occurred, and continue to occur, in this District; and Defendants are officers or employees of the United States acting in their official capacities.

## PARTIES

11.      **Plaintiff Sergio Alberto Barco Mercado** is a natural person who resides in Ocean County, New Jersey with his wife and two young children, including an infant.  Mr. Barco Mercado is currently detained by Defendants at 26 Fed.

12.     **Defendant Kristi Noem** is the Secretary of the U.S. Department of Homeland Security ("DHS"). Defendant Noem is responsible for the administration of the immigration laws under 8 U.S.C. § 1103. She is a legal custodian of Mr. Barco Mercado and the members of the putative Class. She is sued in her official capacity.

13.     **Defendant Department of Homeland Security ("DHS")** is a federal executive agency responsible for, among other things, enforcing federal immigration laws and overseeing lawful immigration to the United States. Defendant DHS is a legal custodian of Mr. Barco Mercado and the members of the putative Class.

14.     **Defendant Todd Lyons** is the Acting Director of ICE. Defendant Lyons is responsible for ICE's policies, practices, and procedures, including those relating to the detention of immigrants during their removal procedures. He is a legal custodian of Mr. Barco Mercado and the members of the putative Class. He is sued in his official capacity.

15.     **Defendant United States Immigration and Customs Enforcement ("ICE")** is a federal law enforcement agency within DHS. Defendant ICE is responsible for the enforcement of immigration laws, including the detention and removal of immigrants. Defendant ICE is a legal custodian of Mr. Barco Mercado and the members of the putative Class.

16.     **Defendant Marcos Charles** is the Acting Executive Associate Director for ICE's Enforcement and Removal Operations ("ERO"). Defendant Charles is responsible for ERO's policies, practices, and procedures, including those relating to the detention of immigrants during their removal procedures. He is a legal custodian of Mr. Barco Mercado and the members of the putative Class. He is sued in his official capacity.

17.     **Defendant LaDeon Francis** is the Acting Field Office Director ("FOD") for ICE's ERO New York Field Office, which has jurisdiction over the 26 Fed Hold Rooms. He is

5

responsible for enforcement and removal operations in New York and is a legal custodian of Mr. Barco Mercado and the members of the putative Class. He is sued in his official capacity.

<b><u>FACTS</u></b>

**I.     ICE Policies Governing Holding Facilities**

18.     DHS and ICE have adopted written policies that govern the conditions at ICE ERO holding facilities located within Field Offices, including at 26 Fed.

19.     On January 31, 2024, ICE issued Directive 11087.2, which is titled "Operations of ERO Holding Facilities" (the "Policy").

20.     The stated "Purpose/Background" of the Policy is to provide ICE officers who staff the Field Offices "with policy and procedures for operating holding facilities located within their respective field offices." (Policy, § 1.1).

21.     The Policy defines a "holding facility" as "[a] facility that contains hold rooms that are primarily used for the short-term confinement of individuals who have recently been detained or are being transferred to or from a court, detention facility, or other holding facility, or other agency." (*Id.*, § 3.2).  It notes that "short-term is defined as a period ***not to exceed 12 hours***, absent exceptional circumstances."  (*Id.*, § 3.2 n.3) (emphasis added).

22.     This 12-hour limit was recently extended to 72 hours at facilities nationwide by an ICE-issued waiver.  *See infra* at ¶ 34.

23.     The Policy defines a "hold room" as "a holding cell, cell block, or other secure enclosure within a holding facility."  (*Id.*, § 3.3).

24.     The Policy states that the Executive Associate Director for ERO—here Defendant Charles—"is responsible for ensuring compliance with the provisions of this Directive within ERO."  (*Id.*, § 4.1).

25.     The Policy states that Field Office Directors (FODs)—here Defendant Francis—"are responsible for ensuring that field office personnel follow the procedures in this Directive for operating holding facilities located within their respective field offices." (*Id.*, § 4.3).

26.     The Policy currently is in force and at all times relevant to this Complaint was in force.

27.     The Policy provides that "ERO Officers are responsible for," *inter alia*:

    a.     "Ensuring that detainees are provided a meal at least every six hours" (*Id.*, § 4.1.1.2); and

    b.     "Ensuring that hold rooms are safe, clean, equipped with restroom facilities, and clear of objects that could be used as weapons against ERO personnel, contractors, or detainees" (*Id.*, § 4.4.1.3).

28.     With respect to "Procedures and Requirements," the Policy provides the following "Procedures for ERO Officers":

    a.     "[E]mpty holding facilities upon the conclusion of daily operations in those field office locations operating on a daily schedule . . . absent exceptional circumstances, no detainee should be housed in a holding facility for longer than 12 hours" (*Id.*, § 5.1.1);

    b.     "If the hold room is not equipped with restroom facilities, ERO officers should position themselves within direct sight or earshot of the hold room so that detainees may request and have regular access to restroom facilities" (*Id.*, § 5.2.3);

    c.     "Allow detainees to keep personal inhaled medication on their person and have access to other prescribed medication as necessary" (*Id.*, § 5.7.2); and

    d.     Make a detention log for every detainee brought into custody regardless of purpose," recording, *inter alia*, (j) time in, (k) mealtime, and (l) time out (*Id.*, § 5.8.1).

**II.      ICE's Recent Use of 26 Fed for Detentions in Excess of 72 Hours**

29.      In violation of its own policies and with utter disregard for the facility's limitations, ICE is regularly detaining noncitizens at 26 Fed for several days or even weeks at a time.[1]

30.      On June 18, 2025, former Acting Field Office Director William Joyce acknowledged to a New York congressional delegation that "some of the detainees had spent several days on the 10th floor, sleeping on the floor or on benches," but nevertheless "insisted it was a 'processing facility' and that those who stayed overnight were 'in transit' to different locations."[2]

31.      On March 12, 2025, ICE emphasized that its ERO holding facilities were required to comply with the ICE Hold Policy, including the 12-hour limit.  In another case, Joyce executed a declaration under penalty of perjury stating "ICE ERO policy number 11087.2 dictates that absent exceptional circumstances, no detainee should be housed in a Hold Room facility for longer than 12 hours.  Joyce's declaration asserted that ICE had transferred an individual from a 26 Fed Hold Room to a different facility "[i]n compliance with this policy."[3]

32.      On June 24, 2025, however, ICE issued a "Nationwide Hold Room Waiver," which permits the detention of immigrants in holding facilities – without beds, showers, hygiene products, or adequate food  – for up to 72 hours.  *Id.*

---

[1] Luis Ferré Sadurní, *What's Inside a 10th Floor ICE Office? New York Democrats Want to Know.*, N.Y. Times (June 20, 2025), available at
https://www.nytimes.com/2025/06/20/nyregion/ny-democrats-access-26-federal-plaza-noem.html.

[2] *Id.*

[3] *Khalil v. Joyce*, 1:25-cv-01935, ECF No. 48 at ¶ 13 (Mar. 14, 2025).

8

33.     Upon information and belief, the 26 Fed holding center purports to operate on a daily schedule from 8:00 a.m. to 3:00 p.m. and is not open and does not answer phone calls after 3:00 p.m. on weekdays or at any time on weekends.   Notwithstanding this daily schedule, Defendants do not empty holding facilities upon the conclusion of daily operations; detained people remain confined in 26 Fed Hold Rooms 24 hours a day, seven days a week, for many days at a time.

34.     On information and belief, Plaintiff is currently confined at 26 Fed.   Defendants have recently held other individuals for shockingly long periods of time, including one individual for 10 days.

### III.     Overcrowding and Punitive Conditions at the 26 Fed Hold Rooms

35.     Defendants are forcing dozens and sometimes close to 100 detained individuals into a single hold room at a time, causing extreme overcrowding.   Detained individuals have estimated that Defendants have packed between 50 to 90 people into a room of approximately 20 square meters.

36.     The 26 Fed Hold Rooms contain one or two open toilets that are visible to the room; there is no privacy for those who need to use them.   Individuals must wear the same clothes, including underwear, for the duration of their detention even if they remain at 26 Fed for a week or longer.   Defendants deny individuals access to basic hygiene items, such as soap, clean clothes, toothbrushes, menstrual products, and the opportunity to bathe.[4]   The Hold Rooms do not have showers.

---

[4] One woman who had her period while she was detained was not able to obtain any menstrual products because the guards only gave the women in her hold room two pads to share among them. As a result, she had no way to prevent her underwear and pants from becoming saturated with blood.  Because she was never given a change of clothes, she had to thereafter remain in her blood-soaked clothes for the duration of her detention.

37.     Due to these extremely crowded and unsanitary conditions, the Hold Rooms smell terrible.  They have been described as having a "horrific stench," smelling like sweat, urine, and feces.

38.     Defendants also fail to provide individuals detained at 26 Fed with adequate meals every six hours as required under the Policy (Ex. X, § 4.1.1.1).  In place of actual meals, Defendants provide detained people with small rations of food only twice a day, such as military "meals ready to eat" ("MREs").  Detained people described the MREs as "inedible" and "slop." One individual stated that he received small, processed meals in plastic bags at 8 a.m. and again at 8 p.m., with nothing in between, noting that he was "always hungry" and ultimately lost 24 pounds during the period he was detained at 26 Fed.  Another detained person recalled at times only receiving a small snack for the entire day.  A third individual reported that he could not eat the food at all during the five days he was detained at 26 Fed and lost significant weight.  Meanwhile, the guards have eaten pizza and hamburgers in front of hungry detained immigrants, which made them feel like they were being taunted.

39.     Nor do Defendants provide individuals detained at 26 Fed with adequate conditions for sleep.  Because the Hold Rooms are designed to hold only a few people for short periods of time and have no beds, detained people in the overcrowded cells have been forced to sleep on the concrete floor with only an aluminum blanket, sometimes next to toilets, with the lights remaining on throughout the night.  Many are unable to sleep because of the pain of sleeping on hard concrete. Often the rooms are too crowded even to allow the detained persons to lie flat to sleep, so they have to try to sleep sitting up.

40.     Detained individuals also are subjected to extreme temperatures.  Some 26 Fed Hold Rooms have been kept extremely cold.  Individuals cannot get warm, especially while

sleeping on the cold concrete floor without adequate clothing or blankets beyond a single aluminum blanket per person.  In other Hold Rooms at 26 Fed, individuals have been subjected to uncomfortably hot conditions, as Defendants have turned off the air conditioning for several hours at a time in the middle of the summer, despite the crowded conditions.

41.     Defendants have denied the putative Class members access to prescribed medications, in violation of the Policy (Ex. X, § 5.7.2).  One woman's gastritis was exacerbated by the lack of food and she experienced stomach pain, but when she asked the guards for medicine, they told her she would need to wait because "there were too many people."  One man had recently had a stroke and suffered from high blood pressure, but the guards did not give him medication for the entire seven days that he was detained at 26 Fed.  By the time he arrived at MDC, his blood pressure was dangerously high, and his left arm was trembling.

42.     The ICE officers at 26 Fed are abusive and cruel to the individuals being detained, often taunting them or yelling at them.  ICE officers beat one man for screaming, putting their feet on his neck and head and holding his arms behind his back.  They pushed another man's sister to the ground when she tried to hold onto him, and made fun of that man for crying during his arrest.

43.     Media reports have confirmed these conditions.  A *New York Times* article published on July 22, 2025, included a video of the inhumane conditions in a 26 Fed Hold Room, recorded by a detained immigrant who was held there the week before.[5]

44.     This is a still from video embedded in the New York Times article:

---

[5] Ferré-Sadurní, *supra* n.1; *see e.g.*, Alice Gainer, *Video Shows Conditions Inside NYC's ICE Processing Center at 26 Federal Plaza*, CBS News (July 23, 2025), available at https://www.cbsnews.com/newyork/news/nyc-ice-processing-center-26-federal-plaza-video/.



45.    *Gothamist* has reported the same conditions and long durations of confinement, citing habeas cases on behalf of detained immigrants and statements by members of Congress.[6]

46.    Even in the face of Congressional inquiry and media reporting regarding the facility, Defendants continue to blatantly deny these well documented violations.  Tricia McLaughlin, DHS Assistant Secretary for Public Affairs, was quoted in a July 9, 2025 article stating that "[a]ny claim that there is overcrowding or subprime conditions [at 26 Fed] is categorically false.  All detainees are provided with proper meals, medical treatment, and have

---

[6] *Arya Sundaram, 'They're Killing Us': Immigrants Complain of Inhumane Conditions Inside NYC Holding Site*, Gothamist (July 9, 2025), available at https://gothamist.com/news/theyre-killing-us-immigrants-complain-of-inhumane-conditions-inside-nyc-holding-site.

opportunities to communicate with their family members and lawyers."[7]  On July 22, she reiterated this claim.[8]  Defendant Joyce told lawmakers that while detainees were being held overnight, claims of migrants staying for a week or more were "an exaggeration."[9]

47.    Upon information and belief, Mr. Barco Mercado will be subjected to the above-described conditions of confinement.

48.    At the time of his detention, Mr. Barco was suffering from an infection in his tooth that required dental and/or medical care.  Upon information and belief, Mr. Barco Mercado faces a substantial risk of being denied the medical/dental treatment he requires.

## IV.    Denial of Access to Counsel at 26 Fed

49.    People detained at 26 Fed are denied the ability to communicate with their attorneys.  Noncitizens are not permitted to meet in person or to speak confidentially on the phone with counsel.  One woman who asked to speak to an attorney was told by ICE officers that access to counsel was not allowed until her hearing.

50.    The only way that individuals detained at 26 Fed can communicate with the outside world at all is via a non-confidential phone line.  Defendants prevent the detained individuals from calling for longer than a few minutes, hurrying them if they take longer.  Defendants have also prevented them from making even a short call to a family member for several days at a time, and

---

[7] Sundaram, *see supra* n. 7.

[8] Emily Ngo, *Is 26 Fed a Detention Facility?*, Politico (July 22, 2025), available at https://www.politico.com/newsletters/new-york-playbook-pm/2025/07/22/ice-federal-plaza-detention-facility-00467839.

[9] Sundaram, *see supra* n. 7.

a guard told one detained individual that they were not obligated to provide any calls apart from on the day they were initially detained.

51.     All calls are monitored.  The officers require the detained individuals to provide information such as the name, address, and/or phone number of the person they are calling and stand next to them during the brief conversation.  Officers sometimes require calls to be put on speakerphone.  Moreover, Defendants permit phone calls at irregular intervals and often only late at night or in the middle of the night.

52.     The ICE Online Detainee Locator, https://locator.ice.gov/odls/#/search, which attorneys typically rely on to locate and schedule client communication, often does not accurately list an individual's location when an individual is detained at 26 Fed.  Instead of a location, the website lists "Call Field Office," but when attorneys call the listed number they cannot get through.  Calls to other New York ICE ERO phone numbers likewise are not answered or returned.  Attorneys who email ICE to ask about the location of their client may receive no response or are told that their client is "in transit" and cannot be communicated with, even for multiple days.  One attorney was informed that a legal call would be facilitated, but no call was ever scheduled despite multiple follow-ups.

53.     Defendants do not allow individuals detained in the Hold Rooms to receive visitors and do not provide access to attorneys, such that attorneys are unable to visit their clients at all.  ICE agents told one detained man that "even lawyers cannot come here."  Other comparable detention facilities in New York, Rikers Island and Metropolitan Detention Center, provide attorneys a minimum level of confidential visitation and communication with individuals in pretrial detention.  In-person confidential legal visits are available seven days per week, including

weekends and holidays, and do not require advanced scheduling.  Legal calls and videoconferences can also be scheduled Monday through Friday.

54.     ICE's Performance-Based National Detention Standards ("PBNDS") govern attorney communication and access in immigration detention facilities nationwide.  The PBNDS state that facilities "may neither restrict the number of calls a detainee places to his/her legal representatives, nor limit the duration of such calls by rule or automatic cut-off, unless necessary for security purposes or to maintain orderly and fair access to telephones."  PBNDS 5.6(V)(F).  For attorney visitation, the PBNDS require that facilities permit "legal visitation seven days a week, including holidays, for a minimum of eight hours per day on regular business days (Monday through Friday), and a minimum of four hours per day on weekends and holidays."  PBNDS 5.7(V)(J).  Both the calls and visits must be conducted in confidential settings.

55.     After Mr. Barco Mercado was detained on August 8, 2025, his attorney Andres Santamaria Cortes tried to contact him as quickly as possible with the goal of advising him about his legal options.  He was worried that Mr. Barco Mercado was being held in dangerous, inhumane conditions and wanted to try to provide him with as much relief as possible as quickly as possible.

56.     Shortly after Mr. Barco Mercado was arrested, Mr. Santamaria visited the floor at 26 Fed where ICE holds noncitizens and identified himself as an attorney for Mr. Barco Mercado and attempted to speak with him.  An ICE agent responded that visitations are prohibited for individuals detained at 26 Fed, and that he could not call 26 Fed to set up a call with his client.  He subsequently called the number listed on the ICE public website as the telephone to contact ICE at 26 Fed, but was not able to set up an attorney call with his client.

57.     Upon information and belief, Mr. Barco Mercado will be barred from communicating confidentially with his attorney in the coming days, in accordance with the treatment of all other detainees over the past few months.

## CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this lawsuit as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2).

59.     Plaintiff seeks to represent a class defined as: "all immigration detainees who are detained and those who will be detained in the future by U.S. Immigration and Customs Enforcement at 26 Federal Plaza, New York, NY"

60.     The proposed Class satisfies the requirements of Fed. R. Civ. P. 23(a)(1) because the Class is so numerous that joinder of all members is impracticable.  Upon information and belief, at any given time, there are approximately 50 to 90 individuals detained at 26 Fed.  Joinder is impracticable because the putative Class members are detained, many do not speak English well, and most are unable to bring individual litigation because they lack sufficient resources, financial or otherwise.  Furthermore, the population of detained individuals at 26 Fed changes on a daily basis, and, as detailed above, the putative Class members' access to legal representation and services is obstructed by the lack of phone calls and denial of attorney access to the facility.

61.     The proposed Class meets the requirements of Fed. R. Civ. P. 23(a)(2). There are several common questions of law and fact.  The class members have all been denied the ability to have confidential conversations with counsel; they have all been denied beds and have been forced to sleep on the concrete floor; they have all been denied meals every six hours; they have all been denied the ability to bathe, and they have all been denied basic hygiene products.  As a result, the common questions of law and fact include, but are not limited to, the following:

      a.   Whether Defendants' policy and practice of forcing Plaintiff and the putative class Members to sleep on the concrete floor without beds, failing to provide them with meals every six hours, and failing to allow them to bathe or access basic hygiene products violates the Fifth Amendment to the United States Constitution;

      b.   Whether Defendants have instituted a policy and practice of denying individuals detained at 26 Fed access to counsel, and whether this policy or practice violates the First and Fifth Amendments to the United States Constitution.

62.     The proposed Class meets the requirements of Fed. R. Civ. P. 23(a)(3).  The named Plaintiff's claims are typical of those of the Class because he is detained at 26 Fed and is being subjected to the punitive conditions of confinement and denial of access to counsel that are challenged here, in violation of his and the putative Class members' constitutional rights.

63.     The proposed Class meets the requirements of Fed. R. Civ. P. 23(a)(4).  The named Plaintiff has the requisite personal interest in the outcome of this action and has no interests adverse to the interests of the Class.  He will fairly and adequately represent the interests of all proposed Class members.

64.     The proposed Class is represented by counsel from the American Civil Liberties Union, the New York Civil Liberties Union, Make the Road New York, and Wang Hecker LLP.  Counsel collectively have extensive experience litigating class action lawsuits and other complex cases in federal court, including on behalf of detained noncitizens.

65.     The proposed Class meets the requirements of Fed. R. Civ. P. 23(b)(2).  Defendants have acted on grounds generally applicable to the proposed Class through their practice of detaining noncitizens at 26 Fed without access to counsel and in punitive conditions in violation of Plaintiff's and the putative Class members' rights.  Therefore, declaratory and injunctive relief are appropriate with respect to the proposed Class as a whole.

66.     Each of the members of the putative Class is or will be entitled to bring a complaint for injunctive or declaratory relief to obtain relief from unlawful detention.

**The Harm to Plaintiff and the Putative Class Members**

67.     Plaintiff and the putative Class members have been substantially harmed by Defendants' unconstitutional practices.  In addition to the harm that flows inherently from the deprivation of their Constitutional rights, they have suffered from pain and hunger, the exacerbation of preexisting medical issues and risks of new medical problems, financial harm from being detained for days and unable to work, and psychological and emotional harm.  Their inability to access legal counsel has further harmed their ability to properly prepare for their legal proceedings, and in some cases has led to them being removed from the country without representation.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Violation of the Fifth Amendment Right to Due Process**
**(On Behalf of Plaintiff and the Putative Class)**

68.     Plaintiff realleges and incorporates by reference the paragraphs above.

69.     Defendants have a policy and practice of detaining Plaintiff and the putative Class members for extended periods at 26 Fed.

70.     Accordingly, under the Fifth Amendment to the United States Constitution, Defendants have a constitutional obligation to provide for Plaintiff's and the putative Class members' health, safety, and well-being while in their custody, and not to subject them to punitive conditions of confinement, including the denial of access to counsel.

71.     The conditions that Plaintiff and the putative Class members are subjected to in 26 Fed – including being forced to sleep on the ground without beds and being deprived adequate meals, opportunities to bathe, hygiene products, and needed medications – along with the

18

limitations on attorney access – are not rationally related to a non-punitive purpose and are excessive.

72.     Defendants' policy and practice subject Plaintiff and the putative Class members to unlawful punitive detention and conditions of confinement.

73.     Defendants' policy and practice inflicted upon Plaintiff and the putative Class members are excessively harsh in relation to any non-punitive or legitimate purpose.  Moreover, any non-punitive purpose could be accomplished through alternative methods consistent with the constitutional rights of Plaintiff and the putative Class members.

74.     Defendants' policy and practice—alone and in combination—violate the Due Process Clause of the Fifth Amendment to the United States Constitution.

75.     Plaintiff and the members of the proposed Class experience a denial of access to counsel substantially worse than that experienced by those serving time in prison for criminal convictions and those incarcerated as pretrial detainees at Rikers Island and the Metropolitan Detention Center.

76.     Defendants' actions have caused, are causing, and if not enjoined, will continue to cause Plaintiff and the putative Class members to imminently suffer irreparable injury in the form of deprivation of their fundamental rights, along with a range of physical, psychological, and emotional harms.

77.     Plaintiff and the putative Class members are entitled to injunctive relief to avoid any further injury.

### SECOND CAUSE OF ACTION
### Violation of the First Amendment
### (On Behalf of Plaintiff and the Putative Class)

78.     Plaintiff realleges and incorporates by reference the paragraphs above.

79.     The First Amendment guarantees Plaintiff and the putative Class members the right to hire, consult, and communicate with an attorney.  The government may not unreasonably restrict this right.

80.     By unreasonably restricting Plaintiff and the putative Class members from retaining, consulting, and communicating with counsel, Defendants have violated and continue to violate their rights under the First Amendment.

81.     Plaintiff and putative Class members have suffered and will imminently suffer irreparable injury as a result of Defendants' policy and practice and failures to act and are entitled to injunctive relief to avoid any further injury.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff requests that the Court grant the following relief:

a.   Declare that the suit is maintainable as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(2);

b.   Enter judgment for the Plaintiff and the putative Class and against Defendants;

c.   Declare that Defendants' policy and practice violate the First Amendment rights of Plaintiff and the putative Class members to retain, consult, and communicate with counsel;

d.   Declare that Defendants' policy and practice violate the Fifth Amendment due process rights of Plaintiff and the putative Class members to be free from punitive conditions of confinement.

e.   Preliminarily and permanently order Defendants to:

   i.   Ensure that the Hold Rooms are not filled beyond their maximum capacity (defined as 50 square feet per person), that clean bedding mats are provided for sleeping for all individuals held overnight and such persons are provided with sufficient space to

lie down to sleep without having to sleep in a toilet or bathroom area, that nutritious meals that meet acceptable dietary standards are provided three times per day at six hour intervals, that Hold rooms and bathrooms are safe and clean, that bathrooms are in a separate room from where individuals are sleeping, and that detained persons have access to prescribed medication and medical care as necessary.

ii. Open 26 Fed for in-person legal visitation seven days per week, eight hours per day on business days and four hours per day on weekends and holidays;

iii. Permit individuals detained at 26 Fed to make outgoing confidential, unmonitored, unrecorded, free legal calls to counsel within 12 hours of being detained at 26 Fed and at least once during each subsequent 12-hour period while they are detained, with accommodations for interpretation;

iv. Permit attorneys to schedule legal calls with detainees at 26 Fed within 6 hours of a request made during business hours and within 12 hours of a request made at other times;

v. Order Defendants to accurately update the location of detainees held at 26 Fed in Defendant Immigration and Customs Enforcement's Online Detainee Locator System within 24 hours of their transfer to the facility.

vi. Order Defendants to maintain publicly available information regarding protocols for attorney-client communication via Defendant ICE's website.

vii. Order Defendants to provide written information regarding protocols for attorney-client communication in English, Spanish, Haitian Creole, French, Wolof, and Mandarin to all people detained by Defendants at 26 Fed.

viii. Order Defendants not to retaliate in any form against Plaintiff in his immigration proceedings or in any other capacity for asserting his constitutional rights.

f.   Award Plaintiff reasonable attorneys' fees and costs in this action under the Equal Access to Justice Act, 42 U.S.C. § 1988, and on any other basis justified under law; and

g.   Grant such other relief as the Court deems just and proper.

Dated: August 8, 2025                              Respectfully submitted,

AMERICAN CIVIL LIBERTIES                           WANG HECKER LLP
UNION FOUNDATION
Eunice Cho*                                        s/ Heather Gregorio
915 15th Street, N.W.                              Heather Gregorio
Washington, DC 20005                               Mariann Meier Wang
202-548-6616                                       Alice Reiter
echo@aclu.org                                      Daniel Mullkoff
                                                   Lily Sawyer Kaplan**
AMERICAN CIVIL LIBERTIES                           111 Broadway, Suite 1406
UNION FOUNDATION                                   New York, New York 10006
Kyle Virgien*                                      (212) 620-2600
425 California Street, Suite 700                    hgregorio@wanghecker.com
San Francisco, CA 94104                            mwang@wanghecker.com
(415) 343-0770                                     areiter@wanghecker.com
kvirgien@aclu.org                                  dmullkoff@wanghecker.com
                                                   lsawyerkaplan@wanghecker.com
NEW YORK CIVIL LIBERTIES
UNION FOUNDATION                                   MAKE THE ROAD NEW YORK
Amy Belsher                                        Harold A. Solis
Robert Hodgson                                     Paige Austin
Claire Molholm**                                   301 Grove Street
Molly K. Biklen                                    Brooklyn, NY 11237
125 Broad Street, 19th Floor                       Tel. (718) 418-7690
New York, NY 10004                                 Fax (866) 420-9169
Tel: (212) 607-3300                                harold.solis@maketheroadny.org
abelsher@nyclu.org                                 paige.austin@maketheroadny.org
rhodgson@nyclu.org
cmolholm@nyclu.org
mbiklen@nyclu.org

*Application for *Pro hac vice* admission                    **SDNY admission pending
forthcoming

*Attorneys for Plaintiff and Proposed Class Counsel*

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 8, 2025, I served by electronic mail this Complaint upon

the following counsel:

      Jeffrey Oestericher, Jeffrey.Oestericher@usdoj.gov and
      Brandon Waterman, Brandon.Waterman@usdoj.gov


    DATED:  New York, New York
             August 8, 2025

                              /s/ Heather Gregorio
                           Heather Gregorio