**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| P████ R████ P██, | Case No. 25-cv-8112 |
| *Petitioner*, | |
| v. | **DECLARATION OF DIANA YANGUAS ROSEN IN SUPPORT OF AMENDED PETITION FOR WRIT OF HABEAS CORPUS** |
| LaDeon FRANCIS, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; Kristi NOEM, in her official capacity as Secretary of Homeland Security; and Pamela BONDI, in her official capacity as Attorney General of the United States, | |
| *Respondents*. | |

I, Diana Yanguas Rosen, upon my personal knowledge hereby declare, as follows:

1. I am an attorney duly admitted to practice in the State of New York.

2. I am a Coordinating Staff Attorney in the Immigrant Protection Unit at the New York Legal Assistance Group ("NYLAG"), which represents Petitioner P████ R████ P██ ("Mr. R█████") in the above-captioned action.

████████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████

1







26. At 26 Federal Plaza he was held in a small room with up to eight or nine other people. The room was very cold, and he was given just a blanket and sheet to sleep on.

27. He was not provided with sufficient toilet paper to use the bathroom—if he needed to use the toilet, guards would give him just one piece of paper.

28. Mr. R███ suffers from Type 2 diabetes and has been advised by his doctor not to consume a carbohydrate-heavy diet. His sugar levels were checked when he arrived at 26 Federal Plaza, and they were normal at that time.

29. At 26 Federal Plaza, he was given almost exclusively carbohydrates to eat. On the evening of September 25, he was served pasta for dinner. On September 26, guards gave him bread with cream for breakfast, and a sandwich for lunch. Mr. R███ was very worried about the impact this diet could have on his health due to his diabetes.

30. On Friday, September 26, at approximately 11:30am, I learned of Mr. R███'s detention and immediately began making efforts to contact him. I checked the online ICE Detainee Locator to try to determine his location. The Locator did not list a location for Mr. R███, but directed me to call the New York ICE Field Office at 212-463-9315.

31. I called this phone number twice and it went immediately to voicemail without ringing. The automated voicemail message stated that no voicemail service was set up for this number.

32. Around two hours later, at approximately 1:30pm, I called the phone number again. This time, a man answered the phone.

33. I told the man, who did not identify himself, but I understood to be an employee or contractor of ICE, that I was a NYLAG attorney and wished to schedule a legal call with Mr. R███ as soon as possible. The man confirmed that Mr. R███ was detained at 26 Federal Plaza, but told me a legal call would not be possible because 26 Federal Plaza is a "holding facility" as opposed to a detention center.

34. I informed the man on the phone that, pursuant to a preliminary injunction in *Barco Mercado v. Noem*, 25-cv-06568-LAK (S.D.N.Y. Sept. 17, 2025), ICE is required to schedule legal calls for detainees held at 26 Federal Plaza at the time requested by the attorney or as soon after as is reasonably possible.

35. The man on the phone told me he had never heard of this court order and that there are no legal calls at 26 Federal Plaza. I read the man the language from the order and explained that this was a preliminary injunction ordered by a federal district court judge on September 17, 2025. I offered to email or fax him a copy of the order.

36. After pausing our call twice to speak with another individual, the man transferred my call to another number. A second man answered the phone and asked me for the name and A-number of the person I wished to speak with.

37. I provided Mr. R███'s name and A-number, and the second man told me Mr. R███ would call me back.

38. I asked if the call would be on a confidential line, and the second man said, "He'll call you," and hung up the phone.

39. Shortly after this call, I received a phone call from Mr. R████ on a phone number registered to "HS ICE OCIO D." I was not sure if the phone line was being monitored or recorded, so I did not feel comfortable conducting a full intake with Mr. R████.

40. I spoke briefly to Mr. R████ regarding his arrest and conditions at 26 Federal Plaza, and informed him that a *pro se* habeas petition was filed on his behalf on Thursday evening.

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████

43. At approximately 5:30pm on Friday, September 26, Mr. R████ disappeared from the ICE detainee locator. In my experience, when an individual is removed from the locator, that indicates they have been released from custody either to the community or via deportation.

44. Although he had been removed from the ICE detainee locator, the EOIR Automated Case Information system reflected that he was scheduled for a master calendar hearing in his removal proceedings on October 1, 2025 at the 201 Varick Immigration Court,[1] which hears detained cases.

---

[1] At around 9am on Tuesday, September 30, the EOIR Automated Case Information system was updated to reflect that Mr. R████'s proceedings were now venued in Elizabeth, New Jersey and he was no longer scheduled for an October 1 master calendar hearing.

45. Similarly, on Friday evening the ERO eFile website, which permits attorneys to enter their appearance with ICE and schedule legal meetings with detained clients, reflected that Mr. R███ was not detained.

46. I emailed the New York ICE Field Office on Friday evening to inquire regarding Mr. R███'s whereabouts, in light of his disappearance from the locator.

47. I later learned from Mr. R███ that he was removed from 26 Federal Plaza at around 6:00pm and taken to Delaney Hall in Newark, New Jersey, where he arrived at around 3:00am the following morning.

48. On Saturday, September 27 at approximately 10:00am, the "New York Outreach" ICE email account responded to my email from the previous night, "Your client is currently in transit to a detention housing facility. Please utilize the online detainee locator and reach out to the relevant field office once a detention location is displayed."

49. I emailed a second time asking which facility he was in transit to, and the account responded, "I do not have access to check myself, but from what I know is, that once the new facility receives him/her, they will update the system and it will show on the detainee locator, all I can recommend is for you to continue checking the detainee locator throughout the day."

50. I checked the locator regularly throughout Saturday and Mr. R███ never appeared. It is now my understanding that Mr. R███ was already booked into Delaney Hall when I received the emails stating that he was in transit.

51. On Saturday evening at around 8:00pm, Mr. R███ called his family and told them he was at Delaney Hall, despite still not appearing in the locator.

52. On ICE's website, it states that Delaney Hall utilizes ERO eFile to schedule attorney visits with detainees. I attempted to schedule a visit with Mr. R█████ on Saturday evening, but ERO eFile would not permit me to schedule a meeting because the system continued reflecting that he was not detained.

53. As I was unable to utilize ERO eFile to schedule a meeting, I emailed the Geo Group account listed on ICE's website for Delaney Hall asking to schedule a legal call as soon as possible. I wrote that I was free to speak anytime on Sunday, Monday, or Tuesday.

54. Mr. R█████ did not appear in the ICE detainee locator until sometime between 11:00am and 1:30pm on Sunday, September 28.

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████

████████████████████████████████████████████████

████████████

████████████████████████████████████████████████

██████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

60. At 8:10am on Monday, September 29, I received an unscheduled legal call with Mr. R███ from Delaney Hall. This was the first time I was able to speak to him on a line that I believed was unmonitored. During this call, Mr. R███ retained NYLAG to represent him *pro bono* in his habeas proceedings.

61. During this call, Mr. R███ updated me on his medical condition. He told me that during his initial medical booking at Delaney Hall, a nurse told him that his sugar levels were high. This was extremely concerning to him, as his sugar levels were not high when he was first detained.

62. Mr. R███ received no further medical attention until the evening of Sunday, September 28, when he was given an insulin injection. He does not typically receive insulin injections for his diabetes. In the past he has taken metformin pills, but he was not taking them at the time of his detention. Mr. R███ was told that he will be receiving daily insulin injections in detention.





I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed in New York, New York on October 1, 2025

Diana Yanguas Rosen

11