**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SERGIO ALBERTO BARCO MERCADO,
on his own behalf and on behalf of all others
similarly situated,

          Plaintiff,

          v.

KRISTI NOEM, Secretary, U.S. Department
of Homeland Security, in her official
capacity, *et al.*,

          Defendants.

No. 25 Civ. 6568 (LAK)

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONTEMPT AND SANCTIONS

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2695

JEFFREY OESTERICHER
Assistant United States Attorney
    - Of Counsel -

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT .........................................................................................1

BACKGROUND ...........................................................................................................2

    I.    This Action and the Court's TRO and PI...............................................................2

    II.    The Parties' Communications After Entry of the PI.............................................4

ARGUMENT ...............................................................................................................5

    PLAINTIFF'S MOTION FOR CONTEMPT SHOULD BE DENIED

    A.    Applicable Legal Standard....................................................................................5

    B.    Defendants Are Not in Contempt of the Court's PI Order ....................................7

        1.    Defendants Have Not Violated the Court's Attorney Access Order ...........7

        2.    Defendants Have Not Violated the Court's Order Requiring Legal Calls to Be Confidential................................................................................13

        3.    Defendants Have Not Violated the Requirement to Provide a Notice of Rights ...........................................................................................13

        4.    Defendants Have Not Violated the Order's Provisions Regarding Hygiene Products ......................................................................................14

    C.    Plaintiff's Request for Attorney's Fees as a Sanction Is Barred by Sovereign Immunity.............................................................................................16

CONCLUSION...........................................................................................................17

## TABLE OF AUTHORITIES

**CASE**                                                                     **PAGE(s)**

*Aspira of New York, Inc. v, Bd. of Educ. of the City of New York*,
    423 F. Supp. 647 (S.D.N.Y. 1976) ............................................................. 6

*Casale v. Kelly*,
    710 F. Supp.2d 347 (S.D.N.Y. 2010)........................................................ 16

*Coleman v. Espy*,
    986 F.2d 1184 (8th Cir. 1993) ................................................................. 17

*Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n*,
    889 F.2d 389 (2d Cir. 1989)...................................................................... 6

*Fox Corp. v. Media Deportes Mexico, S. De R.L. de C.V.*,
    No. 25 Civ. 6703 (JSR), 2025 WL 3029941 (S.D.N.Y. Oct. 30, 2025) ............................ 6

*Gutman v. Klein*,
    No. 03 CV 1570 (BMC) (RML), 2007 WL 9706609 (E.D.N.Y. Sept. 26, 2007) ............. 5

*Hart Schaffner & Marx v. Alexander's Dep't Stores*,
    341 F.2d 101 (2d Cir. 1965)...................................................................... 5

*Hess v. New Jersey Transit Rail Operations*,
    846 F.2d 114 (2d Cir. 1988)...................................................................... 6

*King v. Allied Vision, Ltd.*,
    65 F.3d 1051 (2d Cir. 1995)............................................................*passim*

*Latino Officers Ass'n City of New York v. City of New York*,
    519 F. Supp. 2d 438 (S.D.N.Y. 2007)................................................*passim*

*Levin v. Tiber Holding Cop.*,
    277 F.3d 243 (2d Cir. 2002)........................................................ 7, 14, 16

*Medina v. Luther*,
    No. 15 Civ. 1955 (LAP), 2019 WL 581270 (S.D.N.Y. Feb. 13, 2019) ........................... 16

*Nielsen Consumer LLC v. Circana Group, L.P.*,
    No. 22 Civ. 3235 (JPO), 2025 WL 267445 (S.D.N.Y. Sept. 18, 2025)...................... 7, 10

*New York State Nat. Org. For Women v. Terry*,
    886 F.2d 1339 (2d Cir. 1989)................................................................. 11

*Next Investments, LLC v. Bank of China*,
    12 F.4th 119 (2d Cir. 2021) ...................................................................... 6, 11

*Nike, Inc. v. Wu*,
    13 Civ. 8012 (CM), 2020 WL 257475 (S.D.N.Y. Jan. 17, 2020)..................................... 10

*Perez v. Danbury Hosp.*,
    347 F.3d 419 (2d Cir. 2003)............................................................... 6, 11, 16

*Powell v. Ward*,
    487 F. Supp. 917 (S.D.N.Y. 1980) .................................................................. 16

*U.S. v. Acquest Wehrle, LLC*,
    No. 09-CV-637, 2017 WL 6387801 (W.D.N.Y. Nov. 1, 2017) ...................................... 17

*U.S. v. Mitchell*,
    463 U.S. 206, 103 S. Ct. 2961 (1983).............................................................. 16

*U.S. v. Twentieth Century Fox-Film Corp.*,
    700 F. Supp. 1242 (S.D.N.Y. 1988)................................................................. 6

*Zino Davidoff SA v. CVS Corp.*,
    No. 06 Civ. 15332 (RJS), 2008 WL 1775410 (S.D.N.Y. Apr. 17, 2008).................. *passim*

Defendants (the "Government"), by their attorney, Jay Clayton, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in opposition to Plaintiff's motion for contempt and sanctions.  For the reasons explained herein, the Court should deny Plaintiff's motion.

## PRELIMINARY STATEMENT

Plaintiff, and the putative class on whose behalf he seeks to bring this case, filed this action to challenge the conditions of confinement at the U.S. Immigration and Customs Enforcement ("ICE") hold rooms at 26 Federal Plaza and the limitations on attorney access.  *See* ECF No. 51 (Complaint).  Specifically, Plaintiff sought a temporary restraining order ("TRO") and preliminary injunction ("PI") enjoining Defendants to address the conditions of confinement and provide detainees with the means of scheduling and conducting confidential telephone calls with legal counsel.  ECF No. 9.  The Court granted Plaintiff's motion for a TRO and PI, ordering the Government, among other things, to implement measures to ensure that the hold rooms are clean, not overcrowded, and furnished with bedding mats and personal hygiene items, that detainees are provided with a Notice of Rights form and the means of making free, confidential telephone calls with counsel, and that counsel have the ability to schedule calls with detainees.  ECF Nos. 65 (TRO), 97 (PI).

In this motion, Plaintiff contends that in violation of these orders Defendants "appear never to have implemented many of the required procedures, particularly those regarding attorney access, hygiene, and the provision of the Notice of Rights to all detained individuals." Memorandum of Law in Support of Motion for Contempt and Sanctions ("Pl. Contempt Br.") (ECF No. 109) at 1.  However, as shown below, Plaintiff's assertion is not correct.  To the contrary, Defendants have faithfully (albeit not perfectly) implemented the measures required by this Court. Plaintiff therefore cannot meet his burden of proving by clear and convincing evidence that

Defendants failed to comply with a clear and unambiguous order and, in addition, have not diligently attempted to comply in a reasonable manner. *See King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995). Accordingly, Plaintiff's motion for contempt and sanctions should be denied.

## BACKGROUND

### I.  This Action and the Court's TRO and PI

Plaintiff filed this action on August 8, 2025, on his own behalf and on behalf of a class of others similarly situated. ECF No. 51. Plaintiff alleged that the conditions of confinement at the 26 Federal Plaza hold rooms violate Plaintiff's (and the class members') Fifth Amendment rights and that the limitations on access to legal counsel violate Plaintiff's (and the class members') First and Fifth Amendment rights. *See* Plaintiff's Memorandum of Law in Support of Motion for a Temporary Restraining Order, dated August 8, 2025 (ECF No. 10), at 17-30. Plaintiff sought a TRO and a PI enjoining Defendants to remedy the alleged unconstitutional conditions of confinement and provide legal visitation seven days per week, eight hours per day on business days and four hours per day on weekends and holidays. *Id.* at 31-32; ECF No. 9 ¶¶ 1-8 (proposed order).

Defendants opposed Plaintiff's motion for a TRO on August 11, 2025, ECF No. 54, and the Court heard oral argument on August 12, 2025, ECF No. 65. Later that same day, the Court entered a TRO. *Id.* The Court ordered Defendants to ensure, *inter alia*, that:

(a)  each detainee at 26 Federal Plaza shall have at least 50 square feet of floor area and be furnished with a clean bedding mat and adequate supplies of soap, towels, toilet papers, oral hygiene products, and feminine hygiene products;

(b)  the hold rooms are cleaned thoroughly at least three times each day;

(c) detainees are provided with means of making confidential, unmonitored, unrecorded, temporally unrestricted free telephone calls within 24 hours of being detained and at least once during each subsequent 12-hour period while they are detained together with the ability to schedule legal calls with counsel within 6 hours of a request made within the period 9 a.m. to 4 p.m. and within 16 hours of a request made thereafter;

(d) at least one land line telephone is dedicated solely to accommodating detainee legal calls for each five (or fewer) detainees in each hold room;

(e) each detainee is provided, within one hour after the detainee's arrival, a printed Notice of Rights in English and Spanish stating the rights specified in the TRO; and

(f) a telephone number for attorneys to call to schedule calls with detainees is conspicuously displayed on the ICE web site and monitored and answered without undue delay from 9 a.m. until 5 p.m.

TRO ¶¶ 1-8.[1]  By memo endorsement dated August 14, 2025 (ECF No. 68), the Court stayed the TRO to the extent it required Defendants to provide (a) toothbrushes instead of teeth cleaning wipes, and (b) interpreter services for confidential attorney phone calls.  The Court vacated its partial stay of the TRO and modified two provisions of the TRO relating to access to interpretation services for attorney calls and retention of inhaled medication by Order dated August 17, 2025 (ECF No. 70), and corrected the August 17 Order by Order dated August 19, 2025 (ECF No. 77).

On September 17, 2025, after additional briefing, the Court granted Plaintiff's motion for a PI.  ECF No. 97.  The PI, which incorporated many of the provisions of the TRO, sets forth

---

[1] The TRO was to continue until "the earlier of (a) the determination of plaintiff's motion for a preliminary injunction and (b) 11:59 p.m. on August 26, 2025."  TRO at 1.  The Court extended the TRO from August 26 to September 18, 2025, by Orders dated August 25 and September 4, 2025.  ECF Nos. 88, 91.

requirements regarding, *inter alia*, the amount of floor space that Defendants must provide for each detainee, a Notice of Rights form, medical care, sleeping mats, personal hygiene supplies and, upon request, bottled water, an additional meal, and clean clothes, the provision of landline telephones dedicated solely to accommodating detainee legal calls, including a requirement that detainees be provided the means of scheduling and making confidential calls to legal counsel at specified time intervals, and the conspicuous display on the ICE website of a telephone number by which attorneys can schedule calls with detainees. *Id.*

## II. The Parties' Communications After Entry of the PI

Following the entry of the PI, on October 7, 2025, Plaintiff's counsel wrote to Defendants' counsel and raised certain alleged PI compliance issues. *See* Pl. Contempt Br. at 9. In response to Plaintiff's request, Defendants promptly provided a sworn declaration from William P. Joyce, a Deputy Field Office Director ("DFOD") in ICE's New York City Field Office of Enforcement and Removal Operations, which addressed these issues. *See id.*; Declaration of William P. Joyce, dated Oct. 15, 2025 ("Joyce Decl.") (ECF No. 110-4). In his declaration, DFOD Joyce averred that Defendants were ensuring that each detainee at 26 Federal Plaza was provided a printed Notice of Rights form in either English or Spanish, as required by the PI, and he attached the Notice of Rights forms to his declaration. Joyce Decl. ¶ 3 & Ex. 1. DFOD Joyce also clarified that if a detainee did not speak English or Spanish or was illiterate, ICE provided an interpreter or other individual to convey the contents of the Notice of Rights form. Id. ¶ 4. Furthermore, in response to concerns raised regarding difficulties that certain attorneys had encountered in scheduling calls with detainees, DFOD Joyce averred that Defendants had established a new dedicated telephone number for scheduling such calls, which number was conspicuously displayed on ICE's Detainee Locator System. *Id.* ¶ 5. Furthermore, DFOD Joyce advised that in addition to the dedicated telephone number, Defendants had created a separate email address to field requests from attorneys

4

wishing to schedule calls with detainees and to receive documents. *Id.* ¶ 6. The creation of this dedicated email address, which DFOD Joyce anticipated would be fully functional within 24 hours, was above and beyond the requirements of the PI. *Id.*

On November 12, 2025, Plaintiff's counsel wrote again to Defendants' counsel raising concerns regarding certain information in DFOD Joyce's Declaration as well as the content of the Notice of Rights form. Pl. Contempt Br. at 11. Plaintiff's counsel requested a response within one week. *Id.* On November 24, 2025, Defendants' counsel emailed Plaintiff's counsel, apologized for not writing sooner, and stated that he intended to respond to Plaintiff's request for information before the end of the week. Id. at 12. Plaintiff nevertheless filed this motion the next day.

## ARGUMENT

## PLAINTIFF'S MOTION FOR CONTEMPT SHOULD BE DENIED

### A. Applicable Legal Standard

A contempt order is a "potent weapon" to which courts "should not resort where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *King*, 65 F.3d at 1058 (internal quotation marks and citations omitted); *see also Gutman v. Klein*, No. 03 CV 1570 (BMC) (RML), 2007 WL 9706609, at *3 (E.D.N.Y. Sept. 26, 2007) (same). A court's power to impose contempt is limited. *Gutman*, 2007 WL 9706609, at *3; *Latino Officers Ass'n City of New York v. City of New York*, 519 F. Supp. 2d 438, 443 (S.D.N.Y. 2007) ("contempt adjudications are not made lightly"). Such an order is warranted "only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict." *King*, 65 F.3d at 1058 (citing *Hart Schaffner & Marx v. Alexander's Dep't Stores*, 341 F.2d 101, 102 (2d Cir. 1965)). Specifically, a movant must establish that "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3)

the contemnor has not diligently attempted to comply in a reasonable manner." *King*, 65 F.3d at 1058; *see also Perez v. Danbury Hosp.*, 347 F.3d 419, 423-24 (2d Cir. 2003) (same).

A clear and unambiguous order "is one that leaves 'no uncertainty in the minds of those to whom it is addressed.'" *King*, 65 F.3d at 1058 (quoting *Hess v. New Jersey Transit Rail Operations*, 846 F.2d 114, 116 (2d Cir. 1988)). Thus, one "'must be able to ascertain from the four corners of the order precisely what acts are forbidden.'" *King*, 65 F.3d at 1058 (quoting *Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n*, 889 F.2d 389, 395 (2d Cir. 1989)). "Ambiguities in the order's language" may render an order sufficiently unclear as to defeat a finding of contempt. *Next Investments, LLC v. Bank of China*, 12 F.4th 119, 131 (2d Cir. 2021); *see also Fox Corp. v. Media Deportes Mexico, S. De R.L. de C.V.*, No. 25 Civ. 6703 (JSR), 2025 WL 3029941, at *4 (S.D.N.Y. Oct. 30, 2025) (an objectively reasonable belief that conduct does not violate the order insulates the alleged contemnor from civil contempt).

In addition, in evaluating a contempt motion, "[t]he court is not empowered to command, any more than it can pretend for itself to achieve, performance approximating perfection. The court is obliged, however, to require substantial performance and due diligence." *Aspira of New York, Inc. v, Bd. of Educ. of the City of New York*, 423 F. Supp. 647, 651 (S.D.N.Y. 1976); *accord Latino Officers Ass'n*, 519 F. Supp. 2d at 446 n.43; *Zino Davidoff SA v. CVS Corp.,* No. 06 Civ. 15332 (RJS), 2008 WL 1775410, at *5 (S.D.N.Y. Apr. 17, 2008) (citing cases). Accordingly, "if a defendant has made good faith efforts to comply with the order, the civil contempt power should not be exercised." *U.S. v. Twentieth Century Fox-Film Corp.*, 700 F. Supp. 1242, 1243 n.1 (S.D.N.Y. 1988). This is especially true where the alleged contemnor made modifications after receiving information that its original measures may have fallen short. *Nielsen Consumer LLC v.*

6

*Circana Group, L.P.*, No. 22 Civ. 3235 (JPO), 2025 WL 267445, at *2 (S.D.N.Y. Sept. 18, 2025); *Zino Davidoff*, 2008 WL 1775410, at *8.

### B. Defendants Are Not in Contempt of the Court's PI Order

Plaintiff's contempt motion should be denied because he cannot show by clear and convincing evidence that Defendants failed to comply with a clear and unambiguous order. Plaintiff asserts that "Defendants have failed, at a minimum, to comply with the attorney access, hygiene rights, and Notice of Rights provisions of the Orders." Pl. Contempt Br. at 16. However, the evidence submitted by the parties in connection with this motion shows that Defendants have complied with the Court's Orders, and Plaintiff has not met his burden of demonstrating to "a 'reasonable certainty' that a violation occurred." *Zino Davidoff*, 2008 WL 1775410, at *13 (quoting *Levin v. Tiber Holding Cop.*, 277 F.3d 243, 250 (2d Cir. 2002)). Furthermore, even if Defendants were out of compliance with the Court's orders (which they are not), Defendants have diligently attempted to comply in a reasonable manner and therefore a contempt finding is not warranted. *Zino Davidoff*, 2008 WL 1775410, at *8. Accordingly, Plaintiff's motion fails.

### 1. Defendants Have Not Violated the Court's Attorney Access Order

As a threshold matter, Plaintiff does not appear to contend that Defendants are out of compliance with numerous provisions of the PI Order. Thus, for example, Plaintiff does not seriously dispute that Defendants are providing Detainees with adequate floor space, clean bedding mats and certain personal hygiene supplies, PI Order ¶ 1(a), (b), & (d), the hold rooms are cleaned three times each day, *id.* ¶ 1(c), landline telephones have been dedicated solely to detainee legal calls, *id.* ¶ 1(f), medical care is available as required, *id.* ¶ 2(f), detainees may retain their personal inhaled medication and have prompt access to other prescribed medication; *id.* ¶ 2(g), detainees

may request and receive bottled water, *id*. ¶ 2(i), and Defendants have not retaliated against Plaintiff or any other member of the provisionally certified class, *id*. ¶ 7.[2]

Plaintiff's primary complaint involves attorney access.  *See* Pl. Contempt Br. at 14-15, 16-17; PI Order ¶ 4.  Plaintiff contends that "since the Court issued the TRO, attorneys who have attempted to schedule legal calls have encountered significant delays and barriers; most were never able to speak with their clients while they were being detained at 26 Fed."  Pl. Contempt Br. at 16. This blanket assertion is an overstatement, and the proffered evidence falls short of meeting Plaintiff's burden of proof for several reasons.

First, most plainly, Plaintiffs simply have not shown by clear and convincing evidence that Defendants violated the Court's attorney access order.  *King*, 65 F.3d at 1058.  In the PI, the Court ordered that Defendants shall insure that:

(a) A telephone number for attorneys to call in order to schedule telephone calls with Detainees is conspicuously displayed in the ICE internet web site;
(b) The aforementioned telephone number is monitored and answer [sic] without undue delay from 9 a.m. until 5 p.m.;
(c) A call with the relevant Detainee is scheduled for the date and time requested b [sic] the attorney or as soon thereafter as is reasonably possible;
(d) The relevant Detainee is informed of the requested call with the Detainee and the scheduled date and time fixed for the call and that the Detainee is provided with the means necessary to conduct confidential, unmonitored, unrecorded, temporally unrestricted attorney call as scheduled.

---

[2] Plaintiff's motion is supported by two declarations from detainees.  Both detainees confirmed that the hold rooms were not overcrowded.  *See* Declaration of Jose Javier Cuy Cumes, dated November 20, 2025 ("Cumes Decl.") (ECF No. 116), ¶ 3 ("there were two room [sic] for men, which each held around 10 people at a time"); Declaration of Carlos Chalco Chango, dated November 20, 2025 ("Chango Decl.") (ECF No. 115), ¶ 5 ("While we were at 26 Federal Plaza, there usually were around 8 to 11 people in the room we were in.").  In addition, Mr. Cuy Cumes acknowledged that he received an aluminum blanket and a sweater for warmth upon request, a medical check when he arrived, a call to family once per day, and three meals per day (although he was hungry in the mornings).  Cumes Decl. ¶¶ 4, 7-9, 11.  Likewise, Mr. Chalco Chango acknowledged receiving an aluminum blanket, a call to family once per day (albeit of short duration), and three meals per day (albeit with small portion sizes), as well as personal hygiene supplies (but not soap).  Chango Decl. ¶¶ 6, 10-12.

PI Order ¶ 4.  Defendants have substantially complied with that provision.

With respect to the first two subparagraphs of paragraph 4, there should be little dispute that Defendants established a telephone number for attorneys to call in order to schedule telephone calls with detainees, conspicuously displayed the telephone number on ICE's internet website, and monitored and answered the number without undue delay during regular business hours (9 a.m. to 5:00 p.m.).  *See* Declaration of William P. Joyce, dated October 15, 2025 ("Joyce Decl.") (ECF No. 110-4), ¶ 5; Supplemental Declaration of William P. Joyce, dated December 9, 2025 ("Suppl. Joyce Decl."), ¶¶ 25-26, 28.  In his motion papers, Plaintiff cites three examples where Defendants did not answer the phone right away.  *See* Pl. Contempt Br. at 16.  However, the first incident occurred in August 2025, very shortly after the TRO was issued, *see* Declaration of Nathan Yaffe, dated September 9, 2025 ("Yaffe Decl.") (ECF No. 111), ¶ 7, and the other two involved a delay of two hours (*see* Declaration of Diana Yanguas Rosen, dated Oct. 1, 2025 ("Rosen Decl.") (ECF No. 113), ¶¶ 31-32) and a little less than one hour (*see* Declaration of Zoey Jones, dated November 25, 2025 ("Jones Decl.") (ECF No. 117), ¶¶ 5-6).  More fundamentally, after Plaintiff brought these issues to the Government's attention, ICE promptly implemented remedial measures by designating a new telephone number for scheduling attorney calls with detainees, conspicuously displaying the new number on ICE's Online Detainee Locator System, and checked to verify that the number was being answered during regular business hours.  Joyce Decl. ¶ 5; Suppl. Joyce Decl. ¶¶ 25-26, 28.  Furthermore, above and beyond the requirements of the PI, ICE also created a separate email address for attorneys to schedule calls.  Joyce Decl. ¶ 6; Suppl. Joyce Decl. ¶ 27.

These remedial measures were implemented on or about October 15, 2025.  Joyce Decl. ¶¶ 5, 6; Suppl. Joyce Decl. ¶ 25.  Tellingly, Plaintiff has submitted only one declaration addressing attorney access after October 15, and in that single instance the attorney's call was answered right

away, the attorney was told (incorrectly) that she should email instead to arrange a legal call with a detainee, and the attorney received a prompt response to her email request for a legal call. *See* Declaration of Deisy Flores, dated October 29, 2025 ("Flores Decl.") (ECF No. 114), ¶¶ 5-6. Accordingly, Defendants are in substantial compliance with the first two subparagraphs of Paragraph 4 of the PI, and Plaintiff has not shown a violation of those subparagraphs by clear and convincing evidence. *See Zino Davidoff*, 2008 WL 1775410, at *8 (courts cannot insist on "performance approximating perfection," "substantial compliance is the appropriate standard") (internal quotation marks omitted); *Latino Officers Ass'n*, 519 F. Supp. 2d at 446 & n.43 (same).

Moreover, the proffered evidence demonstrates that Defendants have been making reasonably diligent and energetic efforts to comply with these subparagraphs, as shown by both the designation of a new phone number and the creation of a separate email address (above and beyond the requirements of the PI) to process attorney call requests, as well as Defendants' efforts to test the phone number to ensure that it was being answered promptly. Joyce Decl. ¶¶ 5, 6; Suppl. Joyce Decl. ¶¶ 25-26; *see Zino Davidoff*, 2008 WL 1775410, at *8 ("Reasonably energetic compliance, at a minimum, requires a party to 'energetically police' the effectiveness of its compliance measures and, when advised that such measures have fallen short, to modify them accordingly."); *see also Nielsen Consumer LLC*, 2025 WL 267445, at *2 (same); *Latino Officers Ass'n*, 519 F. Supp. 2d at 446 ("Defendants' initial failure to implement the formal discipline database and provide the necessary formal and informal discipline reports by the required dates violated the strict terms of the Agreement. This does not, however, place them in contempt because defendants were reasonably diligent and energetic in attempting to comply with the Court's order and have since brought themselves into substantial compliance with it."); *Nike, Inc. v. Wu*, 13 Civ. 8012 (CM), 2020 WL 257475, at *25 (S.D.N.Y. Jan. 17, 2020) ("Reasonable

10

diligence does not require that [the alleged contemnor] exhaust all means available to them.") (internal quotation marks and citation omitted).[3]

Plaintiff's evidence that, in a few instances, attorneys were not able to schedule a call with their client on their chosen day and time also does not show contempt.  *See* Yaffe Decl. ¶¶ 7-8 (attorney was informed that the schedule was full, call offered for the following week); Declaration of Matthew Bray, dated September 10, 2025 ("Bray Decl.") (ECF No. 112), ¶ 7 (same); Exhibit 2 to Declaration of Heather Gregorio, dated November 25, 2025 ("Gregorio Decl.") (ECF No. 110-2) (same).  As a threshold matter, Plaintiff has not shown a violation of a "clear and unambiguous" order.  Paragraph 4(c) of the PI requires Defendants, upon receipt of a request by an attorney, to schedule the call "for the date and time requested b[y] the attorney *or as soon thereafter as is reasonably possible.*"  PI Order ¶ 4(c) (emphasis added).  In the cited instances, the attorney call schedule was full, and Defendants offered a call at the earliest available date – *i.e.*, "as soon thereafter as is reasonably possible."  While that was not ideal in those circumstances, given that 26 Federal Plaza is a holding facility where detainees often stay two days or less, *see* Supplemental Declaration of Nancy Zanello, dated August 18, 2025 ("Suppl. Zanello Decl.") (ECF No. 74), ¶ 6, it does not constitute a violation of the plain terms of the Order.  *Perez*, 347 F.3d at 424-25 (denying contempt motion because consent decree did not clearly and unambiguously require the action plaintiff preferred); *see also Next Investment*, 12 F.4th at 131 ("Ambiguities in the order's language" may render an order sufficiently unclear as to defeat a finding of contempt.); *New York State Nat. Org. For Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989) (Fed. R. Civ. P. 65(d)

_____

[3] Plaintiff's assertion that "Defendants repeatedly have changed the designated phone number and email address through which attorneys can schedule calls," Pl. Contempt Br. at 16, is misleading. Based on Plaintiff's feedback that attorneys were experiencing difficulties scheduling calls with detainees, Defendants designated a new phone number and email address in October 2025.  Joyce Decl. ¶¶ 5, 6.

"was intended to prevent an uncertain or vague decree from becoming the basis for a contempt citation."); *Latino Officers Ass'n*, 519 F. Supp. 2d at 443 ("A court order is clear and unambiguous when it "leaves no uncertainty in the minds to whom it is addressed . . .") (internal quotation marks and citation omitted).[4]

Moreover, all of the three scheduling delays cited by Plaintiff occurred before Defendants implemented the new telephone number and email address for scheduling attorney calls, and in fact two of the examples occurred before the PI Order was even entered.  *See* Yaffe Decl. ¶¶ 7-8; Bray Decl. ¶ 7; Gregorio Decl. Ex. 2.  Thus, Plaintiff has not proffered a recent example of alleged non-compliance and Defendants have been in substantial compliance with the requirements for scheduling legal calls requested by attorneys.  *See, e.g.*, *Zino Davidoff*, 2008 WL 1775410, at *8 (requiring "substantial compliance") (internal quotation marks omitted); *Latino Officers Ass'n*, 519 F. Supp. 2d at 446 & n.43 (same).  Likewise, as discussed *supra*, Defendants have been making reasonably diligent and energetic efforts to comply with the attorney access requirements, including by designating a new phone number, creating a separate email address (above and beyond the requirements of the PI), testing the phone lines, and training its staff.  Joyce Decl. ¶¶ 5, 6; Suppl. Joyce Decl. ¶¶ 25-26, 28.  Accordingly, Plaintiff cannot meet his burden of proof to show contempt.[5]

---

[4] In contrast, the PI provision governing scheduling legal calls requested by detainees contains specific time requirements.  PI Order ¶ 2(c).

[5] Plaintiff has not alleged a compliance issue regarding PI Order ¶ 4(d), which governs Defendants' obligation to inform detainees of calls scheduled by attorneys.  Furthermore, Plaintiffs' assertion that "Defendants have also created new, burdensome, and unnecessary barriers that flout the terms of the decree, such as requiring a signed G-28 form in order to schedule a legal call with [a detainee]," Pl. Contempt Br. at 16-17, is incorrect.  Defendants require attorneys to submit a G-28 form to verify the attorney-client relationship, but the form does not need to be signed by the detainee.  Suppl. Joyce Decl. ¶ 24.  In any event, that requirement does not violate a clear and unambiguous order.

### 2. Defendants Have Not Violated the Court's Order Requiring Legal Calls to Be Confidential

Plaintiff's assertion that Defendants have "routinely violated the Orders' requirements that calls be 'confidential, unmonitored, unrecorded [and] temporally unrestricted,'" Pl. Contempt Br. at 17 (quoting PI Order ¶ 2(b)), is also incorrect. As a preliminary matter, two of the declarations on which Plaintiff relies in support of this assertion were filed before the TRO was entered and therefore cannot support a finding of contempt. *See* (ECF No. 85, Declaration of Amy Leipziger, and ECF No. 84, Declaration of Manuel Lucero Lojano). The other four declarations on which Plaintiff relies do not demonstrate a violation, by clear and convincing evidence, of the Court's orders. For example, attorney Rosen simply avers that when she received a call from her client, she "was not sure if the phone line was being monitored or recorded." Rosen Decl. ¶ 39. Attorney Jones' declaration merely relates that she received a call from her client on the client's cell phone *before he was detained at 26 Federal Plaza*, and Attorney Jones "could tell from the very loud background noise that the call was not confidential." Jones Decl. ¶ 4. Mr. Chalco Chango states only that when he made daily calls *to his sister* – not legal calls – "[t]here was always a guard there" and that "[n]o one ever mentioned that legal calls were available or any possibility for private calls." Chango Decl. ¶ 6. Finally, Mr. Cuy Cumes similarly relates that "I never heard any guards at 26 Federal Plaza mention legal calls or private calls. I was able to call my family once a day but there were always guards listening." Cumes Decl. ¶ 4. In short, Plaintiff has not offered even one instance in which a legal call was monitored in violation of the Court's Orders. This claim fails.

### 3. Defendants Have Not Violated the Requirement to Provide a Notice of Rights

Plaintiff also has not shown by clear and convincing evidence that Defendants "are not complying with the Orders' requirements that every detained individual 'within one hour after

13

his/her arrival in a Hold Room, be given a printed Notice of Rights' in English and Spanish, with other translations as necessary." Pl. Contempt Br. at 17 (quoting PI Order ¶ 2). In support of this claim, Plaintiff proclaims that "[n]ot a single declarant has reported receiving such a notice." Pl. Contempt Br. at 18. What Plaintiff fails to mention is that only two detainees submitted declarations in support of their present motion. One of the declarants, Mr. Cuy Cumes, does not mention the Notice of Rights form at all in his declaration and avers only that he "noticed a small paper in the window" which advised that "we had a right to a call of 10 minutes each day." Cumes Decl. ¶ 5. The other declarant, Mr. Chalco Chango, who is blind, also does not mention the Notice of Rights form in his declaration but recounts that there was something "written on a window." Chango Decl. ¶ 8. Taken together, these declarations plainly do not meet Plaintiff's burden of providing "a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." *Levin*, 277 F.3d at 250; *see Zino Davidoff*, 2008 WL 1775410, at *13 (same); *see also King*, 65 F.3d at 1058 (contempt power should not be exercised "where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct") (internal quotation marks and citation omitted). That is especially true given that Defendants have proffered evidence that that they are "ensuring that each Detainee in a Hold Room is provided with a printed Notice or Rights, in either English or Spanish, as required by #2 and #5 of the Preliminary Injunction." Joyce Decl. ¶ 3; *see also* Suppl. Joyce Decl. ¶ 14.

### 4. Defendants Have Not Violated the Order's Provisions Regarding Hygiene Products

Finally, Plaintiff also has not proven that "Defendants have flouted the Orders' provisions pertaining to hygiene." Pl. Contempt Br. at 18. In particular, Plaintiff asserts that there "is still no soap" or a "reliable ability to receive a change of clothes," and "Defendants appear to offer towels, toothbrushes, and toothpaste only inconsistently." *Id*. Again, Plaintiff has only provided two

14

declarations from detainees post-dating the Court's entry of the TRO to support this claim. In Mr. Cuy Comes' declaration, he states that he "was given a toothbrush but [he] had to ask for it," and that "[w]e were not given any soap or any way to clean ourselves." Cumes Decl. ¶¶ 6, 10. Mr. Cuy Comes does not make any other assertions with respect to hygiene supplies, except he recounts that he received a sweater based on a request made by another detainee. *Id*. ¶ 7. Mr. Chalco Chango avers only that one detainee "asked for clothes, but he was not given any," and that although detainees "were given toothbrush, toothpaste, and toilet paper," as well as "small wet towels," they were not given soap. Chango Decl. ¶¶ 9, 11. Taken together, these declarations do not satisfy the clear and convincing standard.

With respect to Plaintiff's charge that a change of clothes is not available upon request, Mr. Cuy Comes does not address this issue at all, and Mr. Chalco Chango believes that on one occasion another detainee was not given clothes in response to a request. This one alleged shortcoming plainly does not support a contempt finding. *See Zino Davidoff*, 2008 WL 1775410, at *8 (courts cannot insist on "performance approximating perfection," "substantial compliance is the appropriate standard") (internal quotation marks omitted); *Latino Officers Ass'n*, 519 F. Supp. 2d at 446 & n.43 (same). Furthermore, Defendants have submitted evidence showing that a change of clothes is available to detainees upon request. *See* Suppl. Joyce Decl. ¶ 17; *King*, 65 F.3d at 1058 (contempt power should not be exercised "where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct") (internal quotation marks and citation omitted)

Similarly, Plaintiff's assertion that "Defendants appear to offer towels, toothbrushes, and toothpaste only inconsistently," Pl. Contempt Br. at 18, is unsupported, let alone proven by clear and convincing evidence. Mr. Chalco Chango admits that he received these items and Mr. Cuy

Comes alleges only that he had to request a toothbrush before he received one. Again, this one alleged shortcoming does not support a contempt finding.

Finally, both Mr. Cuy Comes and Mr. Chalco Chango state that they did not receive soap. Soap is available to detainees in the restroom at the nurse's station. Suppl. Joyce Decl. ¶ 16. As a safety measure, soap is not placed in the holding cells because detainees have historically ingested soap. *Id*. This method of providing soap is consistent with the PI. *See* PI Order ¶ 1(d) (hold rooms shall be "furnished with adequate supplies of soap"); *id*. ¶ 2(e) (detainees shall have the right to request and promptly be provided without charge with soap). And to the extent Plaintiff reads this requirement of the PI Order differently, Defendants' furnishing of soap in this manner constitutes substantial compliance with the Court's Order and does not constitute a failure to comply with a clear and unambiguous order. *See Perez*, 347 F.3d at 424-25; *Latino Officers Ass'n*, 519 F. Supp. 2d at 443.

## C.  Plaintiff's Request for Attorney's Fees as a Sanction Is Barred by Sovereign Immunity

As shown above, Plaintiff's motion for contempt and sanctions should be denied in its entirety. Nonetheless, the Government notes that Plaintiff's request that the Court order Defendants to pay "attorneys' fees in an amount to be determined" as a sanction, Pl. Contempt Br. at 23, is barred by sovereign immunity. Absent an express waiver of sovereign immunity, money awards cannot be imposed against the United States. *See, e.g.*, *U.S. v. Mitchell*, 463 U.S. 206, 212, 103 S. Ct. 2961, 2965 (1983). Plaintiff has not pointed to any waiver of sovereign immunity allowing for the award of attorney's fees against the United States as a contempt sanction. *See* Pl. Contempt Br. at 23-25. Indeed, the three cases on which he relies – *Powell v. Ward*, 487 F. Supp. 917 (S.D.N.Y. 1980), *Casale v. Kelly*, 710 F. Supp. 2d 347 (S.D.N.Y. 2010), and *Medina v. Luther*, No. 15 Civ. 1955 (LAP), 2019 WL 581270 (S.D.N.Y. Feb. 13, 2019) – all involved New York

16

City or New York state defendants. As there is no waiver permitting the award of attorney's fees against the United States in a contempt proceeding, Plaintiff's request is barred by law. *See U.S. v. Acquest Wehrle, LLC*, No. 09-CV-637, 2017 WL 6387801, at *2 (W.D.N.Y. Nov. 1, 2017) (rejecting request to award attorney's fees in contempt proceeding on sovereign immunity grounds); *see also Coleman v. Espy*, 986 F.2d 1184, 1192 (8th Cir. 1993) ("We are able to find no authority that allows us to imply a waiver of federal sovereign immunity for civil contempt compensatory actions either in the statute defining federal courts' contempt powers or in its history.").

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for contempt and sanctions.

Dated: New York, New York
      December 9, 2025

                        Respectfully submitted,

                        JAY CLAYTON
                        United States Attorney for the
                        Southern District of New York

By:    /s/ *Jeffrey Oestericher*
                        JEFFREY OESTERICHER
                        Assistant United States Attorney
                        86 Chambers Street, 3rd Floor
                        New York, New York 10007
                        Telephone: (212) 637-2695
                        E-mail: jeffrey.oestericher@usdoj.gov

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules.  As measured by the word processing system used to prepare it, this memorandum contains 5,642 words.