I, Daniel Quevedo Silva, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1.  I make this declaration based on my personal knowledge, and at trial, I can and will reaffirm that the declaration is true and correct.

2.  I am a citizen of Venezuela and I reside in Caracas, Venezuela. I went to the United States in December 2023 because of the political landscape and my fear for my life. While I was in the U.S., I lived with my family in Manhattan.

3.  I was deported from the U.S. on September 3, 2026. My 9-year-old daughter still lives in the U.S. with her mother.

4.  On June 25, 2025, I went to an immigration court hearing at 26 Federal Plaza in Manhattan. The immigration judge gave me another court date on March 18, 2026 to continue with my case, but then as I left I was surrounded and detained by Immigration and Customs Enforcement ("ICE") officers in masks. It was horrible. I still have dreams about what happened to me that day and how I was treated afterwards.

5.  From several days after that, I was held in a holding cell at 26 Federal Plaza with about 70 men. We did not have a way to shower or clean ourselves in any capacity. There were not enough toilets and there were no beds; we slept on the floor. The officers gave us aluminum-type blankets but I was freezing the entire time. We were all bunched up. There was an intense smell of sweat, urine and feces. There were no windows to the outside and the lights were kept on during our entire time there. I was in the same clothes the whole time. I felt horrible. I did not know what was going to happen.

6.  The guards at 26 Federal Plaza gave us food to eat but I could not call it food. I can only call it slop. It was a mixture of different food together like leftovers. We were supposed to eat that twice a day. I cannot tell you what the food was because it was worse than animal food. It was unappetizing and smelled awful.

7.  I lost around 10 pounds from the time I was detained until I got to Alexandria, Lousiana, where I was transferred after 26 Federal Plaza.

8.  I was able to call my family only five times during the nine and a half days I spent at 26 Federal Plaza but only for one or two minutes each time. I had to give my wife's phone number and name to make the call.  There was always a guard next to us monitoring the call and it had to be on speaker.

9.  The whole time that I was at 26 Federal Plaza, I was never told that I had a right to speak to a lawyer. I was also not told that I could use my short calls to call a lawyer—to my knowledge I could only call family. I was not told that there was any way to request a confidential legal call, and I never saw any forms that could be used to do this. I never saw any indication that I could call legal non-profits or a legal referral line to try to find a lawyer.

EXHIBIT

PX331

10. At 26 Federal Plaza, there was no medical staff there after 5 p.m., so if you got sick after that there was no one there to help.

11. I felt confusion throughout my entire time at 26 Federal Plaza. I had no idea what was going to happen to me and what my options were. The officers said confusing and contradictory things and I was not able to contact any attorney to help me clarify the situation.

12. An officer told me that I needed to buy my flight to leave the U.S. in three days. My family tried to buy it for me and spent a lot of money—but then it turned out that the information ICE gave me was false and the agency was no longer facilitating people's departure on their own flights they bought. I did not know the truth. Later, I asked ICE how to get the money back but they did not care.

13. Before I was detained I wanted to fight my case but after what happened to me at 26 Federal Plaza I was extremely traumatized. I had not even gone through something like this in my home country. The ICE officers said that all of this was because I crossed the border. I told them that I was fearful of my home country and that I thought that I had rights but I learned through my experience that I do not.

14. On July 4, the day that I was transferred to another detention facility, I was taken with a couple of the other men. We were in transit for an entire day and I remained handcuffed and chained at my feet the entire time. It was painful and my wrists became bruised. We were not given food or water the whole time.

15. I was moved between different detention facilities until finally arriving at Jackson Parish Correctional Center in Louisiana, where I spent about a month and a half. At Jackson Parish, I could have legal calls. I had access to a phone here and the officers actually speak to me and tell me that I have the right to seek counsel.

16. My time at 26 Federal Plaza affected me very negatively. I developed back pain from sleeping on the floor. I had nightmares about the lights being kept on for hours. I had never been treated that way, which was worse than an animal. I was in constant fear that I would disappear and no one would know where I was.

17. After that, I lost my will to stay detained and fight for myself in the U.S. I did not want to return to my country but I also didn't want to be prisoner anymore. I wanted to be free.

18. An attorney represented me in asking an immigration judge for voluntary departure, but it was denied. I still do not really understand why—it had to do with jurisdiction and how I entered the country. I thought maybe then I would at least be freed when I was deported but I remained detained. Finally, at the end of August, another group of Venezuelans and I who were in Laredo, Texas started a hunger strike to be sent to Venezuela. ICE came and threatened us that if we did not eat we would not be deported at all and would just stay there—but then they did put us on a flight to the city of Maiquetía.

19. I followed all the rules in the U.S. and attended my court dates. The least I hoped for was access to food, water, and a bathroom. I learned that this was not the case at 26 Federal Plaza.

DATED:  May 12, 2026
         Caracas, Venezuela

                                     Daniel Quevedo Silva

**CERTIFICATE OF TRANSLATION**

I, Paige Austin, certify that I am fluent in both English and Spanish. On May 9, 2026, I prepared a Spanish translation of the foregoing statement and sent the Spanish-language translation to Mr. Daniel Quevedo Silva for his review prior to signing the foregoing statement in English. The Spanish-language translation of the foregoing document was accurate and correct to the best of my knowledge.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

_____
Paige Austin
Make the Road New York
301 Grove St.
Brooklyn, NY 11237

Tel: