UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SERGIO ALBERTO BARCO MERCADO, on his own behalf and on behalf of others similarly situated,

Plaintiff,

v.

MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security, in his official capacity, et al.,

Defendants.

25 Civ. 6568 (LAK)

---

## **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR NON-PROVISIONAL CLASS CERTIFICATION**

**TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................................1

    I.   Plaintiff Meets the Requirements of Rule 23(a) ...................................................................2

        A.   The Proposed Class is Sufficiently Numerous .................................................................2

        B.   Questions of Law and Fact Are Common to the Class .....................................................3

        C.   Mr. Barco Mercado's Claims Are Typical of the Claims of the Class ............................7

        D.   Mr. Barco Mercado and His Counsel Adequately Represent the Class ..........................8

   II.  Class Certification Is Appropriate Under Rule 23(b)(2) .......................................................9

  III. The Court Should Modify the Class to Include All People Detained at 26 Fed,
       with No Durational Limitation .............................................................................................9

CONCLUSION.............................................................................................................................14

**TABLE OF AUTHORITIES**

**Cases**

*Advocs. for Hum. Rts. v. U.S. Dep't of Homeland Sec.*,
No. 26-CV-749 (NEB/DLM), 2026 WL 850270 (D. Minn. Mar. 26, 2026) ................5, 10, 11

*Bell v. Wolfish*,
441 U.S. 520 (1979)....................................................................................................... 4

*Bertrand v. Sava*,
535 F. Supp. 1020 (S.D.N.Y. 1982) .............................................................................. 2

*Bertrand v. Sava*,
684 F. 2d 204 (2d Cir. 1982) ........................................................................................ 2

*Charles v. Orange Cnty.*,
925 F.3d 73 (2d Cir. 2019) ........................................................................................... 4

*Clarkson v. Coughlin*,
145 F.R.D. 339 (S.D.N.Y. 1993) ............................................................................... 2, 3

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ........................................................................................... 3

*D.N.N. v. Liggins*,
No. 1:25-CV-01613-JRR, 2026 WL 632371 (D. Md. Mar. 6, 2026)............................. 4

*Darnell v. Pineiro*,
849 F.3d 17 (2d Cir. 2017) ........................................................................................... 4

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ......................................................................................... 8

*H.C.R. v. Mullin*,
--- F. Supp. 3d ----, No. 2:25-CV-747-SPC-DNF, 2026 WL 850555
(M.D. Fla. Mar. 27, 2026)............................................................................................. 5

*Kingsley v. Hendrickson*,
576 U.S. 389 (2015)....................................................................................................... 4

*L.V.M. v. Lloyd*,
318 F. Supp. 3d 601 (S.D.N.Y. 2018) .......................................................................... 2

*Luna Gutierrez v. Noem*,
811 F. Supp. 3d 133 (D.D.C. 2025) .............................................................................. 4

*Moreno Gonzalez v. Noem*,
No. 25 Civ. 13323, 2025 WL 3204602 (N.D. Ill. Nov. 17, 2025) .............................. 10

*N.J. Carpenters Health Fund v. Residential Cap., LLC*,
288 F.R.D. 290 (S.D.N.Y. 2013) ................................................................................ 10

*N.J. Carpenters Vacation Fund v. Residential Cap., LLC*,
No. 08 Civ. 5093 HB, 2013 WL 6669966 (S.D.N.Y. Dec. 18, 2013) ......................... 10

*Pablo Sequen v. Albarran*,
    810 F. Supp. 3d 1084 (N.D. Cal. 2025) .............................................................5, 10, 11, 14

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ............................................................................................ 2, 8

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*,
    262 F.3d 134 (2d Cir. 2001) ................................................................................................ 9

*Turner v. Safey*,
    482 U.S. 78 (1987) ................................................................................................................ 6

*Vazquez Perez v. Decker*,
    No. 18-civ-10683 (AJN), 2020 WL 7028637  (S.D.N.Y. Nov. 30, 2020) ................................ 2

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................................................... 3, 9

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ............................................................................................................. 3

**Other Authorities**

Laya Neelakandan, *Trump administration offers $1,000 to immigrants who 'self-deport'*,
    CNBC (May 5, 2025),
    https://www.cnbc.com/2025/05/05/trump-dhs-travel-costs-stipend-immigrants-self-
    deport.html [https://perma.cc/EJN5-M6HR] ............................................................. 13

U.S. Dep't of Homeland Sec., CBP Home: Assistance to Voluntarily Self-Deport,
    https://www.dhs.gov/cbphome [https://perma.cc/4C82-XB89] ............................................ 13

U.S. Imm. & Customs Enf't, U.S. Dep't of Homeland Sec., Self-Deportation,
    https://www.ice.gov/self-deportation [https://perma.cc/5KNU-AXUV]
    (last visited May 28, 2026) ................................................................................................ 13

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................... passim

Plaintiff Barco Mercado filed this case on August 8, 2025. That same day, he moved for class certification, along with a temporary restraining order and preliminary injunction. ECF Nos. 9, 34. In issuing its Preliminary Injunction in this case, the Court conducted a "full Rule 23 analysis" and provisionally certified the class. ECF No. 96 at 43, 53. Now, after developing a full evidentiary record, Plaintiff moves for (i) non-provisional class certification and (ii) modification to account for developments uncovered during the course of this litigation.

As to the first point, the evidence in this case underscores that, for the same reasons the Court provisionally certified the class, it should grant non-provisional class certification.

Modification is also warranted. In provisionally certifying the class, the Court modified the class definition to exclude those held for under 12 hours at 26 Federal Plaza, finding that Plaintiff did not "allege plausibly that detainees held for less than 12 hours suffer any injury—much less one that is common with the rest of the class—as a result of defendants' alleged constitutional violations." ECF No. 96 at 44 (citation modified). The record developed in discovery and presented at trial in the case shows concrete proof that significant constitutional injuries have been occurring within 12 hours of detention. Therefore, in addition to seeking non-provisional class certification, Plaintiff seeks modification of the class to now include people held at 26 Federal Plaza for any duration of time.

In sum, Plaintiff seeks certification of the following class:

> All immigration detainees who are detained and those who will be detained in the future by U.S. Immigration and Customs Enforcement ("ICE") at 26 Federal Plaza, New York NY ("26 Fed").

## ARGUMENT

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

(1) the class is so numerous that joinder of all members is impracticable;

1

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Rule 23(b)(2) requires the Court to find that the defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

Generally, courts in this Circuit recognize that class actions are particularly appropriate in litigation involving those in detention because "[p]risoners . . . come and go from institutions for a variety of reasons . . . [n]evertheless, the underlying claims tend to remain." *Clarkson v. Coughlin*, 145 F.R.D. 339, 346 (S.D.N.Y. 1993) (citation modified). Courts in this Circuit routinely certify classes of immigration detainees challenging their detention. *See, e.g.*, *Vazquez Perez v. Decker*, No. 18-civ-10683 (AJN), 2020 WL 7028637, at *5–6 (S.D.N.Y. Nov. 30, 2020) (certifying class of detained immigrants challenging detention for removal proceedings without prompt hearing before immigration judge); *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 615–17 (S.D.N.Y. 2018) (certifying class of detained immigrant children challenging delays in their release from detention); *Bertrand v. Sava*, 535 F. Supp. 1020, 1024–25 (S.D.N.Y. 1982) (certifying class of detained Haitian asylum seekers challenging their continued custody without fair access to release on parole), *rev'd on other grounds*, 684 F. 2d 204 (2d Cir. 1982).

I.    **Plaintiff Meets the Requirements of Rule 23(a)**

A.  **The Proposed Class is Sufficiently Numerous**

Plaintiff readily satisfies the numerosity requirement of Rule 23(a)(1). Although there is no requirement that a plaintiff establish a precise number of class members to show that joinder is impracticable, *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), "numerosity is presumed at

2

a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citation modified). The potential of unknown future class members further supports numerosity. *Clarkson*, 145 F.R.D. at 348.

The Court found numerosity readily satisfied for purposes of provisional class certification based on evidence that "as many as 90 detainees have been packed into a single room." ECF No. 96 at 47. The present record contains much stronger evidence of numerosity, including a list of thousands of people detained at 26 Fed and an analysis showing there were multiple days in the months leading up to this Court's preliminary injunction where Defendants held over 150 people at a time. PX85[1]; ECF No. 166-4, PX303, Declaration of Caroline Asnes, ¶ 17.

### B.  Questions of Law and Fact Are Common to the Class

The class-wide claims in this case feature many common questions, satisfying Rule 23(a)(2). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (citation modified). That question "must be of such a nature that it is capable of class-wide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

This case turns on factual and legal issues that cut across the entire class and readily satisfy this requirement. Plaintiff's conditions-of-confinement claims arise under the Fifth Amendment's prohibition on unconstitutional punishment in civil immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (holding that immigration proceedings are "civil, not criminal" and are

---

[1] Except for PX343, *see* n.2, *infra,* all exhibits cited in this brief were entered into evidence at trial and the Court has them in hard copy and digital form. If the Court would find it useful to have these exhibits filed on the docket, Plaintiffs will promptly confer with Defendants regarding whether they intend to file a motion to seal the exhibits that are marked confidential and will proceed accordingly.

assumed to be "nonpunitive in purpose and effect"). Plaintiff may show conditions violate the Fifth Amendment prohibition on unconstitutional punishment through either of two theories.

*First*, Plaintiff may establish that an official "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the [civil] detainee even though the defendant-official knew, *or should have known*, that the condition posed an excessive risk to [the detainee's] health or safety." *Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019) (emphasis in original) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)). For this theory, Plaintiff presents evidence of facility-wide policies and practices that have resulted in excessive risks to health or safety.

*Second*, Plaintiff may present evidence of punishment. *Darnell*, 849 F.3d at 34 n.12. "[S]uch 'punishment' can consist of actions taken with an 'expressed intent to punish.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)). Or "in the absence of an expressed intent to punish," an immigration detainee can nevertheless demonstrate that the challenged actions constitute punishment "by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" *Id.* (quoting *Bell*, 441 U.S. at 561). As the Court has already recognized, statements by government officials—which necessarily apply class-wide—show a punitive purpose. ECF No. 96 at 74–75; *see also Luna Gutierrez v. Noem*, 811 F. Supp. 3d 133, 172 (D.D.C. 2025) (finding plaintiff stated a Fifth Amendment punitive conditions claim through "statements from government decisionmakers reflecting that the expressed intent behind detaining the class at Guantanamo is punishment") (citation modified); *D.N.N. v. Liggins*, No. 1:25-CV-01613-JRR, 2026 WL 632371, at *33 (D. Md. Mar. 6, 2026) ("Defendants' own press releases and statements suggest the complained-of conditions [in a hold room] are intended to be punitive

4

. . . .”). Plaintiff also independently shows unconstitutional punishment because there is no legitimate government objective to justify the conditions that existed at 26 Fed before the Court's preliminary injunction went into place. *See Pablo Sequen v. Albarran*, 810 F. Supp. 3d 1084, 1127–31 (N.D. Cal. 2025) (finding conditions at an ICE hold room unconstitutional based on lack of legitimate governmental interests); *Advocs. for Hum. Rts. v. U.S. Dep't of Homeland Sec.*, No. 26-CV-749 (NEB/DLM), 2026 WL 850270, at *19–23 (D. Minn. Mar. 26, 2026) (finding restrictions on access to counsel at an ICE hold room to be unconstitutionally punitive). Again, this absence of a legitimate government objective applies class-wide and presents common questions.

Plaintiff's attorney-access claims under the First and Fifth Amendments also raise common questions. To start, the attorney-access claim under the Fifth Amendment is governed by the same legal framework outlined above and, for the same reasons, presents common questions. Plaintiff's claim concerning attorney access under the First Amendment similarly satisfies Rule 23(a)(2). Immigration detainees “have a First Amendment free speech right to communicate with their attorneys.” *H.C.R. v. Mullin*, --- F. Supp. 3d ----, No. 2:25-CV-747-SPC-DNF, 2026 WL 850555, at *15 (M.D. Fla. Mar. 27, 2026) (citation modified); *see also* ECF No. 96 at 77 (“The right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association and petition.”) (citation modified). As this Court recognized, “[w]hen conditions of detention impinge on detainees' constitutional rights, the conditions are valid if they are reasonably related to legitimate governmental interests,” which turns on “whether there is a ‘valid, rational connection between the [] regulation and the legitimate governmental interest put forward to justify it,’ ‘whether there are alternative means of exercising the right that remain open to [detainees],’ ‘the impact accommodation of the asserted constitutional right will have on . . . [detention] resources,’ and ‘the absence of ready alternatives.’” *Id.* at 77–78 (quoting *Turner v. Safey*, 482 U.S.

5

78, 89–90 (1987)). Because Plaintiff challenges facility-wide policies and practices concerning the limitations on attorney access at 26 Fed, and because the question concerning any governmental interest justifying such restrictions apply class-wide, the claim presents common questions.

In provisionally certifying the class, the Court identified multiple issues of fact, "including whether ICE provides, both as a matter of policy and, more importantly, as a matter of fact on a classwide basis, adequate bedding, meals, hygiene products, access to medical care, medication, and confidential communication with attorneys." ECF No. 96 at 48. It based its finding of common questions of fact on Defendants' own position: "Defendants do not contend that provision of these necessities and services varies by detainee." *Id.*

Defendants' position at trial is the same. Defendants' witness statements consistently contend or admit that facility-wide practices and policies govern these questions of fact. The overcrowding stemmed from a nationwide policy extending the time people could be held at 26 Fed to 72 hours or longer, which did not require any justification particular to the circumstances of any class member for extended detention. PX152; PX322, Deposition of Supervisory Detention and Deportation Officer Lige Hampton, dated Apr. 13, 2026 ("Hampton Tr."), 59:21–61:22 (when asked about circumstances that justified holding someone longer than 72 hours, pointing to generally applicable reasons such as "[t]he lack of detention placement" and "the number of arrests we were having") (other pages of this deposition filed at ECF No. 166-5). Defendants admit to various blanket denials of basic items. ECF No. 159 at 3, Stipulated Fact Nos. 2–5 (stipulating that class members were uniformly denied beds, showers, and private rooms for legal calls, and were denied sleeping mats from January 20, 2025 until at least August 12, 2025). ECF No. 58 at ¶ 12 (admitting that, as of August 11, 2025, class members were affirmatively provided only "two meals a day"). They also admit that there were never any overnight medical staff during this time period.

6

PX324, Deposition of Assistant Health Service Administrator Mia Jacobs, dated April 15, 2026 ("Jacobs Tr."), 43:3–8, 192:17–20.

Even when Defendants claim that in some areas they provided adequate conditions, they do so through blanket statements that do not differentiate between class members. *E.g.*, DX80, Direct Testimony of Nancy Zanello, ¶ 19 ("In July and early August 2025, individuals who were detained at the 10th Floor Hold Rooms received personal hygiene items, including wipes and teeth cleaning products, as well as foil and/or cotton blankets."), ¶ 21 ("In July and early August 2025, individuals who were detained at the 10th Floor Hold Rooms were able to make phone calls to counsel, family members, and others."); DX85, Direct Testimony of Mia Jacobs, ¶ 11 ("During July and early August 2025, IHSC was able to meet the medical needs of detainees, including providing medication and sending the detainee to a hospital to obtain medical care.").

The Court's order provisionally certifying the class also identified multiple common issues of law, "including whether (1) ICE's standards and practices regarding the provision of food, hygiene products, medication, and medical care violate detainees' constitutional rights, (2) ICE's standards and practices regarding provision of bedding materials and crowding comport with constitutional standards, and (3) ICE is required to allow for in-person attorney visits, confidential calls with attorneys, and/or translation services at 26 Fed." ECF No. 96 at 48. Plaintiff's request for a permanent injunction at trial aligns with the prior request for a preliminary injunction, and it raises the same legal questions. *See* ECF No. 159-4 at 2–11.

Based on these common questions of fact and law, Plaintiff readily satisfies the commonality requirement.

### C.  Mr. Barco Mercado's Claims Are Typical of the Claims of the Class

Plaintiff also satisfies the requirement under Rule 23(a)(3) that his claims "are typical of the claims or defenses of the class." The typicality requirement "is satisfied when each class

member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux*, 987 F.2d at 936 (citation modified). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.* at 936–37 (citation modified).

In provisionally certifying the class, the Court found that, over his two-day detention at 26 Fed, Plaintiff experienced conditions that were typical of the conditions of the class. ECF No. 96 at 50; *see generally* PX336, Sergio Barco Mercado Witness Statement ("Barco Mercado Statement") (describing detention at 26 Fed). There is no basis for the Court to disturb this conclusion.

### D.  Mr. Barco Mercado and His Counsel Adequately Represent the Class

Finally, Plaintiff will continue to "fairly and adequately protect the interests of the class" as required by Rule 23(a)(4). "Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) (citation modified). The Court found in provisionally certifying the class that Plaintiff is interested in vigorously pursuing the claims in this case and has no interests antagonistic to the class. ECF No. 96 at 51; *see also* ECF No. 39. Plaintiff has continued to pursue his claims, sitting for deposition and presenting written direct testimony, and he "remain[s] committed to doing what [he] can to stop others from having the same experience" he had at 26 Fed. Barco Mercado Statement, ¶ 21. He therefore satisfies the adequacy requirement for the same reasons the Court already recognized in provisionally certifying the class. Likewise, Plaintiff is represented by the same counsel who the Court has already appointed to represent the provisional class, and who have

ably litigated this case through trial, satisfying the Rule 23(a)(4) and (g) requirements of adequacy of counsel. *See* ECF No. 96 at 84 (granting motion for class certification); *see also* ECF No. 38 (class counsel declaration submitted in support of motion for provisional class certification).

## II.    Class Certification Is Appropriate Under Rule 23(b)(2)

Plaintiff's class-wide claims are properly certified under Rule 23(b)(2), which applies "when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. As the Court found in provisionally certifying the class, "defendants have acted on grounds generally applicable to the class — subjecting them to the same set of policies governing their confinement and access to attorneys — thereby making appropriate final injunctive relief with respect to the class as a whole." ECF No. 96 at 53. As explained above with respect to commonality, Plaintiff's claims at trial stem from a uniform set of policies. *Supra* at 6–7. Injunctive relief will protect the class as a whole, *see* ECF No. 159-4 at 2–11, and the class should be permanently certified under Rule 23(b)(2).

## III.   The Court Should Modify the Class to Include All People Detained at 26 Fed, with No Durational Limitation

In provisionally certifying the class, the Court found that Plaintiff did not "allege plausibly that detainees held for less than 12 hours suffer any injury—much less one that is common with the rest of the class—as a result of defendants' alleged constitutional violations." ECF No. 96 at 44. As a result, it excluded from the class those who were held for under 12 hours. *Id.* But the record developed since Plaintiff's initial allegations in the case proves that significant constitutional injuries have been occurring within 12 hours of detention. The Court should therefore modify the class to remove the 12-hour time limit. *See* Fed. R. Civ. P. 23(c)(1)(C) (allowing for a class certification order to be "altered or amended before final judgment"); *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001) ("[T]he

9

district court is often in the best position to assess the propriety of the class and has the ability . . .

to alter or modify the class[.]"); *N.J. Carpenters Health Fund v. Residential Cap., LLC*, 288 F.R.D.

290, 296 (S.D.N.Y. 2013) (after modifying a class *sua sponte* to narrow the class definition,

granting plaintiffs' motion to modify the class to broaden it), *reconsidered in irrelevant part sub*

*nom. N.J. Carpenters Health Fund, N.J. Carpenters Vacation Fund v. Residential Cap., LLC*, No.

08 Civ. 5093 HB, 2013 WL 6669966 (S.D.N.Y. Dec. 18, 2013).

This requested modification would be in line with other orders certifying classes at ICE

hold rooms without any temporal duration—many of which followed this Court's lead in assessing

the conditions at these hold rooms. *E.g.*, *Pablo Sequen v. Albarran*, 810 F. Supp. 3d 1084, 1125

n.116 (N.D. Cal. 2025); *Moreno Gonzalez v. Noem*, No. 25 Civ. 13323, 2025 WL 3204602, at \*5

(N.D. Ill. Nov. 17, 2025); *Advocs. for Hum. Rts. v. U.S. Dep't of Homeland Sec.*, No. 26 Civ. 749

(NEB/DLM), 2026 WL 850270, at \*16 (D. Minn. Mar. 26, 2026).

As another court found in certifying a class of people in an ICE hold room without a 12-

hour durational requirement, "[t]he lack of medical intakes, access to medication, or adequate

medical care risks harm to all detainees" and does not spare those who have only been in the

facility for a short period of time. *Pablo Sequen*, 810 F. Supp. 3d at 1125 n.116. The evidence in

this case underscores that the poor medical care at the facility puts people at risk as soon as they

arrive. One person had a seizure while still "awaiting processing" into the hold rooms during the

night, when there were no medical staff on site. PX29; Jacobs Tr., 43:21–45:6 (confirming that no

medical staff were onsite when this seizure occurred). This person would not have been a member

of the provisional class due to the short duration of his stay but still faced very real medical risk.

Many of the other harms supported in the evidentiary record Plaintiff has developed

likewise occur before someone has been held for 12 hours. *E.g.*, ECF No. 166-20, PX334, Oscar

Pascual Lopez Witness Statement, ¶ 8 (noting cold temperatures at times); PX322, Hampton Tr., 206:23–208:3 (same), 204:21–206:3 (noting "uncomfortably hot" temperatures at times); PX332, Ibrahima Barry Witness Statement, ¶ 8 (noting terrible smell and "terribly hot" temperatures at times); ECF No. 166-19, PX337, Carlos Chalco Witness Statement, ¶ 15 (noting unavailability of soap after using the toilet); ECF No. 166-22, PX331, Daniel Quevedo Witness Statement ("Quevedo Statement"), ¶ 5 (noting terrible smell); Barco Mercado Statement, ¶ 7 (same); PX327, Deposition of Contractor Robert Mitchell, dated Apr. 20, 2026, 173:5-22 (acknowledging smell of "body odor") (other pages of this deposition filed at ECF No. 166-10); PX323, Deposition of Contractor Mitchell Hutson, dated Apr. 20, 2026), 68:20–69:2 (same) (other pages of this deposition filed at ECF No. 166-11); *e.g.* PX301 at P350, P353, P362 (showing lack of toilet privacy) (other photos from this exhibit filed at ECF No. 166-3). As a court that declined to impose a temporal limit for its hold room class recognized, "the unsanitary and unclean conditions in hold rooms" "risk[] harm to all detainees" without regard to length of detention. *Pablo Sequen*, 810 F. Supp. 3d at 1125 n.116.

As at least one other court has recognized in explicitly requiring attorney telephone calls within hours of arrival in a hold room, the constitutional injury from a lack of attorney access also occurs well before 12 hours have elapsed. *E.g.*, *Advocs. for Hum. Rts.*, 2026 WL 850270, at *26 (requiring confidential attorney calls "[w]ithin one hour of detention and prior to being transferred out of the Whipple Federal Building"). The evidence shows that individuals detained at 26 Fed faced misinformation and pressure to deport, often as soon as their initial processing interview; consequently, the denial of confidential attorney calls during this critical window can have serious and often permanent consequences. Carlos Lopez Benitez testified that during his initial processing on the day he was detained, "the officers at 26 Federal Plaza lied to me and put a lot of pressure

11

on me to agree to self deport." ECF No. 166-18, PX330, Carlos Lopez Benitez Witness Statement, ¶ 8. He added: "An officer asked me if I wanted to continue pursuing my case. I told him that I did, and he told me that because my next court date wasn't until 2029 I would have to spend all that time in detention to keep pursuing asylum." *Id.* Mr. Lopez Benitez testified that if his sisters had not encouraged him to remain strong, he "might have considered accepting deportation like many others with me at 26 Federal Plaza decided to do," noting that speaking to an attorney would have helped "a lot." *Id.* ¶ 17. *See also* ECF No. 166-22, Quevedo Statement, ¶ 11 ("I felt confusion throughout my entire time at 26 Federal Plaza. I had no idea what was going to happen to me and what my options were. The officers said confusing and contradictory things and I was not able to contact my attorney to help me clarify the situation."); ECF No. 166-20, Pascual Lopez Statement, ¶ 12 ("Many of the people I spoke with at 26 Federal Plaza had agreed to be deported . . . . It was a very difficult situation to be in."). There are also posters in English and Spanish all over the areas in 26 Fed where people are detained strongly encouraging self-deportation and offering a financial incentive. Those posters are placed inside and outside the hold rooms and in processing areas on the tenth, ninth, and fifth floors; individuals see them as soon as they arrive and throughout their detention, making it even more critical that they speak to an attorney quickly to be informed of their rights and options. *See* PX343[2] (photos of posters encouraging voluntary departure, placed on the windows of cells and in the processing areas on the tenth, ninth, and fifth floors). These posters are part of the Department of Homeland Security's campaign to use detention to pressure

---

[2] PX343 has not previously been submitted into evidence, but Plaintiff seeks leave to introduce it now, primarily for purposes of the class certification motion, but also if the Court deems helpful, as evidence in the case in chief. It is not being filed at this time as the government has indicated that it will shortly move to seal portions of the exhibit. In the meantime, we will submit the exhibit to the Court with our courtesy copies of this motion.

individuals to self deport.[3] As border czar Tom Homan stated, "We can work with you and get you to leave, or we'll come find you and we'll remove you based on our schedule and our standards."[4] Evidently, those "standards" include the unconstitutional conditions of confinement at facilities like the hold rooms at 26 Fed, which heightens the constitutional injury from the lack of attorney access.

The exclusion of those held less than 12 hours could meaningfully limit the effects of an injunction in this case. Defendants claim to hold families on the Fifth floor of the building for less than 12 hours, and they use that limited duration as a basis to deny people held there many of the protections that the Court ordered in its Preliminary Injunction. PX328, Deposition of Assistant Field Office Director Alberto Morales, dated Apr. 23, 2026, 63:5-10 (roles and responsibilities did not change on the 5th floor after the Court's Orders), 273:4–274:7, 166:7-18 (no instructions provided to families about ability to use private room for attorney calls and no medical personnel on the 5th floor), 194:10-17 (door of room for attorney calls remains open); 286:23–287:6 (no policies governing when individuals can make phone calls on the 5th floor); 299:13-22 (no process for attorneys to request to speak to families). Defendants likewise deny medical intakes to many people held less than 12 hours. Jacobs Tr., 94:18–95:2 (explaining that medical intakes are

---

[3] U.S. Imm. & Customs Enf't, U.S. Dep't of Homeland Sec., Self-Deportation, https://www.ice.gov/self-deportation [https://perma.cc/5KNU-AXUV] (last visited May 28, 2026) ("If You Don't Self-Deport: ICE uses its resources to find, arrest and detain aliens who are in the U.S. illegally. . . . Most aliens ICE arrests are detained and eventually removed. In some cases, these people remain in ICE detention for months while they wait for a final decision from an immigration judge.").

[4] Laya Neelakandan, *Trump administration offers $1,000 to immigrants who 'self-deport'*, CNBC (May 5, 2025), https://www.cnbc.com/2025/05/05/trump-dhs-travel-costs-stipend-immigrants-self-deport.html [https://perma.cc/EJN5-M6HR]. Notably, the financial incentive has since increased to $2,600. *See* U.S. Dep't of Homeland Sec., CBP Home: Assistance to Voluntarily Self-Deport, https://www.dhs.gov/cbphome [https://perma.cc/4C82-XB89] (encouraging self-deportation with a $2,600 "exit bonus" and enforcement deprioritization—once individuals "submit their intent to depart through the CBP Home Mobile App and pass vetting, they will be temporarily *deprioritized by ICE for detention* or enforcement action") (emphasis added).

provided only to people who have been at the facility for over 12 hours, with some exceptions for more urgent needs). They do this even though their own witness and other court opinions have recognized that intakes for medical issues should take place "first thing" upon processing, ECF No. 166-12, PX62 at 2, and "prior to placing [class members] in a hold room," *Pablo Sequen*, 810 F. Supp. 3d at 1134. This failure to provide medical intakes causes severe harm. *E.g.*, PX42A (identifying a person who had been held in a hold room despite active, contagious tuberculosis that would have been caught in a proper intake screening). The Court should prevent Defendants from denying the protections of its injunction to people held less than 12 hours.

## CONCLUSION

For the foregoing reasons, the Court should certify a non-provisional class of all immigration detainees who are detained and those who will be detained in the future by ICE at 26 Fed.

14

Dated: June 3, 2026

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

/s/ Carmen Iguina González
Carmen Iguina González
915 15th Street, N.W.
Washington, DC 20005
202-548-6616
ciguinagonzalez@aclu.org

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
Kyle Virgien
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
kvirgien@aclu.org

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
Amy Belsher
Robert Hodgson
Claire Molholm
Molly K. Biklen
125 Broad Street, 19th Floor
New York, NY 10004
Tel: (212) 607-3300
abelsher@nyclu.org
rhodgson@nyclu.org
cmolholm@nyclu.org
mbiklen@nyclu.org

WANG HECKER LLP
Heather Gregorio
Mariann Meier Wang
Alice Reiter
Daniel Mullkoff
Lily Sawyer Kaplan
111 Broadway, Suite 1406
New York, New York 10006
(212) 620-2600
hgregorio@wanghecker.com
mwang@wanghecker.com
areiter@wanghecker.com
dmullkoff@wanghecker.com
lsawyerkaplan@wanghecker.com

MAKE THE ROAD NEW YORK
Harold A. Solis
Paige Austin
301 Grove Street
Brooklyn, NY 11237
Tel. (718) 418-7690
Fax (866) 420-9169
harold.solis@maketheroadny.org
paige.austin@maketheroadny.org

*Attorneys for Plaintiff and the provisionally certified class*

15

**ATTORNEY CERTIFICATION PURSUANT TO LOCAL RULE 7.1**

I, Carmen Iguina González, an attorney duly admitted to practice pro hac vice in this case, hereby certify that this memorandum of law complies with the word count limit set forth in Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York because it contains 4,678 words, not including the parts of the memorandum excluded under the Rule. This memorandum of law also complies with the Court's rule that memoranda of law in support of motions may not exceed thirty-five pages, double-spaced. In preparing this certification, I have relied on the word count of the word processing system used to prepare this memorandum.

Dated:  June 3, 2026

/s/ Carmen Iguina González_____
Carmen Iguina González
915 15th Street, N.W.
Washington, DC 20005
202-548-6616
ciguinagonzalez@aclu.org

16