UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SERGIO ALBERTO BARCO MERCADO, on his own behalf and on behalf of others similarly situated,

Plaintiff,

v.

MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security, in his official capacity, et al.,

Defendants.

25 Civ. 6568 (LAK)

---

**REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR NON-PROVISIONAL CLASS CERTIFICATION**

**INTRODUCTION**

Defendants do not contest that the Court should certify a non-provisional class in this case. They only dispute the scope of that class. Plaintiff seeks to include all people detained at 26 Fed in the class. Under Plaintiff's class definition, all people detained at 26 Fed will benefit from the constitutional protections—such as those requiring medical care and attorney access—that attach immediately upon detention. Defendants seek to exclude two groups of people from the Court's permanent injunction. First, they seek to exclude families held on the fifth floor. Second, they seek to exclude people held on the ninth floor, where they began holding people after the Court issued its preliminary injunction. The government seeks to accomplish this both by defining the class to specifically exclude those floors and by carving out those held under 12 hours from the class.

But there is no basis to deny any people held at 26 Fed membership in the class and protection from constitutional violations. Defendants claim that the differences between floors are "more than a matter of semantics" because "the other floors of 26 Federal Plaza are utilized for different purposes and different categories of immigrants" and involve "different types of spaces . . . ." ECF No. 174 ("Opp.") at 15. But a simple look at the evidence belies Defendants' argument. For instance, Defendants seek to carve these ninth-floor rooms out of the Court's order:



PX 301 at 1322, 26. These rooms are holding cells just like any others. The fact that they are located on the ninth—not tenth—floor would be of little comfort to people crammed into them and deprived of the protections of the Court's order.

Excluding these floors from the class will also lead inevitably to Defendants simply shifting their operations in the building to hold people on the fifth and ninth floors as a way to circumvent the Court's Permanent Injunction, much the way they attempted to circumvent the Court's earlier orders by holding people on those floors over the past many months without applying the provisions of the Preliminary Injunction, leading to violations of detained individuals' rights on those floors.

Plaintiff describes below the significant, often undisputed, evidence in this case showing serious constitutional problems in spaces where people are held throughout the 26 Fed building. The Court should reject Defendants' attempt to deprive anyone held at 26 Fed of the protections of its injunction.

## LEGAL STANDARD

Defendants make their arguments that the class should be narrowed under the commonality and typicality prongs of the Rule 23 analysis, leaving the remainder undisputed. Opp. at 15–20.[1] Neither prong requires class members' experiences or injuries to be identical. To the contrary, "for purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (citation modified). And "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns

---

[1] Defendants' opposition also mentions the "Adequacy" requirement, but it makes no substantive arguments involving this requirement. Opp. at 19–20. Plaintiff explained in his opening brief how he satisfies this requirement. Mot. at 12-13.

2

underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993) (citation modified).

## ARGUMENT

As a preliminary note, Defendants' argument that the Complaint is limited to conditions on the tenth floor and that Plaintiff is improperly attempting to constructively amend the Complaint to address other floors, Opp. at 13–15, is wrong both factually and legally. While the Complaint primarily discussed constitutional violations at the tenth floor hold rooms, it sought relief for "26 Fed" with no spatial limitation at all. *See* ECF No. 51 at 20-22. The Court, perhaps anticipating that a Preliminary Injunction limited to the tenth floor would leave Defendants with loopholes, accordingly defined "Hold Room" in the Preliminary Injunction to encompass "any hold room or other room, cell or other space" "at 26 Federal Plaza." ECF No. 97 at 2–3.

Notwithstanding this broad definition, Defendants nevertheless attempted to find and exploit their own loopholes in the Preliminary Injunction by holding people on other floors in the building, *specifically and intentionally to circumvent the Court's Orders*.[2] The Court should not

---

[2] *See* PX325, First Deposition of Deputy Field Office Director William Joyce ("Joyce First Tr."), 32:8-33:8 (stating at February 3 deposition that people would be held on the fifth and ninth floors when the tenth floor was at capacity); *id.* at 152:13-23 (stating he was not aware of anyone applying the requirements of the Preliminary Injunction to the ninth floor); PX19, ICE 23284–85 (Supervisory Detention and Deportation Officer Lige Hampton sending someone to the ninth floor because the tenth floor was at max capacity, without addressing capacity on the ninth floor); PX322, Deposition of Hampton, ("Hampton Tr."), 102:19–107:3 (stating that individuals were frequently held on the ninth and fifth floors when there were more than 22 people on the tenth floor); Hampton Tr., 109:21-24 (testifying that he was not aware of any policy applying to people held on the ninth floor), 238:12-239:7 (people were held in the ninth floor cells, but not aware of capacity limits); *see e.g.*, PX21, ICE 23291 ("11 bodies on the 9th floor" on December 30, 2025); PX20, ICE 23290 ("11 bodies on the 9th floor" on December 31, 2025); ); PX238, ICE 32832 (six men in one cell on 9th floor on January 5, 2026, Joyce noted "[n]ot ideal for watching two different floors"); PX338 (Defendants' data showing people being held, including for several days, on the fifth and ninth floors). In light of all of this evidence, the fact that Plaintiff did not depose Judith Almodovar does not amount to a concession that the ninth floor would not be part of the subject matter for trial; to the contrary, Plaintiff determined there was sufficient evidence of violations on the ninth floor and of the use of that floor to circumvent the Court's orders that it was not necessary to depose Almodovar because the record already spoke for itself.

permit Defendants to shift their operations to other floors in an attempt to avoid the Court's Orders and then argue that the class may not encompass those floors because the original allegations were not focused there.[3]

Defendants' argument that Plaintiff has not "present[ed] evidence of constitutional violations against detainees held in any space in 26 Federal Plaza other than the hold rooms on the tenth room," or for people held for less than 12 hours, *see* Opp. at 6, is also wrong. As set out in detail in Plaintiff's trial memorandum and in the voluminous exhibits designated by Plaintiff in advance of trial, ample evidence shows that, absent this Court's preliminary injunction—and Plaintiff's subsequent efforts to bring Defendants into compliance with it—Defendants would have continued violating the First and Fifth Amendment rights of those held at 26 Fed for all lengths of time, on all relevant floors, including the fifth and ninth floors. ECF No. 166-1 ("Pl.'s Trial Mem.") at 39–40, 42 (detailing evidence of overcrowding, lack of attorney access policies, and lack of healthcare beyond the tenth floor, and citing *inter alia* to deposition testimony of DFOD William Joyce, SDDO Lige Hampton, AFOD Alberto Morales, floor plans, photos, and many emails).[4]

---

[3] Defendants' cases, which arose at the pretrial stage and addressed situations in which plaintiffs attempted to introduce new theories unrelated to the original allegations and outside the scope of discovery, are easily distinguishable. *See Anderson v. Lab'y Corp. of Am. Holdings*, No. 1:17-cv-193, 2023 WL 1970953, at *5 (M.D.N.C. Feb. 13, 2023) (plaintiffs "entirely fail[ed] to explain how the putative claims" of a new subclass related to the amended complaint); *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 154–55 (4th Cir. 2020) (reasoning that the plaintiff could not introduce a new theory of the case at summary judgment which bore "no resemblance to the factual allegations" in the complaint because it unfairly gave the defendant "no opportunity during discovery to gather facts targeted to this new theory"). Here, in contrast, the complaint focused on the lack of attorney access and other conditions issues at 26 Fed, such that identifying evidence of those same constitutional violations on the ninth and fifth floors is not "a new theory." Defendants had ample notice—including through the scope of the TRO and the PI, and certainly by the contempt depositions—that conditions on those floors were a part of the case, and that Plaintiff was concerned that the same constitutional violations occurring on the tenth floor were occurring elsewhere.

[4] Defendants acknowledge that Plaintiff "received lists of individuals who were held at 26 Federal Plaza, including on the fifth, ninth, and tenth Floors," citing PX338. Opp. at 2. However, they fail to acknowledge that their own data in PX338 shows several people being held on the fifth and ninth floors for days or longer, raising serious concerns of constitutional violations on those floors.

The Court need not even reach this trial record, because here there are several key areas where Defendants do not even substantively dispute that the conditions Plaintiff challenges apply to all individuals held at 26 Fed.

*First*, it is undisputed that Defendants' policies and practices denying people medical care apply even to people held for under 12 hours and on the fifth and ninth floors. Defendants' own witnesses admit that no medical personnel are available to those held on the fifth and ninth floors. PX324, Deposition of Assistant Health Service Administrator Mia Jacobs, 23:20–24:6, 25:20–26:5; 117:13–118:14. This failure to provide medical care violates the Constitution, even if it occurs within the first 12 hours of detention. *See Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 671 (9th Cir. 2021) (recognizing 14th Amendment claim for failure to provide medical care in a hold room within the first hours of detention); *Est. of Carter v. City of Detroit*, 408 F.3d 305, 307–08, 313 (6th Cir. 2005) (recognizing clearly established 14th Amendment right to medical care for someone who died within five hours of detention). Although Defendants attempt to excuse this lack of medical staffing by claiming the government need not provide medical personnel in "government offices," Opp. at 17, they neglect the basic proposition that the constitutional obligation to provide medical care attaches when someone is placed into custody—a condition that does not apply in most government offices but undisputedly applies here. *See Weyant v. Okst*, 101 F.3d 845, 857 (2d Cir. 1996) (holding arresting officer's failure to immediately transport someone to the hospital on arrest could violate the 14th Amendment right to medical care).

Defendants similarly admit that their policies do not require medical screenings for people held for under 12 hours across the fifth, ninth, and tenth floors. Opp. at 12. Nor do they dispute Plaintiff's evidence that their failure to conduct proper medical screening on at least one occasion resulted in them placing someone with active, contagious tuberculosis in a crowded hold room

upon their arrival at 26 Fed. *Id.*; *see also* ECF No. 168 ("Mot.") at 17-18. Defendants' only counter

is to argue that "the Constitution, statute, or ICE policy" do not require such a medical intake. Opp.

at 12.[5] This is wrong. The Second Circuit has held it is unconstitutional punishment to "introduce[]

into the general population" people who have not "received an examination" by medical personnel

for communicable diseases. *Lareau v. Manson*, 651 F.2d 96, 111 (2d Cir. 1981). It likewise violates

the Constitution to "delay[]" medical screenings rather than conducting them "upon arrival to the

facility." *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1189 (9th Cir. 2002), *overruled on other*

*grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). And in the ICE hold

room context, at least one court has found the Constitution requires medical intakes "prior to

placing [class members] in a hold room." *Pablo Sequen v. Albarran*, 810 F. Supp. 3d 1084, 1134

(N.D. Cal. 2025). ICE policy, too, requires medical intake to "be completed prior to the detainee's

placement in a housing unit" to avoid exposing others to infectious diseases. ICE, *Performance*

*Based National Detention Standards*, § 4.3, 267 (Rev. 2016),

https://www.ice.gov/doclib/detention-standards/2011/4-3.pdf    [https://perma.cc/N7FN-ZAG6];

*see also* Mitchell Tr., 77:12–78:2 (pointing to these standards as the relevant policy document).

    ***Second***, Defendants ignore Plaintiff's evidence that they lack policies to ensure

confidential, timely attorney calls for people held for under 12 hours on the fifth floor. *Compare*

Mot. at 17 (detailing problems with fifth floor policies and practices on confidential attorney calls)

*with* Opp. at 12. Their only counter is to argue that failures to ensure attorney access do not violate

the class's "statutory right to counsel in immigration proceedings." Opp. at 12. But Plaintiff did

not assert a statutory right to counsel in immigration proceedings; he asserted a constitutional right

---

[5] Defendants cite *Ivey v. City of New York* to argue that there is no constitutional requirement of an intake screening within 12 hours. Opp. at 12 (citing *Ivey v. City of New York*, No. 12 Civ. 3580 (PAE) (JCF), 2013 WL 6838954, at *2 (S.D.N.Y. Dec. 12, 2013)). But *Ivey* involved denial of a "non-standard bed" for 24 hours after diagnosis of back pain, and that opinion does not have anything to do with intake screenings. *Ivey*, 2013 WL 6838954, at *2.

to counsel under the First and Fifth Amendments—a right that requires confidential attorney calls within one hour of placement in an ICE hold room. *See* Opinion Granting Preliminary Injunction and Certifying Class ("PI Opinion"), ECF No. 96, at 80; *Advocs. for Hum. Rts. v. U.S. Dep't of Homeland Sec.*, No. 26-CV-749 (NEB/DLM), 2026 WL 850270, at *26–27 (D. Minn. Mar. 26, 2026).

*Third*, Defendants cannot dispute that Plaintiff's evidence of punitive intent applies without regard to what floor someone is confined on or for how long. The Court based its finding that Plaintiff was likely to show unconstitutional punishment in part on "[s]tatements from senior officials suggest[ing] that harsh conditions of confinement are a deliberate feature of the enforcement program intended to induce self-deportation and to deter illegal immigration." PI Opinion at 74–75. These statements apply without regard to the duration of detention or the floor on which someone is detained. *See Luna Gutierrez v. Noem*, No. CV 25-1766 (SLS), 2025 WL 3496390, at *7 (D.D.C. Dec. 5, 2025) (finding commonality satisfied because determining whether there is "an expressed intent to punish . . . does not require parsing the conditions" at the two different detention facilities challenged in the case). The full evidentiary record further supports this intent through evidence that posters coercing class members into voluntary departure are plastered across the fifth, ninth, and tenth floors where people can see them regardless of the length of their confinement. Mot. at 16. Defendants' only response to these flyers is to baldly state that they "do[] not create a constitutional violation." Opp. at 13. But this ignores that evidence of Defendants "encouraging self-deportation" is squarely relevant to a finding of unconstitutional punishment. PI Opinion, at 74-75. Defendants suggest that their placement next to the Notice of Rights remedies any constitutional violation. But the Notice of Rights is not uniformly placed next to the posters, *see* PX343, and regardless, informing someone that they have the right to contact

counsel does not negate the punitive conditions and is not a substitute for legal advice in the face of the intense pressure to self-deport.

The Court should find that this consistent evidence of constitutional violations across multiple floors and durations of detention supports Plaintiff's class definition. In doing so, it would follow all other courts that have considered issues of class certification involving ICE's recent misuse of hold rooms for long-term detention. In the "similar case" involving ICE's San Francisco hold rooms, the court defined a class of "individuals who are or will be detained at 630 Sansome" without regard to duration or where in the building people are held. *Pablo Sequen*, 810 F. Supp. 3d at 1125 n.116 (N.D. Cal. 2025). It issued a preliminary injunction based on evidence of conditions on the sixth floor of the building. *Id.* at 1131. Despite this broad class definition, the government seized on language in the court's analysis to try to limit the injunction to "hold rooms at 630 Sansome." *Pablo Sequen v. Albarran*, No. 5:25-cv-06487-PCP, ECF No. 161 at 2 (N.D. Cal. Dec. 31, 2025) (citation modified). In a move strikingly similar to what Defendants attempt in this briefing, the government began holding people on the fifth floor of the building in San Francisco, and it argued that it need not comply with the injunction because those rooms one floor below were not "hold rooms" within the injunction's scope. *Id.* That court correctly rejected this argument. *Id.* This is in keeping with the other courts that have addressed this issue, which have not included temporal limitations or differentiated between areas of the building. *Moreno Gonzalez v. Noem*, No. 25 Civ. 13323, 2025 WL 3204602, at *5 (N.D. Ill. Nov. 17, 2025); *Advocs. for Hum. Rts.*, 2026 WL 850270, at *16.

Defendants attempt to argue that these opinions narrowly define the spaces where class members are detained. They are wrong. The *Advocs for Hum. Rts.* court narrowed its class from one that would apply state-wide to one limited to the "Holding Facility at the Whipple Federal

Building." 2026 WL 850270, at *16. This definition is equivalent to what Plaintiff seeks here—broadly covering the ICE facility at issue without temporal limitation. And the *Moreno Gonzalez* court made explicit in its TRO, as this Court did, that its orders apply to people held in "any hold room, cell, *or other space*" in the building. *Moreno Gonzalez v. Noem*, No. 25 C 13323, 2025 WL 3170784, at *1 (N.D. Ill. Nov. 5, 2025) (emphasis added). This inclusion of "other space[s]" matters: Defendants admit that beyond hold rooms, the facility also includes "a processing area" that would be swept in by this broader definition. Opp. at 20 n.4.

## CONCLUSION

For the foregoing reasons, the Court should certify a non-provisional class of all immigration detainees who are detained and those who will be detained in the future by ICE at 26 Fed.

Dated: June 15, 2026


AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

*/s/ Carmen Iguina González*
Carmen Iguina González
915 15th Street, N.W.
Washington, DC 20005
202-548-6616
ciguinagonzalez@aclu.org

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
Kyle Virgien
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
kvirgien@aclu.org

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
Amy Belsher
Robert Hodgson
Claire Molholm
Molly K. Biklen
125 Broad Street, 19th Floor
New York, NY 10004
Tel: (212) 607-3300
abelsher@nyclu.org
rhodgson@nyclu.org
cmolholm@nyclu.org
mbiklen@nyclu.org

WANG HECKER LLP
Heather Gregorio
Mariann Meier Wang
Alice Reiter
Daniel Mullkoff
Lily Sawyer Kaplan
111 Broadway, Suite 1406
New York, New York 10006
(212) 620-2600
hgregorio@wanghecker.com
mwang@wanghecker.com
areiter@wanghecker.com
dmullkoff@wanghecker.com
lsawyerkaplan@wanghecker.com

MAKE THE ROAD NEW YORK
Harold A. Solis
Paige Austin
301 Grove Street
Brooklyn, NY 11237
Tel. (718) 418-7690
Fax (866) 420-9169
harold.solis@maketheroadny.org
paige.austin@maketheroadny.org

*Attorneys for Plaintiff and the provisionally certified class*

10

**ATTORNEY CERTIFICATION PURSUANT TO LOCAL RULE 7.1**

I, Carmen Iguina González, an attorney duly admitted to practice pro hac vice in this case, hereby certify that this reply brief complies with the word count limit set forth in Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York because it contains 3,061 words, not including the parts of the brief excluded under the Rule. In preparing this certification, I have relied on the word count of the word processing system used to prepare this memorandum.

Dated:  June 15, 2026

*/s/ Carmen Iguina González*
Carmen Iguina González
915 15th Street, N.W.
Washington, DC 20005
202-548-6616
ciguinagonzalez@aclu.org

11