# DOCKET



RECEIVED
JUN 18 2026
JUDGE KAPLAN'S CHAMBERS

**WANG HECKER LLP**

111 BROADWAY, SUITE 1406
NEW YORK, NY 10006

HEATHER GREGORIO
212.620.2608 TEL
212.620.2609 FAX

HGREGORIO@WANGHECKER.COM

June 17, 2026

***By Hand***

Hon. Lewis A. Kaplan
United States District Judge
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

        *Re:*  Response to Defendants' June 15, 2026 Letter re Nancy Zanello Statement
            *Barco Mercado v. Mullin et al.*, 25 Civ. 6568 (LAK) (KHP)

Your Honor:

This firm, along with the American Civil Liberties Union Foundation, New York Civil Liberties Union Foundation, and Make the Road New York, represents Plaintiff Sergio Alberto Barco Mercado and the provisionally certified class ("Plaintiffs") in the above-entitled action. Plaintiffs write in response to Defendants' letter, dated June 15, 2026, which purports to "correct and withdraw a mistaken statement of fact" in Nancy Zanello's August 18, 2025 Supplemental Declaration and refers to this statement as an "error." Defs.' June 15 Letter, at 1–2.[1]

The evidence in the record and presented at trial makes clear that Zanello's sworn statement on August 18 that "[a]s of 11:59 p.m. EDT August 15, 2025, there are currently 8 aliens in custody at the 26 Federal Plaza ERO Field Office" – when the contractors' logbooks documented 22 individuals at the tenth floor hold rooms at 11:59 p.m. on August 15 and *60 individuals* at the time Zanello digitally signed the declaration[2] – was far from an anodyne "mistake" or an "error." It was a flagrant, intentional effort to mislead this Court as to a lack of crowding at the facility and Defendants' compliance with the Temporary Restraining Order, at a critical juncture when the Court was deciding whether to issue and how to craft a Preliminary Injunction.

As an initial matter, Defendants' letter speaks volumes in what it omits. Notably, Defendants do not submit any sworn statement from Zanello herself addressing the prior false statement, only a

---

[1] Defendants requested that their letter be entered on the docket along with redacted logbook pages, presumably because Your Honor's Individual Rules require that letters not connected with motions should not automatically be docketed. Plaintiffs likewise are not filing this letter as an initial matter, but also request that the Court enter this letter and Defendants' letter on the docket or order the parties to do so, including because this dispute is a matter of public interest.

[2] *See* PX89, ICE-B-000118–120; PX78 (Zanello August 18, 2025 Declaration, ¶ 9, digitally signed at 4:07 p.m. on August 18, 2025).

letter from counsel. In that letter, Defendants do not even attempt to offer a good faith explanation for Zanello's false statement. They do not explain where the eight-person number was obtained, or why Zanello did not consult the Paragon logbooks at the time she signed a declaration submitted to this Court. Defendants do not assert that Zanello relied on Defendants' EARM/EADM electronic book-in and book-out system, likely because that system paints an even worse picture for them: Defendants' electronic data shows that there were 22 individuals at the facility at 11:59 p.m. on August 15, 2025, and *64* individuals at the facility at 4:07 p.m. on August 18, 2025 when Zanello signed her declaration. *See* PX85, ICE 23114.[3]

If there was any doubt as to ICE's knowledge regarding the falsity of Zanello's sworn statement, other evidence in the record and presented at trial on May 27, 2026 makes clear that this was not a simple error. As highlighted at trial, Zanello in fact stated in an email *on August 18, 2025 at 9:51 a.m.*, "We are in violation of the TRO. We are currently at 48 and have at least 13 more coming in." PX69, ICE 11635. As previously noted, Defendants produced that email in discovery, but improperly redacted precisely Zanello's statements acknowledging a violation of the order and only produced the unredacted version after Plaintiffs' counsel pressed repeatedly for Defendants to remove their baseless assertions of privilege. Pls.' Trial Mem., ECF No. 166-1, at 34–35. Zanello thus plainly knew her statement was false when she signed her sworn declaration six hours and 16 minutes later attesting that there were "currently" eight individuals being held at 26 Fed. The fact that Zanello chose an exact moment in time three days earlier for the "current[]" number of detained individuals did not escape the Court's attention at the time and further indicates ICE's attempt to mislead the Court. *See* Opinion, ECF No. 96, n.99 & n.105.

To say that this purported "correction" is far too little and far too late is a gross understatement. Defendants of course had access to all the pertinent records at the time Zanello made her sworn statement. Numerous employees and contractors, including Zanello herself, testified to the use of both the EARM/EADM system and the contractors' logbooks to track the number of individuals being held at the hold rooms at any given time. *See, e.g.*, PX329, Deposition of Nancy Zanello ("Zanello Tr."), 132:4-15; PX327, Deposition of Robert Mitchell ("Mitchell Tr."), 82:18–84:5; PX323, Deposition of Mitchell Hutson, 113:20–115:11; PX322, Deposition of Lige Hampton ("Hampton Tr."), 246:15–248:12. In fact, Zanello testified at her deposition that in preparing the August 18 declaration, she consulted EADM to inform her statement that the majority of detained individuals were transferred within 72 hours absent exceptional circumstances. Zanello Tr., 105:8–112:7. Defendants thus had access to multiple data sources that could provide a running and current count of detained individuals at all relevant times – when this case was filed; when Zanello submitted her declaration; when the Court noted in its September 17 Decision and Order that her statement on this point was oddly worded; when Plaintiffs brought and litigated their sanctions motion for non-compliance; when Plaintiffs discovered the existence of the logbooks and immediately called for their production on April 13, 2026 (eight months after filing this case); when they began preparing for trial or examined Plaintiffs' exhibits; and of course, at trial itself on May 27, 2026, when Plaintiffs pointed out the falsity of the statement in open Court.

Setting aside the data and contemporaneous logs and emails, Defendants of course also had employees and contractors working at the hold rooms themselves, who could at any time have

---

[3] These numbers were obtained from Defendants' data in PX85, ICE 23114, via analysis done by Caroline Asnes, whose methods for determining the count at 26 Fed are in evidence via PX303.

reported the current number of individuals being held. The only reason Plaintiffs were able to catch ICE in this particular lie is because we pressed for months for discovery in the face of the many obstacles repeatedly thrown up by Defendants, and only obtained that discovery months late and even then with hundreds of improper redactions, which counsel had to contest. Plaintiffs only obtained the EARM/EADM book-in/book-out data in PX85 on March 16, 2026, after the Court ordered Defendants to produce it in open court at the February 9, 2026 conference, and only obtained the logbooks after they learned of their existence at Lige Hampton's deposition on April 13, *see* Hampton Tr., 193:17–194:13, and immediately called for their production.

Zanello's lie – made carefully and deliberately to this Court at a moment when ICE sought to avoid the entry of a preliminary injunction, after a TRO was already in place – should call into question *all* of Defendants' other statements regarding their "compliance" with the Court's orders, including in depositions and declarations filed on the docket. At trial, Plaintiffs presented witness testimony regarding issues such as punitive and cruel treatment by guards and coercion to self-deport without access to counsel.[4] The Court will weigh that testimony against conclusory statements by Defendants' witnesses that detained individuals had all their needs met and always received additional food, hygiene items, medical care, and attorney calls.[5] In weighing this testimony, the Court should take into consideration that the ICE official in charge of the hold rooms from July through November 2025 blatantly lied to the Court and that Defendants let that false statement remain uncorrected until long after they had no choice but to submit this recent letter.[6] The Court should also take Zanello's false statement into account in the event that there are future disputes regarding Defendants' compliance with a permanent injunction.[7]

Respectfully submitted,

Heather Gregorio

cc:    Jeffrey Oestericher and Rachel Kroll, Counsel for Defendants (by e-mail)

---

[4] *See, e.g.,* PX332, Ibrahima Barry Witness Statement, ¶ 12; PX337, Carlos Chalco Witness Statement, ¶¶ 12–13; PX334, Oscar Pascual Lopez Witness Statement, ¶¶ 13, 15.

[5] *See, e.g.,* Hampton Tr., 62:4-14; PX326, Second Deposition of William Joyce, 449:5-25; Mitchell Tr., 58:25–59:16; DX85, Mia Jacobs Witness Statement, ¶ 11.

[6] Zanello's misconduct evokes ICE's false statements in another pending S.D.N.Y. case. *See* Opinion & Order, *African Communities Together v. Lyons,* 25 Civ. 06366 (S.D.N.Y. May 18, 2026), ECF No. 90. Judge Castel reversed his prior denial of a stay, *id.* at 15, after Defendants filed a letter acknowledging false statements submitted to the court, writing that they "deeply regret that this error has come to light at this late stage," *id.,* ECF No. 77, at 2. Here, Defendants only took action to correct their false statement *weeks* after Plaintiffs explicitly brought it to light during the bench trial in this matter.

[7] Plaintiffs also intend at the appropriate time to seek attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, and we note that Defendants' conduct throughout this litigation, including as discussed above, constitutes "bad faith" that permits an award of fees pursuant to § 2412(b) (separate and apart from their eligibility under § 2412(d)). *See Kerin v. U.S. Postal Serv.,* 218 F.3d 185, 190 (2d Cir. 2000); *Bower v. Weisman,* 674 F. Supp. 109, 112 (S.D.N.Y. 1987) ("Here, [the party's] perjury is obvious bad faith."); *Ibrahim v. U.S. Dep't of Homeland Sec.,* 912 F.3d 1147, 1184–85 (9th Cir. 2019) (holding that district court's finding that the government did not act in bad faith was reversible error).