UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SERGIO ALBERTO BARCO MERCADO, on his own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MARKWAYNE MULLLIN, Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*,<br><br>Defendants. | No. 25 Civ. 6568 (LAK) |

**MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION TO ALTER OR AMEND THE JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 59(e) OR, IN THE ALTERNATIVE, FOR A NEW TRIAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 59(a)(2)**

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2695/2765

JEFFREY OESTERICHER
RACHEL KROLL
Assistant United States Attorneys
- Of Counsel -

**TABLE OF CONTENTS**


PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ........................................................................................................ 2

LEGAL STANDARD .................................................................................................. 2

ARGUMENT ............................................................................................................ 3

I. The Court's Definition of "Hold Room" as Applied to Paragraphs 1(a)-(f) and 4 Is Clearly Erroneous .................................................................................... 3

II. The Court's Requirement in Paragraph 9 Requiring a Voicemail Connected to (212) 436-9400 Overlooks Evidence Presented at Trial ................................ 5

III. The Court's Requirements in Paragraph 1(b) Requiring Pillows, Paragraph 1(d) Requiring a Light Dimmer, and Paragraph 2 Removing the G-28 Requirement Result in Manifest Injustice ............................................................................ 6

IV. The Court's Requirements in Paragraph 4 Defining a "Basic Medical Screening" Overlooks Evidence Presented at Trial and Is Clearly Erroneous ................. 8

V. The Court's Requirement in Paragraph 3(c) Requiring 24/7 Medical Services Overlooks Evidence Presented at Trial and Results in Manifest Injustice ............ 9

CONCLUSION ......................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

*Cordero v. Astrue*,
574 F. Supp. 2d 373 (S.D.N.Y. 2008) ... 2

*Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*,
10 F. Supp. 3d 460 (S.D.N.Y. 2014) ... 2

*Greene v. Town of Blooming Grove*,
935 F.2d 507 (2d Cir. 1991) ... 1

*Hollander v. Members of Bd. of Regents of Univ. of New York*,
524 F. App'x 727 (2d Cir. 2013) ... 2

*Kamdem-Ouaffo v. Balchem Corp.*,
No. 17 Civ. 2810 (PMH), 2023 WL 2266536 (S.D.N.Y. Feb. 28, 2023) ... 3

*Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
No. 00 Civ. 3457 (LTS) (DFE), 2002 WL 31176862 (S.D.N.Y. Sept. 25, 2002) ... 1

*Network Enters., Inc. v. APBA Offshore Prods., Inc.*,
No. 01 Civ. 11765 (CSH), 2006 WL 2707335 (S.D.N.Y. Sept. 20, 2006) ... 3

*Senisi v. John Wiley & Sons, Inc.*,
No. 13 Civ. 3314 (LTS) (AJP), 2016 WL 1045560 (S.D.N.Y. Mar. 15, 2016) ... 3

*Word v. United States*,
620 F. Supp. 43 (S.D.N.Y. 1985) ... 1

Defendants (the "Government"), by their attorney, James M. McDonald, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) or, in the alternative, for a new trial under Federal Rule of Civil Procedure 59(a)(2). For the reasons explained herein, this Court should amend the permanent injunction or, in the alternative, grant a new trial.

## PRELIMINARY STATEMENT

On September 24, 2026, the Court issued its opinion granting a permanent injunction in this action. ECF Nos. 186, 187. The same day, the U.S. Immigration and Customs Enforcement ("ICE") ceased operations in the 26 Federal Plaza 10th Floor Hold Rooms and 9th Floor Hold Rooms because it was not feasible for ICE to comply with certain requirements of the permanent injunction. *See* Declaration of Merlin Marcellin, dated October 22, 2026 ("Marcellin Decl.") ¶ 2; Declaration of Mia Jacobs, dated October 21, 2026 ("Jacobs Decl.") ¶ 2.

The Government respectfully submits that certain requirements of the permanent injunction, namely those that are not feasible to implement, or which impose a significant and disproportionate burden on the agency, should be altered or amended.[1] For the Court's convenience, the Government has attached a "redline" of the amended permanent injunction entered at Docket Entry 191 with the proposed alterations and amendments raised in this limited

[1] The Government reserves its right to appeal the order and permanent injunction on these and other grounds. This motion solely seeks limited relief with respect to only certain provisions where amendment is necessary to correct a clear error or prevent manifest injustice. *See Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 00 Civ. 3457 (LTS) (DFE), 2002 WL 31176862, at *1 (S.D.N.Y. Sept. 25, 2002) ("The 'narrow aim' of Rule 59(e) is 'to make clear that district court possesses the power' to rectify its own mistakes in the period immediately following the entry of judgment." (quoting *Greene v. Town of Blooming Grove*, 935 F.2d 507, 512 (2d Cir. 1991))); *Word v. United States*, 620 F. Supp. 43, 45 (S.D.N.Y. 1985) ("Construing [plaintiff's] motion as a Rule 59(e) motion will preserve his right to appeal the merits of his claims, if notice of appeal is timely filed from this decision.").

motion. *See* Attachment A. In the alternative, the Government respectfully requests a new trial for the limited purpose of providing evidence and testimony regarding the feasibility and burden issues described herein.

## BACKGROUND

Plaintiffs filed this action to challenge the conditions of confinement and limitations on attorney access at the ICE processing facility at 26 Federal Plaza. ECF No. 51. The Court entered a temporary restraining order on August 12, 2025, and a preliminary injunction on September 17, 2025. ECF Nos. 65, 97. A bench trial was held on May 27, 2026, in which both parties entered evidence, deposition designations, and sworn witness declarations, and made opening arguments. *See* Docket Entry dated 5/27/26. Neither party presented live witness testimony. *Id.* On September 24, 2026, the Court entered its opinion granting a permanent injunction and certifying Plaintiff's proposed class. ECF Nos. 186, 187. On October 2, 2026, the Court entered the amended final judgment of permanent injunction. ECF No. 191.

## LEGAL STANDARD

"A motion to alter judgment pursuant to Federal Rule of Civil Procedure 59(e) may be granted 'only if the movant satisfies the heavy burden of demonstrating an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 10 F. Supp. 3d 460, 475 (S.D.N.Y. 2014) (quoting *Hollander v. Members of Bd. of Regents of Univ. of New York*, 524 F. App'x 727, 729 (2d Cir. 2013)). "[T]he moving party must demonstrate controlling law or factual matters put before the court on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." *Cordero v. Astrue*, 574 F. Supp. 2d 373, 379 (S.D.N.Y. 2008). "Ultimately, the decision as to whether or not to grant a motion for reconsideration is entrusted to the district court's sound discretion."

*Kamdem-Ouaffo v. Balchem Corp.*, No. 17 Civ. 2810 (PMH), 2023 WL 2266536, at *2 (S.D.N.Y. Feb. 28, 2023) (quoting *Senisi v. John Wiley & Sons, Inc.*, No. 13 Civ. 3314 (LTS) (AJP), 2016 WL 1045560, at *1 (S.D.N.Y. Mar. 15, 2016)).

Rule 59(a)(2) provides that "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(2). "[F]ollowing a nonjury trial a trial judge may grant a motion for a new trial or otherwise depart from prior holdings only if the moving party demonstrates a manifest error of law or a clearly erroneous mistake of fact on the part of the judge which, singly or in combination, works a manifest injustice." *Network Enters., Inc. v. APBA Offshore Prods., Inc.*, No. 01 Civ. 11765 (CSH), 2006 WL 2707335, at *3 (S.D.N.Y. Sept. 20, 2006).

## ARGUMENT

### I. The Court's Definition of "Hold Room" as Applied to Paragraphs 1(a)-(f) and 4 Is Clearly Erroneous

Paragraphs 1(a)-(f) and 4 of the permanent injunction set forth requirements applicable to "Hold Room[s]," or refer to processes that must occur before a Detainee is placed in a "Hold Room" that Defendants respectfully submit are clearly erroneous or result in manifest injustice. Because "Hold Room" is defined in the permanent injunction as "any hold room or other room, cell, or other space" where a person is not free to leave, it sweeps too broadly and leads to unintended consequences.

Paragraph 1(a)-(f)[2] requires that all Hold Rooms have capacity limits, are furnished with clean bedding and hygiene products, are temperature controlled, have lights dimmed at night, and

[2] Paragraph 1(g) requires ICE to provide meals and water to Detainees every six hours. Defendants do not argue that it is clear error to apply this provision to Detainees wherever they are held in 26 Federal Plaza. *See* Attachment A (proposed ¶ 2).

are cleaned thoroughly three times a day. This definition sweeps broadly to include areas such as the "processing area" on the 10th floor, which is a mixed-use space where ICE officers sit with detainees and "book" them into ICE's computer system. *See* Marcellin Decl. ¶¶ 3–5; DX78 (Marcellin Trial Testimony); DX 24 (photos of 10th floor processing area). As explained in the Declaration of Merlin Marcellin, it would disrupt ICE operations to (a) dim the lights overnight in the space where officers process detainees, and (b) provide detainees with bedding in this area, and to clean the processing area thoroughly three times a day. Marcellin Decl. ¶ 5. Rather, the requirements in Paragraph 1(a)-(f) are logically applied only to holding cells (the enclosed secure areas where Detainees are placed to await their transfers). *See id.*; DX17–23 (photos of cells on the 10th floor); DX60 (photos of cells on the 9th floor).

This is illustrated in Paragraph 1(a), which sets capacity limits for the four holding cells on the 9th and 10th floors but does not contemplate similar capacity limits for other spaces. While recognizing the Court's ruling regarding class definition, Defendants respectfully request that the Court alter or amend its judgment to specify that the requirements in Paragraph 1 apply just to holding cells and not the processing area. *See* Attachment A (proposed ¶ 1).

Similarly, Paragraph 4 requires that each Detainee receive a basic medical screening "prior to being placed in a Hold Room." Because of the broad definition of "Hold Room" (any space where a person is not free to leave), as a matter of semantics, it is impossible for a Detainee to receive a medical screening "prior to being placed in a Hold Room" because ICE Health Services Corps ("IHSC") is physically located in a space where Detainees are not free to leave. Jacobs Decl. ¶ 11. Furthermore, for safety and security, Detainees must be searched for weapons before they can be seen by IHSC staff. *Id.* at ¶ 12. The phrasing of the introduction of Paragraph 4 logically applies only when narrowed to Detainees who are detained after processing, *i.e.*,

requiring that "*after processing and* prior to being placed in a *holding cell*, each Detainee receives a basic medical screening"; otherwise, Paragraph 4 could be read to require a medical screening before the Detainee is searched for weapons and even if a Detainee is placed in a cell for a few minutes before being brought to the processing area. Defendants therefore respectfully request that the Court alter or amend its judgment with respect to the introductory language in Paragraph 4. *See* Attachment A (proposed ¶ 6). In the alternative, Defendants respectfully move for a new trial in order to present evidence and testimony regarding the overbreadth of Paragraphs 1(a)-(f) and 4.

## II. The Court's Requirement in Paragraph 9 Requiring a Voicemail Connected to (212) 436-9400 Overlooks Evidence Presented at Trial

Paragraph 9 of the permanent injunction requires that if a call to the phone number (212) 436-9400 is not answered, then the call must be transferred to a call center or connected to a voicemail account where "there is an opportunity to leave a voicemail." Defendants respectfully submit that the voicemail requirement in Paragraph 9 overlooks evidence presented at trial. At trial, Defendants introduced into evidence DX44A, DX44B, and DX44C, which demonstrate the process established by Defendants by which any phone call to (212) 436-9400 that is not answered is transferred to an ICE call center, and the call center emails a message to ICE with contact information for the caller at its email address NYClntakelnquiries@ice.dhs.gov. Defendants also proffered testimony from former Deputy Field Office Director William Joyce, who attested to the process for phone calls that are not answered. DX77 ¶ 50. Because the current process does not provide for the option to leave a voicemail, but is nonetheless sufficient to ensure prompt attorney access, Defendants respectfully request that the Court alter or amend its judgment to strike references to a voicemail from Paragraph 9. *See* Attachment A (proposed ¶ 11).

## III. The Court's Requirements in Paragraph 1(b) Requiring Pillows, Paragraph 1(d) Requiring a Light Dimmer, and Paragraph 2 Removing the G-28 Requirement Result in Manifest Injustice

Paragraph 1(b) requires that ICE furnish the Hold Rooms with a pillow for each Detainee. This requirement was not present in the Preliminary Injunction. *See* ECF No. 97. Pillows are a security risk in this setting, as they may be used to harm themselves or other Detainees in the shared holding cells. Marcellin Decl. ¶ 7. Because of this risk on which the Court did not have evidence from the parties to consider, Defendants respectfully request that the Court alter or amend its judgment to strike the requirement to provide Detainees with pillows from Paragraph 1(b). *See* Attachment A (proposed ¶ 1(b)). In the alternative, Defendants respectfully move for a new trial in order to present evidence and testimony regarding this security risk.

Paragraph 1(d) requires that the lights in the Hold Rooms be dimmed between the hours of 9:00 p.m. and 7:00 a.m. In connection with this case, ICE has been in contact with the U.S. General Services Administration ("GSA") to install dimmers on the lights in the four holding cells on both the 9th and 10th floors. Marcellin Decl. ¶ 8; Declaration of John Melecio, dated October 20, 2026 ("Melecio Decl.") ¶ 8. Unfortunately, ICE and GSA have encountered difficulties with installing dimmers because [redacted]. Marcellin Decl. ¶ 8; Melecio Decl. ¶¶ 8–12. [redacted]. Marcellin Decl. ¶ 8; Melecio Decl. ¶ 12. However, ICE and GSA have determined that it is feasible to install lights that are 32-watts with a 3000K color code, which is a lower color code than the current bulbs in the holding cells on the 9th and 10th floor, which means that it emits a softer color. Marcellin Decl. ¶ 8; Melecio Decl. ¶ 13. Defendants respectfully request that the Court alter or amend its judgment to permit the installation of lower color code bulbs (*i.e.*, 3000K color code bulbs) in lieu of light dimmers, due to the identified feasibility issues. *See* Attachment

A (proposed ¶ 1(d)). In the alternative, Defendants respectfully move for a new trial in order to present evidence and testimony regarding the feasibility of installing light dimmers [redacted]

Paragraph 2 requires that counsel for a Detainee be able to contact the Detainee "regardless of whether the attorney has filed a Form G-28." ICE has a nationwide policy requiring legal counsel to provide a Form G-28 to ensure operational security. Marcellin Decl. ¶ 9. Members of the public cannot place incoming calls to reach Detainees held at 26 Federal Plaza. *Id.* To verify that incoming calls from attorneys are, in fact, from attorneys, ICE imposes a requirement that those attorneys must e-file or email ICE (at NYCIntakeInquires@ice.dhs.gov) a notice of entry of appearance with the attorney's basic contact information (the Form G-28). *Id.* During summer 2025, some attorneys were informed that they were required to provide a G-28 signed by the client, which was not possible for those attorneys who were retained after their client was detained, or if the call was pre-representational. *See* PX 67. However, since the preliminary injunction went into effect, ICE has changed its requirement and instead requires counsel to provide a Form G-28 signed by counsel but not by the detainee. *See* DX77 ¶ 48. This requirement is narrowly tailored to ensure that incoming calls are made by attorneys; immigration attorneys routinely provide these Forms G-28 without issue. *See* DX39, DX40, DX42, PX25, PX65 (emails from immigration attorneys to NYClntakelnquiries@ice.dhs.gov requesting legal calls and attaching Forms G-28). Because of the operational security risk that would result from removing the Form G-28 requirement, Defendants respectfully request that the Court alter or amend its judgment to clarify that attorneys are required to provide a Form G-28 signed by the attorney to place an incoming call, but that the form does not need to be signed by the Detainee. *See* Attachment A (proposed

¶ 3). In the alternative, Defendants respectfully move for a new trial in order to present evidence and testimony regarding ICE's nationwide G-28 requirement.

## IV. The Court's Requirements in Paragraph 4 Defining a "Basic Medical Screening" Overlooks Evidence Presented at Trial and Is Clearly Erroneous

Paragraph 4 requires that all Detainees receive a basic medical screening by a licensed medical professional which meets certain requirements before being placed into a Hold Room. Because the IHSC office on the 10th floor of 26 Federal Plaza is not a "medical setting," the medical screenings cannot be as comprehensive as the medical screenings that Detainees will receive when they arrive at a long-term detention center. Jacobs Decl. ¶¶ 3–4; DX85 ¶ 5 (Jacobs Trial Testimony). Likewise, the services or treatment provided by IHSC on the 10th floor of 26 Federal Plaza cannot be as comprehensive as the treatment at a long-term detention center. Jacobs Decl. ¶¶ 3–4; DX85 ¶ 5.

With respect to Paragraph 4(a), while IHSC can document medical conditions, it cannot necessarily begin treatment for those conditions. Jacobs Decl. ¶ 6. With respect to Paragraphs 4(b), 5(c), and 5(d), while IHSC can document a Detainee's prescription medication, IHSC cannot necessarily provide continued access to prescription medication while the Detainee is at 26 Federal Plaza because Detainees are often transported to a long-term detention facility before prescription medication can be verified, prescribed, dispensed, and delivered. *Id.* ¶ 7. With respect to Paragraph 4(c), while IHSC can recognize when Detainees have communicable diseases, 26 Federal Plaza is not equipped to segregate and treat those Detainees. *Id.* at ¶ 8. With respect to Paragraphs 4(d), 5(c), and 5(d), the IHSC staff on site at 26 Federal Plaza are not licensed to prescribe medical diets or any other prescriptions. *Id.* at ¶ 9. With respect to Paragraphs 5(a) and 5(b), because all medication, whether brought in by the Detainee or later prescribed, are received by IHSC personnel, verified as a current prescription and then nursing staff contact the on-call

provider who may order the medication to be administered to the Detainee by IHSC personnel, Detainees do not retain their "personal" medication. *See* DX85 ¶ 9. Accordingly, Defendants respectfully request the Court alter or amend its judgment to account for the limitations on the medical screenings, treatment, and other services that IHSC can provide at the hold rooms at 26 Federal Plaza. *See* Attachment A (proposed ¶¶ 6, 7). In the alternative, Defendants respectfully move for a new trial in order to present evidence and testimony regarding the appropriateness and feasibility of providing the type of medical screening that is completed at a long-term detention facility in a short-term holding facility.

Additionally, Paragraph 4 requires that all Detainees have a medical screening by a licensed medical professional. However, it is not medically necessary for every Detainee to have a screening from IHSC before they are processed by ICE. Jacobs Decl. ¶ 13. Like the requirements in Paragraph 1, the requirement for Detainees to have a medical screening should apply only to those Detainees who are placed in a holding cell after processing. *See* Attachment A (proposed ¶ 6). In the alternative, Defendants respectfully move for a new trial in order to present evidence and testimony regarding the appropriate medical screening for individuals at 26 Federal Plaza.

## V. The Court's Requirement in Paragraph 3(c) Requiring 24/7 Medical Services Overlooks Evidence Presented at Trial and Results in Manifest Injustice

Paragraph 3(c) requires that at least one licensed medical professional be present on site at 26 Federal Plaza at all times. This requirement, which has been in place since the imposition of the preliminary injunction in this case, has imposed a significant burden on ICE that is disproportionate to the needs of the facility, especially given the capacity limits imposed by the preliminary, and now the permanent, injunction. *See* Jacobs Decl. ¶¶ 3–5, 15–19; DX85 ¶ 13. To provide the 24/7 staffing required by the permanent injunction, ICE expends over $130,000 per

month, including over $18,000 per month for the overnight shift. Jacobs Decl. ¶ 17. In addition, in order to provide around-the-clock staffing at 26 Federal Plaza, a holding facility, ICE must borrow medical staff from their regular duty stations, which are typically long-term detention facilities that serve a larger detainee population who require greater access to health care resources for management of chronic diseases. *Id.* ¶ 18; DX85 ¶ 13. Defendants therefore respectfully request that the Court alter or amend its judgment to require IHSC staffing on its previous schedule of 7:00 a.m. to 9:30 p.m. on weekdays and 7:00 a.m. to 7:30 p.m. on weekends. *See* Attachment A (proposed ¶¶ 4(c)–(d), 5). In the alternative, Defendants respectfully move for a new trial in order to present evidence and testimony addressing whether there is a need for 24/7 medical services at 26 Federal Plaza.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant its motion to alter or amend the permanent injunction or, in the alternative, grant a new trial.

Dated: New York, New York
October 22, 2026

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York

By: /s/ *Rachel Kroll*
JEFFREY OESTERICHER
RACHEL KROLL
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2695/2765
E-mail: jeffrey.oestericher@usdoj.gov
rachel.kroll@usdoj.gov

## Certificate of Compliance

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 3,477 words.