UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SERGIO ALBERTO BARCO MERCADO, on his own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MARKWAYNE MULLLIN, Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*,<br><br>Defendants. | No. 25 Civ. 6568 (LAK) |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE GOVERNMENT'S MOTION TO ALTER OR AMEND THE JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 59(e) OR, IN THE ALTERNATIVE, FOR A NEW TRIAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 59(a)(2)**

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2695/2765

JEFFREY OESTERICHER
RACHEL KROLL
Assistant United States Attorneys
- Of Counsel -

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 1

I. Plaintiff's Proposed "Paragraph 1" .......... 1

II. Voicemail Provision .......... 2

III. Pillows, G-28, and Light Dimmer Provisions .......... 2

IV. IHSC Provisions .......... 3

a. Prescription Access .......... 3

b. Basic Medical Screening .......... 4

c. 24/7 On-Site Licensed Medical Professional .......... 6

CONCLUSION .......... 7

Defendants (the "Government"), by their attorney, James M. McDonald, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in further support of their motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) or, in the alternative, for a new trial under Federal Rule of Civil Procedure 59(a)(2).

## PRELIMINARY STATEMENT

The Government seeks limited relief from the Court with respect only to select provisions of the permanent injunction, ECF No. 191, in order to prevent manifest injustice. These provisions present feasibility, burden, and safety concerns which the Government respectfully submits the Court overlooked and have caused the U.S. Immigration and Customs Enforcement ("ICE") to cease operations in the 9th and 10th Floor Hold Rooms in 26 Federal Plaza. For the reasons set forth in the Government's memorandum of law, *see* ECF No. 208, declarations in support, *see* ECF Nos. 209, 210, 206, 195, and for the reasons below, the Court should grant the Government's motion to alter or amend the judgment as documented in Attachment A to its memorandum, *see* ECF No. 193-1, or, alternatively, grant a new trial.

## ARGUMENT

### I. Plaintiff's Proposed "Paragraph 1"

Plaintiffs recognize that the provisions of Paragraph 1 of the permanent injunction "are designed principally for enclosed spaces in which detained individuals are confined for extended periods or held overnight." ECF No. 204 ("Opp.") at 22. Plaintiffs kindly state that "Defendants identify legitimate practical distinctions between enclosed holding cells and open, mixed-use processing areas in which officers conduct intake and administrative work." *Id.* Accordingly, Plaintiffs are amenable to clarifying that certain physical-conditions requirements such as nighttime dimming apply to enclosed holding cells and other spaces used for custodial confinement

or extended detention only, rather than to open processing areas used for active administrative processing." *Id.* However, Plaintiffs' proposed language falls short of solving the issue that the Government raised in its opening brief. *See* ECF No. 208, at 3–5.

In Plaintiff's Attachment A, Paragraph 1 of the permanent injunction still applies to any non-processing space where a detainee is held for any length of time during which they are not free to leave. *See* ECF No. 204-1. Because of this overbreadth, it would still require capacity limits, cleaning, and light dimming in, for example, the rooms where ICE Health Services Corps ("IHSC") performs medical screenings, the hallways and elevators in which detainees are transported from when they enter 26 Federal Plaza until they reach the processing areas on the 9th and 10th floors, and the area where detainees' property is removed and cataloged. *See* Declaration of Mia Jacobs, dated October 21, 2026 ("Jacobs Decl.") ¶¶ 11–12. Paragraph 1 of the permanent injunction should therefore be revised to apply solely to holding cells, *see* ECF No. 193-1, or, in the alternative, solely to holding cells and any other space where a detainee is not free to leave and is confined for more than four hours.

## II. Voicemail Provision

Plaintiffs also do not oppose the Government's proposed modification to Paragraph 9 of the permanent injunction to remove references to voicemail, and instead having unanswered attorney calls to the hold rooms routed to a call center that forwards the caller's contact information to ICE personnel. Opp. at 23. Accordingly, the Government respectfully submits that this change to the permanent injunction should be ordered as unopposed.

## III. Pillows, G-28, and Light Dimmer Provisions

*G-28 Form.* The Court's preliminary injunction did not require ICE to permit incoming calls to detainees without a G-28 Form on file. *See* ECF No. 97. ICE national policy requires attorneys to submit a G-28 Form, which only needs to be signed by the attorney, to verify the

identity of the incoming caller. Declaration of Merlin Marcellin, dated October 22, 2026 ("Marcellin Decl.") ¶ 9. Plaintiffs in fact do not object to a neutral verification requirement for incoming attorney calls; they only object to using the G-28 Form for that purpose. Opp. at 14. However, the G-28 Form is the most efficient and expeditious way to verify identity and those forms are routinely provided by immigration attorneys. *See* DX39; DX40; DX42; PX25; PX65. For these reasons, the Government respectfully submits that the language in the Government's Attachment A with respect to the G-28 Form, *see* ECF No. 193-1, is necessary to prevent manifest injustice and should be adopted by the Court.

*Pillows*. The Government withdraws its motion to alter the provision of Paragraph 1(b) of the permanent injunction which struck through the word "pillow," with the understanding that ICE may resume its operations without providing pillows as long as no detainee is held overnight at 26 Federal Plaza.

*Light Dimmers*. The Government withdraws its motion to alter the provision of Paragraph 1(d) of the permanent injunction which requested the word "dimmed" be replaced with "32-watt bulbs with a 3000K color code, or lower," with the understanding that ICE may resume its operations without installing light dimmers as long as no detainee is held in a holding cell (or any area for longer than four hours) between the hours of 9:00 p.m. and 7:00 a.m. However, the Government respectfully requests that the Court alter Paragraph 1(d) of the permanent injunction to provide that lights be dimmed between 11:00 p.m. and 7:00 a.m., to permit operations at 26 Federal Plaza to continue until 11:00 p.m.

## IV. IHSC Provisions

### a. Prescription Access

The Government withdraws its motion to alter the provisions of Paragraph 5 of the permanent injunction which struck through the word "personal." ICE Policy provides that

detainees are allowed "to keep personal inhaled medication on their person and have access to other prescribed medication as necessary." Operations of ERO Holding Facilities, Policy Number 11087.2, at 5.7(2), available at https://www.ice.gov/doclib/foia/policy/directive11087.2.pdf. The standard operating procedure in the Hold Rooms in order to effectuate this policy is as described by Lieutenant Jacobs: the detainee's inhaled medication is verified, ordered, and provided to the detainee to keep on their person. *See* DX85 ¶ 9. Because the Court's permanent injunction reflects ICE Hold Room policy, the Government respectfully withdraws its request to strike the words "personal" from Paragraph 5 of the permanent injunction. For the same reason, the Government also respectfully withdraws its motion to alter the terms in Paragraph 4(b) of the permanent injunction.

Additionally, the Government had requested to strike the word "immediately" from Paragraph 5(c) of the permanent injunction because of the reasonable time that elapses between when a medication is prescribed and when it is dispensed, not to "weaken protections" set forth by the Court. *See* Opp. at 20. In the alternative, Paragraph 5(c) of the permanent injunction could be rephrased to: "Have the same prescription immediately made available to them to keep in their possession after being prescribed *and dispensed* such medication." Finally, the Government requested to strike the requirement that "ICE medical personnel" themselves write the prescription as set forth in Paragraphs 5(c) and 5(d) of the permanent injunction in order to avoid unnecessarily limiting the prescriber of medication solely to ICE medical personnel, not in order to weaken any of the Court's protections. *See* Opp. at 20.

**b. Basic Medical Screening**

The Government appreciates Plaintiffs' recognition that short-term holding facilities do not "have the capacity to perform every medical intervention available at a hospital or long-term detention center," Opp. at 24, but their proposed language still requires IHSC staff to perform

activities which are beyond their capabilities in a hold room setting. Plaintiffs' proposed Paragraph 5(a)—a redline of Paragraph 4(a) of the permanent injunction—requires IHSC staff to "identify" medical conditions, which necessarily requires a diagnosis. *See* ECF No. 204-1. The medical staff at IHSC cannot provide any diagnoses; they can only document a detainee's reported medical conditions and provide medical information to assist in determining whether the detainee should be transported to an off-site medical facility or a long-term detention center equipped to handle their health needs. *See* Jacobs Decl. ¶¶ 6, 10; *see also* ECF No. 193-1.

Plaintiffs' proposed Paragraph 5(d)—a redline of Paragraph 4(d) of the permanent injunction—similarly uses the word "identify," when the medical staff at 26 Federal Plaza can only document self-reported medical diets. If a detainee reports having a medical allergy or a religious diet, ICE accommodates such self-reported diets. *See* DX77 ¶ 44; DX78 ¶ 23; DX79 ¶ 36. Plaintiffs' proposed language that the Government must "ensure that such diets are provided during detention," ECF No. 204-1, is acceptable to the Government if "detention" is limited to its technical meaning. "Detention" does not apply to those detainees kept in short-term hold rooms such as those at 26 Federal Plaza, but only those in the long-term detention facilities governed by ICE's Performance-Based National Detention Standards, which have the medical staffing to prescribe and dispense medical diets. *See* Jacobs Decl. ¶ 3.

Plaintiffs' proposed Paragraph 5(c)—a redline of Paragraph 4(c) of the permanent injunction—is acceptable to the Government, with the understanding that ICE cannot provide appropriate segregation and treatment at 26 Federal Plaza, but it would transport any detainee with a communicable disease to the hospital or a long-term detention facility, as appropriate. *See* ECF No. 204-1; Jacobs Decl. ¶¶ 8–9.

**c. 24/7 On-Site Licensed Medical Professional**

As discussed in the Government's opening motion, the permanent injunction's requirement for 24/7 on-site medical staffing has imposed a significant financial burden and strain on staffing resources, Jacobs Decl. ¶¶ 17–18; DX85 ¶ 13, that is disproportionate to the needs of the facility, especially given the capacity limits imposed by the preliminary, and now the permanent, injunction, *see* Jacobs Decl. ¶ 19. The total population of the hold rooms cannot exceed 22 detainees and frequently was less than 22 since late 2025. For example, the average daily maximum number of detainees held in the hold rooms from January 1, 2026 through April 27, 2026 was approximately 12. *See* DX65; DX86, Ex. A.

Plaintiffs argue that it is necessary to provide 24/7 on-site medical staffing in order to "comply[] with basic constitutional standards," *see* Opp. at 17, because detainees may have emergency medical needs during overnight hours, *see* Opp. at 18. While it is true that medical emergencies can happen at any time, this fact does not lead to the conclusion that the constitution is violated without continuous on-site medical staffing.

For example, the Bureau of Prisons ("BOP") program statement regarding Patient Care reflects that medical staff is on-site during daytime hours, and that inmates are transported to the hospital if an emergency occurs during overnight hours. *See* Bureau of Prisons, Program Statement 6031.06, available at https://www.bop.gov/policy/progstat/6031_006.pdf. Except for specialized medical centers which serve only inmates with severe health conditions, BOP institutions "will not have clinicians on site 24 hours," but rather between "8-16 hours per day based on the needs of the inmate population." *Id.* at 8.d. BOP requires that facilities "provide access to emergency care services 24-hours a day." *Id.* at 8.a. If an emergency happens "[d]uring hours when clinical staff are available, the inmate can be assessed to determine if the medical needs can be addressed at the facility or if transfer to a higher level of care is warranted." *Id.* And,

according to the BOP program statement "[a]ll emergencies are referred to a nearby emergency room when the necessary care exceeds the capability of the facility to provide, even when clinical staff are on site to assess the inmate." *Id.*

Like BOP, which operates facilities serving much larger population sizes than 22 individuals, ICE can provide on-site staffing during daytime hours and rely on transportation to nearby hospitals for medical emergencies (whether emergencies occur while medical staff is on site or not). *See* Jacobs Decl. ¶ 19. The Government therefore respectfully requests that the Court alter or amend the permanent injunction to permit IHSC to revert to its pre-summer-2025 schedule, *see* Jacobs Decl. ¶ 15; ECF No. 193-1, which would be reasonable and proportionate to the needs of the limited population of detainees at 26 Federal Plaza.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant its motion to alter or amend the permanent injunction or, in the alternative, grant a new trial.

Dated: New York, New York
November 12, 2026

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York

By: /s/ *Rachel Kroll*
JEFFREY OESTERICHER
RACHEL KROLL
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2695/2765
E-mail: jeffrey.oestericher@usdoj.gov
rachel.kroll@usdoj.gov

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 2,292 words.